**PATENT**

## U.S. District Court [LIVE]
### Eastern District of TEXAS LIVE (Tyler)
### CIVIL DOCKET FOR CASE #: 6:06-cv-00523-LED

ON Semiconductor Corporation et al v. Samsung           Date Filed: 12/4/2006
Electronics Co., Ltd. et al                             Jury Demand: Plaintiff
Assigned to: Judge Leonard Davis                        Nature of Suit: 830 Patent
Referred to:                                            Jurisdiction: Federal Question
Demand: $0
Lead Docket: None
Related Cases: None
Cases in other court: None
Cause: 35:271 Patent Infringement


**Plaintiff**
-----------------------

**ON Semiconductor Corporation**       represented by   **Hilda Contreras Galvan**
                                                        Jones Day - Dallas
                                                        2727 N Harwood St
                                                        Dallas, TX 75201
                                                        214/969-4556
                                                        Fax: 12149695100
                                                        Email: hcgalvan@jonesday.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

                                                        **Kenneth Robert Adamo**
                                                        Jones Day - Dallas
                                                        2727 N Harwood St
                                                        Fifth Floor
                                                        Dallas, TX 75201-1515
                                                        214-969-4856
                                                        Email: kradamo@jonesday.com
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

**Semiconductor Components**           represented by   **Hilda Contreras Galvan**
**Industries, LLC**                                     (See above for address)
                                                        *LEAD ATTORNEY*
                                                        *ATTORNEY TO BE NOTICED*

USCA5 1

**Kenneth Robert Adamo**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*cp*
**ON Semiconductor Corporation**


V.


**Defendant**
------------------------

**Samsung Electronics Co., Ltd.**          represented by    **Allen Franklin Gardner**
                                                              Potter Minton PC
                                                              110 N College
                                                              Suite 500
                                                              PO Box 359
                                                              Tyler, TX 75710-0359
                                                              903/597-8311
                                                              Email:
                                                              allengardner@potterminton.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **James E Marina**
                                                              Kirkland & Ellis - NYC
                                                              153 E 53rd St
                                                              Citicorp Center
                                                              New York, NY 10022-4675
                                                              212/446-4800
                                                              Fax: 212/446-4900
                                                              Email: jmarina@kirkland.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **John M Desmarais**
                                                              Kirkland & Ellis - NYC
                                                              153 E 53rd St
                                                              Citicorp Center
                                                              New York, NY 10022-4675
                                                              212/446-4800
                                                              Fax: 12124464900
                                                              Email: jdesmarais@kirkland.com
                                                              *ATTORNEY TO BE NOTICED*

**Samsung Electronics America, Inc.**     represented by    **Allen Franklin Gardner**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**James E Marina**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John M Desmarais**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Edwin Jones**
Potter Minton PC
110 N College
Suite 500
PO Box 359
Tyler, TX 75710-0359
903/597/8311
Fax: 9035930846
Email:
mikejones@potterminton.com
*ATTORNEY TO BE NOTICED*

**Samsung Telecommunications America General, LLC**    represented by    **Allen Franklin Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James E Marina**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John M Desmarais**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Edwin Jones**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Samsung Semiconductor, Inc.**    represented by    **Allen Franklin Gardner**
(See above for address)
*ATTORNEY TO BE NOTICED*

**James E Marina**
(See above for address)
*ATTORNEY TO BE NOTICED*

**John M Desmarais**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Edwin Jones**

|  |  |
|---|---|
|  | (See above for address) |
|  | *ATTORNEY TO BE NOTICED* |
| **Samsung Austin Semiconductor, LLC** | represented by **Allen Franklin Gardner** |
|  | (See above for address) |
|  | *ATTORNEY TO BE NOTICED* |
|  |  |
|  | **James E Marina** |
|  | (See above for address) |
|  | *ATTORNEY TO BE NOTICED* |
|  |  |
|  | **John M Desmarais** |
|  | (See above for address) |
|  | *ATTORNEY TO BE NOTICED* |
|  |  |
|  | **Michael Edwin Jones** |
|  | (See above for address) |
|  | *ATTORNEY TO BE NOTICED* |

| Filing Date | # | Docket Text |
|---|---|---|
| 12/4/2006 (p.10) | 1 | COMPLAINT against Samsung Austin Semiconductor, LLC, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc. (Filing fee $ 350 pd.) , filed by ON Semiconductor Corporation, Semiconductor Components Industries, LLC. (Attachments: # (1) Exhibit A# (2) Exhibit B# (3) Exhibit C# (4) Exhibit D)(mjc ) (Entered: 12/6/2006) |
| 12/4/2006 |  | Filing fee received: $ 350.00, receipt number 6-1-7763 (mjc ) (Entered: 12/6/2006) |
| 12/4/2006 | 2 | E-GOV SEALED SUMMONS Issued as to Samsung Austin Semiconductor, LLC, Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc. (mjc ) (Entered: 12/6/2006) |
| 12/4/2006 (p.56) | 3 | Summons Reissued as to Samsung Austin Semiconductor, LLC. (mjc ) (Entered: 12/6/2006) |
| 12/6/2006 (p.58) | 4 | Form mailed to Commissioner of Patents and Trademarks. (mjc ) (Entered: 12/6/2006) |

| 12/6/2006 (p.59) | 5 | CORPORATE DISCLOSURE STATEMENT filed by Semiconductor Components Industries, LLC identifying ON Semiconductor Corp. as Corporate Parent. (Galvan, Hilda) (Entered: 12/6/2006) |
|---|---|---|
| 12/6/2006 (p.62) | 6 | CORPORATE DISCLOSURE STATEMENT filed by ON Semiconductor Corporation (Galvan, Hilda) (Entered: 12/6/2006) |
| 12/26/2006 (p.65) | 7 | MOTION to Change Venue *Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-to-File Rule* by Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc.. (Attachments: # (1) Affidavit Declaration of Patrick Muir# (2) Affidavit Declaration of Michael Jones# (3) Exhibit 1 to Jones Declaration# (4) Exhibit 2 to Jones Declaration# (5) Exhibit 3 to Jones Declaration# (6) Exhibit 4 to Jones Declaration# (7) Exhibit 5 to Jones Declaration# (8) Text of Proposed Order)(Jones, Michael) (Entered: 12/26/2006) |
| 12/26/2006 (p.144) | 8 | ANSWER to Complaint with Jury Demand by Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc..(Jones, Michael) (Entered: 12/26/2006) |
| 12/26/2006 (p.160) | 9 | CORPORATE DISCLOSURE STATEMENT filed by Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc. (Jones, Michael) (Entered: 12/26/2006) |
| 12/26/2006 (p.163) | 10 | MOTION to Seal *Defendants' Unopposed Motion for Leave to File and Amended Unredacted Version of Their Previously File Motion to Transfer to the District of Delaware Pursuant to the First-to-File Rule, Under Seal* by Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc.. (Attachments: # (1) Text of Proposed Order)(Jones, Michael) (Entered: 12/26/2006) |
| 1/3/2007 (p.168) | 11 | ORDER granting [10] Motion to Seal. Defendants are authorized to file an amended, non-redacted version of their previously filed Motion to Transfer to the District of Delaware pursuant to the First-To-File rule under seal. Signed by Judge Leonard Davis on 1/3/07. (kjr, ) (Entered: 1/4/2007) |
| | | SEALED PATENT MOTION by Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, |

| | | |
|---|---|---|
| 1/4/2007 | 12 | Inc.. (Attachments: # (1) Muir Declaration# (2) Exhibit A to Muir Declaration# (3) Exhibit B to Muir Declaration# (4) Exhibit C to Muir Declaration# (5) Exhibit D to Muir Declaration# (6) Exhibit E to Muir Declaration# (7) Exhibit F to Muir Declaration# (8) Exhibit G to Muir Declaration# (9) Jones Declaration# (10) Exhibit 1 to Jones Declaration# (11) Exhibit 2 to Jones Declaration# (12) Exhibit 3 to Jones Declaration# (13) Exhibit 4 to Jones Declaration# (14) Exhibit 5 to Jones Declaration# (15) Text of Proposed Order)(Jones, Michael) (Entered: 1/4/2007) |
| 1/5/2007 (p.170) | 13 | MOTION for Leave to File *Under Seal Plaintiffs' Opposition to Defendants' Motion to Transfer to the District of Delaware Pursuant to the First to File Rule (Unopposed)* by ON Semiconductor Corporation, Semiconductor Components Industries, LLC. (Attachments: # (1) Text of Proposed Order)(Adamo, Kenneth) (Entered: 1/5/2007) |
| 1/8/2007 (p.175) | 14 | NOTICE of Attorney Appearance by Michael Charles Smith on behalf of ON Semiconductor Corporation, Semiconductor Components Industries, LLC (Smith, Michael) (Entered: 1/8/2007) |
| 1/8/2007 | 15 | SEALED RESPONSE to Motion re [7] MOTION to Change Venue *Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-to-File Rule* filed by ON Semiconductor Corporation, Semiconductor Components Industries, LLC. (Attachments: # (1) Affidavit Declaration of G. Sonny Cave# (2) Affidavit Declaration of Tharan Gregory Lanier# (3) Exhibit 1# (4) Exhibit 2# (5) Errata 3# (6) Exhibit 4# (7) Exhibit 5# (8) Affidavit Declaration of Bradley J. Botsch# (9) Exhibit 1# (10) Exhibit 2# (11) Exhibit 3# (12) Exhibit 4# (13) Exhibit 5# (14) Exhibit 6# (15) Exhibit 7# (16) Exhibit 8# (17) Exhibit 9# (18) Exhibit 10# (19) Exhibit 11# (20) Exhibit 12# (21) Exhibit 13# (22) Text of Proposed Order)(Adamo, Kenneth) (Entered: 1/8/2007) |
| 1/8/2007 (p.178) | 16 | ORDER granting [13] Motion for Leave to File Plaintiffs' Opposition to Defendants' Motion to Transfer to the District of Delaware under seal . Signed by Judge Leonard Davis on 1/8/07. (mjc ) (Entered: 1/8/2007) |
| 1/16/2007 | 17 | SEALED REPLY to Response to Motion re [12] SEALED PATENT MOTION filed by Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc.. (Attachments: # (1) Declaration of Jay Shim# (2) Second Declaration of Patrick Muir# (3) Declaration of Allen Gardner# (4) Exhibit A to Gardner Declaration) (Jones, Michael) (Entered: 1/16/2007) |

| | | |
|---|---|---|
| 1/19/2007 (p.179) | 18 | MOTION for Leave to File *Under Seal Plaintiffs' Sur-Reply to Defendants' Motion to Transfer to the District of Delaware Pursuant to the First to File Rule (Unopposed)* by ON Semiconductor Corporation, Semiconductor Components Industries, LLC. (Attachments: # (1) Text of Proposed Order)(Adamo, Kenneth) (Entered: 1/19/2007) |
| 1/22/2007 (p.184) | 19 | ORDER granting [18] Motion for Leave to File Under Seal Plaintiffs' Sur-Reply to Defendants' Motion to Transfer . Signed by Judge Leonard Davis on 1/22/07. (mjc ) (Entered: 1/22/2007) |
| 1/23/2007 | 20 | SEALED SUR-REPLY in Support of its Opposition to Samsung's Motion to the District of Delaware Pursuant to the First-to-File Rule re [7] MOTION to Change Venue *Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-to-File Rule* filed by ON Semiconductor Corporation, Semiconductor Components Industries, LLC. (Adamo, Kenneth) (Entered: 1/23/2007) |
| 1/29/2007 (p.185) | 21 | NOTICE of Attorney Appearance by Allen Franklin Gardner on behalf of Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc. (Gardner, Allen) (Entered: 1/29/2007) |
| 2/16/2007 (p.187) | 22 | NOTICE by ON Semiconductor Corporation, Semiconductor Components Industries, LLC re [20] Sealed Reply to Response to Motion, *Supplement to Sur-Reply in Support of Opposition to Samsung's Motion to Transfer to the District of Delaware Pursuant to the First-To-File Rule* (Attachments: # (1) Exhibit A)(Adamo, Kenneth) (Entered: 2/16/2007) |
| 2/22/2007 (p.280) | 23 | NOTICE by Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc. *Defendants' Notice Of Collateral Proceedings* (Attachments: # (1) Exhibit 1# (2)Exhibit 2) (Gardner, Allen) (Entered: 2/22/2007) |
| 3/15/2007 (p.299) | 24 | NOTICE by Samsung Austin Semiconductor, LLC, Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc. *Second Notice of Collateral Proceedings* (Attachments: # (1) Exhibit A)(Jones, Michael) (Entered: 3/15/2007) |
| 4/20/2007 (p.306) | 25 | ANSWER to Complaint with Jury Demand by Samsung Electronics Co., Ltd..(Gardner, Allen) (Entered: 4/20/2007) |
| | | CORPORATE DISCLOSURE STATEMENT filed by Samsung |

| 4/20/2007 (p.322) | 26 | Electronics Co., Ltd. identifying None as Corporate Parent. (Gardner, Allen) (Entered: 4/20/2007) |
|---|---|---|
| 4/20/2007 (p.324) | 27 | NOTICE by Samsung Electronics Co., Ltd. re [7] MOTION to Change Venue *Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-to-File Rule Notice of Joinder in Motion to Transfer* (Gardner, Allen) (Entered: 4/20/2007) |
| 5/3/2007 (p.326) | 28 | NOTICE of Hearing: Scheduling Conference set for 6/13/2007 02:00 PM before Judge Leonard Davis in Tyler. Proposed Discovery Order is Appendix A; Proposed Docket Control Order is Appendix B.(mjc ) (Entered: 5/3/2007) |
| 5/3/2007 (p.339) | 29 | NOTICE of Hearing on Motion [7] MOTION to Change Venue *Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-to-File Rule*: Motion Hearing set for 6/13/2007 02:00 PM before Judge Leonard Davis. (rlf, ) (Entered: 5/3/2007) |
| 6/11/2007 (p.340) | 30 | APPLICATION to Appear Pro Hac Vice by Attorney John M Desmarais for Samsung Austin Semiconductor, LLC and Samsung Electronics Co., Ltd. Fee pd., 6-1-10036. Approved 6/12/07. (mjc ) (Entered: 6/12/2007) |
| 6/11/2007 (p.343) | 31 | APPLICATION to Appear Pro Hac Vice by Attorney James E Marina for Samsung Austin Semiconductor, LLC and Samsung Electronics Co., Ltd. Fee pd., 6-1-10036. Approved 6/12/07. (mjc ) (Entered: 6/12/2007) |
| 6/12/2007 (p.346) | 32 | STATUS REPORT *Regarding Proposed Docket Control Order* by ON Semiconductor Corporation, Semiconductor Components Industries, LLC. (Attachments: # (1) Exhibit A - Proposed Docket Control Order) (Smith, Michael) (Entered: 6/12/2007) |
| 6/13/2007 (p.364) | 33 | Minute Entry for proceedings held before Judge Leonard Davis : Motion Hearing held on 6/13/2007 re [7] MOTION to Change Venue *Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-to-File Rule* filed by Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc., Samsung Austin Semiconductor, LLC. NOTE: Scheduling Conference not held after Court's ruling to Transfer Case. (Court Reporter Shea Sloan.) (rlf, ) (Entered: 6/13/2007) |
| 6/21/2007 | | MEMORANDUM OPINION AND ORDER granting [12] Sealed Patent Motion *to transfer pursuant to the first-to-file rule*. This case shall be TRANSFERRED to the district judge and magistrate judge |

| | | |
|---|---|---|
| (p.365) | 34 | assigned to *Samsung Electronics Co Ltd v. ON Semiconductor Corporation* in the District of Delaware. Signed by Judge Leonard Davis on 06/21/07. cc:attys 6-22-07 (mll, ) (Entered: 6/22/2007) |
| 6/22/2007 | | Per Local Rule CV-83(b), this case will be transferred to the US District Court of Delaware on or after 7-12-07. (mll, ) (Entered: 6/22/2007) |
| 7/8/2007 | | TRANSCRIPT of Proceedings held on 6/13/07 before Judge Leonard Davis. Court Reporter: Shea Sloan. Motion Hearing held. See [33] (19 pages)shea_sloan@txed.uscourts.gov(sms, ) (Entered: 7/8/2007) |

FILED CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS** 2006 DEC -4  AM 8: 22
**TYLER DIVISION**

TEXAS EASTERN

|  |  |
|---|---|
| ON SEMICONDUCTOR CORPORATION, and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C.<br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>SAMSUNG TELECOMMUNICATIONS<br>AMERICA GENERAL, L.L.C.,<br>SAMSUNG SEMICONDUCTOR, INC., and<br>SAMSUNG AUSTIN SEMICONDUCTOR,<br>L.L.C.,<br>Defendants. | BY_____<br><br>Civil Action No. 6:06 cv 523<br><br>COMPLAINT |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff ON Semiconductor Corp. ("ON Semiconductor") and plaintiff Semiconductor

Components Industries, L.L.C. ("Semiconductor Components") (collectively, "Plaintiffs"), for

their Complaint against defendants Samsung Electronics Co., Ltd., Samsung Electronics

America, Inc., Samsung Telecommunications America General, L.L.C., Samsung

Semiconductor, Inc. and Samsung Austin Semiconductor, L.L.C. (collectively "Defendants"),

state as follows.

## THE PARTIES

1.     Plaintiff ON Semiconductor is a Delaware corporation with its principal place of

business at 5005 East McDowell Road, Phoenix, AZ 85008.

MPI-41884v1                                 - 1 -

USCA5 10

2.      Plaintiff Semiconductor Components, a Delaware limited liability company with its principal place of business at 5005 East McDowell Road, Phoenix, AZ 85008, is the principal domestic operating subsidiary of ON Semiconductor, and does business under the name of ON Semiconductor.

3.      On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of Republic of Korea with its principal place of business at Samsung Main Building, 250, Taepyong-ro 2-ka, Chung-ku, Seoul 100-742, South Korea. On information and belief, SEC manufactures and, in cooperation with its subsidiaries, markets throughout the world, including in this district and elsewhere in the United States, a variety of semiconductor products including dynamic random access memory ("DRAM") devices.

4.      Defendant Samsung Electronics America, Inc. ("SEA") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660. On information and belief, SEA is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of electronic and semiconductor products

5.      Defendant Samsung Telecommunications America General, L.L.C. ("STA") is a Delaware limited liability company with its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082. On information and belief, STA is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of electronic and semiconductor products.

6.      Defendant Samsung Semiconductor, Inc. ("SSI") is a California corporation with its principal place of business at 3655 North First Street, San Jose, California 95134. On

USCA5 11

information and belief, SSI is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of electronic and semiconductor products.

7.    On information and belief, Defendant Samsung Austin Semiconductor, L.L.C. ("SAS") is a Delaware limited liability company with its principal place of business at 12100 Samsung Boulevard, Austin, Texas 78754.  On information and belief, SAS is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of semiconductor products including DRAM devices.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*

9.    This Court has personal jurisdiction over each of the Defendants.  The Defendants have had minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district and specifically as a result of, at least, the Defendants' distribution network wherein Defendants place their products that infringe Semiconductor Component's patents within the stream of commerce, which stream is directed at this district as well as Texas, and by committing the tort of patent infringement and/or contributing to or inducing acts of patent infringement by others within Texas and this district.

10.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants have regularly conducted business in this judicial district and certain of the acts complained of herein occurred in this judicial district.

USCA5 12

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 5,563,594

11.    The allegations contained in paragraphs 1 through 10 are incorporated by reference as if fully set herein.

12.    United States Patent No. 5,563,594 ("the '594 patent"), entitled "Circuit and Method of Timing Data Transfers," was duly and legally issued by the United States Patent and Trademark Office on October 8, 1996.  Plaintiffs hold all right and interest in the '594 patent, including the right to sue for past, present and future infringement.  A copy of the '594 patent is attached hereto as Exhibit A.

13.    Defendants are infringing the '594 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '594 patent.

14.    On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '594 patent.

15.    Plaintiffs have been damaged by Defendants' infringement of the '594 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by them as a result of each of the Defendants' wrongful acts.

16.    Defendants' infringement of Semiconductor Component's exclusive rights under the '594 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

17.    Defendants have had actual knowledge of the '594 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

USCA5 13

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,362,644

18.    The allegations contained in paragraphs 1 through 17 are incorporated by reference as if fully set herein.

19.    United States Patent No. 6,362,644 ("the '644 patent"), entitled "Programmable Termination for Integrated Circuits," was duly and legally issued by the United States Patent and Trademark Office on March 26, 2002. Plaintiffs hold all right and interest in the '644 patent, including the right to sue for past, present and future infringement. A copy of the '644 patent is attached hereto as Exhibit B.

20.    Defendants are infringing the '644 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '644 patent.

21.    On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '644 patent.

22.    Plaintiffs have been damaged by Defendants' infringement of the '644 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

23.    Defendants' infringement of Semiconductor Component's exclusive rights under the '644 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

24.    Defendants have had actual knowledge of the '644 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

USCA5 14

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 5,361,001

25.    The allegations contained in paragraphs 1 through 24 are incorporated by reference as if fully set herein.

26.    United States Patent No. 5,361,001 ("the '001 patent"), entitled "Circuit and Method of Previewing Analog Trimming," was duly and legally issued by the United States Patent and Trademark Office on November 1, 1994. Plaintiffs hold all right and interest in the '001 patent, including the right to sue for past, present and future infringement. A copy of the '001 patent is attached hereto as Exhibit C.

27.    Defendants are infringing the '001 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '001 patent.

28.    On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '001 patent.

29.    Plaintiffs have been damaged by Defendants' infringement of the '001 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

30.    Defendants' infringement of Semiconductor Component's exclusive rights under the '001 patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

31.    Defendants have had actual knowledge of the '001 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

USCA5 15

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 5,000,827

32.    The allegations contained in paragraphs 1 through 31 are incorporated by reference as if fully set herein.

33.    United States Patent No. 5,000,827 ("the '827 patent"), entitled "Method and Apparatus for Adjusting Plating Solution Flow Characteristics at Substrate Cathode Periphery to Minimize Edge Effect," was duly and legally issued by the United States Patent and Trademark Office on March 19, 1991.  Plaintiffs hold all right and interest in the '827 patent, including the right to sue for past, present and future infringement.  A copy of the '827 patent is attached hereto as Exhibit D.

34.    Defendants are infringing the '827 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '827 patent.

35.    On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '827 patent.

36.    Plaintiffs have been damaged by Defendants' infringement of the '827 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

37.    Defendants' infringement of Semiconductor Component's exclusive rights under the '827 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

USCA5 16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in its favor against each of the Defendants, and requests the following relief:

A. An adjudication that Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '594, '644, '001, and '827 patents;

B. An adjudication that the '594, '644, '001, and '827 patents are valid and enforceable;

C. An accounting of all damages sustained by Plaintiffs as a result of Defendants' acts of infringement;

D. An award to Plaintiffs of actual damages adequate to compensate them for Defendants' acts of direct, contributory, and/or inducement of infringement, together with prejudgment and post-judgment interest and costs;

E. An award to Plaintiffs of enhanced damages, up to and including trebling of Plaintiffs' damages, pursuant to 35 U.S.C. § 284 for Defendants' willful infringement;

F. A preliminary and permanent injunction order against further infringement of the '594, '644, '001 and '827 patents by each of the Defendants, their officers, agents, servants, employees, subsidiaries, and those persons acting in concert with it, including related individuals and entities, customers, representatives, manufacturers, OEMs, dealers, and distributors;

G. An award to Plaintiffs their costs and reasonable attorney fees incurred in this action as provided by 35 U.S.C. § 285; and

H. That the Court award such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues and claims so triable.

MPI-41884v1

- 8 -

USCA5 17

Date: December 4, 2006

Respectfully submitted,

*Hilda C. Galvan*

Kenneth R. Adamo
State Bar No. 00846960
kradamo@jonesday.com
Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Tharan Gregory Lanier
tglanier@jonesday.com
CA Bar No. 138784
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Carl R. Roth
State Bar No. 17312000
cr@rothfirm.com
Michael C. Smith
ms@rothfirm.com
115 N Wellington Suite 200
P O Box 876
Marshall, Texas  75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

ATTORNEYS FOR ON SEMICONDUCTOR
CORPORATION AND SEMICONDUCTOR
COMPONENTS INDUSTRIES, L.L.C.

Of Counsel:
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025

MPI-41884v1                        - 9 -

USCA5 18

# EXHIBIT A

USCA5 19

US005563594A

# United States Patent [19]

## Ford et al.

[11] **Patent Number:** **5,563,594**

[45] **Date of Patent:** **Oct. 8, 1996**

[54] **CIRCUIT AND METHOD OF TIMING DATA TRANSFERS**

[75] Inventors: **David K. Ford**, Gilbert; **Bernard E. Weir, III**, Chandler, both of Ariz.

[73] Assignee: **Motorola**, Schaumburg, Ill.

[21] Appl. No.: **298,715**

[22] Filed: **Aug. 31, 1994**

[51] Int. Cl.$^6$ .................................................. **H03M 9/00**

[52] U.S. Cl. ............................ **341/100**; 341/101; 327/279

[58] Field of Search ....................................... 341/100, 101; 326/93; 327/160, 175, 265, 279

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,218,758 | 8/1980 | Allen et al. | 364/900 |
| 4,445,215 | 4/1984 | Svendsen | 370/279 |
| 4,815,107 | 3/1989 | Kishimoto et al. | 375/96 |
| 5,379,038 | 1/1995 | Matsumoto | 341/101 |

*Primary Examiner*—Marc S. Hoff
*Attorney, Agent, or Firm*—Robert D. Atkins

[57] **ABSTRACT**

A data conversion circuit receives input data from external sourcing logic and performs a parallel-serial conversion. Likewise, a data conversion circuit performs a serial-parallel conversion and presents output data to external sinking logic. In the parallel-serial conversion (10), the input data is translated (12) and stored in a register (14). A multiplexer (16) rotates through the data to provide the serial output. In the serial-parallel conversion (70), the input data is sequenced into a multiplexer (74) to achieve the parallel data word. The parallel data word is stored in a register (76) before presenting it to external logic. Phase delay logic (22) sets the delay of a transfer data control signal that requests data be read or written. Once the proper delay is determined by experimentation, the phase delay logic controls the phase of the transfer data control signal to request more data at the correct time, or present more data at the correct time, to allow maximum operating speed for the data converter.

**19 Claims, 3 Drawing Sheets**



**U.S. Patent**          Oct. 8, 1996          Sheet 1 of 3          **5,563,594**



**FIG. 1**



## FIG. 2

USCA5 22



*FIG. 3*

USCA5 23

5,563,594

**1**

## CIRCUIT AND METHOD OF TIMING DATA TRANSFERS

### BACKGROUND OF THE INVENTION

The present invention relates in general to digital timing circuits and, more particularly, to controlling the phase of a data transfer signal to set the proper timing for reading and writing to a data register.

Parallel-serial converters are commonly used in digital circuit design to convert multi-bit signals to a string of data bits that are serially transmitted one at a time. Serial-parallel converters in turn convert the string of data bits back to multi-bit signals. In both applications, a data register is typically embedded within an integrated circuit that periodically receives new data sourced by external logic, or sources new data for external logic. Timing generation logic for reading or writing the data register is also embedded within the integrated circuit. The timing generation logic asserts a periodic signal to the external logic requesting data be presented to or removed from the data register.

Many applications involve high speed operation, say in the gigahertz range. The data transaction must be completed within a predetermined time period. That is, write data must be present and valid for a setup time before, and hold time after it is loaded into the register by a clock signal. Likewise, read data must be present and valid for a setup time before, and hold time after it is read by external logic. Unfortunately at such high data rates, the propagation delay uncertainties of the external logic are almost as long as the entire transaction period.

When the periodic signal is asserted to the external logic, requesting that new data be read or written, the external logic begins the time-consuming process of retrieving or storing new data. In the case of a request from the IC to the external logic to write new data, when the external logic finally presents new data to the integrated circuit, the new data typically propagates through buffer logic and eventually reaches the data register. The internal timing generation logic asserts a clock signal to load the data register. When the data transaction is so fast that propagation delay uncertainties consume almost the entire time period, there is no assurance that data arrives at the data register within register setup and hold-time constraints.

Since the write data register and timing logic are embedded within the integrated circuit, it is difficult to directly measure the actual write setup and hold-time. That is, the setup and hold-time are not readily observable by the external logic. If the write data setup and hold-time are unknown, the data rate of the external sourcing logic must be reduced to ensure sufficient setup and hold-time. Otherwise, where the propagation time uncertainty consumes a large portion of the transaction time period, the data transaction may fail to correctly time the data transfer under a worst-case timing analysis.

Hence, a need exists to properly set the timing of requesting more write data or read data for the data register to achieve maximum data transfer.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a block diagram illustrating a parallel-serial converter;

FIG. 2 is a schematic diagram illustrating the phase delay logic of FIG. 1; and

**2**

FIG. 3 is a block diagram illustrating a serial-parallel converter.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIG. 1, a parallel-serial converter **10** is shown suitable for manufacturing as an integrated circuit using conventional integrated circuit processes. A CMOS-ECL voltage translator circuit **12** receives a 32-bit DATA IN word from external sourcing logic (not shown) operating at CMOS logic levels. CMOS-ECL voltage translator circuit **12** provides a 32-bit signal operating at ECL logic levels to 32-bit register **14**. Register **14** loads data at rising edge of a REGISTER CLOCK signal. Multiplexer **16** rotates through the individual bit locations of register **14** under control of the MUX ADDRESS signal and provides serial bits to the data input of flipflop **18**. Flipflop **18** transfers the serial data signal to DATA OUT at its Q-output upon receiving a FLIPFLOP CLOCK signal.

Timing logic **20** operates in response to a SYSTEM CLOCK signal, running for example at 2.5 gigahertz, for providing the FLIPFLOP CLOCK signal and the REGISTER CLOCK signal. The FLIPFLOP CLOCK signal operates in phase and at the same frequency as the SYSTEM CLOCK. The REGISTER CLOCK signal is derived from dividing the SYSTEM CLOCK by value thirty-two. The REGISTER CLOCK signal is aligned on the same rising edge as the SYSTEM CLOCK. The MUX ADDRESS is reset to zero with each REGISTER CLOCK and counts up with the SYSTEM CLOCK to value thirty-two. Thus, the serialized data stream DATA OUT is sent at the SYSTEM CLOCK frequency with the duration of each serial bit time the same as the period of the SYSTEM CLOCK.

Timing logic **20** further provides a CLOCK/4 signal and a 3-bit OCTANT signal. The CLOCK/4 signal is derived by dividing the SYSTEM CLOCK by value four with alignment on the rising edges of SYSTEM CLOCK. The OCTANT signal takes one of eight binary encoded values (0 through 7) as seen in Table 1. During a first group of four consecutive SYSTEM CLOCKS C0–C3, OCTANT has a value "000". During the second group of four consecutive SYSTEM CLOCKS C4–C7, OCTANT has a value "001", and so on. The OCTANT signal changes state at each rising edge of CLOCK/4, for example, by incrementing a counter (not shown). Timing logic **20** includes combinational logic to divide the SYSTEM CLOCK and reset the MUX ADDRESS signal. Such combinational logic can be implemented from the aforedescribed operations.

TABLE 1

| SYSTEM CLOCK | OCTANT |
|---|---|
| C0–C3 | "000" |
| C4–C7 | "001" |
| C8–C11 | "010" |
| C12–C15 | "011" |
| C16–C19 | "100" |
| C20–C23 | "101" |
| C24–C27 | "110" |
| C28–C31 | "111" |

Phase delay logic circuit **22** receives CLOCK/4 and OCTANT signals from timing logic **20**, and an OCTANT SELECT signal from the external logic (not shown). ECL-CMOS translator **24** converts the TRANSFER DATA signal from phase delay logic circuit **22** to CMOS logic levels for the external logic. Upon receiving the WRITE control

5,563,594

3

signal, the external logic sends the next 32-bit DATA IN word.

It is important for the overall circuit operation that the output signal from REGISTER 14 does not become metastable. The 32-bit data at the output of translator circuit 12 must be stable for a finite "setup time" before the rising edge of REGISTER CLOCK. Likewise, 32-bit data must remain stable for a finite "hold-time" after the rising edge of REGISTER CLOCK to ensure that register 14 clocks in valid data. Any violation of setup and hold-time may cause the register output to become metastable, yielding indeterminate logic levels for an indeterminate time duration.

Accordingly, as a feature of the present invention, phase delay logic circuit 22 sets the timing of TRANSFER DATA signal by altering its phase as programmed by the 3-bit OCTANT SELECT signal to request more data at the proper time to allow parallel-serial converter 10 to complete processing the previous data. In practice during a calibration sequence, the OCTANT SELECT signal may be set to various values to determine proper delay time necessary before the WRITE is asserted so that the next DATA IN word arrives at the optimum time to ensure proper data set-up and hold times at the input of register 14 and to allow time to complete processing the previous data. Once the proper delay is determined by experimentation, phase delay logic circuit 22 asserts the TRANSFER DATA signal at the correct time by controlling its phase to allow maximum operating speed for parallel-serial converter 10 given the required set-up and hold-time of register 14.

Turning to FIG. 2, further detail of phase delay logic circuit 22 is shown including a digital comparator 28 implemented as exclusive-NOR (XNOR) gates 30, 32 and 34 and AND gate 38. XNOR gate 30 receives bit0 of the OCTANT signal and bit0 of the OCTANT SELECT signal. XNOR gate 32 receives bit1 of the OCTANT signal and bit1 of the OCTANT SELECT signal. XNOR gate 34 receives bit2 of the OCTANT signal and bit2 of the OCTANT SELECT signal. The outputs of XNOR gates 32–36 are coupled to inputs of AND gate 38. If the OCTANT signal matches the OCTANT SELECT signal, AND gate 38 receives all logic ones and provides a logic one COMPARE signal. Otherwise, the COMPARE signal from AND gate 38 is logic zero.

Logic block 40 provides a symmetric 50% duty cycle for the TRANSFER DATA signal by counting down after the COMPARE signal sets the TRANSFER DATA (most significant bit of three bit down-counter) to logic one. The COMPARE signal from AND gate 38 is applied to first inputs of OR gates 42, 44 and 46. The output of OR gate 42 is coupled to the D-input of flipflop 48. The Q̄-output of flipflop 48 is coupled to an input of OR gate 42, to an input of exclusive-OR (XOR) gate 50, and to an input of AND gate 52. The output of XOR gate 50 is coupled to a second input of OR gate 44 that in turn has an output coupled to the D-input of flipflop 56. The Q-output of flipflop 56 is coupled to the second input of XOR gate 50, while the Q̄-output of flipflop 56 is coupled to the second input of AND gate 52. The output of AND gate 52 is coupled to a first input of XOR gate 58 that in turn has an output coupled to the second input of OR gate 46. The output of OR gate 46 is coupled to the D-input of flipflop 60. The Q-output of flipflop 60 is coupled to the second input of XOR gate 58 and further provides the TRANSFER DATA signal to ECL-CMOS translator 24 in FIG. 1. Flipflops 48, 56 and 60 receive the CLOCK/4 signal at their clock inputs.

During the 32-bit parallel to serial conversion, the 3-bit OCTANT signal increments on every rising edge of

4

CLOCK/4, i.e. every four SYSTEM CLOCKS. When the 3-bit OCTANT signal matches the externally-supplied 3-bit OCTANT SELECT signal, the COMPARE signal is asserted as logic one. The Q-outputs of flipflops 48, 56 and 60 go to logic one on the next rising edge of the CLOCK/4 signal. The TRANSFER DATA signal goes to logic one. When the OCTANT signal increments to its next value and COMPARE returns to logic zero, flipflops 48, 56 and 60 operate as a 3-bit synchronous down counter and decrement with each rising edge of CLOCK/4. Since the TRANSFER DATA signal is the most significant bit of the down counter, it remains logic one for the first half of the counts and returns to logic zero for the second half of the counts. Logic block 40 thus provides a symmetric 50% duty cycle for the TRANSFER DATA signal.

For example, assume that the 32-bit DATA IN signal is latched into register 14 by the REGISTER CLOCK. In the present example, it has been determined by experimentation that the OCTANT SELECT signal "001" sets the proper phase delay before asserting TRANSFER DATA to the external logic to send the next DATA IN word. The delay determines the amount of time parallel-serial converter 10 needs to complete processing the present data word and be ready for the next. Assume that the Q-outputs of the flipflops begin at logic one and the Q̄-outputs begin as logic zero. The first four SYSTEM CLOCKS C0–C3 correspond to multiplexer 16 reading the four least significant bits D0–D3 from register 14. At the first rising edge of CLOCK/4 (clock C0), the OCTANT signal is "000" and does not match the OCTANT SELECT signal "001". Consequently, the COMPARE signal is logic zero.

At the second rising edge of CLOCK/4 (clock C4), the OCTANT signal switches to "001" and matches the OCTANT SELECT signal causing the COMPARE signal goes to logic one. The outputs of OR gates 42–46 go to logic one due to the logic one COMPARE signal for the initial state of the down count. Four SYSTEM CLOCKS later, the third rising edge of CLOCK/4 (clock C8) clocks the logic ones into flipflops 48, 56 and 60 and sets their Q-outputs to logic one. The OCTANT signal switches to "010" and no longer matches the OCTANT SELECT signal. The COMPARE signal returns to logic zero. XOR gate 50 receives a logic zero from the Q̄-output of flipflop 48 and a logic one from the Q-output of flipflop 56 and sets the second input of OR gate 44 to logic one. The D-input of flipflop 56 receives a logic one from OR gate 44. AND gate 52 receives logic zeroes from flipflops 48 and 56. XOR gate 58 receives a logic zero from AND gate 52 and a logic one from flipflop 60 and provides a logic one to OR gate 46. The D-input of flipflop 60 goes to logic one.

The fourth rising edge of CLOCK/4 (clock C12) sets the Q̄-output of flipflop 48 to logic one while the Q-outputs of flipflops 56 and 60 remain logic one. The output of OR gate 42 goes to logic one. XOR gate 50 receives a logic one from the Q̄-output of flipflop 48 and a logic one from the Q-output of flipflop 56 and sets the second input of OR gate 44 to logic zero. The D-input of flipflop 56 receives a logic zero from OR gate 44. AND gate 52 receives a logic one from flipflop 48 and a logic zero from flipflop 56. XOR gate 58 receives a logic zero from AND gate 52 and a logic one from flipflop 60 and provides a logic one to OR gate 46. The D-input of flipflop 60 goes to logic one.

The fifth rising edge of CLOCK/4 (clock C16) sets the Q-outputs of flipflops 48 and 60 to logic one while the Q-output of flipflop 56 goes to logic zero. The output of OR gate 42 goes to logic zero. XOR gate 50 receives logic zeroes from the Q̄-output of flipflop 48 and the Q-output of

USCA5 25

5,563,594

5

flipflop 56 and sets the second input of OR gate 44 to logic zero. The D-input of flipflop 56 receives a logic zero from OR gate 44. AND gate 52 receives a logic zero from flipflop 48 and a logic one from flipflop 56. XOR gate 58 receives a logic zero from AND gate 52 and a logic one from flipflop 60 and provides a logic one to OR gate 46. The D-input of flipflop 60 goes to logic one.

The sixth rising edge of CLOCK/4 (clock C20) sets the Q̄-outputs of flipflops 48 and 56 to logic one while the Q-output of flipflop 60 remains logic one. XOR gate 50 receives a logic one from the Q̄-output of flipflop 48 and a logic zero from the Q-output of flipflop 56 and sets the second input of OR gate 44 to logic one. The D-input of flipflop 56 receives a logic one from OR gate 44. AND gate 52 receives logic ones from flipflops 48 and flipflop 56. XOR gate 58 receives a logic one from AND gate 52 and a logic one from flipflop 60 and provides a logic zero to OR gate 46. The D-input of flipflop 60 goes to logic zero.

The seventh rising edge of CLOCK/4 (clock C24) sets the TRANSFER DATA signal to logic zero. The TRANSFER DATA signal remains logic zero for the next four CLOCK/4 cycles, i.e. C24–C31 and C0–C7, as the down counter completes the second half of its count down sequence. Logic 40 thus provides a symmetric 50% duty cycle. Either edge of the TRANSFER DATA signal may be used to trigger the external logic to send more data to parallel-serial converter 10. By controlling the phase of TRANSFER DATA, the correct timing is established for data transfer so that the requested data arrives at the optimum time to maximize the operating speed of parallel-serial converter 10.

The aforedescribed phase control over the TRANSFER DATA is equally applicable to serial-parallel conversion such as shown in FIG. 3. Serial-parallel converter 70 is shown suitable for manufacturing as an integrated circuit using conventional integrated circuit processes. The data input of flipflop 72 receives the serial DATA IN signal from external sourcing logic (not shown) and passes it to multiplexer 74 at each FLIPFLOP CLOCK. Multiplexer 74 rotates through its individual bit locations under control of the MUX ADDRESS signal and provides parallel bits to register 76. Register 76 loads data at rising edge of a REGISTER CLOCK signal. A CMOS-ECL voltage translator circuit 78 converts the 32-bit data word from register 76 to CMOS logic levels.

Timing logic 80 operates in response to a SYSTEM CLOCK signal, operating for example at 2.5 gigahertz, for providing the FLIPFLOP CLOCK signal and the REGISTER CLOCK signal. The FLIPFLOP CLOCK signal operates in phase and at the same frequency as the SYSTEM CLOCK. The REGISTER CLOCK signals are derived from dividing the SYSTEM CLOCK by value thirty-two. The REGISTER CLOCK signal is aligned on the same rising edge as the SYSTEM CLOCK. The MUX ADDRESS is reset to zero with each REGISTER CLOCK and counts up with the SYSTEM CLOCK to value thirty-two. Thus, the serialized data stream DATA OUT is sent at the SYSTEM CLOCK frequency with the duration of each serial bit time the same as the period of the SYSTEM CLOCK. Timing logic 20 further provides a CLOCK/4 signal and a 3-bit OCTANT signal. The CLOCK/4 signal is derived by dividing the SYSTEM CLOCK by value four aligned with the rising edges of SYSTEM CLOCK. The OCTANT signal takes one of eight binary encoded values (0 through 7) as seen in Table 1. Timing logic 80 includes combinational logic to divide the SYSTEM CLOCK and reset the MUX ADDRESS signal. Such combinational logic can be implemented from the aforedescribed operations.

6

Phase delay logic circuit 82 receives CLOCK/4 and OCTANT signals from timing logic 80, and an OCTANT SELECT signal from external logic (not shown). ECL-CMOS translator 84 converts the TRANSFER DATA signal from phase delay logic circuit 82 to CMOS logic levels for the external logic. Upon receiving the WRITE control signal, the external logic sends the next DATA IN bit. Phase delay logic circuit 82 follows the same description given in FIG. 2 and asserts the TRANSFER DATA signal at the correct time to allow maximum operating speed for serial-parallel converter 70 given the required set-up and hold-time of register 76.

By now it should be appreciated that the present invention provides proper timing of the data transfer between external data sourcing or sinking logic and data conversion circuits. Phase delay logic sets the delay for a transfer data control signal as programmed by a select signal. During a calibration sequence, the select signal is set to various values to determine proper delay time necessary before requesting that more data be read or written. Once the proper delay is determined by experimentation, the phase delay logic circuit asserts the transfer data signal at the correct time by controlling its phase, to allow maximum operating speed for the data conversion given the required set-up and hold-time of the embedded register and of the external logic. By controlling the phase of transfer data requests, the correct timing is established to ensure proper data set-up and hold times and to allow complete processing before the next data word needs to be read or written.

While specific embodiments of the present invention have been shown and described, further modifications and improvements will occur to those skilled in the art. It is understood that the invention is not limited to the particular forms shown and it is intended for the appended claims to cover all modifications which do not depart from the spirit and scope of this invention. The present invention is applicable to other types of data processing circuits that must control timing of incoming data.

What is claimed is:

1. A phase delay circuit, comprising:

a comparator having first and second inputs and an output, said first input receiving a first control signal, said second input receiving a second control signal, said output providing a compare signal having a first state when said first and second control signals match; and

a down counter responsive to said compare signal for initializing a count value and responsive to a clock signal for counting down to generate an output signal having a symmetric duty cycle.

2. The circuit of claim 1 wherein said down counter includes:

a first OR gate having first and second inputs and an output, said first input being coupled for receiving said compare signal; and

a first flipflop having a data input, a clock input, and an inverted output, said data input being coupled to said output of said first OR gate, said inverted output being coupled to said second input of said first OR gate, said clock input being coupled for receiving said clock signal.

3. The circuit of claim 2 wherein said down counter further includes:

a first exclusive-OR gate having first and second inputs and an output, said first input being coupled to said inverted output of said first flipflop;

a second OR gate having first and second inputs and an output, said first input being coupled for receiving said

USCA5 26

5,563,594

7

compare signal, said second input being coupled to said output of said first exclusive-OR gate; and

a second flipflop having a data input, a clock input, and first and second complementary outputs, said data input being coupled to said output of said second OR gate, said first complementary output being coupled to said second input of said first exclusive-OR gate, said clock input being coupled for receiving said clock signal.

**4.** The circuit of claim **3** wherein said down counter further includes:

a first AND gate having first and second inputs and an output, said first input being coupled to said inverted output of said first flipflop, said second input being coupled to said second complementary output of said second flipflop;

a second exclusive-OR gate having first and second inputs and an output, said first input being coupled to said output of said first AND gate;

a third OR gate having first and second inputs and an output, said first input being coupled for receiving said compare signal, said second input being coupled to said output of said second exclusive-OR gate; and

a third flipflop having a data input, a clock input, and an output, said data input being coupled to said output of said third OR gate, said output being coupled to said second input of said second exclusive-OR gate and providing said output signal of said down counter, said clock input being coupled for receiving said clock signal.

**5.** The circuit of claim **4** wherein said comparator includes:

a third exclusive-OR gate having first and second inputs and an output, said first input being coupled for receiving a first bit of said first control signal, said second input being coupled for receiving a first bit of said second control signal;

a fourth exclusive-OR gate having first and second inputs and an output, said first input being coupled for receiving a second bit of said first control signal, said second input being coupled for receiving a second bit of said second control signal; and

a second AND gate having first and second inputs and an output, said first input being coupled to said output of said third exclusive-OR gate, said second input being coupled to said output of said fourth exclusive-OR gate, said output providing said compare signal.

**6.** The circuit of claim **5** wherein said comparator further includes a fifth exclusive-OR gate having first and second inputs and an output, said first input being coupled for receiving a third bit of said first control signal, said second input being coupled for receiving a third bit of said second control signal, said output being coupled to a third input of said second AND gate.

**7.** A method of selecting phase delay of a transfer data control signal, comprising the steps of:

comparing first and second control signals and generating a compare signal having a first state when said first and second control signals match; and

initializing a count value in response to said compare signal; and

counting down said count value in response to a clock signal to provide a most significant bit of said count value with a symmetric duty cycle.

**8.** A data conversion circuit, comprising:

a register having an input coupled for receiving parallel input data and having an output;

8

a multiplexer having an input coupled to said output of said register for providing serial data;

a comparator having first and second inputs and an output, said first input receiving a first control signal, said second input receiving a second control signal, said output providing a compare signal having a first state when said first and second control signals match; and

a down counter responsive to said compare signal for initializing a count value and responsive to a clock signal for counting down to generate a transfer data signal having a symmetric duty cycle to enable transfer of said parallel input data to said register.

**9.** The circuit of claim **8** wherein said down counter includes:

a first OR gate having first and second inputs and an output, said first input being coupled for receiving said compare signal; and

a first flipflop having a data input, a clock input, and an inverted output, said data input being coupled to said output of said first OR gate, said inverted output being coupled to said second input of said first OR gate, said clock input being coupled for receiving said clock signal.

**10.** The circuit of claim **9** wherein said down counter further includes:

a first exclusive-OR gate having first and second inputs and an output, said first input being coupled to said inverted output of said first flipflop;

a second OR gate having first and second inputs and an output, said first input being coupled for receiving said compare signal, said second input being coupled to said output of said first exclusive-OR gate; and

a second flipflop having a data input, a clock input, and first and second complementary outputs, said data input being coupled to said output of said second OR gate, said first complementary output being coupled to said second input of said first exclusive-OR gate, said clock input being coupled for receiving said clock signal.

**11.** The circuit of claim **10** wherein said down counter further includes:

a first AND gate having first and second inputs and an output, said first input being coupled to said inverted output of said first flipflop, said second input being coupled to said second complementary output of said second flipflop;

a second exclusive-OR gate having first and second inputs and an output, said first input being coupled to said output of said first AND gate;

a third OR gate having first and second inputs and an output, said first input being coupled for receiving said compare signal, said second input being coupled to said output of said second exclusive-OR gate; and

a third flipflop having a data input, a clock input, and an output, said data input being coupled to said output of said third OR gate, said output being coupled to said second input of said second exclusive-OR gate and providing said output signal of said down counter, said clock input being coupled for receiving said clock signal.

**12.** The circuit of claim **11** wherein said comparator includes:

a third exclusive-OR gate having first and second inputs and an output, said first input being coupled for receiving a first bit of said first control signal, said second input being coupled for receiving a first bit of said second control signal;

USCA5 27

5,563,594

| 9 | 10 |

a fourth exclusive-OR gate having first and second inputs and an output, said first input being coupled for receiving a second bit of said first control signal, said second input being coupled for receiving a second bit of said second control signal; and

a second AND gate having first and second inputs and an output, said first input being coupled to said output of said third exclusive-OR gate, said second input being coupled to said output of said fourth exclusive-OR gate, said output providing said compare signal.

13. The circuit of claim 12 wherein said comparator further includes a fifth exclusive-OR gate having first and second inputs and an output, said first input being coupled for receiving a third bit of said first control signal, said second input being coupled for receiving a third bit of said second control signal, said output being coupled to a third input of said second AND gate.

14. A data conversion circuit, comprising:

a multiplexer having an input coupled for receiving serial input data and having an output;

a register having an input coupled to said output of said register for providing parallel data;

a comparator having first and second inputs and an output, said first input receiving a first control signal, said second input receiving a second control signal, said output providing a compare signal having a first state when said first and second control signals match; and

a down counter responsive to said compare signal for initializing a count value and responsive to a clock signal having a symmetric duty cycle to enable transfer of said serial input data to said register.

15. The circuit of claim 14 wherein said down counter includes:

a first OR gate having first and second inputs and an output, said first input being coupled for receiving said compare signal; and

a first flipflop having a data input, a clock input, and an inverted output, said data input being coupled to said output of said first OR gate, said inverted output being coupled to said second input of said first OR gate, said clock input being coupled for receiving said clock signal.

16. The circuit of claim 15 wherein said down counter further includes:

a first exclusive-OR gate having first and second inputs and an output, said first input being coupled to said inverted output of said first flipflop;

a second OR gate having first and second inputs and an output, said first input being coupled for receiving said compare signal, said second input being coupled to said output of said first exclusive-OR gate; and

a second flipflop having a data input, a clock input, and first and second complementary outputs, said data input being coupled to said output of said second OR gate, said first complementary output being coupled to said second input of said first exclusive-OR gate, said clock input being coupled for receiving said clock signal.

17. The circuit of claim 16 wherein said down counter further includes:

a first AND gate having first and second inputs and an output, said first input being coupled to said inverted output of said first flipflop, said second input being coupled to said second complementary output of said second flipflop;

a second exclusive-OR gate having first and second inputs and an output, said first input being coupled to said output of said first AND gate;

a third OR gate having first and second inputs and an output, said first input being coupled for receiving said compare signal, said second input being coupled to said output of said second exclusive-OR gate; and

a third flipflop having a data input, a clock input, and an output, said data input being coupled to said output of said third OR gate, said output being coupled to said second input of said second exclusive-OR gate and providing said output signal of said down counter, said clock input being coupled for receiving said clock signal.

18. The circuit of claim 17 wherein said comparator includes:

a third exclusive-OR gate having first and second inputs and an output, said first input being coupled for receiving a first bit of said first control signal, said second input being coupled for receiving a first bit of said second control signal;

a fourth exclusive-OR gate having first and second inputs and an output, said first input being coupled for receiving a second bit of said first control signal, said second input being coupled for receiving a second bit of said second control signal; and

a second AND gate having first and second inputs and an output, said first input being coupled to said output of said third exclusive-OR gate, said second input being coupled to said output of said fourth exclusive-OR gate, said output providing said compare signal.

19. The circuit of claim 18 wherein said comparator further includes a fifth exclusive-OR gate having first and second inputs and an output, said first input being coupled for receiving a third bit of said first control signal, said second input being coupled for receiving a third bit of said second control signal, said output being coupled to a third input of said second AND gate.

* * * * *

USCA5 28

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.  : 5,563,594
DATED       : October 8, 1996
INVENTOR(S) : David K. Ford et al.

It is certified that error appears in the above-indentified patent and that said Letters Patent is hereby corrected as shown below:

In claim 14, column 9, line 30, insert --for counting down to generate a transfer data signal-- after "signal".

In claim 17, column 10, line 7, delete "161wherein" and insert --16 wherein--.

Signed and Sealed this

Twenty-ninth Day of April, 1997

*Bruce Lehman*

**BRUCE LEHMAN**

*Attest:*

*Attesting Officer*                 *Commissioner of Patents and Trademarks*

USCA5 29

# EXHIBIT B

USCA5 30

US006362644B1

(12) **United States Patent**
Jeffery et al.

(10) Patent No.: **US 6,362,644 B1**
(45) **Date of Patent:** **Mar. 26, 2002**

(54) **PROGRAMMABLE TERMINATION FOR INTEGRATED CIRCUITS**

(75) Inventors: **Philip A. Jeffery**, Tempe; **Stephen G. Shook**, Gilbert, both of AZ (US)

(73) Assignee: **Semiconductor Components Industries LLC**, Phoenix, AZ (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **09/630,090**

(22) Filed: **Aug. 1, 2000**

(51) Int. Cl.[7] ............................................. **H03K 17/16**
(52) U.S. Cl. ........................................ **326/30**; 326/101
(58) Field of Search ............................... 326/30, 62, 63, 326/101; 327/333, 564, 565

(56) **References Cited**

U.S. PATENT DOCUMENTS

| 5,341,039 A | * | 8/1994 | Fukumoto | .................... | 326/30 |
| 5,374,861 A | * | 12/1994 | Kubista | ..................... | 326/30 |
| 5,731,711 A | * | 3/1998 | Gabara | ...................... | 326/30 |
| 5,781,028 A | * | 7/1998 | Decuir | ...................... | 326/30 |
| 6,114,898 A | * | 9/2000 | Okayasu | ..................... | 327/437 |

* cited by examiner

*Primary Examiner*—Tuan T. Lam

(57) **ABSTRACT**

A receiver circuit (16) is programmable to operate with different logic family driver circuits (10). The receiver circuit has two external configuration pins (22,) 24) that are configured to provide the necessary termination for the type of logic family driver circuit used. To terminate the receiver circuit (16) for an ECL application will require first and second configuration pins (22,24) are connected to $V_{CC}$—2 volts. To terminate the receiver circuit (16) for a CML application will require the first configuration pin (22) and the second configuration pin (24) are connected to $V_{CC}$. LVDS termination for the receiver circuit (16) requires the first configuration pin (22) and the second configuration pin (24) are connected together. The configuration pins are external to a semiconductor package (14) housing the receiver circuit.

**16 Claims, 3 Drawing Sheets**



U.S. Patent     Mar. 26, 2002     Sheet 1 of 3     US 6,362,644 B1



FIG. 1



FIG. 2

USCA5 32

U.S. Patent    Mar. 26, 2002    Sheet 2 of 3    US 6,362,644 B1



FIG. 3



FIG. 4

USCA5 33



FIG. 5

USCA5 34

US 6,362,644 B1

1

# PROGRAMMABLE TERMINATION FOR INTEGRATED CIRCUITS

## BACKGROUND OF THE INVENTION

The present invention relates in general to electronic circuits and, more particularly, to logic circuits.

Many logic family applications have logic devices that operate within a mixed signal environment. The logic devices have logic drivers that may communicate with a logic receiver of a different logic family type. Typically, different logic family devices communicate with each other using translators to convert, for example, an ECL signal from the logic driver to a CMOS signal received at the logic receiver. A different type of translator is required for each type of logic driver and logic receiver used within the mixed signal environment. In addition, systems usually have an external termination scheme on an interconnect transmission line between the logic driver and logic receiver so the logic receiver circuit is terminated to receive the specific logic driver family type. The termination is a resistance that provides a termination for the logic device through to a voltage source Vtt. The voltage source Vtt is typically different for each logic family application. The resistance is typically chosen to equal the impedance of the interconnect transmission line to help reduce interconnect signal distortion. It is more of an advantage to have terminations as close as possible to the logic receiver circuit to help reduce interconnect signal distortion even more. Also, prior art termination schemes typically require different termination connections are used for each type of logic family device. For example, to use an ECL logic device requires a 50 ohm termination to a Vtt voltage source. A CML logic device may require termination through a resistance to a different voltage source. Most prior art logic family devices also have the termination resistors hard-wired to a circuit board making it difficult to change terminations for different logic family applications.

Hence, it is desired to have a logic receiver circuit that is programmable to allow the logic receiver circuit to communicate with different logic family driver circuits. Furthermore, it is desirable to have the terminations internal to the logic receiver circuit package so the terminations are close to the receiving circuit to help eliminate transmitted signal noise. The invention disclosed herein will address the above problems.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a schematic diagram of a driver and receiver circuit in a differential configuration;

FIG. 2 is a schematic diagram of a driver and receiver circuit in a single-ended configuration;

FIG. 3 is a schematic diagram of a driver and receiver circuit in a modified single-ended configuration;

FIG. 4 is a schematic diagram of a driver and receiver circuit in a differential configuration with driver circuit terminations; and

FIG. 5 is a schematic diagram of a receiver circuit showing semiconductor and package connections.

## DETAILED DESCRIPTION OF THE PREFERED EMBODIMENT

FIG. 1 illustrates an embodiment of a driver circuit and a receiver circuit system used in a differential configuration. The differential configuration receives a logic input signal at driver circuit 10. Driver circuit 10 is a device from a typical

2

logic family, e.g. ECL, CML, LVDS, CMOS, and TTL, or can be an analog driver circuit. The primary purpose of driver circuit 10 is to provide a signal boost for the logic input signal. At the output to driver circuit 10 is differential line 12 which transmits a differential signal from driver circuit 10 to receiver package 14. Receiver package 14 is a semiconductor package housing receiver circuit 16. $V_{CC}$ and $V_{EE}$ are power supply potentials to receiver package 14 providing power to receiver circuit 16. Receiver circuit 16 receives a differential input signal on differential line 12 and provides a logic output signal. Receiver circuit 16 is typically a differential receiver circuit amplifier manufactured as a semiconductor die. Receiver circuit 16 and receiver package 14 are an integrated receiver circuit.

Differential line 12 is terminated with load element 18 and load element 20. Load element 18 is connected to configuration pin 24 and load element 20 is connected to configuration pin 22. Load elements 18, 20 are resistors contained within receiver package 14 having a resistance of 50, 75, or 100 ohms. Configuration pins 22, 24 are external pins connected to receiver package 14 and are programmable so receiver circuit 16 can communicate with different logic family drivers. To program configuration pins 22, 24, the pins are terminated using a configuration which is dependent on the desired logic family application. The configuration of receiver circuit 16 is controlled by connecting configuration pin 22 ($V_A$) and configuration pin 24 ($V_B$) as follows.

| | |
|---|---|
| ECL: | $V_A = V_B = V_{CC} - 2$ volts |
| CML: | $V_A = V_B = V_{CC}$ |
| LVDS: | $V_A$ connected to $V_B$ |

For example, to terminate receiver circuit 16 for an ECL application requires configuration pin 22 ($V_A$) and configuration pin 24 ($V_B$) are connected to receive configuration signal, $V_{CC}-2$ volts. To terminate receiver circuit 16 for an CML application requires configuration pin 22 ($V_A$) and configuration pin 24 ($V_B$) are connected to to receive configuration signal, $V_{CC}$. LVDS termination for receiver circuit 16 requires configuration pin 22 ($V_A$) and configuration pin 24 ($V_B$) are connected together. Termination of the configuration pins 22, 24 is done external to receiver package 14.

FIG. 2 illustrates an embodiment of a driver circuit and a receiver circuit system used in a single-ended configuration. The single-ended configuration receives a logic input signal at driver circuit 30. Driver circuit 30 is a device from a typical logic family, e.g. ECL, CML, LVDS, CMOS, and TTL, or can be an analog driver circuit. Driver circuit 30 provides a signal boost for the logic input signal. Line 36 is connected to the output of driver circuit 30 to transmit a signal from driver circuit 30 to receiver package 32. Receiver package 32 is a semiconductor package for receiver circuit 34. $V_{CC}$ and $V_{EE}$ are power supply potentials to receiver package 32 providing power to receiver circuit 34. Receiver circuit 30 is typically a differential receiver circuit amplifier manufactured as a semiconductor die. Receiver circuit 30 and receiver package 32 are an integrated receiver circuit.

Receiver circuit 34 receives two input signals: an information signal from driver circuit 30 on terminal 36, and control signal IN on terminal 37. Receiver circuit 34 is terminated at terminal 36 with load element 40, and at terminal 37 with load element 38. Load element 38 is connected to configuration pin 44 and load element 40 is connected to configuration pin 42. Load elements 38, 40 are

USCA5 35

US 6,362,644 B1

3

resistors contained within receiver package 32 having a resistance of 50, 75, or 100 ohms. Configuration pins 42, 44 are external pins connected to receiver package 32 and are programmable so receiver circuit 34 can communicate with different logic family drivers. Configuration pins 42, 44 are programmed by terminating the pins using a configuration which is dependent on the desired logic family application. The configuration of receiver circuit 34 is controlled by connecting configuration pin 42 ($V_C$) and configuration pin 44 ($V_D$) as follows:

| ECL: | $V_C = V_{CC} - 2$ volts |
| | $V_D$ = open |
| | IN = $V_{BB}$ |
| CMOS: | $V_C$ = open |
| | $V_D$ = open |
| | IN = $V_{CC}/2$ |
| TTL: | $V_C$ = open |
| | $V_D$ = open |
| | IN = 1.5 volts |

$V_{BB}$ is typically the middle of an output swing to an ECL output. To terminate receiver circuit 34 for an ECL application requires configuration pin 42 ($V_C$) is connected to receive configuration signal, $V_{CC}-2$, configuration pin 44 ($V_D$) is devoid of a configuration signal, i.e. is left open, and terminal 37 is connected to receive control signal, $V_{BB}$. To terminate receiver circuit 34 for a CMOS application requires configuration pin 42 ($V_C$) and configuration pin 44 ($V_D$) are devoid of a configuration signal, and terminal 37 is connected to receive control signal, $V_{CC}/2$. TTL termination for receiver circuit 34 requires configuration pin 42 ($V_C$) and configuration pin 44 ($V_D$) are devoid of a configuration signal, and terminal 37 is connected to receive control signal, 1.5 volts. Termination of the configuration pins 42, 44 is done external to receiver package 32.

FIG. 3 illustrates an embodiment of a driver circuit and a receiver circuit system used in a modified single-ended configuration. The single-ended configuration receives a logic input signal at driver circuit 50. Driver circuit 50 is a device from a typical type of logic family, e.g. ECL, CML, LVDS, CMOS, and TTL., or can be an analog driver circuit. Driver circuit 50 provides a signal boost for the logic input signal. Receiver package 52 receives a drive signal on line 56 from driver circuit 50. Receiver package 52 is a semiconductor package for receiver circuit 54. $V_{CC}$ and $V_{EE}$ are power supply potentials to receiver package 52 providing power to receiver circuit 54. Receiver circuit 54 is terminated with load element 58 which is connected to configuration pin 60. Load element 58 is a resistor contained within receiver package 52 having a resistance of 50, 75, or 100 ohms. Configuration pin 60 is an external pin connected to receiver package 52 that is programmable so receiver circuit 54 can communicate with different logic family drivers. Configuration pin 60 is programmed by terminating the pin using a configuration which is dependent on the desired logic family application. The configuration of receiver circuit 54 is controlled by connecting configuration pin 60 ($V_E$) as follows:

| ECL: | $V_E = V_{CC} - 2$ |
| CML: | $V_E = V_{CC}$ |
| LVDS: | $V_E = V_{CC}$ |

To terminate receiver circuit 54 for an ECL application requires that configuration pin 60 ($V_E$) is connected to

4

receive configuration signal, $V_{CC}-2$. For a CML application, receiver circuit 54 is terminated with configuration pin 60 ($V_E$) connected to receive configuration signal, $V_{CC}$. LVDS termination for receiver circuit 54 requires that configuration pin 60 ($V_E$) be left open. Termination of the configuration pin 60 is done external to receiver package 52.

FIG. 4 illustrates a differential configuration similar to FIG. 1, except termination is done on driver package 70. Driver circuit 72 is terminated at load element 74 and load element 76. Load element 74, 76 are resistors contained within driver package 70 having a value of 50, 75, or 100 ohms. Configuration pin 78 and configuration pin 80 are configured similar to table shown for the differential configuration in FIG. 1. Driver circuit 72 provides an output signal on differential line 82 to receiver circuit 84.

FIG. 5 illustrates a detailed schematic of the differential configuration in FIG. 1. Semiconductor package 90 houses a leadframe 92 with metal leads similar to lead 94 which provide input and output signals. The input and output signals consist of differential input logic signals $IN_1$, and $IN_2$, differential output logic signals $OUT_1$, and $OUT_2$, power supply signals $V_{CC}$ and $V_{EE}$, and configuration signals $V_A$ and $V_B$ on configuration pins 97, 99 respectively. Semiconductor die 96 is attached to flag 98 which is attached to leadframe 92. Bond wire 100 is attached to bond pad 102 on semiconductor die 96 to provide electrical contact to bond pad 104 for the $V_{EE}$ signal. All other input and output signals have the same bond wire configuration to provide electrical contact. The wire bonding technology used is typically a bump type technology or a ball grid array (BGA) technology. The differential configuration typically has differential amplifier 106 for receiver circuit 16 of FIG. 1. Load elements 108, 110 are connected to bond pads 112, 114 respectfully to provide an electrical connection to configuration signals $V_B$ and $V_A$. The differential signal from logic circuit 10 of FIG. 1 is received at lead 119 ($IN_1$) and lead 117 ($IN_2$) which has electrical contact to bond pads 118, 116 on semiconductor die 96, and to differential amplifier 106. The logic output signal from receiver circuit 16 of FIG. 1 is coupled from differential amplifier 106, electrical contact is made to bond pads 120, 122 on semiconductor die 96, and the signals are coupled to leads 121. ($OUT_1$) and 94 ($OUT_2$) respectfully. Power supply is received at leads 125 ($V_{CC}$) and 126 ($V_{EE}$) making electrical contact to differential amplifier 106 through bond pads 124, 102 respectively.

An alternative method to provide termination to any of the above embodiments is to use a switch between the termination (load) elements and the (configuration) termination signals. For example, FIG. 1 has external (configuration) termination pins 22, 24 which are configured to receive different termination signals depending on the logic family application. A switch can be used to programmably connect termination pins 22, 24 to $V_{CC}-2$ for an ECL logic family application, or to $V_{CC}$ for a CML logic family application. The switch can provide programmability for the termination signals to any of the previous configurations outlined herein.

Thus, a technique for generating multiple input termination options on a single integrated circuit is disclosed. A receiver circuit is programmable to configure different termination connections which allow the receiver circuit to communicate with a driver circuit from a different logic family. The receiver circuit has at least one external configuration pin that is configured to provide the necessary termination for the type of logic family driver circuit used. The configuration pin is external to a semiconductor package housing the receiver circuit. Having configuration pins external to the semiconductor package provides for easy

US 6,362,644 B1

5

portability among different logic families, and easy termination options which require no additional translators to operate a mixed logic family system.

What is claimed is:

1. An integrated logic circuit having a differential input receiving a differential signal, comprising:

a receiver having first and second inputs coupled for receiving the differential signal;

a semiconductor package for housing the receiver, having first and second pins respectively coupled to the first and second inputs of the receiver, and a supply pin coupled to the receiver for providing a power supply potential;

a first termination element housed in the semiconductor package and coupled between the first input of the receiver and a first programmable configuration pin of the semiconductor package; and

a second termination element housed in the semiconductor package and coupled between the second input of the receiver and a second programmable configuration pin of the semiconductor package, wherein the first and second programmable configuration pins receive first and second termination signals to configure termination for the logic circuit.

2. The integrated logic circuit of claim 1, wherein the first and second termination elements comprise resistors.

3. A method of configuring a receiver circuit using first and second configuration signals, and receiving first and second input signals to the receiver circuit, comprising:

coupling an information signal on the first input to the receiver circuit;

coupling a control signal on the second input to the receiver circuit;

providing a first programmable configuration pin of a semiconductor package housing the receiver circuit;

connecting a first load element between the first input of the receiver circuit and the first programmable configuration pin;

providing a second programmable configuration pin of a semiconductor package housing the receiver circuit; and

connecting a second load element between the second input of the receiver circuit and the second programmable configuration pin.

4. The method of claim 3, wherein the first and second programmable configuration pins receive a configuration selected from the group consisting of the first configuration signal, the second configuration signal, and devoid of the first and second configuration signals.

5. The method of claim 3, wherein the second input receives a control signal selected from the group consisting of a first control signal, a second control signal, and a third control signal.

6. An integrated circuit, comprising:

a semiconductor package having first and second pins respectively adapted for receiving first and second data

6

signals, third and fourth pins for respectively receiving first and second termination signals, and a supply pin coupled for receiving a power supply voltage; and

a semiconductor die housed in the semiconductor package for operating from the power supply voltage, and having a first load element coupled between the first and third pins to terminate the first data signal, and a second load element coupled between the second and fourth pins to terminate the second data signal.

7. The integrated circuit of claims 6, wherein the first and second load elements are resistors.

8. The integrated circuit of claim 6, wherein the semiconductor die includes a receiver circuit having first and second inputs coupled to the first and second pins, respectively.

9. The integrated circuit of claim 6, wherein the semiconductor die includes a driver circuit having first and second outputs coupled to the first and second pins, respectively.

10. The integrated circuit of claim 6, wherein the first data signal is from a first logic family, and the third pin is coupled for receiving a first termination voltage characteristic of the first logic family.

11. The integrated circuit of claim 10, wherein the second data signal is from a second logic family, and the fourth pin receives a second termination voltage of the second logic family.

12. A method of operating an integrated circuit, comprising the steps of:

applying first and second logic signals to first and second pins, respectively, of a semiconductor package of the integrated circuit; and

loading the first and second logic signals with first and second load elements, respectively, of the integrated circuit, where the first and second load elements are coupled to third and fourth pins of the semiconductor package to provide a programmable termination for the first and second logic signals.

13. The method of claim 12, wherein the first and second logic signals function as a differential signal and the third and fourth pins are for coupling together to terminate the differential signal.

14. The method of claim 12, wherein the first and second logic signals are specified in accordance with first and second logic families and the third and fourth pins are coupled to first and second configuration signals of the first and second logic families, respectively.

15. The method of claims 14, wherein the first and second logic signals are ECL signals referenced to a supply voltage, and the first and second configuration signals have values equal to the supply voltage minus about two volts.

16. The integrated logic circuit of claim 12, further comprising the step of applying a power supply voltage to a fifth pin of the semiconductor package to bias the integrated circuit.

* * * * *

# EXHIBIT C

USCA5 38



US005361001A

## United States Patent [19]

### Stolfa

[11] Patent Number: 5,361,001

[45] Date of Patent: Nov. 1, 1994

[54] **CIRCUIT AND METHOD OF PREVIEWING ANALOG TRIMMING**

[75] Inventor: **David L. Stolfa**, Phoenix, Ariz.

[73] Assignee: **Motorola, Inc.**, Schaumburg, Ill.

[21] Appl. No.: **160,762**

[22] Filed: **Dec. 3, 1993**

[51] Int. Cl.⁵ ............................ H03K 3/01; H03B 1/04
[52] U.S. Cl. ..................................... 327/530; 327/525; 327/312
[58] Field of Search ................. 307/202.1, 296.1, 547, 307/548

[56] **References Cited**

#### U.S. PATENT DOCUMENTS

| 4,158,786 | 6/1979 | Hirasawa | 307/296.1 |
| 4,446,534 | 5/1984 | Smith | 307/202.1 |

#### FOREIGN PATENT DOCUMENTS

| 0112298 | 5/1987 | Japan | 307/202.1 |
| 0262716 | 10/1990 | Japan | 307/202.1 |

*Primary Examiner*—Margaret Rose Wambach
*Attorney, Agent, or Firm*—Robert D. Atkins

[57] **ABSTRACT**

An analog trim circuit enables and disables one or more serially connected passive elements for setting characteristics of the circuit. Each passive element has a transistor across its first and second conduction terminals operating in response to a control signal from a control circuit for enabling and disabling conduction through the associated passive element. The control circuits are responsive to a data signal for providing the control signals that enable and disable the conduction through the passive elements. The data signal allows a preview of the trimming results. The fuse in certain ones of the control circuits are blown to set the control signals to fixed values after removal of the data signal.

**7 Claims, 1 Drawing Sheet**





USCA5 39

**U.S. Patent**          Nov. 1, 1994          **5,361,001**



*FIG. 1*

10

*FIG. 2*



USCA5 40

5,361,001

1

## CIRCUIT AND METHOD OF PREVIEWING ANALOG TRIMMING

### BACKGROUND OF THE INVENTION

The present invention relates in general to analog trim circuits and, more particularly, to a technique of previewing the analog trim results before blowing a fuse to lock the trim in place.

In manufacturing analog integrated circuits, the basic building blocks are usually not accurately controlled by the manufacturing process as may be desired. For example, capacitors and resistors may have the wrong value, and MOS transistors may have the wrong gain setting. There are too many variables in the manufacturing process to yield absolute predictable results. Yet historically analog circuits often require very accurate voltage references, frequency references, and accurately ratioed elements.

To compensate for the process variability, many electronic circuits use analog trimming during test to set resistor values as necessary for proper operation of the circuit. A typical trimming technique utilizes a resistor ladder comprising a series of serially coupled resistors each in parallel with either a fuse or anti-fuse. A fuse is a device that is substantially an electrical short until it is blown open. An anti-fuse is an electrical open until blown when it becomes substantially an electrical short.

The fuse-blowing approach may take several forms, each with its own shortcomings. Laser fuses may be used directly across each resistor element in the ladder to enable and disable conduction through the resistor. During test, certain resistors are selected to open the shunt element thereby adding resistance to the serial path. The resistor ladder should be adjustable at wafer test over a range from say 10 to 2,560 ohms in 10 ohm increments.

The analog trimming may be performed iteratively, i.e. test, trim, test, trim, to measure the effect of the course trim and determine the necessary fine trimming. For iterative trimming, a laser trim system is typically installed on the wafer tester to alternately test and trim. However, one laser system per tester is very expensive. The laser is often in an idle state waiting for the tester. Moreover, if either the test system or laser breaks down both are inoperative.

An alternate approach is to use a zener anti-fuse across the resistor ladder. Such an element can be cheaply trimmed on the tester so that iterative testing can be done in one pass on the tester. Zener anti-fuses require large currents to program. Therefore, each anti-fuse requires its own external pad and probe card needle. This restricts the programming bit count to say 5–10 bits before the die area for test pads and complexity of the probe card requirements become prohibitive.

In general, iterative testing is a slow and expensive process. Consequently, many trimming techniques utilize only a single pass to evaluate which resistors in the serial string should be included to achieve the desired analog circuit operation. Thus, as result of a test measurement, the user blows the shunt fuse elements whereby the circuit is expected to operate as planned. The process of blowing the fuses typically involves laser trimming off-line from the test set to cut the poly material and open the shunt element. The circuit may be returned to the test set to verify proper trimming. If the subsequent testing should fail, the part is typically dis-

2

carded since it is difficult to patch the shunt fuse elements.

Hence, a need exists for an iterative trimming to evaluate the results of test before permanently setting the trim.

### BRIEF DESCRIPTION OF THE DRAWING

FIG. 1 is a block diagram illustrating an analog trimming circuit; and

FIG. 2 is a schematic diagram illustrating the control circuit of FIG. 1.

### DETAILED DESCRIPTION OF THE PREFERRED EMBODIMENT

An analog trim circuit is shown in FIG. 1 including a passive ladder network 10 comprising resistors 12, 14, 16 and 18 serially coupled between terminal 19 and terminal 20. Resistor 12 is non-trimmable and provides the minimum ladder resistance ($R_{MIN}$). Resistors 14–18 are selected in an exponential series, such as 1280, 640, 320, 160, 80, 40, 20, and 10 ohms. Resistors 14–18 are passive elements each with first and second conduction terminals. Other passive elements may also be used in the trim circuit. A data signal is applied at terminal 22. One bit of the data signal is applied to each of control circuits 20, 28 and 32. An address signal selects the control circuit to latch one bit of the data signal.

Control circuit 24 provides a control signal to the gate of MOS transistor 26. The drain and source of transistor 26 are coupled to first and second conduction terminals of resistor 14. Likewise, control circuit 28 provides a control signal to the gate of MOS transistor 30 which has its drain and source coupled across resistor 16. Control circuit 32 provides a control signal to the gate of MOS transistor 34. The drain and source of transistor 34 are coupled across the first and second conduction terminals of resistor 18. The effective resistance through resistor ladder 10 is thus temporarily set by transistors 26, 30 and 34 selectively enabling and disabling conduction through resistors 14–18 upon receiving a high state or low state of control signals from control circuits 24, 28 and 32. With the above trimming scheme, the resistor ladder is controllable from $R_{MIN}$ to $R_{MIN}+2,560$ ohms assuming eight trimmable resistors in 256 possible 10 ohm increments.

Turning to FIG. 2, further detail of control circuit 24 is shown. Control circuits 28 and 32 follow a similar construction and operation as described for control circuit 24. The data signal is latched in latching circuit 40 for application to a first input of OR gate 42. An address signal enables latching circuit 40 to latch the data bit. Resistor 44 is coupled between the second input of OR gate 42 and power supply conductor 45. Power supply conductor 45 operates at a positive potential VDD such as 5 volts. Fuse 46 is coupled between the second input of OR gate 42 and power supply conductor 48 operating at ground potential. The output of OR gate 42 provides the control signal to the gate of transistor 26. An alternate embodiment of control circuit 24 may replace OR gate 42 with a NAND gate while resistor 44 and fuse 46 exchange places in the circuit.

Trim circuits are used in a variety of applications. For example, a circuit may require a given frequency $f_o$ determined by an RC time constant such that the frequency is inversely proportional to RC. The resistance R and capacitance C should be selected such that the nominal process target values of sheet $\rho$ (resistance per

USCA5 41

5,361,001

**5**

source being coupled to said second conduction terminal, said gate being coupled for receiving said control signal; and

second means responsive to a data signal for providing said control signal to said first means to enable and disable said conduction through said passive element, said second means setting said control signal to a fixed value after removal of said data signal.

2. The analog trim circuit of claim 1 wherein said passive element includes a first resistor coupled between said first and second conduction terminals.

3. The analog trim circuit of claim 2 wherein said second means includes:

a latching circuit having an input coupled for receiving said data signal and having an output;

a logic gate having first and second inputs and an output, said first input being coupled to said output of said latching circuit, said output being coupled for providing said control signal;

a second resistor coupled between a first power supply conductor and said second input of said logic gate; and

a fuse coupled between said second input of said logic gate and a second power supply conductor.

4. A method of analog trimming, comprising the steps of:

enabling conduction through a passive element in response to a first state of a control signal;

disabling conduction through said passive element in response to a second state of said control signal;

activating said control signal in response to a data signal to enable and disable said conduction

**6**

through said passive element, said activating step including the steps

(a) latching said data signal, and

(b) logically combining said data signal with a logic signal for providing said control signal; and

setting said control signal to a fixed value after removal of said data signal.

5. The method of claim 4 wherein said setting step includes the steps of:

removing said data signal; and

blowing a fuse to set said control signal at said fixed value.

6. An analog trim circuit, comprising:

a passive element having first and second conduction terminals;

a transistor having a gate, a drain and a source, said drain being coupled to said first conduction terminal, said source being coupled to said second conduction terminal, said gate being coupled for receiving a control signal;

a latching circuit having an input coupled for receiving a data signal and having an output;

a logic gate having first and second inputs and an output, said first input being coupled to said output of said latching circuit, said output being coupled for providing said control signal;

a first resistor coupled between a first power supply conductor and said second input of said logic gate; and

a fuse coupled between said second input of said logic gate and a second power supply conductor.

7. The analog trim circuit of claim 6 wherein said passive element includes a first resistor coupled between said first and second conduction terminals.

* * * * *

USCA5 42

# EXHIBIT D

USCA5 43

# United States Patent [19]

## Schuster et al.

[11] **Patent Number:** 5,000,827

[45] **Date of Patent:** Mar. 19, 1991

[54] **METHOD AND APPARATUS FOR ADJUSTING PLATING SOLUTION FLOW CHARACTERISTICS AT SUBSTRATE CATHODE PERIPHERY TO MINIMIZE EDGE EFFECT**

[75] Inventors: **Virgil E. Schuster; Reginald K. Asher, Sr.,** both of Scottsdale; **Bhagubhai D. Patel,** Tempe, all of Ariz.

[73] Assignee: **Motorola, Inc.,** Schaumburg, Ill.

[21] Appl. No.: **459,892**

[22] Filed: **Jan. 2, 1990**

[51] Int. Cl.$^5$ ............................................. C25D 5/02
[52] U.S. Cl. ...................................... 204/15
[58] Field of Search ............................... 204/15

[56] **References Cited**

### U.S. PATENT DOCUMENTS

4,287,029  9/1981  Shimamura ............................ 204/15

### FOREIGN PATENT DOCUMENTS

28039  3/1978  Japan .
123089  5/1989  Japan .
198017  8/1989  Japan .
242797  9/1989  Japan .

*Primary Examiner*—T. M. Tufariello
*Attorney, Agent, or Firm*—Charles R. Lewis; Walter W. Nielsen

[57] **ABSTRACT**

A method and apparatus for electroplating metallized bumps of substantially uniform height on predetermined terminal areas of a substrate. Cup plating apparatus includes elements for adjusting parameters affecting the geometry of the substrate relative to the plating cup, as well as flow rate of the electroplating solution against the substrate surface. By achieving non-laminar flow of the electroplating solution near the substrate edges, the plating characteristics of the electroplating solution are altered in this region, substantially offsetting "edge effect", so that the resulting plated bump height is substantially uniform across the substrate.

**2 Claims, 7 Drawing Sheets**





**FIG. 1**



**FIG. 2**



**FIG. 3A**



**FIG. 3B**



**FIG. 3C**



**FIG. 4**

USCA5 45



WAFER CARRIER

SOLUTION LEVEL

4

2

– CATHODE

5

3

+ ANODE

1

*FIG. 5*

–PRIOR ART–

*FIG. 8*



25

53

51    50    51

120°

USCA5 46



FIG. 6

USCA5 47



*FIG. 7*

USCA5 48



FIG. 9

U.S. Patent

Mar. 19, 1991

Sheet 5 of 7

5,000,827

USCA5 49



*FIG. 10*

USCA5 50



*FIG. 11*

USCA5 51

5,000,827

**1**

# METHOD AND APPARATUS FOR ADJUSTING PLATING SOLUTION FLOW CHARACTERISTICS AT SUBSTRATE CATHODE PERIPHERY TO MINIMIZE EDGE EFFECT

## BACKGROUND OF THE INVENTION

### 1. Technical Field of the Invention

This invention relates generally to the manufacture of micro-electrical circuits, and, more particularly, to the formation of uniform-thickness metallization bumps on terminal areas of electrical circuits on a substantially planar substrate, particularly near the edge thereof.

### 2. Background Information

The present invention has utility in the plating of metallization bumps on predetermined terminal areas of silicon wafers prior to scribing such wafers into a plurality of individual die.

FIG. 1 shows a silicon wafer 3 upon which a plurality of individual electrical circuit elements 6 are formed. The electrical characteristics of individual circuit elements 6 may be imparted to them by employing any suitable process(es) therefor. The specifics of the electrical circuit of the circuit elements 6 lies outside of the scope of the present invention.

FIG. 2 shows a view similar to that shown in FIG. 1, wherein the wafer 3 has been separated into pieces 7 including at least one die 8 using conventional wafer scribing or sawing techniques.

FIGS. 3A show steps in the formation of a terminal region 19 on a surface of an individual die 8, prior to wafer scribing or sawing, and the plating of a metallization bump onto such terminal region 19. In the manufacture of a particular electrical product from die 8, such as the double-slug diode shown in FIG. 4, it is frequently necessary to deposit a metallized bump in a predetermined area of a surface of such die 8.

Referring to FIG. 3A, a representative individual die 8 of wafer 3 is shown overlaid with a layer of oxide 38, and a hole or window 18 has been etched through the oxide 38 down to a terminal area (not shown) of the underlying substrate 28.

In FIG. 3B, the window 18 of FIG. 3A has been filled with top metal 19. In a preferred embodiment of the invention, the top metal 19 actually comprises three layers: first a layer of titanium, next a layer of nickel, and finally a layer of silver. Again, the composition of the layers and thickness thereof are not specific to the present invention.

In FIG. 3C, a metallization bump, comprising a layer of silver 14 and a layer of tin 15, has been electro-deposited over the top metal terminal region 19.

FIG. 4 shows a double-slug diode manufactured according to the method and apparatus disclosed by the present invention. The diode of FIG. 4 is shown for illustrative purposes only, and it should be understood by all practitioners in the art that the present invention has broad utility in many metallization bump processing applications and is not intended to be limited to implementations such as that shown in FIGS. 3 and 4.

Still with reference to FIG. 4, the die 8 has been separated from its counterparts on wafer 3 and mounted between copper "slugs" or terminals 16 and 17 to which electrical leads 41 and 42, respectively, have been affixed. The entire assembly is enclosed in glass 9.

FIG. 5 shows a prior art plating apparatus for plating metallization bumps onto predetermined terminal areas of a silicon wafer, such as terminal area 19 of die 8.

**2**

Referred to as a rack plating apparatus, it comprises a tank 1 of electroplating solution into which an anode 5 and a cathode 4 are shown partially submersed. It will be understood that anode 5 and cathode 4 are shown partially submersed for ease in understanding and that during operation they are substantially submersed.

Anode 5 has a potential having a positive polarity coupled thereto, while cathode 4 has a potential having a negative polarity coupled thereto.

Affixed to cathode 4 is a substantially planar, conductive wafer 3 comprising a plurality of individual electrical elements (not shown), each with a terminal area such as terminal area 19 shown in FIG. 3B. It will be understood by those skilled in the art that substrate 3 may itself serve as the cathode 4, or substrate 3 may be suitably affixed to a wafer carrier, which serves as the cathode 4.

FIG. 6 is a graph illustrating the variation of bump height across a silicon wafer electroplated with the prior art plating apparatus shown in FIG. 5. The bump height in microns measured on selected die is provided along the Y-axis, and the die position across a given wafer diameter is provided along the X-axis. It will be observed that the X-axis of FIG. 6 is non-linear, in that emphasis is given to die numbers closest to the wafer edge, for example die numbers 1–5 at the left edge and die number 184–188 at the right edge.

It is seen that when metallized bumps are plated with the apparatus shown in FIG. 6 there is substantial variation in bump height across the wafer diameter. The bumps are highest at or near the wafer edge. For example, the bump height 11 of die #1 is 70 microns, and that of die #188 is approximately 58 microns, whereas that of die #120 is approximately 41 microns.

According to the graph of FIG. 6, the bump height variation across a typical 9.65 centimeter diameter wafer is almost 30 microns, ranging from a minimum of 41 microns at die #120 to a maximum of 70 microns at die #1. This greatly exceeds a desired production specification width of 20 microns.

The increased electroplating intensity near the wafer edge is commonly referred to as "edge effect".

Therefore, there is a substantial need to provide an electroplating method and apparatus which overcomes the "edge effect" problem known in prior electroplating systems.

Various electroplating systems are known which have attempted to overcome the "edge effect". One such system is referred to as a cathode-mask system, in which the high-growth area of the substrate is masked. However, this system suffers from the need to achieve critcal positioning of the mask relative to the high-growth area of the substrate. Both the alignment of the mask and the mask-to-wafer spacing are critical and difficult to control.

## BRIEF SUMMARY OF INVENTION

The present invention solves the problem of "edge effect" by selectively altering the metallic ion concentration of the electroplating solution near the edge(s) of the wafer substrate.

According to the present invention, the electroplating solution is contained in a cup-shaped container. A pump circulates the solution through an inlet and out over the lip of the cup. The wafer is suspended at an optimum height above the cup lip. The cup diameter is optimized relative to the wafer diameter and to the area

USCA5 52

5,000,827

3

in which undue bump growth occurs. In addition, the flow rate of solution through the plating cup is optimized. By optimizing the above-mentioned parameters, the metallic ion concentration of the electroplating solution in the vicinity of the wafer edge(s) is optimized to just offset the "edge effect", and to provide substantially uniform height of electroplated bumps across the wafer diameter.

Accordingly, it is an object of the present invention to provide an electroplating method and apparatus which produce metallized bumps of substantially uniform height across a substrate including the edge(s) thereof.

Thus a greater proportion of die fall within desired specifications, resulting in lower rejection rates, lower material and labor charges, higher quality, and greater customer acceptance.

It is another object of the present invention to provide an electroplating method and apparatus which is relatively inexpensive and which is relatively easy to control.

It is yet another object of the present invention to provide an electroplating method and apparatus which eliminates the labor-intensive steps of mounting a substrate on a wafer carrier prior to electrodepositing the metallized bumps, demounting the substrate from the wafer carrier after deposition, and cleaning the mounting agent (typically wax, glycol, or plastic) from the substrate.

These and other objects are achieved in accordance with a preferred embodiment of the invention by providing a method of forming metallization bumps on predetermined terminal areas of a planar substrate, the bumps being of substantially uniform height across the substrate, wherein the method comprises (a) providing a planar substrate having thereon a multiplicity of terminal areas; (b) applying an electrical potential having a first electrical polarity to the terminal areas; (c) applying an electrical potential having a second electrical polarity to an electrical terminal immersed in a container of an electroplating solution; (d) exposing the substrate to the electroplating solution to permit the growth of the metallization bumps on the terminal areas: and (e) controlling the growth of the metallization bumps in a predetermined region of the substrate by altering the metallic ion concentration of the electroplating solution in the predetermined region.

## BRIEF DESCRIPTION OF THE DRAWINGS

The invention is pointed out with particularity in the appended claims. However, other features of the invention will become more apparent and the invention will be best understood by referring to the following detailed description in conjunction with the accompanying drawings in which:

FIG. 1 shows a silicon wafer upon which a plurality of individual electrical circuit elements are formed.

FIG. 2 shows a view similar to that shown in FIG. 1, wherein the wafer has been separated into pieces including at least one die.

FIGS. 3A, 3B and 3C show steps in the plating of a metallization bump onto a terminal area of an individual die.

FIG. 4 shows a double-slug diode manufactured according to the method and apparatus disclosed by the present invention.

4

FIG. 5 shows a prior art plating apparatus for plating metallization bumps onto predetermined terminal areas of a silicon wafer.

FIG. 6 is a graph illustrating the variation of bump height across a silicon wafer electroplated with the prior art plating apparatus shown in FIG. 5.

FIG. 7 shows a cross-sectional view of apparatus for plating metallization bumps of substantially uniform height onto predetermined terminal areas of a silicon wafer, according to the present invention.

FIG. 8 shows a top-view of ring element 25 and adjustable wafer support elements 51 of the plating apparatus shown in FIG. 7.

FIG. 9 is a graph illustrating the variation of bump height across a silicon wafer electroplated according to the method of the present invention.

FIG. 10 is another graph illustrating the variation of bump height across a silicon wafer electroplated according to the method of the present invention.

FIG. 11 shows a cross-sectional view of an alternative embodiment of apparatus for plating metallization bumps of substantially uniform height onto predetermined terminal areas of a silicon wafer, according to the present invention.

## DESCRIPTION OF PREFERRRED EMBODIMENT

FIG. 7 shows apparatus for plating metallization bumps of substantially uniform height onto predetermined terminal areas of a silicon wafer, according to the present invention. A cylcindrical cup 20 of suitable material, such as polyvinylchloride (PVC) or polypropylene, contains the desired electroplating solution, which in a preferred embodiment is a cyanide silver plating solution. The bottom portion of cup 20 may be formed integrally therewith or may be formed separately, as shown by bottom portion 21.

Pump 60 circulates the plating solution 2 through an inlet in the bottom cup 20, and plating solution 2 exists cup 20 over the lip 23 into tank or sump 24, from which it is eventually returned to the inlet side of pump 60.

To a suitable power supply 70, such as a pulsing DC rectifier, are coupled a wafer contact 30 and an anode 40. Anode 40 may take the form of a platinum-clad tantalum screen immersed in the electroplating solution. Wafer contact 30 may take the form of a silver-clad nickel element which rests upon or is affixed to the upper surface of wafer or substrate 3. Wafer 3 functions as a cathode.

Wafer 3 is supported by several wafer support members 51 suitably mounted in a ring or collar member 25 around the periphery of cup 20 (refer to FIG. 8). Support member 25 may take the form of a PVC washer mounted on a PVC screw 52, having a slotted head 50, and being threaded into a mating opening 53 in ring 25.

FIG. 8 shows a top-view of ring element 25 and adjustable wafer support elements 51 of the plating apparatus shown in FIG. 7. In a preferred embodiment, three wafer support elements 51 are spaced substantially equidistantly around the periphery of ring 25, and each has a slotted head to facilitate adjusting the height of wafer 3 above the lip 23 of cup 20.

### Operation of Preferred Embodiment

In operation, as mentioned above, electroplating solution 2 flows generally upwards from the inlet in the bottom of cup 20, against the underside of wafer 3, and out over the lip 23 into sump 24.

USCA5 53

5,000,827

5

Cup plating apparatus is known in the art and, as used, suffers from the well-known "edge effect". However, according to the present invention the metallic ion concentration of electroplating solution 2 is altered in the region near the edge of wafer 3, so as to effectively 5 offset the "edge effect".

By creating non-laminar flow of the electroplating solution 2 through the opening between the lip 23 and lower surface of wafer 3, the plating characteristics of solution 2 near the edge are altered from those else- 10 where within cup 20. The plating effect of the solution is weakened, thereby offsetting the tendency for increased plating effect near the cathode edge. The precise reasons as to why turbulent flow of the electroplating solution 2 against the outer portions of wafer 3 15 causes an offsetting of the "edge effect" are not completely understood.

To produce the non-laminar flow over the optimum peripheral area of wafer 3, the distance S between the outer edge of wafer 3 and the inner surface of cup 20 20 should be optimized. The parameter S is changed by changing the diameter of cup 20 relative to the diameter of wafer 3. By decreasing the diameter, a relatively greater peripheral area of wafer 3 is affected by a slight reduction in bump growth rate, whereas increasing the 25 diameter of cup 20 diminishes the peripheral area of wafer 3 which is affected. In a preferred embodiment of the invention, the diameter of the wafer was 9.65 centimeters, and the inside diameter of the cup was 8.89 centimeters.                                            30

Another important dimension which should be optimized is the distance H between the lower surface of wafer 3 and the top of cup lip 23. If H is too low, laminar flow apparently results, and there is relatively little offsetting of the "edge effect", resulting in relatively 35 higher bumps near the edge. As H is increased, turbulent flow apparently results, perhaps due to the capillary attraction of the bottom surface of wafer 3 near the edge, and there is increased offsetting of the "edge effect", resulting in edge bumps which are nearly identi- 40 cal in height to bumps elsewhere across the wafer diameter (refer to FIG. 10).

Flow rate through the plating cup 20 was found not to be a critical parameter. In a preferred embodiment, a flow rate of 4 to 5 liters/minute was employed.      45

The invention described herein was used successfully to plate bumps comprising an initial layer of silver and a subsequent layer of tin, resulting in metallization bumps substantially as depicted in FIG. 3C.

FIG. 9 is a graph illustrating the variation of bump 50 height across a silicon wafer electroplated according to the method of the present invention. To produce the results illustrated in FIG. 9, the height H of wafer 3 above the lip 23 of cup 20 was set at 2.25 millimeters. This produced a bump height variation across the wafer 55 ranging from a high of 43 microns to a low of 35 microns (i.e. with a process variation of approximately 8 microns), which is well within a desired specification width of 20 microns.

FIG. 10 is another graph illustrating the variation of 60 bump height across a silicon wafer electroplated according to the method of the present invention. By raising the height H of wafer 3 above the lip 23 of cup 20 to 2.45 millimeters, the bump height variation across the wafer ranged from a high of 40 microns to a low of 65 36 microns (i.e. with a process variation of approxi-

6

mately 4 microns). This is a substantial improvement over the process variation of 30 microns produced by the known tank electroplating method.

Description of Alternative Embodiment

FIG. 11 shows an alternative embodiment of apparatus for plating metallization bumps of substantially uniform height onto predetermined terminal areas of a silicon wafer, according to the present invention.

The apparatus illustrated in FIG. 11 differs from that shown in FIG. 7 only in that the distance S between the outer edge of wafer 3 and the inner surface of cup 20 has been increased through the use of an annular ring 100 suitably secured within the lip portion 23 of cup 20. This is shown merely as one example of how the distance S may be altered.

It will be apparent to those skilled in the art that the disclosed invention may be modified in numerous ways and may assume many embodiments other than the preferred form specifically set out and described above.

For example, the present invention can be extended to electroplating of ceramic substrates. It may also be extended to electroplating metals other than those mentioned herein. The plating cup may take the form of a pipe or other suitable geometric shape.

Accordingly, it is intended by the appended claims to cover all modifications of the invention which fall within the true spirit and scope of the invention.

What is claimed is:

1. A method of forming metallized bumps on predetermined terminal areas of a planar substrate, said bumps being of substantially uniform height across said substrate, wherein said method comprises:

(a) providing a planar substrate having thereon a multiplicity of terminal areas;

(b) applying an electrical potential having a first electrical polarity to said terminal areas;

(c) applying an electrical potential having a second electrical polarity to an electrical terminal immersed in a container of an electroplating solution;

(d) exposing said substrate to said electroplating solution to permit the growth of said metallization bumps on said terminal areas;

(e) controlling the growth of said metallization bumps in a predetermined region of said substrate by altering the metallic ion concentration of said electroplating solution in said predetermined region;

(f) providing said container with an opening whose shape approximates that of said substrate;

(g) positioning said substrate proximate to said container opening;

(h) providing an inlet within said container for pumping said solution into said container, said solution exiting said container through said opening;

wherein said metallic ion concentration of said electroplating solution is changed by:

(i) in step (f) altering the size of said opening;

(j) in step (g) altering the distance of said substrate from said container opening; and

(k) in step (h) altering the flow rate of said solution through said opening.

2. The method of according to claim 1, wherein said metallization bumps comprise metal selected from the group consisting of silver and tin.

* * * * *

USCA5 54

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

ON SEMICONDUCTOR CORPORATION, and
SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C.

## DEFENDANTS

Samsung Electronics Co., Ltd., Samsung Electronics America, Inc
Samsung Telecommunications America General, L.L.C., Samsung
Semiconductor, Inc., Samsung Austin Semiconductor, L.L.C.

**(b)** County of Residence of First Listed Plaintiff **Maricopa County**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address and Telephone Number)

JONES DAY
2727 North Harwood Street
Dallas, TX 75201

Telephone: (214) 220-3939

Attorneys (If Known)

DEC - 4 2006

DAVID D. CLELAND, CLERK

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☑ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury - Med. Malpractice<br>☐ 365 Personal Injury - Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☑ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 440 Other Civil Rights | **PRISONER PETITIONS**<br>☐ 510 Motions to vacate Sentence<br>**HABEAS CORPUS:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS -Third Party 26 USC 7609 | ☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900 Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |

## V. ORIGIN (Place an "X" in One Box Only)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. Sections 271(a), 271(b) and 271 (c)

Brief description of cause:
Patent Infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**
According to Proof

CHECK YES only if demanded in complaint:
**JURY DEMAND:**  ☑ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY  (See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE
December 4, 2006

SIGNATURE OF ATTORNEY OF RECORD
Hilda C. Galvan  *Hilda C. Galvan*

## FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

American LegalNet, Inc. | www.USCourtForms.com

# SEALED

# DOCUMENT

✎AO 440  (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

District of _____

_____

**SUMMONS IN A CIVIL ACTION**

V.

CASE NUMBER:

TO: (Name and address of Defendant)

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

an answer to the complaint which is served on you with this summons, within _____ days after service of this summons on you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.  Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.



_David Malone_ _____     **12/4/06** _____
CLERK                                          DATE

_____
(By) DEPUTY CLERK

USCA5 56

✎AO 440  (Rev.  8/01)  Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |
| NAME OF SERVER *(PRINT)* | TITLE |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL |
|---|---|---|
| | | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____    _____
                        Date                          *Signature of Server*

_____
*Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

AO 120 (Rev. 3/04)

| TO: | Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been

filed in the U.S. District Court _____ EDTX-Tyler _____ on the following ☑ Patents or ☐ Trademarks:

| DOCKET NO.<br>606cv523 | DATE FILED<br>12/4/2006 | U.S. DISTRICT COURT<br>EDTX-Tyler |
|---|---|---|
| PLAINTIFF<br><br>ON Semiconductor Corporation<br>Semiconductor Components Industries, LLC | | DEFENDANT<br><br>Samsung Electronics Co., Ltd.; Samsung Electronics<br>America, Inc.;Samsung Telecommunications America<br>General, LLC; Samsung Semiconductor, Inc.; Samsung<br>Austin Semiconductor, LLC |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | 5,563,594 | 10/8/1996 | |
| 2 | 6,362,644 | 3/26/2002 | |
| 3 | 5,361,001 | 11/1/1994 | |
| 4 | 5,000,827 | 3/19/1991 | |
| 5 | | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY | |
|---|---|---|
| | ☐ Amendment    ☐ Answer    ☐ Cross Bill    ☐ Other Pleading | |
| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |

| | PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|---|
| 1 | | | |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK<br>DAVID J. MALAND | (BY) DEPUTY CLERK | DATE<br>12/6/2006 |
|---|---|---|

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy

USCA5 58

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| ON SEMICONDUCTOR CORPORATION, and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C. | |
| Plaintiffs, | Civil Action No. 6:06cv523 |
| v. | |
| | CORPORATE DISCLOSURE STATEMENT OF PLAINTIFF SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC. |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR, L.L.C., | |
| Defendants. | |

## SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C.'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, Plaintiff Semiconductor Components

Industries, L.L.C. states that it is a wholly owned subsidiary of ON Semiconductor Corp., and

that ON Semiconductor Corp. is a publicly traded company.

Date: December 6, 2006      Respectfully submitted,

___/s/ Hilda C. Galvan_____
Kenneth R. Adamo
State Bar No. 00846960
kradamo@jonesday.com
Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Tharan Gregory Lanier
tglanier@jonesday.com

USCA5 59

CA Bar No. 138784
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Carl R. Roth
State Bar No. 17312000
cr@rothfirm.com
Michael C. Smith
ms@rothfirm.com
115 N Wellington Suite 200
P O Box 876
Marshall, Texas  75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

ATTORNEYS FOR ON SEMICONDUCTOR
CORPORATION AND SEMICONDUCTOR
COMPONENTS INDUSTRIES, L.L.C.

Of Counsel:
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025

USCA5 60

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) on December 6, 2006.  Any other counsel of record

will be served by facsimile transmission and/or first class mail.

___/s/ Hilda C. Galvan_____

USCA5 61

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| ON SEMICONDUCTOR CORPORATION, and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C.<br>           Plaintiffs,<br><br>   v.<br><br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR, L.L.C.,<br>           Defendants. | Civil Action No. 6:06cv523<br><br><br>CORPORATE DISCLOSURE STATEMENT OF PLAINTIFF ON SEMICONDUCTOR CORPORATION |

## ON SEMICONDUCTOR CORPORATION'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, Plaintiff ON Semiconductor Corporation states that it does not have any parent corporation(s), and that no publicly-held company owns 10 percent or more of its stock.

Date: December 6, 2006

Respectfully submitted,

_____/s/ Hilda C. Galvan_____
Kenneth R. Adamo
State Bar No. 00846960
kradamo@jonesday.com
Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas  75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Tharan Gregory Lanier
tglanier@jonesday.com
CA Bar No. 138784

JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Carl R. Roth
State Bar No. 17312000
cr@rothfirm.com
Michael C. Smith
ms@rothfirm.com
115 N Wellington Suite 200
P O Box 876
Marshall, Texas  75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

ATTORNEYS FOR ON SEMICONDUCTOR
CORPORATION AND SEMICONDUCTOR
COMPONENTS INDUSTRIES, L.L.C.

Of Counsel:
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025

USCA5 63

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 6, 2006.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

___/s/ Hilda C. Galvan_____

USCA5 64

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

|  |  |  |
|---|---|---|
| ON SEMICONDUCTOR CORP. | : | |
| | : | |
| and | : | |
| | : | |
| SEMICONDUCTOR COMPONENTS | : | |
|   INDUSTRIES, LLC, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 6:06-cv-523 (LED) |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| SAMSUNG ELECTRONICS CO., LTD., | : | |
| SAMSUNG ELECTRONICS AMERICA, INC., | : | |
| SAMSUNG TELECOMMUNICATIONS | : | |
|   AMERICA GENERAL, L.L.C., | : | |
| SAMSUNG SEMICONDUCTOR, INC., and | : | |
| SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## DEFENDANTS' MOTION TO TRANSFER TO THE
## DISTRICT OF DELAWARE PURSUANT TO THE FIRST-TO-FILE RULE

### (PARTIALLY REDACTED)

Michael E. Jones
Allen F. Gardner
POTTER MINTON
110 North College 500 Plaza Tower
Tyler, Texas 75702
(903) 597-8311

OF COUNSEL:
John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

*Attorneys for Samsung Electronics America, Inc.,*
*Samsung Telecommunications America General,*
*L.L.C., Samsung Semiconductor, Inc., and Samsung*
*Austin Semiconductor L.L.C.*

Dated:  December 26, 2006

# TABLE OF CONTENTS

**Page**

PROCEDURAL HISTORY...................................................................................................1

STATEMENT OF FACTS ................................................................................................2

ARGUMENT .....................................................................................................................2

I.      LEGAL STANDARDS. ..........................................................................................2

II.     THERE IS A SUBSTANTIAL OVERLAP OF ISSUES BETWEEN THE
        TEXAS ACTION AND THE DELAWARE ACTION, AND THE FIRST-TO-
        FILE RULE THEREFORE APPLIES.................................................................4

III.    THE DELAWARE ACTION WAS NOT FILED IN ANTICIPATION OF THE
        TEXAS ACTION...................................................................................................5

IV.     THE INTERESTS OF EXPEDIANCY AND JUSTICE DO NOT WEIGH
        AGAINST TRANSFER TO THE DISTRICT OF DELAWARE. ...................7

CONCLUSION................................................................................................................11

USCA5 66

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADE Corp. v. KLA-Tencor Corp.*,
    138 F. Supp. 2d 565 (D. Del. 2001) ................................................................ 10

*AdvanceMe, Inc. v. Rapidpay LLC*,
    450 F. Supp. 2d 669 (E.D. Tex. 2006) ........................................................... 10

*Affymetrix, Inc. v. Synteni, Inc.*,
    28 F. Supp. 2d 192 (D. Del. 1998) ................................................................. 8

*AmberWave Systems Corp. v. Intel Corp.*,
    No. 2:05-CV-321, 2005 WL 2861476 (E.D. Tex. Nov. 1, 2005) ..................... 4

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*,
    846 F.2d 731 (Fed. Cir. 1988) ....................................................................... 6

*Cadle Co. v. Whataburger of Alice, Inc.*,
    174 F.3d 599 (5th Cir. 1999) ......................................................................... 2

*Chase Manhattan Bank, U.S.A., N.A. v. Freedom Card, Inc.*,
    265 F. Supp. 2d 445 (D. Del. 2003) ............................................................... 8

*Continental Airlines, Inc. v. American Airlines, Inc.*,
    805 F. Supp. 1392 (S.D. Tex. 1992) ............................................................. 10

*Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*,
    821 F. Supp. 962 (D. Del. 1993) .................................................................. 10

*Dorman Products, Inc. v. Pontiac Coil, Inc.*,
    No. 06-3157, 2006 WL 2927307 (E.D. Pa. 2006) ......................................... 7

*Electronics for Imaging, Inc. v. Coyle*,
    394 F.3d 1341 (Fed. Cir. 2005) ..................................................................... 5

*Fina Research S.A. v. Baroid, Ltd.*,
    141 F.3d 1479 (Fed. Cir. 1998) ..................................................................... 6

*Genentech Inc. v. Eli Lilly & Co.*,
    998 F.2d 931 (Fed Cir. 1993) ........................................................................ 3

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.*,
    824 F.2d 953 (Fed. Cir. 1987) ....................................................................... 5

*Intel Corp. v. AmberWave Systems Corp.*,
    233 F.R.D. 416 (D. Del. 2005) ...................................................................... 4

ii

USCA5 67

*J. Lyons & Co. Ltd. v. Republic of Tea, Inc.,*
    892 F. Supp. 486 (S.D.N.Y. 1995) .................................................................. 6

*Jelec USA, Inc. v. Safety Controls, Inc.,*
    No. H-06-2379, 2006 WL 3358896 (S.D. Tex. Nov. 17, 2006) ........................ 9

*Mann Mfg., Inc. v. Hortex, Inc.,*
    439 F.2d 403 (5th Cir. 1971) ........................................................................... 3

*Matsushita Battery Industrial Co., Ltd. v. Energy Conversion Devices, Inc.,*
    No. 96-101, 1996 WL 328594 (D. Del. Apr. 23, 1996) ................................... 8

*Motorola, Inc. v. PC-Tel, Inc.,*
    58 F. Supp. 2d 349 (D. Del. 1999) .................................................................. 8

*National Instruments Corp. v. Softwire Technology, LLC,*
    No. 2:03-CV-047, 2003 U.S. Dist. LEXIS 26952 (E.D. Tex. May 9, 2003) ..................... 5

*Overson v. Berryman Products,*
    No. 2:06CV114, 2006 WL 3345264 (E.D. Tex. Nov. 6, 2006) ........................ 9

*Save Power Ltd., v. Syntek Finance Corp.,*
    121 F.3d 947 (5th Cir. 1997) ........................................................................... 3

*Singleton v. Volkswagen of America, Inc.,*
    No. 2-06-CV-222, 2006 WL 2634768 (E.D. Tex. Sept. 12, 2006) .................. 8

*Sutter Corp. v. P & P Indus., Inc.,*
    125 F.3d 914 (5th Cir. 1997) ....................................................................... 2, 3

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,*
    157 F.R.D. 215 (D. Del. 1993) ....................................................................... 7

### Statutes

28 U.S.C. § 2201 ............................................................................................... 8

USCA5 68

Defendants Samsung Electronics America, Inc., Samsung Telecommunications America General L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C.[1] respectfully move this Court, pursuant to the first-to-file rule, for an order transferring this action to the United States District Court for the District of Delaware.  This patent infringement action filed on December 4, 2006 addresses the same issues of patent infringement and invalidity already at issue in an action filed on November 30, 2006 by co-defendant Samsung Electronics Co., Ltd. in the United States District Court for the District of Delaware.  Because there is a substantial overlap of issues between this action and the earlier-filed Delaware action — all four patents asserted by Plaintiffs in this action are at issue in the Delaware action, and the parties to both actions are the same — this Court should transfer this action to Delaware pursuant to the first-to-file rule for a determination of which action should proceed.

## PROCEDURAL HISTORY

On November 30, 2006, Defendant Samsung Electronics Co., Ltd. ("SEC") filed a complaint in the United States District Court for the District of Delaware, Civil Action No. 06-CV-0720 (the "Delaware Action"), seeking a declaration that three United States patents purportedly owned by Plaintiffs — U.S. Patent Nos. 5,563,594 (the "'594 Patent"), 6,362,644 (the "'644 Patent"), and 5,361,001 (the "'001 Patent") — are invalid and not infringed by Samsung.  (Jones Dec. Ex. 1.)

Four days later, on December 4, 2006, Plaintiffs filed this patent infringement action against SEC (the "Texas Action"), alleging infringement of the same three patents at issue in the Delaware Action and a fourth patent, U.S. Patent No. 5,000,827 (the "'827 Patent").  Plaintiffs also named four SEC affiliates as co-defendants in the Texas Action — Samsung Electronics

---

[1] Co-defendant Samsung Electronics Co., Ltd. has not been served with the Complaint.  If and when it is served, Samsung Electronics Co., Ltd. will join in this motion.

America, Inc. ("SEA"), Samsung Telecommunications America General, L.L.C. ("STA"),

Samsung Semiconductor, Inc. ("SSI"), and Samsung Austin Semiconductor L.L.C. ("SAS").

On December 21, 2006, Defendants filed an amended complaint in the Delaware Action

adding SEA, STA, SSI, and SAS as co-plaintiffs with SEC, adding a claim for declaratory

judgment of noninfringement and invalidity of the '827 patent, and adding a claim against

Plaintiffs for infringement of an SEC patent — U.S. Patent No. 5,252,177.  (Jones Dec. Ex. 2.)

That same day, Defendants also filed a motion to enjoin Plaintiffs from pursuing the Texas

Action pursuant to the first-filed rule.  That motion is pending before the Delaware court.  (Jones

Dec. Ex. 3.)  Because the Delaware Action is the first-filed action, and because the Texas Action

is duplicative of the Delaware Action, Defendants move this Court under the first-to-file rule for

an order transferring the Texas Action to Delaware.

## STATEMENT OF FACTS

**[REDACTED]**[2]

## ARGUMENT

I.    **Legal Standards.**

Under the "first-to-file" rule, the court in which an action is first filed is the appropriate

court to determine whether subsequently filed cases involving substantially similar issues should

proceed.  *See, e.g., Cadle Co. v. Whataburger of Alice, Inc*., 174 F.3d 599, 606 (5th Cir. 1999);

---

[2] In connection with Defendants' motion to enjoin filed in Delaware, Plaintiffs contended that
the parties' licensing discussions were confidential and requested that the motion be filed under
seal.  Defendants did so, with a full reservation of rights to challenge Plaintiffs' confidentiality
assertion.  Because the parties' licensing discussions are addressed in this motion as well,
Defendants have filed a redacted version of this motion along with a motion for leave to file an
amended version under seal, again with a full reservation of rights to challenge Plaintiffs'
confidentiality assertion.

USCA5 70

*Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997); *Save Power Ltd., v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997); *see also Genentech Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 938 (Fed Cir. 1993).

Courts use the first-to-file rule "to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court." *Cadle*, 174 F.3d at 604 (emphasis in original). Furthermore, the first-to-file rule "not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed, or transferred and consolidated." *Cadle*, 174 F.3d at 606 (quoting *Sutter Corp.*, 125 F.3d at 920).

The only inquiry in the court in which the second suit is filed is whether or not there might be a substantial overlap of issues between the first and second suits. *See Cadle*, 174 F.3d at 606. If there might be a substantial overlap of issues between the first and second suits, the proper course of action for the court in which the second suit was filed is to transfer the case to the court in which the first suit was filed "to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Id.* The determination of whether there is an actual substantial overlap between the two actions is thus reserved for the first-filed court. *See, e.g., Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971) ("By virtue of its prior jurisdiction over the common subject matter and its injunction of suit involving that subject matter in Texas, the ultimate determination of whether *actually* was a substantial overlap requiring consolidation of the two suits in New York belonged to the United States District Court in New York."). As set forth below, the first-to-file rule requires that this action be transferred to the United States District Court for the District of Delaware.

USCA5 71

**II.    There Is A Substantial Overlap Of Issues Between The Texas Action And The Delaware Action, And The First-To-File Rule Therefore Applies.**

It is indisputable that there is a substantial overlap of issues between the Texas Action and the first-filed Delaware Action.  First, the same three patents that were the subject of SEC's original complaint in the Delaware Action — the '594 patent, the '644 patent, and the '001 patent — are all asserted in the Texas Action by Plaintiffs.  (Jones Dec. Ex. 1.)  Thus, the identical issues of infringement and validity raised in the Texas Action with respect to the '594, '644, and '001 patents are already at issue in the Delaware Action.

Additionally, Defendants have filed an amended complaint adding to the Delaware Action the fourth patent asserted by Plaintiffs in the Texas Action — the '827 patent.  Thus, the '827 patent — which, given the fact that it was not disclosed to SEC during the yearlong licensing discussions, appears to have been added by Plaintiffs to manufacture an argument that the two cases are not identical — is also at issue in the Delaware Action.

Further, because all four of Plaintiffs' patents relate to design and manufacture of semiconductor products, and therefore involve closely related subject matter, the Delaware Action is deemed to be the first-filed action with respect to the '827 patent as well.  *See AmberWave Systems Corp. v. Intel Corp.*, No. 2:05-CV-321, 2005 WL 2861476 (E.D. Tex. Nov. 1, 2005), and *Intel Corp. v. AmberWave Systems Corp.*, 233 F.R.D. 416, 418 (D. Del. 2005). Just like in *Intel*, presentation of the parties' respective infringement and noninfringement positions for all four patents "will require a judge, on the summary judgment motions that are sure to be filed, and a jury, at any trial of the case, to become familiar with the same field of art, the same fundamental science and technology associated with methods of semiconductor fabrication, the same allegedly infringing devices, and, in any damages analysis, the same pricing, sales, and related market data."  *Intel*, 233 F.R.D. at 418.

4

Third, with the filing of the amended complaint in the Delaware Action adding SEA, STA, SSI, and SAS as co-plaintiffs, the parties to the Delaware and Texas Actions are identical. Even as originally filed, however, both actions had Samsung's interests on one side and Plaintiffs' interests on the other. In any event, it is well-settled that the first-to-file rule does not require identity of parties. *See, e.g., National Instruments Corp. v. Softwire Technology, LLC*, No. 2:03-CV-047, 2003 U.S. Dist. LEXIS 26952 (E.D. Tex. May 9, 2003).

In view of the foregoing, there is a substantial overlap of issues between the Texas Action and the Delaware Action. Unless Plaintiffs can demonstrate some exception to the first-to-file rule — which they cannot — this case should be transferred to Delaware.

## III.    The Delaware Action Was Not Filed In Anticipation Of The Texas Action.

Although some courts may recognize an exception to the first-to-file rule where the first action was filed in anticipation of the second action in a "race to the courthouse," as the Court in *National Instruments* observed, that issue is more properly addressed by the first-filed court rather than the second-filed court. *National Instruments*, 2003 U.S. Dist. LEXIS 26952 at *3. Nonetheless, the Delaware Action was not filed in anticipation of the Texas Action.

The purpose of declaratory judgment actions in patent cases is "to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987); *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005). In view of Plaintiffs' pre-suit threats, SEC had more than adequate grounds to file the Delaware Action, and to file in Delaware.

The Declaratory Judgment Act requires the existence of an actual controversy before a federal court may exercise jurisdiction in a declaratory judgment action. 28 U.S.C. § 2201. In a patent case, an actual case or controversy exists when there is: (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory

USCA5 73

judgment plaintiff that it will face an infringement suit; and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. *See, e.g, Fina Research S.A. v. Baroid, Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998). Furthermore, "[w]hen the [patentee's] conduct . . . falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). Both prongs of this test are met in this case.

**[REDACTED]**

In view of the foregoing, Plaintiffs cannot credibly argue that SEC filed the Delaware Action in anticipation of the Texas Action. Plaintiffs never indicated that they planned to file suit against SEC within a specific or definite timeframe, or that they were considering bringing suit in the Eastern District of Texas. (Muir Dec. ¶ 16.) Because both Plaintiffs are Delaware companies, filing a declaratory judgment action in Delaware was a perfectly sound choice by SEC. Further, Delaware does not offer Defendants any special advantage or convenience over other forums. Patent law is uniform throughout the United States, and Delaware therefore does not offer Defendants law that is more favorable than other jurisdictions. Nor does Delaware offer Defendants any particular convenience with respect to location of witnesses or documents, as neither Plaintiffs nor Defendants are located in Delaware.

This case does not have any of the hallmarks one would expect to see in a case of anticipatory filing. For example, Plaintiffs never indicated to SEC that they were about to file an infringement action, such as by sending a letter stating Plaintiffs' "intention to file suit, a filing date, and/or a specific forum for the filing of the suit," *J. Lyons & Co. Ltd. v. Republic of Tea, Inc.,* 892 F. Supp. 486, 491 (S.D.N.Y. 1995), or by providing SEC with a draft infringement

USCA5 74

complaint.  *See Dorman Products, Inc. v. Pontiac Coil, Inc*.,  No. 06-3157, 2006 WL 2927307

(E.D. Pa. 2006) .  Nor did SEC's filing of the Delaware Action secure a venue that differed from

the venue that one would have expected Plaintiffs to choose.  The District of Arizona, not

Eastern District of Texas, is Plaintiffs' home forum, and SEC is headquartered in Seoul, Korea.

Plaintiffs would therefore not have been expected to choose the Eastern District of Texas as a

forum.   In view of the foregoing, SEC's filing of the Delaware Action was proper and not

anticipatory.  As such, the first-to-file rule applies, and this case should be transferred to the

District of Delaware.

## IV.    The Interests Of Expediancy And Justice Do Not Weigh Against Transfer To The District of Delaware.

Nor do the interests of expediency and justice warrant a departure from the first-to-file

rule.  As this Court observed in *AmberWave*, if this Court were to retain this action there would

be "simultaneous actions between the same parties over related technologies and involving the

same accused products."  *AmberWave*, 2005 WL 2861476 at *2.  Moreover, the Eastern District

of Texas does not offer any more convenience for the parties and witnesses than the District of

Delaware.  Plaintiffs are Delaware companies with headquarters in Phoenix and offices across

the United States and abroad (Jones Dec. Ex. 4), and none of the Defendants are headquartered

in the Eastern District of Texas.[3]  And because Plaintiffs are both Delaware companies, they

should not be heard to complain that they would be inconvenienced by litigating this case in

Delaware.  *See, e.g., Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D.

Del. 1993) ("Absent some showing of a unique or unexpected burden, [Delaware] corporations

---

[3] SEC has its principal place of business in Seoul, Korea.  SEA has its principal place of business in Ridgefield Park, New Jersey.  STA has its principal place of business in Richardson, Texas, which is in the Northern District of Texas.  SSI has its principal place of business in San Jose California.  SAS has its principal place of business in Austin, Texas, which is in the Western District of Texas.

USCA5 75

should not be successful in arguing that litigation in their state of incorporation is inconvenient.").

Further, when the typical private and public interest factors in a convenience analysis are considered, it is clear that the Eastern District of Texas is no more convenient than the District of Delaware. *See, e.g, Singleton v. Volkswagen of America, Inc.*, No. 2-06-CV-222, 2006 WL 2634768, *1 (E.D. Tex. Sept. 12, 2006) (setting forth private and public interest factors that are considered in a convenience analysis). First, SEC's choice of Delaware as a forum is rational and appropriate given that both Plaintiffs are Delaware companies, and that Delaware has an interest in cases that involve companies that have availed themselves of the protection of Delaware's laws. *See Chase Manhattan Bank, U.S.A., N.A. v. Freedom Card, Inc.*, 265 F. Supp. 2d 445 (D. Del. 2003), *quoting Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 356 (D. Del. 1999) ("this forum's interest extends to these corporate citizens that have sought the protection of Delaware's laws.").

Second, the Eastern District of Texas is no more convenient to Plaintiffs — who are headquartered in Phoenix — than the District of Delaware. Plaintiffs are sophisticated companies with operations throughout the United States and abroad. In 2005, Plaintiffs had over $1.2 billion in revenue. (Jones Dec. Ex. 4.) "[F]or a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect." *Matsushita Battery Industrial Co., Ltd. v. Energy Conversion Devices, Inc.*, No. 96-101, 1996 WL 328594 (D. Del. Apr. 23, 1996) ; *see also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 202 (D. Del. 1998) (litigating in Delaware "should not impose an undue financial burden" on the parties because they were "multi-million dollar corporations with

USCA5 76

interests and activities spanning the globe").  And in this case, unlike in *Matsushita*, the Eastern District of Texas is not even the most convenient forum for Plaintiffs.

Third, the convenience of witnesses does not render the Eastern District of Texas more convenient than the District of Delaware.  As an initial matter, it is well-settled that the convenience of party witnesses is accorded less weight in a convenience analysis than non-party witnesses, because each party is able and obligated to procure the attendance of its own witnesses for trial.  *See, e.g., Overson v. Berryman Products,* No. 2:06CV114, 2006 WL 3345264, *2  (E.D. Tex. Nov. 6, 2006); *see also Jelec USA, Inc. v. Safety Controls, Inc.*, No. H-06-2379, 2006 WL 3358896, *5  (S.D. Tex. Nov. 17, 2006) ("The convenience of parties and employees of corporate parties, however, is entitled to less weight because that party will be able to compel their testimony at trial.").  In this case there is no reason to believe that there will be a significant number of non-party witnesses, and there is certainly no reason to believe that there will be a significant number of non-party witnesses located in the Eastern District of Texas.

Witness convenience, therefore, does not favor the Eastern District of Texas over the District of Delaware.  Plaintiffs are headquartered in Phoenix and operate nationally and internationally.  Defendants are a Korea-based family of companies with headquarters in Korea. The products that are accused of infringement, DRAMs, were designed and developed in Korea. (Muir Dec. ¶ 19.)  Thus, most of the witnesses who have knowledge of the accused products are located in Korea, as are the relevant technical documents.  *Id.*  Additionally, the infringement alleged by Plaintiffs is not focused on any one single jurisdiction, but is alleged to occur throughout the United States.  (*See* Complaint.)  Discovery in this case will thus take place in Korea and throughout the United States, and the overall burden and cost of litigating this case will be the same whether trial takes place in Delaware or Texas.

9

USCA5 77

Fourth, the location of documents and other sources of proof does not favor the Eastern District of Texas over the District of Delaware. The two most common practices for producing documents in patents cases — like in other complex cases — is either to produce them electronically, or to copy and mail them to opposing counsel. Thus, the ultimate location of trial will have no impact on document production or access to other sources of proof. *See ,e.g., AdvanceMe, Inc. v. Rapidpay LLC,* 450 F. Supp. 2d 669, 675 (E.D. Tex. 2006) ("Typically, documents and other records are easily transportable in paper or electronic form."); *Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F. Supp. 1392, 1401 (S.D. Tex. 1992) ("the relevant documents could be produced and examined anywhere."); *see also ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp. 2d 565, 571 (D. Del. 2001); ("With new technologies for storing and transmitting information, the burden of gathering and transmitting documents 3,000 miles is probably not significantly more than it is to transport them 30 miles"); *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F. Supp. 962, 966-67 (D. Del. 1993) ("The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading . . . Regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial."). Either way, the ultimate location of trial has no impact on document production.

Fifth, none of the public interests factors typically considered in a convenience analysis — the administrative difficulties caused by court congestion, the local interest in adjudicating local disputes, the unfairness of burdening citizens in an unrelated forum with jury duty, and the avoidance of unnecessary problems in conflict of laws — favor the Eastern District of Texas over the District of Delaware. To the contrary, given that none of the parties have as their home forum the Eastern District of Texas, that infringement is alleged to occur throughout the United

10

USCA5 78

States, that Plaintiffs are both Delaware companies, and that two of the Defendants are Delaware companies and none are Texas companies,[4] the public interest favors the District of Delaware over the Eastern District of Texas.

In view of the foregoing, the interests of expediency and justice do not warrant departure from the first-to-file rule.

## CONCLUSION

For the foregoing reasons, pursuant to the first-to-file rule, Defendants respectfully request that the Court grant their motion and transfer this action to the United States District Court for the District of Delaware.

Respectfully submitted,

Dated:  December 26, 2006

*/s/ Michael E. Jones*
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 North College 500 Plaza Tower
Tyler, Texas X 75702
(903) 597-8311
(903) 593-0846 (Facsimile)

*Attorneys for Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C.*

---

[4] SEC is a corporation organized under the laws of the Republic of Korea.  SEA is a New York corporation.  STA is a Delaware limited liability company.  SSI is a California corporation.  SAS is a Delaware limited liability company.

11

USCA5 79

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 26, 2006.  Any other counsel of record will be served by first class on this same date.

*/s/ Michael E. Jones*

USCA5 80

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| ON SEMICONDUCTOR CORP. | : |
| | : |
| and | : |
| | : |
| SEMICONDUCTOR COMPONENTS | : |
|   INDUSTRIES, LLC, | : |
| | : |
| | : |
|       Plaintiffs, | :    Civil Action No. 6:06 cv 523 |
| | : |
|       v. | : |
| | : |
| SAMSUNG ELECTRONICS CO., LTD., | : |
| SAMSUNG ELECTRONICS AMERICA, INC., | : |
| SAMSUNG TELECOMMUNICATIONS | : |
|   AMERICA GENERAL, L.L.C., | : |
| SAMSUNG SEMICONDUCTOR, INC., and | : |
| SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : |
| | : |
|       Defendants. | : |
| | : |

**DECLARATION OF PATRICK MUIR IN SUPPORT OF
<u>DEFENDANTS' MOTION TO TRANSFER</u>**

I, PATRICK MUIR, declare that the following is true and correct:

1.       I am a licensed attorney and the principal of Muir Patent Consulting located in

Great Falls, Virginia.  I am outside counsel to Samsung Electronics Co. Ltd.  Prior to starting

Muir Patent Consulting, I was employed as in-house patent counsel at Samsung, and therefore

have familiarity with Samsung's semiconductor engineering operations.  I submit this

Declaration in support of the motion to transfer this action to Delaware.

2.      I have been a member of the team that has represented Samsung in its licensing discussions with Plaintiffs.  I therefore have firsthand knowledge of those discussions.

**[PARAGRAPHS 3-18 AND EXHIBITS A-G REDACTED]**

19.      The Samsung DRAM products that are accused of infringement in this case were designed and developed in Korea.  Most of the Samsung witnesses who have knowledge of the relevant technical aspects of the accused products are therefore located in Korea, as are most of the relevant technical documents relating to the accused products.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: December 26, 2006                          _____/s/_____
                                                                    Patrick Muir

USCA5 82

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |  |
|---|---|---|
| ON SEMICONDUCTOR CORP. | : | |
| and | : | |
| SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, | : | |
| Plaintiffs, | : | Civil Action No. 6:06-cv-523 (LED) |
| v. | : | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : | |
| Defendants. | : | |

## DECLARATION OF MICHAEL JONES IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER

I, MICHAEL JONES, declare that the following is true and correct:

1.      I am a shareholder in the law firm of Potter Minton and represent Defendants Samsung Electronics America, Inc., Samsung Telecommunications America General L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C. in this action.  I submit this Declaration in support of the motion to transfer this action to Delaware.

USCA5 83

2.      Attached hereto as Exhibit 1 is a copy of the Complaint (without exhibits) filed in Civil Action No. 06-CV-0720 (D. Del.) on November 30, 2006.

3.      Attached hereto as Exhibit 2 is a copy of the Amended Complaint (without exhibits) filed in Civil Action No. 06-CV-0720 (D. Del.) on December 21, 2006.

4.      Attached hereto as Exhibit 3 is a copy of the Motion to Enjoin and supporting brief (without exhibits) filed in Civil Action No. 06-CV-0720 (D. Del.) on December 21, 2006.

5.      Attached hereto as Exhibit 4 are excerpts from Plaintiffs' 2005 10-K  and website, *www.onsemi.com*.

6.      Attached hereto as Exhibit 5 are copies of the unpublished cases cited in Defendants' motion to transfer arranged in alphabetical order.

I declare under penalty of perjury that the foregoing is true and correct.


Dated: December 26, 2006                    */s/ Michael E. Jones*_____
                                            Michael E. Jones

USCA5 84

# Exhibit 1

USCA5 85

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

2005 NOV 30   PM 4: 35

| | |
|---|---|
| SAMSUNG ELECTRONICS CO. LTD., | : |
| Plaintiff, | : |
| v. | : |
| ON SEMICONDUCTOR CORP. | : |
| and | : |
| SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, | : |
| Defendants. | : |

Civil Action No. ___06 - 7 2 0___

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiff Samsung Electronics Co. Ltd. ("Samsung") for its Complaint against Defendants

ON Semiconductor Corp. and Semiconductor Components Industries, LLC (collectively, "ON

Semiconductor") hereby demands a jury trial and alleges as follows:

### Parties

1.    Plaintiff Samsung is a corporation organized under the laws of the Republic of

Korea, having its principal place of business at Samsung Main Building, 250, Taepyun-ro 2-ka,

Chung-ku, Seoul 100-742 Korea.

900002.0003

USCA5 86

2.      Samsung is in the business of manufacturing and selling a wide range of products. Specifically in relation to this action, Samsung manufactures and sells dynamic random access memories ("DRAMs").

3.      On information and belief, Defendant ON Semiconductor Corp. is a Delaware corporation with its principal place of business at 5005 East McDowell Road, Phoenix, Arizona 85008.

4.      On information and belief, Defendant Semiconductor Components Industries, LLC is a Delaware limited liability company with its principal place of business at 5005 East McDowell Road, Phoenix, Arizona 85008, is the principal domestic operating subsidiary of Defendant ON Semiconductor Corp, and does business under the name "ON Semiconductor."

### Nature of Action

5.      In this action, Samsung seeks a declaratory judgment of noninfringement and invalidity of three United States Patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, and such other relief as this Court deems just and proper.

### Jurisdiction and Venue

6.      This Court has subject matter jurisdiction over the subject matter of this action under 28 U.S.C. §§ 2201-02 and 28 U.S.C. §§ 1331 and 1338(a).

7.      Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c).

### The Patents

8.      U.S. Patent No. 5,563,594 (the "'594 patent") entitled "Circuit and Method of Timing Data Transfers" was filed on August 31, 1994 and issued on October 8, 1996. A Certificate of Correction issued on April 29, 1997. The inventors named on the '594 patent are

2

900002.0003
USCA5 87

David K. Ford and Bernard E. Weir, III.  A copy of the '594 patent is attached hereto as Exhibit A.

9.      U.S. Patent No. 6,362,644 (the "'644 patent") entitled "Programmable Termination for Integrated Circuits" was filed on August 1, 2000 and issued on March 26, 2002. The inventors named on the '644 patent are Philip A. Jeffery and Stephen G. Shook.  A copy of the '644 patent is attached hereto as Exhibit B.

10.     U.S. Patent No. 5,361,001 (the "'001 patent") entitled "Circuit and Method of Previewing Analog Trimming" was filed on December 3, 1993 and issued on November 1, 1994. The inventor named on the '001 patent is David L. Stolfa.  A copy of the '001 patent is attached hereto as Exhibit C.

11.     On information and belief, ON Semiconductor owns the '594, '644, and '001 patents and has the right to sue for infringement.

## Count I
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,563,594)

12.     Paragraphs 1 through 11 are incorporated by reference as if stated fully herein.

13.     ON Semiconductor has accused Samsung of infringing the '594 patent through its manufacture, sale, use, and/or importation of certain DRAMs.

14.     ON Semiconductor has demanded that Samsung license the '594 patent for exorbitant sums of money, and has informed Samsung that it will not go away unless Samsung enters into a patent license with ON Semiconductor.

15.     Samsung has informed ON Semiconductor that it will not pay ON Semiconductor the exorbitant sums that it is seeking, and has a reasonable apprehension that ON Semiconductor will file a patent infringement action against Samsung for infringement of the '594 patent if

3

Samsung continues to manufacture, sell use, and/or import certain of its DRAMs. A valid and justiciable controversy has arisen and exists between Samsung and ON Semiconductor within the meaning of 28 U.S.C. § 2201.

16.    Samsung has not directly or indirectly infringed any valid and enforceable claim of the '594 patent, either literally or under the doctrine of equivalents.

17.    The '594 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

18.    A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

**Count II**
**(Declaratory Judgment Action for a Declaration of**
**Noninfringement and Invalidity of U.S. Patent No. 6,362,644)**

19.    Paragraphs 1 through 18 are incorporated by reference as if stated fully herein.

20.    ON Semiconductor has accused Samsung of infringing the '644 patent through its manufacture, sale, use, and/or importation of certain DRAMs.

21.    ON Semiconductor has demanded that Samsung license the '644 patent for exorbitant sums of money, and has informed Samsung that it will not go away unless Samsung enters into a patent license with ON Semiconductor.

22.    Samsung has informed ON Semiconductor that it will not pay ON Semiconductor the exorbitant sums that it is seeking, and has a reasonable apprehension that ON Semiconductor will file a patent infringement action against Samsung for infringement of the '644 patent if Samsung continues to manufacture, sell use, and/or import certain of its DRAMs. A valid and

4

justiciable controversy has arisen and exists between Samsung and ON Semiconductor within the meaning of 28 U.S.C. § 2201.

23.     Samsung has not directly or indirectly infringed any valid and enforceable claim of the '644 patent, either literally or under the doctrine of equivalents.

24.     The '644 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

25.     A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

### Count III
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 5,361,001)

26.     Paragraphs 1 through 25 are incorporated by reference as if stated fully herein.

27.     ON Semiconductor has accused Samsung of infringing the '001 patent through its manufacture, sale, use, and/or importation of certain DRAMs.

28.     ON Semiconductor has demanded that Samsung license the '001 patent for exorbitant sums of money, and has informed Samsung that it will not go away unless Samsung enters into a patent license with ON Semiconductor.

29.     Samsung has informed ON Semiconductor that it will not pay ON Semiconductor the exorbitant sums that it is seeking, and has a reasonable apprehension that ON Semiconductor will file a patent infringement action against Samsung for infringement of the '001 patent if Samsung continues to manufacture, sell use, and/or import certain of its DRAMs. A valid and justiciable controversy has arisen and exists between Samsung and ON Semiconductor within the meaning of 28 U.S.C. § 2201.

5

900002.0003

USCA5 90

30.     Samsung has not directly or indirectly infringed any valid and enforceable claim of the '001 patent, either literally or under the doctrine of equivalents.

31.     The '001 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

32.     A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## Prayer for Relief

WHEREFORE, Samsung prays for judgment as follows:

A.  That it be declared that Samsung has not directly or indirectly infringed any claims of U.S. Patent Nos. 5,563,594, 6,362,644, and 5,361,001 under any subsection of 35 U.S.C. § 271;

B.  That it be declared that U.S. Patent Nos. 5,563,594, 6,362,644, and 5,361,001 are invalid;

C.  That Samsung be awarded its costs and disbursements in this action, including reasonable attorneys' fees; and

D.  That Samsung be awarded such other and further relief as the Court deems just and proper.

6

USCA5 91

## JURY DEMAND

Samsung demands a trial by jury on all issues triable of right by a jury.

Respectfully submitted,

Dated:  November 30, 2006

*John W. Shaw by Andrew A. Lundgren*

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
YOUNG CONAWAY STARGATT
 & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

*Attorneys for Samsung Electronics Co. Ltd.*

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

DB01:2243772.1

900002.0003

USCA5 92

# Exhibit 2

USCA5 93

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>SAMSUNG TELECOMMUNICATIONS<br>  AMERICA GENERAL, L.L.C.,<br>SAMSUNG SEMICONDUCTOR, INC., and<br>SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : <br> : <br> : <br> : <br> : <br> : <br> : | |
| Plaintiffs, | : | Civil Action No. 06-CV-0720 (***) |
| v. | : <br> : | |
| ON SEMICONDUCTOR CORP. | : <br> : | |
| and | : <br> : | |
| SEMICONDUCTOR COMPONENTS<br>INDUSTRIES, LLC, | : <br> : <br> : | |
| Defendants. | : <br> : | |

## AMENDED COMPLAINT

Plaintiffs Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc.

("SEA"), Samsung Telecommunications America General, L.L.C. ("STA"), Samsung

Semiconductor, Inc. ("SSI"), and Samsung Austin Semiconductor L.L.C. ("SAS"), for their

Amended Complaint against Defendants ON Semiconductor Corp. and Semiconductor

Components Industries, LLC ("Defendants"), hereby demand a jury trial and allege as follows:

**Parties**

1.      Plaintiff SEC is a corporation organized under the laws of the Republic of Korea, having its principal place of business at Samsung Main Building, 250, Taepyung-ro 2-ka, Chung-ku, Seoul 100-742 Korea.

2.      Plaintiff SEC is in the business of manufacturing and selling a wide range of products.  Specifically in relation to this action, SEC manufactures and sells dynamic random access memories ("DRAMs").

3.      Plaintiff SEA is a New York corporation having its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660.

4.      Plaintiff STA is a Delaware limited liability company having its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082.

5.      Plaintiff SSI is a California corporation having its principal place of business at 3655 North First Street, San Jose, California 95134.

6.      Plaintiff SAS is a Delaware limited liability company having its principal place of business at 12100 Samsung Boulevard, Austin, Texas 78754.

7.      On information and belief, Defendant ON Semiconductor Corp. is a Delaware corporation with its principal place of business at 5005 East McDowell Road, Phoenix, Arizona 85008.

8.      On information and belief, Defendant Semiconductor Components Industries, LLC is a Delaware limited liability company with its principal place of business at 5005 East McDowell Road, Phoenix, Arizona 85008, is the principal domestic operating subsidiary of Defendant ON Semiconductor Corp., and does business under the name "ON Semiconductor."

9.      Defendants manufacture and sell semiconductor products, including semiconductor components.

2

USCA5 95

**Nature of Action**

10.     In this action, Plaintiffs seek a declaratory judgment of noninfringement and invalidity of four United States Patents pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, and such other relief as this Court deems just and proper.

11.     This is also an action by Plaintiff SEC for patent infringement pursuant to the Patent Laws of the United States, 35 U.S.C. § 1 *et seq.*

**Jurisdiction and Venue**

12.     This Court has subject matter jurisdiction over the subject matter of this action under 28 U.S.C. §§ 2201-02 and 28 U.S.C. §§ 1331 and 1338(a).

13.     Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants reside in this judicial district.

**The Patents**

14.     U.S. Patent No. 5,563,594 (the "'594 patent") entitled "Circuit and Method of Timing Data Transfers" was filed on August 31, 1994 and issued on October 8, 1996. Certificates of Correction issued on April 29, 1997 and March 22, 2005.  The inventors named on the '594 patent are David K. Ford and Bernard E. Weir, III.  A copy of the '594 patent is attached hereto as Exhibit A.

15.     U.S. Patent No. 6,362,644 (the "'644 patent") entitled "Programmable Termination for Integrated Circuits" was filed on August 1, 2000 and issued on March 26, 2002. The inventors named on the '644 patent are Philip A. Jeffery and Stephen G. Shook.  A copy of the '644 patent is attached hereto as Exhibit B.

3

USCA5 96

16.    U.S. Patent No. 5,361,001 (the "'001 patent") entitled "Circuit and Method of Previewing Analog Trimming" was filed on December 3, 1993 and issued on November 1, 1994. The inventor named on the '001 patent is David L. Stolfa.  A copy of the '001 patent is attached hereto as Exhibit C.

17.    U.S. Patent No. 5,000,827 (the "'827 patent") entitled "Method and Apparatus for Adjusting Plating Solution Flow Characteristics at Substrate Cathode Periphery to Minimize Edge Effect" was filed on January 2, 1990 and issued on March 19, 1991.  The inventors named on the '827 patent are Virgil E. Schuster, Reginald K. Asher, Sr., and Bhagubhai D. Patel.  A copy of the '827 patent is attached hereto as Exhibit D.

18.    Defendants have represented that they own the '594, '644, '001, and '827 patents and have the right to sue for infringement.

19.    U.S. Patent No. 5,252,177 (the "'177 patent") entitled "Method for Forming a Multilayer Wiring of a Semiconductor Device" was filed on July 29, 1991 with a foreign application priority date of April 15, 1991 and issued on October 12, 1993.  A Certificate of Correction issued on September 19, 1995.  The inventors named on the '177 patent are Jong-Seo Hong, Jin-Hong Kim, and Jung-In Hong.  A copy of the '177 patent is attached hereto as Exhibit E.

20.    Plaintiff SEC owns the '177 patent with the right to sue for infringement including past infringement.

## Count I
### (Declaratory Judgment Action for a Declaration of
### Noninfringement and Invalidity of U.S. Patent No. 5,563,594)

21.    Paragraphs 1 through 20 are incorporated by reference as if stated fully herein.

4

USCA5 97

22.    Plaintiff SEC filed its original declaratory judgment Complaint in this action on November 30, 2006.

23.    Defendants have accused SEC of infringing the '594 patent through its manufacture, sale, use, and/or importation of certain DRAMs, and have demanded that SEC license the '594 patent for exorbitant sums of money.

24.    Defendants have informed SEC that they will not go away unless SEC enters into a patent license with Defendants, and SEC has informed Defendants that it will not pay Defendants the exorbitant sums they are seeking.

25.    Because SEC had a reasonable apprehension that Defendants would file a patent infringement action against it for infringement of the '594 patent if SEC continued to manufacture, sell, use, and/or import certain of its DRAMs, and because an actual and justiciable controversy had therefore arisen between SEC and Defendants within the meaning of 28 U.S.C. § 2201, SEC filed its declaratory judgment Complaint in this action on November 30, 2006.

26.    Thereafter, on December 4, 2006, Defendants made good on threats of litigation they made prior to SEC's filing of the original Complaint in this action, and filed their own action in the United States District Court for the Eastern District of Texas against Plaintiff SEC and its affiliated companies SEA, STA, SSI, and SAS for infringement of the '594 patent.

27.    An actual and justiciable controversy within the meaning of 28 U.S.C. § 2201 exists between Plaintiffs and Defendants.

28.    Plaintiffs have not directly or indirectly infringed any valid and enforceable claim of the '594 patent, either literally or under the doctrine of equivalents.

USCA5 98

29.    The '594 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

30.    A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## Count II
### (Declaratory Judgment Action for a Declaration of Noninfringement and Invalidity of U.S. Patent No. 6,362,644)

31.    Paragraphs 1 through 30 are incorporated by reference as if stated fully herein.

32.    Plaintiff SEC filed its original declaratory judgment Complaint in this action on November 30, 2006.

33.    Defendants have accused SEC of infringing the '644 patent through its manufacture, sale, use, and/or importation of certain DRAMs, and have demanded that SEC license the '644 patent for exorbitant sums of money.

34.    Defendants have informed SEC that they will not go away unless SEC enters into a patent license with Defendants, and SEC has informed Defendants that it will not pay Defendants the exorbitant sums they are seeking.

35.    Because SEC had a reasonable apprehension that Defendants would file a patent infringement action against it for infringement of the '644 patent if SEC continued to manufacture, sell, use, and/or import certain of its DRAMs, and because an actual and justiciable controversy had therefore arisen between SEC and Defendants within the meaning of 28 U.S.C. § 2201, SEC filed its declaratory judgment Complaint in this action on November 30, 2006.

36.    Thereafter, on December 4, 2006, Defendants made good on threats of litigation they made prior to SEC's filing of the original Complaint in this action, and filed their own

6

USCA5 99

action in the United States District Court for the Eastern District of Texas against Plaintiff SEC and its affiliated companies SEA, STA, SSI, and SAS for infringement of the '644 patent.

37.     An actual and justiciable controversy within the meaning of 28 U.S.C. § 2201 exists between Plaintiffs and Defendants.

38.     Plaintiffs have not directly or indirectly infringed any valid and enforceable claim of the '644 patent, either literally or under the doctrine of equivalents.

39.     The '644 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

40.     A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

**Count III**
**(Declaratory Judgment Action for a Declaration of**
**Noninfringement and Invalidity of U.S. Patent No. 5,361,001)**

41.     Paragraphs 1 through 40 are incorporated by reference as if stated fully herein.

42.     Plaintiff SEC filed its original declaratory judgment Complaint in this action on November 30, 2006.

43.     Defendants have accused SEC of infringing the '001 patent through its manufacture, sale, use, and/or importation of certain DRAMs, and have demanded that SEC license the '001 patent for exorbitant sums of money.

44.     Defendants have informed SEC that they will not go away unless SEC enters into a patent license with Defendants, and SEC has informed Defendants that it will not pay Defendants the exorbitant sums they are seeking.

USCA5 100

45.     Because SEC had a reasonable apprehension that Defendants would file a patent infringement action against it for infringement of the '001 patent if SEC continued to manufacture, sell, use, and/or import certain of its DRAMs, and because an actual and justiciable controversy had therefore arisen between SEC and Defendants within the meaning of 28 U.S.C. § 2201, SEC filed its declaratory judgment Complaint in this action on November 30, 2006.

46.     Thereafter, on December 4, 2006, Defendants made good on threats of litigation they made prior to SEC's filing of the original Complaint in this action, and filed their own action in the United States District Court for the Eastern District of Texas against Plaintiff SEC and its affiliated companies SEA, STA, SSI, and SAS for infringement of the '001 patent.

47.     An actual and justiciable controversy within the meaning of 28 U.S.C. § 2201 exists between Plaintiffs and Defendants.

48.     Plaintiffs have not directly or indirectly infringed any valid and enforceable claim of the '001 patent, either literally or under the doctrine of equivalents.

49.     The '001 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

50.     A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

**Count IV**
**(Declaratory Judgment Action for a Declaration of**
**Noninfringement and Invalidity of U.S. Patent No. 5,000,827)**

51.     Paragraphs 1 through 50 are incorporated by reference as if stated fully herein.

52.     On December 4, 2006, after Plaintiff SEC filed its original declaratory judgment Complaint in this action on November 30, 2006, Defendants filed an action against Plaintiffs for

8

USCA5 101

infringement of the '827 patent in the United States District Court for the Eastern District of Texas.

53.    An actual and justiciable controversy exists between Plaintiffs and Defendants within the meaning of 28 U.S.C. § 2201.

54.    Plaintiffs have not directly or indirectly infringed any valid and enforceable claim of the '827 patent, either literally or under the doctrine of equivalents.

55.    The '827 patent is invalid because of its failure to comply with one or more of the requirements of the patent laws of the United States, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

56.    A judicial declaration of noninfringement and invalidity is necessary and appropriate in order to resolve this controversy.

## Count V
### (Patent Infringement of U.S. Patent No. 5,252,177)

57.    Paragraphs 1 through 56 are incorporated by reference as if stated fully herein.

58.    The '177 patent is valid and enforceable.

59.    On information and belief, Defendants have infringed at least one claim of the '177 patent under one or more subsections of 35 U.S.C. § 271 through the manufacture, use, sale, offer for sale, and/or importation into the United States of certain of their products.

60.    Plaintiff SEC has been damaged by Defendants' infringement of the '177 patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

USCA5 102

### Prayer for Relief

WHEREFORE, Plaintiffs pray for judgment as follows:  That it be declared that Plaintiffs have not directly or indirectly infringed any claims of U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and 5,000,827 under any subsection of 35 U.S.C. § 271;

A. That it be declared that U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and 5,000,827 are invalid;

B. That Defendants have infringed U.S. Patent No. 5,252,177;

C. That Defendants, their officers, agents, and employees, and those persons in active concert or participation with any of them, and their successors and assigns be permanently enjoined from infringement, inducement of infringement, and contributory infringement of U.S. Patent No. 5,252,177, including but not limited to making, importing, using, offering for sale, or selling any devices or systems that infringe, or using processes that infringe, U.S. Patent No. 5,252,177 before the expiration of the patent;

D. That Plaintiff SEC be awarded all damages adequate to compensate it for Defendants' infringement of U.S. Patent No. 5,252,177, such damages to be determined by a jury and, if necessary to adequately compensate SEC for the infringement, an accounting, and that such damages be awarded to SEC with prejudgment interest;

E. That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that Plaintiffs be awarded their attorneys' fees, costs, and expenses that they incur prosecuting this action; and

F. That Plaintiffs be awarded such other and further relief as the Court deems just and proper.

USCA5 103

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable of right by a jury.

Respectfully submitted,

_(signature)_

Josy W. Ingersoll (#1088)
*jingersoll@ycst.com*
John W. Shaw (#3362)
*jshaw@ycst.com*
Andrew A. Lundgren (#4429)
*alundgren@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

*Attorneys for Plaintiffs Samsung Electronics
Co., Ltd., Samsung Electronics America, Inc.,
Samsung Telecommunications America General,
L.L.C., Samsung Semiconductor, Inc., and
Samsung Austin Semiconductor, L.L.C.*

Dated:  December 21, 2006

11

USCA5 104

# Exhibit 3

USCA5 105

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS   AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : : : : : : : | |
| Plaintiffs, | : : | Civil Action No. 06-CV-0720 (***) |
| v. | : : | |
| ON SEMICONDUCTOR CORP. | : : | |
| and | : : | |
| SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, | : : : | |
| Defendants. | : : | |

**PLAINTIFFS' MOTION TO ENJOIN DEFENDANTS
FROM PURSUING A DUPLICATIVE TEXAS ACTION**

Plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung

Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung

Austin Semiconductor, L.L.C. hereby move this Court, pursuant to the first-filed rule, to enjoin

Defendants ON Semiconductor Corp. and Semiconductor Components Industries, LLC from

pursuing, prosecuting, or otherwise proceeding with a duplicative action filed by Defendants in

the United States District Court for the Eastern District of Texas, Case. No. 6:06 cv 523.  The

USCA5 106

bases of this motion are fully set forth in Plaintiffs' opening brief and the supporting declaration of Patrick Muir, filed contemporaneously herewith.

WHEREFORE, Plaintiffs respectfully request that the Court grant their motion to enjoin.

Respectfully submitted,

Josy W. Ingersoll (No. 1088)
*jingersoll@ycst.com*
John W. Shaw (No. 3362)
*jshaw@ycst.com*
Andrew A. Lundgren (No. 4429)
*alundgren@ycst.com*
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

*Attorneys for Plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, L.L.C.*

Dated:  December 21, 2006

USCA5 107

**REDACTED**

USCA5 108

# Exhibit 4

USCA5 109

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

# Form 10-K

(Mark One)

☑ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES AND EXCHANGE ACT OF 1934**

For the fiscal year ended December 31, 2005

**Or**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from        to

**000-30419**
*(Commission File Number)*

# ON Semiconductor Corporation
*(Exact name of registrant as specified in its charter)*

| | |
|---|---|
| **Delaware** | **36-3840979** |
| *(State or other jurisdiction of incorporation or organization)* | *(I.R.S. Employer Identification No.)* |

**5005 E. McDowell Road**
**Phoenix, AZ 85008**
**(602) 244-6600**
*(Address and telephone number of principal executive offices)*

**Securities Registered Pursuant to Section 12(b) of the Act:**
None

**Securities Registered Pursuant to Section 12(g) of the Act:**
**Common stock, par value $0.01 per share**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.  Yes ☑  No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.  Yes ☐  No ☑

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes ☑  No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained therein, and will not be contained to the best of registrant's knowledge in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.  Yes ☑  No ☐

Indicate by check mark whether the Registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one): Large accelerated filer ☐   Accelerated filer ☑   Non-accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).  Yes ☐  No ☑

The aggregate market value of voting and non-voting common equity held by non-affiliates of the registrant was $651,085,418 as of July 1, 2005, based on the closing sale price of such stock on the Nasdaq National Market on that date. Shares held by executive officers, directors and persons owning directly or indirectly more than 10% of the outstanding common stock have been excluded from the preceding number because such persons may be deemed to be affiliates of the registrant.

The number of shares of the registrant's common stock outstanding at February 10, 2006 was 312,027,864.

### Documents Incorporated by Reference

Portions of the Proxy Statement for the Annual Meeting of Stockholders to be held on May 17, 2006 are incorporated by reference into Part II and Part III hereof.

USCA5 110

PART I

Item 1.  *Business*

**Business Overview**

ON Semiconductor Corporation and its subsidiaries ("we") are a global supplier of power and data management semiconductors and standard semiconductor components. We design, manufacture and market an extensive portfolio of semiconductor components that addresses the design needs of sophisticated electronic systems and products. Our power management semiconductor components distribute and monitor the supply of power to the different elements within a wide variety of electronic devices. Our data management semiconductor components provide high-performance clock management and data flow management for precision computing and communications systems. Our standard semiconductor components serve as "building block" components within virtually all electronic devices.

We serve a broad base of end-user markets, including computing, automotive electronics, consumer electronics, industrial electronics, wireless communications and networking. Applications for our products in these markets include portable electronics, computers, game stations, servers, automotive and industrial automation control systems, routers, switches, storage-area networks and automated test equipment.

We have four main product lines: power management and standard analog devices, metal oxide semiconductor (MOS) power devices, high frequency clock and data management devices and standard components. Our extensive portfolio of devices enables us to offer advanced integrated circuits and the "building block" components that deliver system level functionality and design solutions. Our product portfolio increased from approximately 26,000 products in 2004 to approximately 30,800 products in 2005, due to the introduction of additional lead-free products, and we shipped approximately 27.9 billion units in 2005. We specialize in micro packages, which offer increased performance characteristics while reducing the critical board space inside today's ever shrinking electronic devices. We believe that our ability to offer a broad range of products provides our customers with single source purchasing on a cost-effective and timely basis.

Our reportable segments, under generally accepted accounting principles, are aligned internally as the Integrated Power Group and the Analog Products Group. In general, the power management and standard analog product line as well as the high frequency clock and data management product line are aligned under the Analog Products Group, while the MOS power devices product line and the standard components product line are aligned under the Integrated Power Group. Our discussion of customers, trends and competitive conditions can generally be aligned accordingly. Our standard logic product unit, however, whose results are included in the Analog Products Group segment, is part of our standard components product line. The standard logic product unit had revenues of approximately $107.1 million in 2005 and $89.7 million in 2004. In instances where the characteristics of the standard components product line are significantly impacted by the standard logic product unit, these impacts are addressed separately herein. For required disclosures regarding our reportable segments, see Note 18, "Segment Information" of the notes to our audited consolidated financial statements included elsewhere in this report.

We have approximately 203 direct customers worldwide, and we also service approximately 328 significant original equipment manufacturers indirectly through our distributor and electronic manufacturing service provider customers. Our direct and indirect customers include: (1) leading original equipment manufacturers in a broad variety of industries, such as Intel, Motorola, Nokia, Philips, Siemens and Sony; (2) electronic manufacturing service providers, such as Flextronics, Jabil and Solectron; and (3) global distributors, such as Arrow, Avnet, EBV Elektronik, Future, Solomon Enterprise and World Peace.

We currently have major design operations in Arizona, Rhode Island, Texas, China, the Czech Republic, Korea and France, and we currently operate manufacturing facilities in Arizona, China, the Czech Republic, Japan, Malaysia, the Philippines and Slovakia. We ceased manufacturing operations at our Rhode Island

3

USCA5 111

manufacturing facility in the second quarter of 2005 and exited the facility in the fourth quarter of 2005. The Rhode Island manufacturing facility is currently being marketed for sale. In the second quarter of 2005, we announced the transfer of wafer fabrication manufacturing operations from our front end fabrication facility in Malaysia to Arizona. We plan to complete this transfer by the fourth quarter of 2006 and to maintain the fabrication facility in Malaysia for other manufacturing processes. The transfer from Malaysia to Arizona did not impact our assembly and test operations in Malaysia. We also plan to sell certain unused portions of our property at our corporate headquarters in Arizona and use some of the proceeds from the sale to upgrade portions of our corporate headquarters. We will maintain our headquarters offices and existing manufacturing facilities on the portions of the property that are not for sale.

Company History and Capital Structure

Formerly known as the Semiconductor Components Group of the Semiconductor Products Sector of Motorola, Inc., we were a wholly-owned subsidiary of Motorola prior to August 4, 1999. We continue to hold, through direct and indirect subsidiaries, substantially all the assets and operations of the Semiconductor Components Group of Motorola's Semiconductor Products Sector. On August 4, 1999, we were recapitalized (the "recapitalization") and certain related transactions were effected pursuant to an agreement among us, our principal domestic operating subsidiary, Semiconductor Components Industries, LLC, Motorola and affiliates of Texas Pacific Group ("TPG"). At the time of the recapitalization, Motorola agreed to provide us with transition and manufacturing services in order to facilitate our transition to a stand-alone company independent of Motorola. As of December 31, 2003, all transition and manufacturing services related to the recapitalization agreement had been fulfilled.

On April 3, 2000, we acquired all of the outstanding capital stock of Cherry Semiconductor Corporation for $253.2 million in cash (including acquisition related costs), which we financed with cash on hand and borrowings of $220.0 million under our senior bank facilities. Cherry Semiconductor Corporation, which we have renamed Semiconductor Components Industries of Rhode Island, Inc., designs and manufactures analog and mixed signal integrated circuits for the power management and automotive markets.

On May 3, 2000, we completed the initial public offering of our common stock, selling 34.5 million shares with an issue price of $16 per share. Net proceeds from the initial public offering (after deducting issuance costs) were approximately $514.8 million. The net proceeds were used to redeem all outstanding preferred stock (including accrued dividends), redeem a portion of the senior subordinated notes and prepay a portion of the loans outstanding under the senior bank facilities.

On September 7, 2001, we obtained $100.0 million ($99.2 million, net of issuance costs) through an equity investment by an affiliate of Texas Pacific Group, our principal shareholder. In this transaction, we issued 10,000 shares of mandatorily redeemable cumulative convertible preferred stock. This investment was required because we were not in compliance with certain minimum interest expense coverage ratio and leverage ratio covenants under our senior bank facilities. In November 2005, we entered into a Conversion and Termination Agreement with TPG to convert our redeemable convertible preferred stock into approximately 49.4 million shares of our common stock. To induce the conversion, we issued approximately 3.9 million additional shares of our common stock to TPG. Following the conversion, none of the authorized shares of our preferred stock remained outstanding. (See Note 9 "Redeemable Preferred Stock" of the notes to our audited consolidated financial statements and "Management's Discussion and Analysis of Financial Condition and Results of Operations," in each case included elsewhere in this report).

4

USCA5 112

Although we have production at several locations, we have initiated process improvements and selective low cost capital acquisitions that we expect will increase our overall capacity. Our profitability enhancement programs will continue to focus on:

- consolidation of manufacturing sites to improve economies of scale;

- transfer of production to lower cost regions;

- increase in die manufacturing capacity in a cost-effective manner by moving production from 4" to 6" wafers and increasing the number of die per square inch;

- reduction of the number of new product platforms and process flows; and

- focusing production on profitable product lines.

## Return to Profitability

In the third quarter of 2004 we returned to profitability after 14 consecutive quarters of net losses. We were also profitable during all four quarters of 2005. Our net income for the year ended December 31, 2005 was $100.6 million, and was the highest annual net income since we began as a company after the recapitalization in 1999. This return to profitability was the result of increased demand for our products and cost savings from profitability enhancement programs and restructuring programs, as well as debt refinancing opportunities that have reduced our interest costs.

## Products and Technology

The following table provides information regarding our primary product lines:

| | Power Management and Standard Analog | MOS Power Devices | High Frequency Clock and Data Management | Standard Components (1) |
|---|---|---|---|---|
| *Revenues* | | | | |
| 2005 | $373.2 million | $223.2 million | $80.3 million | $583.9 million |
| 2004 | $381.3 million | $235.0 million | $90.4 million | $560.2 million |
| 2003 | $333.4 million | $152.5 million | $80.5 million | $502.7 million |
| **Primary product function** | Power control and regulation in portable and high-power applications. | Power conditioning and switching in a broad range of applications. | Interfacing and synchronizing functions, such as interconnecting and routing (moving) electronic signals within electronic systems. | Power control, interface and data protection in a broad range of products. |
| **Sample applications** | Intelligent power management and battery protection in portable applications, desktop computers and automotive electronics. | Power management for computers, automobiles, servers and battery protection in portable applications. | Fast routing of signals used in communication and networking switches, high-end servers, high-performance workstations, storage networks and precision measurement test systems. | Power management and interface elements for computer, consumer and portable equipment and automotive control systems. |
| **Types of product** | Amplifiers, comparators, voltage regulators and references, AC-DC /DC-DC converters. | Ignition insulated gate bipolar transistors (IGBT's), power MOS field effect transistors (MOSFET's). | Clock distribution, drivers/receivers, multiplexers, phase detectors, prescalers. | MicroIntegration™, MiniGate™ logic, small signal transistors, zeners, rectifiers, standard logic integrated circuits, bipolar power transistors, small signal diodes and thyristors. |

6

USCA5 113



**ON Semiconductor**®

Contact Us | Company | Inv

Selection. Service. Support.
Power Solutions from ON Semiconductor

○ Part =/Keyword   ○ Cros

HOME        PRODUCTS        DESIGN SUPPORT        QUALITY        MY ON

> Leadership
> Company News
> Investor Relations
> Careers
> **Global Locations**
  > Americas
  > Asia Pacific
  > Europe
  Locate Sales Support
Corporate Awards
Environmental Health & Safety
Intellectual Property

Home >  Company >  **Global Locations**

## Global Locations

Worldwide, ON Semiconductor employs more than 8,000 people with 1,300 working in the U.S. Headquarte in Phoenix, Arizona, USA, the company owns and operates several development centers and several manufacturing facilities located in the U.S., Europe and Asia.

**Development Centers**
U.S.:Austin, TX,
       Chandler and Phoenix, AZ,
       East Greenwich, RI
France: Toulouse
Czech Republic: Roznov
China: Hong Kong and Shanghai
Korea: Seoul
Slovak Republic: Bratislava

**Manufacturing Facilities**
US: Arizona, Oregon
China: Leshan
Czech Republic: Roznov
Slovak Republic: Piestany
Japan: Aizu
Philippines: Carmona
Malaysia: Seremban

Copyright © 1999-2006 ON Semiconductor

Privacy Policy | Terms of Use | Site Map | Careers | Contact Us | Terms and Conditions

USCA5 114

# Exhibit 5

USCA5 115

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2005 WL 2861476 (E.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

**C**

**Briefs and Other Related Documents**

AmberWave Systems Corp. v. Intel Corp.E.D.Tex.,2005.Only the Westlaw citation is currently available.

United States District Court,E.D. Texas, Marshall Division.

AMBERWAVE SYSTEMS CORPORATION

Plaintiff

v.

INTEL CORPORATION Defendant

**No. 2:05-CV-321.**

Nov. 1, 2005.

Sidney Calvin Capshaw, III, Brown McCarroll, Thomas John Ward, Jr., Law Office of T. John Ward Jr. PC, Longview, TX, Amir A. Naini, Christopher A. Vanderlaan, David I. Gindler, Jason G. Sheasby, Morgan Chu, Irell & Manella LLP, Los Angeles, CA, Franklin Jones, Jr., Jones & Jones, Marshall, TX, Otis W. Carroll, Jr., Ireland Carroll & Kelley, PC, Tyler, TX, for Plaintiff.

George M. Newcombe, Harrison J. Frahn, IV, Jeffrey E. Ostrow, Patrick E. King, Simpson Thacher & Bartlett LLP, Palo Alto, CA, Harry Lee Gillam, Jr., Gillam & Smith, L.L.P., Marshall, TX, Henry B. Gutman, Jeremy S. Pitcock, Simpson Thacher & Bartlett, New York, NY, John Frederick Bufe, Michael Edwin Jones, Potter Minton, Tyler, TX, for Defendant.

MEMORANDUM OPINION AND ORDER

DAVIS, J.

**\*1** Before the Court is Intel's Motion to Transfer (Docket No. 17). Having considered the parties' written submissions, the Court GRANTS the motion.

BACKGROUND

AmberWave Systems Corporation brought this suit on July 15, 2005 accusing Intel Corporation of infringing U.S. Patent No. 6,881,632. Two months earlier, on May 17, 2005, Intel brought a declaratory judgment action against AmberWave in Delaware seeking a judgment that Intel does not infringe Am-

berWave's U.S. Patent No. 6,831,292. The '632 patent teaches a method of constructing inverters and other circuits using strained semiconductor transistors. The '292 patent teaches a method minimizing or eliminating the impurities in the semiconductor material while fabricating individual transistors. Thus, the patents are related to different scientific fields in the same area of technology. AmberWave and Intel are the only two entities involved in both litigations, and the same products are accused in both litigations.

Intel moves the Court to transfer this case to the Delaware court where the declaratory judgment action is pending. Intel claims the Delaware action is the first-filed action and therefore, under the first-to-file rule, this Court should transfer this action to the Delaware court where the declaratory judgment action is pending.

APPLICABLE LAW

When overlapping suits are filed in multiple federal courts, each court must decide whether to keep the case, or whether interests of judicial economy favor transferring the case to a sister court so all issues can be resolved in the same forum. *See Tex. Instruments, Inc. v. Micron Semiconductor,* 815 F.Supp. 994, 997-98 (E.D.Tex.1993). "The general rule favors the forum of the first-filed action" as the forum for resolving all the issues in dispute. *Genetech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed.Cir.1993). Exceptions to this rule though "are not rare, and are made when justice or expediency requires." *Id.*

The first-to-file rule applies when the two actions involve closely related questions or subject matter or the core issues substantially overlap, but the core issues do not need to be identical. *Texas Instruments Inc.,* 815 F.Supp. at 997. A subsequent action that does not have complete identity of the parties can still substantially overlap on the substantive issues of the first-filed action, warranting dismissal or transfer. *Superior Sav. Ass'n v. Bank of Dallas,* 705 F.Supp. 326, 328-29 (N.D.Tex.1989); *see Save Power Ltd. v. Sintek Fin. Corp.,* 121 F.3d 947, 950 (5th Cir.1997).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 2861476 (E.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

Once it has been proven that the two actions might substantially overlap, the court with the second-filed action transfers the case to the court where the first-filed action is pending. The court of the first-filed action then decides if the cases actually do substantially overlap and require consolidation. *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599 (5th Cir.1999). The underlying policies supporting the first-to-file rule are comity and the orderly administration of justice. *Superior Sav. Ass'n,* 705 F.Supp. at 331.

### ANALYSIS

**\*2** It is undisputed that Intel filed the Delaware action two months before AmberWave brought suit in this Court. The parties do dispute whether the two actions substantially overlap such that the first-to-file rule applies. Substantial overlap does not require that the core issues be identical, but that the two actions will involve closely related questions or subject matter. *See Texas Instruments Inc.,* 815 F.Supp. at 997. The patents address different scientific aspects, mechanical engineering and electrical engineering, of semiconductor transistors. Thus the patents do not raise identical issues in the two actions, but the subject matter is closely related. Although not required for substantial overlap, the same parties are involved in both actions. Additionally, the same products are accused in both actions. Importantly, the Honorable Kent A. Jordan, presiding over the Delaware action, thought the cases would involve overlapping issues:
You guys [AmberWave] have created now a conflict that probably shouldn't have existed by suing the same party in another district. Now, maybe you got a good reason for that and it's just not something I'm aware of but is certainly does, on the face of it, create the potential for conflicting discovery rules and schedules and that is a problem. That is a real problem.

*Intel Corp. v. AmberWave Sys. Corp.,* No. 05-301, Telephonic Conference, September 7, 2005. Overlapping discovery would be much less of a concern for either court if the technologies at issue and products in dispute were unrelated. Based on these considerations, the two actions do involve closely related questions and subject matter such that their core issues

substantially overlap.

AmberWave argues that the first-to-file rule should not apply because Intel brought its declaratory judgment action in a race to the courthouse to gain a strategic advantage while the parties were involved in good faith negotiations. The Court disagrees with AmberWave's perception of the impetus for the declaratory judgment action. AmberWave's evidence, a letter from Intel's counsel to AmberWave's counsel accompanying a copy of the complaint, demonstrates that Intel filed suit after "AmberWave chose to escalate the matter by placing Intel on 'formal notice' [of infringement] and in light of the serious nature of the allegations." Given that AmberWave had escalated the dispute between the parties, it is not clear that the parties were negotiating in such good faith that Intel filed suit only to gain an upper hand in the ongoing negotiations. Thus, this argument does not defeat the application of the first-to-file rule. Additionally, AmberWave has not challenged the propriety of the Delaware action in the Delaware court "in order to facilitate a prompt adjudication of the patent."

AmberWave also argues that convenience weighs against transfer. If this Court retains this action, there will be two complex and simultaneous actions between the same parties over related technologies and involving the same accused products. Consequently, justice and expediency do not outweigh application of the first-to-file rule. Accordingly, the Court applies the first-to-file rule and transfers the case to Judge Jordan's docket in the District of Delaware.

### CONCLUSION

**\*3** Having found that the first-to-file rule applies, the Court GRANTS Intel's motion and ORDERS the case transferred to Judge Jordan in the District of Delaware.
So ORDERED.

E.D.Tex.,2005.
AmberWave Systems Corp. v. Intel Corp.
Not Reported in F.Supp.2d, 2005 WL 2861476 (E.D.Tex.)

Briefs and Other Related Documents (Back to top)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00449-JJF    Document 34-20    Filed 07/19/2007    Page 4 of 28

Not Reported in F.Supp.2d, 2005 WL 2861476 (E.D.Tex.)
**(Cite as: Not Reported in F.Supp.2d)**

• 2005 WL 2666661 (Trial Motion, Memorandum and Affidavit) Reply in Support of Intel's Motion to transfer (Sep. 26, 2005) Original Image of this Document (PDF)

• 2005 WL 2666660 (Trial Motion, Memorandum and Affidavit) Plaintiff Amberwave Systems Corporation's Opposition to Defendant Intel Corporation's Motion to Transfer (Sep. 19, 2005) Original Image of this Document (PDF)

• 2005 WL 2667071 (Trial Pleading) Intel Corporation's Answer (Sep. 2, 2005) Original Image of this Document (PDF)

• 2005 WL 3681172 (Trial Pleading) Amberwave's Complaint for Patent Infringement and Jury Demand (Jul. 15, 2005) Original Image of this Document (PDF)

• 2:05cv00321 (Docket) (Jul. 15, 2005)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 118

Slip Copy                                                                                         Page 1
Slip Copy, 2006 WL 2927307 (E.D.Pa.)
**(Cite as: Slip Copy)**

Briefs and Other Related Documents
Dorman Products, Inc. v. Pontiac Coil, Inc.E.D.Pa.,2006.Only the Westlaw citation is currently available.

United States District Court,E.D. Pennsylvania.
DORMAN PRODUCTS, INC.
v.
PONTIAC COIL, INC.
**C.A. No. 06-3157.**

Oct. 10, 2006.

Anthony S. Volpe, John J. O'Malley, Ryan William O'Donnell, Volpe & Koenig PC, Philadelphia, PA, for Dorman Products, Inc.
Harrie R. Samaras, Benjamin E. Leace, Ratner Prestia, Valley Forge, PA, Kevin Alan Keeling, Ratner Prestia, Berwyn, PA, for Pontiac Coil, Inc.

*MEMORANDUM OPINION AND ORDER*
GOLDEN, J.
**\*1** The Plaintiff brought this action, seeking a declaratory judgment that Defendant's "686 patent" is invalid. The following day, Defendant filed an action against the Plaintiff in the United States District Court for the Eastern District of Michigan for patent infringement. Presently before the Court are the motions of the Defendant to dismiss this action, or, in the alternative, to stay this action pending resolution of the Michigan action, the motion of the Defendant to dismiss for lack of personal jurisdiction and Plaintiff's motion to enjoin Defendant from proceeding with its patent infringement action in Michigan. For the reasons which follow, the motion to dismiss is granted and the remaining motions are denied as moot.

The relevant facts for purposes of the motions before the Court are as follows: On April 19, 2006, counsel for Defendant Pontiac Coil, Inc. ("Pontiac") sent a cease and desist letter to the President of Plaintiff R & B, Inc. (now Dorman), alleging patent infringement. See Exhibit A to Defendant's Response to Plaintiff's Motion to Enjoin. In the letter, Pontiac's counsel recommended that Dorman engage patent counsel to review the allegations. On April 27, 2006, Dorman's General Counsel responded by letter stating that he had referred the matter to outside intellectual property counsel for review and further stating that "we will respond more fully upon completion of that review." Exhibit B. Apparently, Dorman's General Counsel did not respond. As a result, on July 13, 2006, Pontiac's counsel sent a letter to Dorman's General Counsel along with a draft complaint for patent infringement to be filed in the United States District Court for the Eastern District of Michigan. The letter stated that Pontiac had waited nearly three months for a reply to its previous cease and desist letter. The letter concluded by stating:
We enclose herewith a copy of the Complaint which we have been instructed to file in the United States District Court for the Eastern District of Michigan. Please advise if you are willing to accept service of the Complaint on behalf of the company.

Exhibit C.

On July 18, 2006, a day or two after receiving the draft complaint, Dorman filed this action, seeking a declaratory judgment of patent invalidity. The next day, Defendant filed the previously forwarded draft complaint in the Eastern District of Michigan.

In its motion to dismiss, Pontiac argues that although this action was filed first, it must nevertheless be dismissed because by filing this action only after it received a draft complaint, Dorman was engaging in forum shopping and acting in bad faith. Dorman denies that it had any ulterior motives in filing this declaratory judgment action and argues that the first-filed rule mandates that this court retain jurisdiction over this declaratory judgment action . FN1

> FN1. The Michigan action was filed only one day after this action was filed. Thus, to the extent Dorman contends this action was filed first, it was filed only one day ahead of the Michigan action.

The question of whether a patent infringement suit, like this one, should yield to a previously filed de-

claratory action asserting the same patent rights "raises the issue of national uniformity in patent cases," and, therefore, requires application of Federal Circuit case law. *Genentech, Inc. v. Eli Lilly & Co., 998 F.2d 931, 937 (Fed Cir.1993)*. The Federal Circuit applies the "general rule whereby the forum of the first-filed case is favored, unless consideration of judicial economy, and the just and effective disposition of disputes, require otherwise." *Id.* Exceptions to the general rule are not rare. However, there "must be sound reason that would make it unjust or inefficient to continue the first-filed action. Such reason may be the convenience and availability of witnesses, or absence of jurisdiction over necessary or desirable parties, or the possibility of consolidation with related litigation, or considerations relating to the real party in interest." *Id.* (citing *Kahn v. General Motrs Corp., 889 F.2d 1078, 1081-83 (Fed.Cir.1989)*).

**\*2** In arguing that an exception to the first-to-file rule applies, Pontiac directs our attention to *Serco Services Co. v. Kelley Co., 51 F.3d 1037 (Fed Cir.1995)*. In *Serco,* Kelley Company, Inc. sent Serco Services Company, Inc. a letter asserting that Serco was infringing Kelley's patent. The letter demanded a reply and threatened legal action. Serco failed to reply, but Kelley did not file a patent infringement action. Several months later, Kelley sent Serco a second letter, dated September 8, 1993, demanding that Serco respond by September 20 or face a patent infringement suit. On September 20, Serco responded by letter denying Kelley's infringement claims. Meanwhile, on September 17, Serco had filed an action in the District Court for the Northern District of Texas, seeking a declaration that it was not infringing Kelley's patent. On September 20, Kelley filed a patent infringement action against Serco in the District Court for the Eastern District of Wisconsin. Kelley later filed a motion in the federal court in Texas to dismiss the Texas declaratory judgment action, arguing that the Texas action was filed in anticipation of Kelley's infringement action, and that convenience factors favored litigating the parties' dispute in Wisconsin. The court agreed and dismissed the Texas declaratory judgment action.

On appeal, the Federal Circuit ruled that the district court had not abused its discretion in dismissing the Texas action. The Court noted the general rule that the first-filed action is normally preferred. *Serco, 51 F.3d at 1039*. In *Serco,* however, two factors supported dismissing the first-filed suit. First, the district court's determination that the Texas action was anticipatory was a factor weighing in favor of its dismissal, even though the Court noted that the impact of forum shopping in patent cases has been tempered by the existence of the Court of Appeals for the Federal Circuit. *Id.* at 1040. Independently, however, the Federal Circuit found that the presence of convenience factors favoring the Wisconsin action was "sound reason" to dismiss the first-filed Texas action. The Court noted that all of Kelley's witnesses were located in Wisconsin, while Serco's witnesses were scattered throughout the country. Also, while some of Serco's documents were located at its Canadian headquarters, all of Kelley's documents were located in Wisconsin. The presence of these convenience factors further supported the court's decision to dismiss the first-filed Texas action. *Id.*

The circumstances in this case are indeed strikingly similar to those in *Serco,* wherein the Federal Circuit employed the anticipatory filing exception to the first-filed rule. As in *Serco,* Pontiac's counsel sent Dorman a letter asserting that Dorman was infringing on Pontiac's patent. Although Dorman's General Counsel replied that he would respond upon further review by outside intellectual property counsel, Dorman's General counsel never did respond. Pontiac, like Kelley, did not file a patent infringement action. Several months later, Pontiac, like Kelley, sent Dorman a second letter along with a draft complaint for patent infringement. The letter inquired whether Dorman would accept service of the complaint. Instead of responding, Dorman filed this action, seeking a declaratory judgment of patent invalidity.

**\*3** Dorman could have filed this declaratory judgment action in April when it initially received Pontiac's cease and desist letter. Instead it chose to file the declaratory judgment action immediately after it received a copy of Pontiac's proposed patent infringement complaint. Having received the draft, Dorman had to realize litigation was imminent. Indeed, Pontiac filed its patent infringement action only one day after Dorman filed this declaratory judgment action.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Under these circumstances, as in *Serco,* the Court concludes that Plaintiff's declaratory judgment action was filed in anticipation of Defendant's patent infringement action in Michigan.

In addition, the Court has serious doubts whether it would have personal jurisdiction over Michigan-based Pontiac. Indeed, Pontiac has raised this issue in its motion to dismiss for lack of personal jurisdiction. Dorman has requested time to take discovery on this issue. However, Dorman does admit that it sells its products in Michigan. *See* Exhibit F at p. 16. Therefore, any concerns about personal jurisdiction can be alleviated by deferring to the Michigan action.

For the foregoing reasons, the Court finds that special exceptions to the first-filed rule are prevalent in this case, most notably the anticipatory filing exception. Accordingly, the Court will dismiss this action without prejudice to Plaintiff asserting its patent invalidity claims in Michigan.

*ORDER*

The motion of the Defendant to dismiss [Doc. # 9] is GRANTED.

This case is DISMISSED WITHOUT PREJUDICE to Plaintiff reasserting its patent invalidity claims in the action pending in the United States District Court for the Eastern District of Michigan.

The motion of the Plaintiff to enjoin [Doc. # 12] is DENIED as moot.

The motion of the Defendant to dismiss based on lack of personal jurisdiction [Doc. # 13] is DENIED as moot.

The motion of the Defendant for leave to file a reply brief [Doc. # 17] is DENIED as moot.

IT IS SO ORDERED.

E.D.Pa.,2006.
Dorman Products, Inc. v. Pontiac Coil, Inc.
Slip Copy, 2006 WL 2927307 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2:06cv03157 (Docket) (Jul. 18, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 121

Slip Copy                                                                                              Page 1

Slip Copy, 2006 WL 3358896 (S.D.Tex.)

**(Cite as: Slip Copy)**

Briefs and Other Related Documents

Jelec USA, Inc. v. Safety Controls, Inc.S.D.Tex.,2006.Only the Westlaw citation is currently available.

United States District Court,S.D. Texas,Houston Division.

JELEC USA, INC., Plaintiff,

v.

SAFETY CONTROLS, INC. d/b/a Safcon, and Kevin Pope, Defendants.

Civil Action No. H-06-2379.

Nov. 17, 2006.

William Scott Helfand, C. Larry Carbo, III, Chamberlain Hrdlicka White, Houston, TX, for Plaintiff.

Peri Hayriye Alkas, Daw and Ray, Houston, TX, for Defendants.

**Memorandum and Order**

GRAY H. MILLER, District Judge.

**\*1** Plaintiff Jelec USA, Inc. (Jelec) brings this action against defendants Safety Controls, Inc. d/b/a Safcon (Safcon) and Kevin Pope alleging misappropriation of trade secrets, violations of the Lanham Act, business disparagement, and tortious interference with contractual and prospective business relations. Before the court is the defendants' motion to dismiss (Dkt.6) this action for improper venue, pursuant to Federal Rule of Civil Procedure 12(b)(3). Alternatively, defendants move to transfer venue to the United State District Court for the Western District of Louisiana, Lafayette Division, pursuant to 28 U.S.C. § 1404(a). After considering the parties' arguments, the evidence, and the applicable law, the court concludes that the motion to dismiss and the motion to transfer should be DENIED.

**Background**

Jelec and Safcon compete for business in the oil field services industry. In January 2003, Jelec hired Pope as a sales representative. In that capacity, Pope had access to and learned about the confidential aspects of Jelec's business, including Jelec's customer list. Pope marketed Jelec's safety systems and products to oil companies in Texas and Louisiana, although Pope claims that the majority of his "work activities occurred in [Jelec's] Lafayette, Louisiana office." Dkt. 6.

Jelec alleges that in late 2005 or early 2006-while he was still employed by Jelec-Pope began discussing with Safcon the possibility of him leaving Jelec to work for Safcon. During that period, Pope allegedly provided Safcon with some or all of Jelec's customer list and trade secrets.

Meanwhile, Jelec was in negotiations for the sale of its products and services to Diamond Offshore Company, a Delaware corporation with its principal place of business in Houston, Texas. Jelec maintains that Pope was heavily involved in the negotiations with Diamond Offshore. Safcon was also seeking to secure Diamond Offshore as a client.

On April 13, 2006, Pope submitted a resignation letter to Jelec, stating his intention to leave the company on April 27, 2006. Pope apparently did not return to work for Jelec after April 13, 2006, and he began working for Safcon on April 17, 2006. During the week after Pope resigned from Jelec, Diamond Offshore awarded the job Jelec had been seeking to Safcon.

Jelec alleges that Safcon conspired with Pope and used Jelec's confidential information and trade secrets to win the Diamond Offshore project. Jelec further contends that Pope and Safcon are continuing to use Jelec's confidential information and trade secrets when competing with Jelec for clients in Louisiana, Texas, the Gulf of Mexico, and overseas. On those grounds, Jelec sued Safcon and Pope in this court on July 18, 2006.

Jelec and Safcon are Louisiana corporations, and both have their principal offices in Lafayette, Louisiana. Pope is a citizen of Louisiana, residing near Lafayette. Safcon and Pope seek to have this case dismissed or, alternatively, transferred from this judicial district because they believe that a substantial part of the events giving rise to this lawsuit did not occur in

USCA5 122

Slip Copy, 2006 WL 3358896 (S.D.Tex.)
**(Cite as: Slip Copy)**

this district and because venue in this district would inconvenience the parties and would not serve judicial economy.

### Analysis

### 1. Arguments of the Parties

**\*2** Safcon and Pope move to dismiss this suit on the ground that venue is improper in this district because Jelec failed to allege in its complaint any factual allegations giving rise to venue in this district. Alternatively, Safcon and Pope move to transfer the case to the Western District of Louisiana, Lafayette Division, because that forum would be more convenient for all parties and because the interest of judicial economy would be best served by litigating the case there. Specifically, Safcon and Pope contend that transfer is warranted because (1) all of the parties reside in or near Lafayette, (2) most of the prospective witnesses reside in or near Lafayette, (3) litigating the case in this district would force citizens of the Southern District of Texas, who have no connection to the litigation, to serve on the jury, and (4) Louisiana law should apply to Jelec's state-law claims because the events giving rise to those claims occurred in Louisiana, and accordingly, a court based in Texas would be less familiar with Louisiana law than a Louisiana court.

Jelec, however, argues that venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred here, and because Safcon and Pope have only established that transferring the case to the Western District of Louisiana would be more convenient for them, not for the convenience of all parties. For these reasons, Jelec contends that Safcon and Pope have not met their burden of demonstrating that this court should either dismiss or transfer the case.

### 2. Motion to Dismiss for Improper Venue

Safcon and Pope move to dismiss this suit on the ground that venue is improper in this judicial district because Jelec failed to allege in its complaint any factual allegations giving rise to venue here. The court is of the opinion that Jelec has met its burden of establishing venue in this district by alleging facts that,

taken as true, establish that a substantial part of the events giving rise to its claims occurred in this judicial district.

This court has subject matter jurisdiction over this case because Jelec has asserted a claim under section 43(a) of the Lanham Act, presenting a federal question pursuant to 28 U.S.C. § 1331. The Lanham Act has no special venue provision, so the general federal venue provision, 28 U.S.C. § 1391, applies. *See* 15 U.S.C. § 1125. Thus, venue is proper in:
(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Jelec contends that venue is proper under the "transactional" venue provision, 28 U.S.C. § 1391(b)(2).

**\*3** The Federal Rules of Civil Procedure authorize a court to dismiss an action where the defendant establishes that venue in that court is improper. *See* Fed.R.Civ.P. 12(b)(3). Once a defendant raises the issue of improper venue, the plaintiff has the burden to prove that venue in that court is proper. *Bigham v. Envirocare of Utah, Inc.,* 123 F.Supp.2d 1046, 1048 (S.D.Tex.2000); *Seariver Mar. Fin. Holdings, Inc. v. Pena,* 952 F.Supp. 455, 458 (S.D.Tex.1996). If there is no evidentiary hearing, courts allow a plaintiff to satisfy the burden by showing facts that, taken as true, establish venue. *Wilson v. Belin,* 20 F.3d 644, 648 (5th Cir.1994); *Bigham,* 123 F.Supp.2d at 1048. A court should, therefore, accept undisputed facts in a plaintiff's pleadings as true and resolve factual conflicts in the plaintiff's favor. *McCaskey v. Continental Airlines, Inc.,* 133 F.Supp.2d 514, 523 (S.D.Tex.2001).

Pope and Safcon contend that the court should dismiss this case because Jelec failed to allege in its complaint any factual allegations that would give rise to venue in this judicial district. To the contrary, Jelec

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 123

Slip Copy, 2006 WL 3358896 (S.D.Tex.)
**(Cite as: Slip Copy)**

included in its complaint the following assertions, all relevant in determining venue is proper here: (1) "Jelec and Safcon are competitors who provide their products and services to companies throughout the United States, including in Louisiana, Texas, the Gulf of Mexico and overseas"; (2) "Defendants continue to use Jelec's confidential information and trade secrets when competing with Jelec for potential customers including those in Louisiana, Texas, the Gulf of Mexico and overseas"; and (3) "Defendants have made, and continue to make, misrepresentations to consumers regarding the quality of the products and services provided by Jelec to Jelec's potential customers including those in Louisiana, Texas, the Gulf of Mexico and overseas." Dkt. 1 at 2-3.

Moreover, the principal office of Diamond Offshore, for whose business Jelec and Safcon competed, is located in this judicial district. For this reason, Jelec argues that venue is proper here because Safcon allegedly directed communications about Jelec's trade secrets, information Safcon purportedly obtained from Pope, to Diamond Offshore's Houston office in its sales pitch for the Diamond Offshore project. In addition, Safcon submitted its bid for the project, again allegedly using Jelec's confidential information, to Diamond Offshore's Houston office.

While it may be true that Safcon compiled the information to support its bid for the Diamond Offshore job at its Louisiana office and mailed the bid from there, those facts alone do not warrant dismissal. Likewise, the fact that all parties are Louisiana residents is not dispositive. *See id.* (citing *Woodke v. Dahm,* 70 F.3d 983, 985 (8th Cir.1995)) ("[T]he fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district").

**\*4** Taken as true, Jelec's allegations are sufficient to establish venue in this district. Even though some of the events giving rise to this lawsuit occurred in Louisiana, a substantial part of the events underlying Jelec's claims occurred in this district. The general venue statute does not require a plaintiff to file suit in the most convenient forum or the forum with the most substantial contacts with the dispute; rather, the

statute simply requires that a plaintiff bring suit in a district where a substantial part of the events or omissions giving rise to the action occurred. *See* 28 U.S.C. § 1391(b)(2); *Bigham,* 123 F.Supp.2d at 1048 ("Often, a lawsuit may allow for proper venue in more than one judicial district."). Jelec has done that. Accordingly, Jelec has met its burden of establishing venue in this district. Pope and Safcon's motion to dismiss must be denied.

### 3. Motion to Transfer Venue

Alternatively, Safcon and Pope move to transfer the case to the Western District of Louisiana, Lafayette Division, because that forum would be more convenient for all parties and because the interest of judicial economy would be best served by litigating the case in that forum. The federal venue transfer statute provides: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U .S.C. § 1404(a). Under this statute, the party seeking the venue transfer bears the burden of demonstrating that the court should, in its discretion, transfer the case. *See Poteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989) (requiring the movant to establish that the forum sought is more convenient); *Time, Inc. v. Manning,* 366 F.2d 690, 698 (5th Cir.1966) ("At the very least, the plaintiff's privilege of choosing venue places the burden on the defendant to demonstrate why the forum should be changed"). To meet this burden, the movant must show, by a preponderance of the evidence, that the balance of convenience and justice substantially weighs in favor of transfer. *See Southeastern Consulting Group, Inc. v. Maximus, Inc.,* 387 F.Supp.2d 681, 684-685 (S.D.Miss.2005); *Rossco Holdings, Inc. v. Best Western Int'l, Inc.,* 2006 WL 1007474, at \*3 (S.D.Tex.2006).

When considering whether transfer is warranted, the court must first determine whether the case could have been brought in the district to which transfer is sought. *Hoffman v. Blaski,* 363 U.S. 335, 343-44 (1960); *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir.2004) (requiring that a district court first determine the propriety of setting venue in the district to which transfer is sought). If this condition is satisfied,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the court balances the following two interests: (1) the convenience of the litigants; and (2) the public interests in the fair and efficient administration of justice. *Id.*

In weighing those two interests, courts consider various public and private factors, none of which is dispositive. *Acton Indus., Inc. v. U.S. Fidelity & Guar. Co.,* 358 F.3d 337, 340 (5th Cir.2004). The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) where the claim arose; and (5) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id.* The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary conflict of law problems. *Id.*

**\*5** The plaintiff's choice of forum is typically entitled to great deference unless the plaintiff is not a resident of the forum or the operative facts of the action occurred elsewhere. *See Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1436 (5th Cir.1989); *McCaskey,* 133 F.Supp.2d at 527.

The first step in analyzing Pope and Safcon's motion to transfer is to determine whether the venue to which they seek transfer would be a proper forum for this dispute. *In re Volkswagen AG,* 371 F.3d at 203. A substantial part of the events of omissions giving rise to this case occurred in the Western District of Louisiana. The principal offices of Jelec and Safcon are located there, Pope resides there, and Pope and Safcon are allegedly using Jelec's confidential information to compete for potential customers located there. Thus, this action could have been brought in the Western District of Louisiana. *See* 28 U.S.C. § 1391(b)(2). The next step is to balance the private and public interests

With respect to private interests, Pope and Safcon argue that transfer is warranted because all parties reside in the Western District of Louisiana and many of the corporate representatives and fact witnesses

reside there, making it more convenient for those witnesses to appear. They do not make claims nor present any evidence demonstrating that transferring the case would serve any other private interest. The court recognizes that the convenience of key witnesses is the most important factor in a motion to transfer venue. *See Continental Airlines, Inc. v. American Airlines, Inc.,* 805 F.Supp. 1392, 1396 (S.D. Texas 1992). Pope and Safcon urge the court to transfer the case because key witnesses, including Pope, the employees of Jelec and Safcon, and unidentified fact witnesses, are located in the Western District of Louisiana. The convenience of parties and employees of corporate parties, however, is "entitled to less weight because that party will be able to compel their testimony at trial." *Id. at 1397.* However, Jelec contends that the majority of non-party witnesses, including representatives of Diamond Offshore, are located in this judicial district and that it would not be able to compel their attendance at trial in the Western District of Louisiana. Thus, although relevant, the location of the various party and unidentified fact witnesses identified by Pope and Safcon is not a factor significantly favoring transfer.

Pope and Safcon have not presented any evidence showing that the Western District of Louisiana would be a more convenient forum for the parties. Indeed, their only support for transfer is the conclusory assertion that "Plaintiff would not be inconvenienced by the transfer" and that both defendants reside "216 miles away and a five hour drive from the federal courthouse in Houston." Dkt. 6 at 3. Pope and Safcon must do more to meet their burden. *See Golden First Mortgage Corp. v. Berger,* 251 F.Supp.2d 1132, 1142 (E.D.N.Y.2003) (denying a motion to transfer under section 1404(a) because the motion was "not supported by any sworn affidavit containing detailed factual statements relevant to the factors" considered in transferring venue). The inquiry does not end here, however, because the court must balance the public and private interests in considering a motion to transfer venue. *See Acton Indus., Inc.,* 358 F.3d at 340.

**\*6** With respect to public interests, Pope and Safcon argue that transfer is warranted because (1) litigating the case here would force citizens of this district to serve on the jury and those jurors would have "no

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 3358896 (S.D.Tex.)
**(Cite as: Slip Copy)**

connection to [the] litigation"; and (2) Louisiana law should apply to Jelec's state-law claims because the events giving rise to those claims occurred in Louisiana, and accordingly, a Texas court would be less familiar with Louisiana law. This argument assumes that none of the events or omissions giving rise to Jelec's claims occurred in this judicial district. As previously discussed, the court is of the opinion that a substantial part of the events or omissions giving rise to the claims in this case occurred here. Pope and Safcon do not make claims nor present any evidence demonstrating that transferring the case would serve any other public interest. Accordingly, they have not met their burden of showing that the balance of convenience and justice substantially weighs in favor of transfer. Pope and Safcon's motion to transfer must also be denied.

### Conclusion

Accordingly, the defendants' motion to dismiss and alternative motion to transfer is DENIED.

S.D.Tex.,2006.
Jelec USA, Inc. v. Safety Controls, Inc.
Slip Copy, 2006 WL 3358896 (S.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3670233 (Trial Pleading) Plaintiff's First Amended Complaint (Oct. 5, 2006)
• 2006 WL 3099383 (Trial Motion, Memorandum and Affidavit) Defendants', Motion to Dismiss or, in the Alternative, Transfer for Improper Venue (Sep. 15, 2006) Original Image of this Document (PDF)
• 2006 WL 2515676 (Trial Pleading) Plaintiff's Original Complaint (Jul. 18, 2006) Original Image of this Document (PDF)
• 4:06cv02379 (Docket) (Jul. 18, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 126

Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

H

Briefs and Other Related Documents
Matsushita Battery Industrial Co., Ltd. v. Energy
Conversion Devices, Inc.D.Del.,1996.Only the West-
law citation is currently available.

United States District Court, D. Delaware.
MATSUSHITA BATTERY INDUSTRIAL CO.,
LTD., Toyota Motor Corporation, and Toyota Motor
Sales, U.S.A., Inc., Plaintiffs,
v.
ENERGY CONVERSION DEVICES, INC. and
Ovonic Battery Company, Inc. Defendants.
**No. CIV. A. 96-101-SLR.**

April 23, 1996.

Kent A. Jordan, of Morris, James, Hitchens & Willi-
ams, Wilmington, Delaware, for plaintiff. Of Counsel
for plaintiff Matsushita Battery Industrial Co.: Mor-
ton Amster, Michael J. Berger, and Abraham Kasdan,
of Amster, Rothstein & Ebenstein, New York, New
York; Of Counsel for plaintiffs Toyota Motor Cor-
poration and Toyota Motor Sales, U.S.A., Inc.: Ed-
ward W. Greason, and Arthur D. Gray, of Kenyon &
Kenyon, New York, New York.
Bruce M. Stargatt, Josy W. Ingersoll, and John W.
Shaw, of Young, Conaway, Stargatt & Taylor, Wilm-
ington, Delaware, for defendants. Of Counsel:
Chester T. Kamin, David J. Bradford, and Jeffrey A.
Koppy, of Jenner & Block, Chicago, Illinois;
Lawrence G. Norris, of Rothwell, Figg, Ernst &
Kurz, Washington, D.C.; and Marvin S. Siskind,
Vice President/Patent Counsel, Energy Conversion
Devices, Inc., Troy, Michigan.

MEMORANDUM OPINION
SUE L. ROBINSON, District Judge.

I. INTRODUCTION

**\*1** Plaintiff Matsushita Battery Industrial Co. Ltd.
("MBI") filed this declaratory judgment action on
February 28, 1996.FN1 Plaintiffs seek a declaration
of invalidity and non-infringement of Ovonic's
United States Patent Number 5,348,822 ("'822 pat-
ent"). On February 29, 1996, defendants Energy Con-

version Devices, Inc. ("ECD") and Ovonic Battery
Company Inc. ("Ovonic") filed suit against plaintiffs
in the United States District Court for the Eastern
District of Michigan, claiming infringement of the
same patent. Currently before the court are defend-
ants' motion to stay or dismiss the declaratory judg-
ment action or, in the alternative, to transfer the case
to the Eastern District of Michigan (D.I. 6) and
plaintiffs' motion to enjoin defendants' infringement
suit in the Eastern District of Michigan. (D.I. 19) The
motions have been fully briefed, and the court heard
oral arguments on April 10, 1996. For the reasons set
forth below, defendants' motion will be denied and
plaintiffs' motion to enjoin will be granted.

II. BACKGROUND

Defendant ECD and its subsidiary Ovonic are
Delaware corporations whose principal place of busi-
ness is Troy, Michigan. (D.I. 8 at Ex. B) Over the
past fifteen years, Ovonic has developed new techno-
logy in the field of rechargeable nickel metal hydride
("NiMH") batteries, and holds numerous patents in
this area. (D.I. 8 at Ex. B) Batteries made with this
new technology have the advantages of long life, no
memory effect, and no environmentally hazardous
materials. Ovonic has found particular success in
marketing its technology for use in "consumer batter-
ies" (*e.g.,* batteries for camcorders, laptop computers,
and cellular telephones) and in the development of a
commercially viable electric vehicle ("EV") battery.
(D.I. 8 at Ex. B) In June 1994, Ovonic formed a joint
venture with General Motors Corporation ("GM") to
produce and market batteries for EVs on a worldwide
basis. (D.I. 8 at Ex. B) Ovonic has also been awarded
several contracts by the United States Advanced Bat-
tery Consortium ("USABC"), which is composed of
Ford Motor Company, GM, and Chrysler Corpora-
tion, to further develop EV battery technology. (D.I.
8 at Ex. B)

Plaintiff MBI, a Japanese corporation with its
headquarters in Osaka, operates worldwide as one of
the largest producers of batteries. (D.I. 11 at ¶ 3) MBI
has also conducted extensive research and develop-
ment in the area of NiMH batteries. Toyota, a Japan-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.    Page 2
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
(Cite as: Not Reported in F.Supp.)

ese corporation, and Toyota Sales, which is incorporated and based in California, have joined MBI in testing programs for MBI's EV batteries. (D.I. 11 at ¶¶ 4, 5, 16, 17)

In 1992, defendants and MBI negotiated a series of licensing agreements concerning NiMH technology for use in consumer batteries. During those negotiations, the parties apparently discussed licensing EV battery technology as well, but were unable to reach agreement. They did, however, execute a side letter in which they agreed "if necessary and appropriate, to explore the possibility of arriving at mutually acceptable terms for the grant to MBI of patent licenses under ECD/OBC's Hydride Battery Patents for large hydride battery applications such as electric vehicle propulsion." (D.I. 8 at Ex. 1)

**\*2** Between 1992 and 1995, ECD/Ovonic and MBI continued to communicate while working independently to develop NiMH batteries for EV application. The record indicates that fairly frequent correspondence, meetings between engineers from both companies, and an exchange of sample batteries took place during this period. (D.I. 8 at Ex. I-K)

In May 1995, Stanford Ovshinsky, President and CEO of ECD, contacted Steve Kawauchi, Executive Vice President of MBI, and requested a meeting to discuss ECD's proposal for the licensing of EV battery technology. (D.I. 21 at B109) Two months later, MBI broke off negotiations, indicating through its attorney that it had "no interest in pursuing the ECD/OBC Proposal given to Mr. Kawauchi by Mr. Ovshinsky and also does not have any counterproposal to make to ECD/OBC." (D.I. 21 at B111) In response to this communication, ECD notified MBI that it was prepared to take legal action, ostensibly for patent infringement. (D.I. 8 at Ex. B-2) After a conciliatory reply from MBI and a letter from GM to MBI's parent company urging that negotiations resume, ECD decided not to file suit, and negotiations of some sort apparently continued. (D.I. 8 at Ex. B-4, B-5, B-6, B-7; D.I. 21 at B113-B129)

The final breakdown in negotiations, which led to this suit, occurred after ECD learned that Toyota planned a program for testing EVs in the United States using NiMH batteries manufactured by MBI. On February 5, 1996 ECD sent letters protesting this action to Toyota Sales, Southern California Edison Company (which was involved in the planned project), and MBI. (D.I. 21 at B89-92; D.I. 8 at Ex. B-8) In its letter to MBI, ECD stated, "ECD would urge Matsushita to accelerate its discussions about the possibilities for the GM Ovonic J[oint] V [[[enture]. If a definite plan is developed for MBI participation and investment in GM Ovonic, ECD is prepared to resume discussions with MBI to resolve our outstanding issues in a satisfactory manner." (D.I. 8 at Ex. B-8) In response to this communication, ECD received a letter dated February 15 which stated, in its entirety, "Your letter to Steve Kawauchi was received while he is on a business trip out of the country. He will respond to you on his return." (D.I. 8 at Ex. B-9) On February 26, 1996 Ovonic, through its attorney, notified MBI of its belief that MBI was infringing Ovonic's '822 patent by supplying Toyota with EV batteries for testing in the United States. Ovonic demanded that MBI cease and desist or Ovonic would take legal action. (D.I. 8 at Ex. B-10) Two days later, without responding further to either of ECD/Ovonic's letters, MBI filed the instant declaratory judgment action.

### III. DISCUSSION

#### A. Dismissal under the Declaratory Judgment Act

Plaintiffs filed this suit pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02. The Act gives the court before which a declaratory judgment action is brought discretion to hear, or refuse to hear, the suit. *Wilton v. Seven Falls Co.,* 115 S. Ct. 2137 (1995); *Genentech, Inc. v. Eli Lilly & Co.,* 998 F.2d 931, 936 (Fed. Cir. 1993), *cert. denied,* 114 S. Ct. 1126 (1994); *Samuel Goldwyn, Inc. v. United Artists Corp.,* 113 F.2d 703, 709 (3d Cir. 1940). In general, a court may not dismiss a suit for a declaration of non-infringement on the ground that an infringement suit was subsequently filed. *Genentech,* 998 F.2d at 937; *see generally Crosley Corp. v. Hazeltine Corp.,* 122 F.2d 925, 929 (3d Cir. 1941), *cert. denied,* 315 U.S. 813 (1942) ("In all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it."). This "first filed rule" gives

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

the district court hearing the first filed case the power to enjoin later filed cases involving the same parties and the same issues. *EEOC v. University of Pennsylvania,* 850 F.2d 969, 971 (3d Cir. 1988), *aff'd,* 493 U.S. 182 (1990).

**\*3** There are, however, certain recognized exceptions to the first filed rule, and other exceptions may be made "when justice or expediency requires, as in any issue of choice of forum." *Genentech,* 998 F.2d at 937, *citing Kahn v. General Motors Corp.,* 889 F.2d 1078, 1081-83 (Fed. Cir. 1989). Defendants urge the court to find an exception to the first filed rule in this case because plaintiffs engaged in an improper "race to the courthouse" in order to avoid litigating in the Eastern District of Michigan. Defendants maintain that plaintiffs filed this action in bad faith, knowing that defendants were awaiting a response to their request for further negotiations. To allow this action to proceed, they argue, would penalize good faith efforts to negotiate and reward precipitous litigation. In addition, defendants argue that the comparative convenience of each forum to the parties and nonparty witnesses weighs in favor of dismissing this action in favor of the later filed suit.

Whether a party has filed a declaratory judgment action anticipatorily or in bad faith is a proper factor for the court to consider in deciding whether to dismiss a first filed action. *Serco Services Co., L.P. v. Kelley Co., Inc.,* 51 F.3d 1037, 1039-40 (Fed. Cir. 1995); *Davox Corp. v. Digital Systems Int'l, Inc.,* 846 F. Supp. 144, 148 (D. Mass. 1993); *Bausch & Lomb Inc. v. Alcide Corp.,* 684 F. Supp. 1155, 1158-60 (W.D.N.Y. 1987). In *Serco Services,* the Federal Circuit held that "we cannot say that it was an abuse of discretion to consider that [plaintiff] intended to preempt [defendant's] infringement suit, as the district court found, as one factor in the decision whether to dismiss the declaratory suit in favor of [the] subsequent infringement action." *Serco Services,* 51 F.3d at 1040 (emphasis added).

In the case at bar, the parties have offered conflicting versions of the tenor of their negotiations. Defendants maintain that they had a long and fruitful history of negotiations with plaintiffs, that they were patiently and in good faith awaiting a reply from Mr. Kawau-

chi, and that they were shocked to discover that plaintiffs had filed suit without having responded to defendants' offer to negotiate. Plaintiffs, on the other hand, characterize their decision to file suit as a reasonable response to defendants' repeated demands that MBI enter into a joint venture, despite MBI's emphatic rejection of previous such demands. Having received a letter from defendants explicitly threatening imminent legal action, plaintiffs argue that they reasonably and in good faith made the decision to file for declaratory judgment.

After reviewing the numerous affidavits and items of correspondence submitted by the parties, the court finds that the record is unclear as to the precise tone of the negotiations between the parties. Although MBI may have acted hastily in filing suit without responding to ECD/Ovonic's February 1996 letters, despite its indications that Mr. Kawauchi would respond, the court cannot conclude from the record before it that an improper race to the courthouse took place. Furthermore, even if plaintiffs' actions could be considered anticipatory, absent any other factors weighing toward dismissal or transfer, the court declines to grant defendants' motion on this ground alone. *See Id.*[FN2]

### B. Transfer of Venue

**\*4** Title 28, Section 1404(a) provides:
For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Congress intended through Section 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988). "The standard under which transfer applications are considered requires district courts to consider the convenience of parties and witnesses, the interest of justice, and whether the action could have been brought in the transferee court." *SportsMEDIA Technology Corp. v. Upchurch,* 839 F. Supp. 8, 9 (D. Del. 1993). The parties do not dispute that the Eastern District of Michigan is a proper ven-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ue for this action.

A plaintiff's choice of forum should not be lightly disturbed. As a general rule, "[b]ecause plaintiffs' choice of forum is accorded substantial weight, the burden is on the defendants to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F. Supp. 972, 973 (D. Del. 1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22,25 (3d Cir. 1970), *cert denied,* 401 U.S. 910 (1971) (emphasis added). Plaintiffs' choice of forum is "paramount." *E.g., Wesley-Jessen Corp. v. Pilkington Visioncare,* 157 F.R.D. 215, 216 (D. Del 1993).

#### 1. Convenience of Parties and Witnesses

Defendants contend that "the Eastern District of Michigan is an unusually appropriate and convenient forum for all concerned." They assert that defendants and all of their likely fact witnesses reside in Michigan, that plaintiffs regularly conduct business there, and that third party witnesses, "all relevant files and corporate records," and Ovonic's testing facilities are located in Michigan.

Even if the Eastern District of Michigan were the more convenient trial forum for both the parties and the non-party witnesses, this factor will not be sufficient to compel a transfer. This case is analogous to *Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215 (D. Del. 1993). In that case, a defendant made a similar showing regarding the locations of parties, documents, and nonparty witnesses. The court concluded that transfer was inappropriate for three reasons. First, the court noted that, for a company engaged in business throughout the United States, the claim that litigation away from the most convenient forum is burdensome is somewhat suspect. *Wesley-Jessen,* 157 F.R.D. at 218. Defendants in this case have argued that they do not operate nationally, and that their small size would result in a disproportionate burden on them if they were forced to litigate in Delaware. The record indicates, however, that defendants have attended meetings and negotiations throughout the world. The second factor noted by the court in *Wesley-Jessen* is the incorporation of defendant in Delaware. Here again, the court

outlined the heightened burden on such a business. "Absent some showing of a unique or unexpected burden, these corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient." *Id.* Finally, the court noted the somewhat archaic nature of the "convenience of the parties" factor in determining a motion to transfer:

**\*5** A third reason for denying the motion to transfer is that technological advances have substantially reduced the burden of having to litigate in a distant forum .... These technologies have shortened the time it takes to transfer information, reduced the bulk or size of documents or things on which information is recorded and can be transferred and have lowered the cost of moving that information from one place to another.

*Id.* The court also notes that discovery in this case will take place throughout the United States and in Japan. The overall burden of litigating this case, therefore, will likely be the same regardless of where the trial itself is to be held. In light of these factors, the court finds that defendants have not demonstrated that litigation in Delaware imposes on them a unique or unexpected burden.

#### 2. Interests of Justice

Defendants argue that a transfer is warranted in the interests of justice. In analyzing this claim, the court must consider judicial resources, cost to the parties, access to proof, and the availability of compulsory process. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.,* 821 F. Supp. 962, 966 (D. Del. 1993). No party contends that a transfer would have any impact on judicial resources or cost to the parties. Addressing compulsory process, defendants maintain that several important witnesses, who according to defendants are likely to be reluctant to testify, reside outside the reach of the court's subpoena power. The court addressed an analogous contention in *Critikon,* 821 F. Supp. at 967. In that case, defendant ha[d] not represented to the [c]ourt that [the third party witness] would be unwilling to testify at trial voluntarily. Because [the witness] is a former employee of [defendant], ... the [c]ourt must assume that he would be willing to testify absent a subpoena.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 5
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

In this case, defendants have offered the affidavit of David J. Bradford, who represented defendants in another patent infringement case in this district. Based on his experience in that case, Mr. Bradford asserts that GM, GM-Ovonic, Ford Motor Company, and USABC "will not voluntarily testify or produce documents in this case." (D.I. 29 at Ex. 3) Defendants have not specifically identified any witnesses who have refused to testify; despite Mr. Bradford's opinion, the court does not find defendants' showing of the necessity of compulsory process sufficient to warrant transfer.

With respect to the availability of records, this court held in *Critikon*:

The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where the trial is held, [defendant's] ... counsel and [plaintiff's] ... counsel will be required to travel to [various places] to select and produce the requested discovery. Regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.

**\*6** 821 F. Supp. at 966-67. In light of the wide geographical scope of discovery in this case, the possibility that the nonparties mentioned in Mr. Bradford's affidavit will have relevant evidence and will request protective orders in the Eastern District of Michigan is likewise unpersuasive. For these reasons, the court finds that defendants have not established that this factor compels the transfer of this action.

Based on the record as it presently stands, defendants have failed to demonstrate that the interests of justice dictate transferring this action.

### IV. CONCLUSION

For the forgoing reasons, defendants' motion to stay or dismiss the declaratory judgment action or, in the alternative, to transfer the case to the Eastern District of Michigan will be denied. Plaintiffs' motion to enjoin defendants' infringement suit in the Eastern District of Michigan will be granted. An order consistent with this opinion shall issue.

FN1. Toyota Motor Corporation ("Toyota")

and Toyota Motor Sales, U.S.A., Inc. ("Toyota Sales") were added as plaintiffs in an amended complaint dated March 7, 1996. (D.I. 11)

FN2. Defendants also argue that Michigan is a more convenient forum for the parties and nonparty witnesses. As discussed fully in the following section, the court finds this argument unpersuasive. Thus, the court will not consider convenience a factor in deciding whether to make an exception to the first filed rule.

D.Del.,1996.
Matsushita Battery Industrial Co., Ltd. v. Energy Conversion Devices, Inc.
Not Reported in F.Supp., 1996 WL 328594 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:96CV00101 (Docket) (Feb. 28, 1996)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 131

LEXSEE 2003 U.S. DIST. LEXIS 26952



Analysis
As of: Dec 26, 2006

**NATIONAL INSTRUMENTS CORP. Vs. SOFTWIRE TECHNOLOGY, LLC, ET AL.**

**CIVIL ACTION NO. 2:03-CV-047**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, MARSHALL DIVISION**

*2003 U.S. Dist. LEXIS 26952*

**May 9, 2003, Decided
May 9, 2003, Filed**

**PRIOR HISTORY:** *Nat'l Instruments Corp. v. Mathworks, Inc., 2002 U.S. Dist. LEXIS 27577 (E.D. Tex., May 24, 2002)*

**COUNSEL:** [*1]  For National Instruments Corporation, Plaintiff: Samuel Franklin Baxter, Attorney at Law, Marshall, TX.

For SoftWire Technology LLC, Measurement Computing Corporation, Defendants: Martin J O'Donnell, Michael R Reinemann, Cesari & McKenna LLP, Boston, MA.

For SoftWire Technology LLC, Measurement Computing Corporation, Defendants: Gregory Richardson Ave, Touchstone Bernays Johnston Bcall & Smith, Dallas, TX.

**JUDGES:**  T. JOHN WARD, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** T. JOHN WARD

**OPINION:**

### ORDER

General first-to-file principles determine the outcome of the defendants' motion to transfer venue (# 7). That motion is granted.

On November 27, 2001, the plaintiff, National Instruments, Inc. ("National Instruments") notified the defendants of a claim of patent infringement. That notice

letter stated "National is currently engaged in existing litigation to enforce some of these patents; *at the conclusion of the pending litigation*, NI will take appropriate legal action to enforce its rights against Softwire and Measurement Computing." (emphasis added). The litigation referred to in the letter is litigation in this district between National Instruments and The Mathworks. The Mathworks [*2]  litigation is ongoing, made so by the pendency of post-trial motions and National Instrument's filing, on October 21, 2002, of a second infringement suit. The second suit is in the early stages.

On January 15, 2003, Softwire Technology, LLC filed a declaratory judgment action in the United States District Court for the District of Massachusetts against National Instruments. That case is a declaratory judgment suit seeking a declaration of non-infringement, or, alternatively, invalidity, of six of the National Instruments patents. On February 21, 2003, National Instruments filed this case, alleging that the defendants infringe nine (9) patents, including the six at issue in the Massachusetts case. The defendants have moved this court to transfer this case to the Massachusetts court under the first-to-file rule. Alternatively, the defendants have moved this court to stay this case pending a ruling by the Massachusetts court on a pending motion to transfer that case filed by National Instruments.

The first-to-file rule states that "the court initially seized of a controversy should be the one to decide whether it will try the case." *Mann Manufacturing, Inc. v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir. 1971).* [*3]  Complete identity of parties is not required and the ques-

tion is whether there is a likelihood of a substantial overlap between the two lawsuits. When the first-to-file rule applies, a transfer to the first-filed court is proper to allow that court to determine how to proceed. *E.g., Save Power Ltd. v. Syntek Finance Corp., 121 F.3d 947, 951 (5th Cir. 1997)*(noting that "complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action.").

In this case, the defendants have previously instituted a declaratory judgment action in a Massachusetts federal court that substantially overlaps with the issues raised in this infringement suit. There is no dispute that the declaratory judgment suit pre-dates this case. Therefore, the Massachusetts litigation is first-filed, absent some exception to the rule.

Some courts have held that when a declaratory judgment suit is filed first in a preemptive strike or a "race to the courthouse," then a dismissal of that suit might be warranted. *E.g., PAJ, Inc. v. Yurman Design, Inc., 1999 U.S. Dist. LEXIS 1424, 1999 WL 68651 (N.D. Tex. 1999)*. The plaintiff suggests that such circumstances [*4] might be viewed as an exception to the first-to-file rule that would permit this court to proceed.

The court rejects the plaintiff's argument. The decision whether to apply the first-to-file rule is for the Massachusetts court. *Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599 (5th Cir. 1999)*. Therefore, the plaintiff's arguments must be directed toward and decided by that court. The court has considered whether a stay of this action would be more appropriate. Given the procedural history of this case and the Federal Circuit's respect

for declaratory judgment suits like the one pending in Massachusetts, *Genentech, Inc. v. Eli Lilly and Co., 998 F.2d 931, 937 (Fed. Cir. 1993)*, the court has determined a transfer is warranted. To that end, the papers reflect that the Massachusetts court has set a status conference and motions hearing for May 16, 2003, to consider National Instruments' request to transfer the declaratory judgment case to this court. The Massachusetts court will thus be in a position at that time to decide whether the cases should be consolidated and tried in Massachusetts or re-transferred to this court under some exception to the [*5] first-to-file rule.

This conclusion does not signal any renaissance. It simply makes explicit what is at least implicit in all of the comity decisions: the same source of law that champions the court with an unflagging obligation to proceed in most cases cautions a careful restraint in others. The decisions from the Courts of Appeals circumscribe the discretion of the judge presiding over the second-filed case. The court therefore grants the defendants' motion to transfer venue to the District of Massachusetts (# 7). The court denies as moot the defendants' alternative request to stay this action pending a resolution by the Massachusetts court of the motion to transfer filed by National Instruments.

So **ORDERED** and **SIGNED** this 9th day of May, 2003.

T. JOHN WARD

UNITED STATES DISTRICT JUDGE

--- F.Supp.2d ----                                                    Page 1
--- F.Supp.2d ----, 2006 WL 3345264 (E.D.Tex.)
**(Cite as: --- F.Supp.2d ----)**

H
Briefs and Other Related Documents

Overson v. Berryman ProductsE.D.Tex.,2006.Only
the Westlaw citation is currently available.
United States District Court,E.D. Texas,Marshall Division.
Rock OVERSON and Cyndee Overson Plaintiffs,
v.
BERRYMAN PRODUCTS, et al Defendants.
**No. CIV.A.2:06CV114(TJW).**

Nov. 6, 2006.

**Background:** In products liability action, defendants
moved to transfer venue.

**Holding:** The District Court, Ward, J., held that
transfer from Texas to Arizona was warranted.

Motion granted.

**[1] Federal Civil Procedure 170A** ⚷0

170A Federal Civil Procedure
Under federal law, joint tortfeasors are dispensable
parties. Fed.Rules Civ.Proc.Rule 21, 28 U.S.C.A.

**[2] Federal Courts 170B** ⚷0

170B Federal Courts
Private factors court should consider in assessing motion to transfer for convenience of parties and witnesses are: (1) plaintiffs' choice of forum; (2) convenience of parties and material witnesses; (3) place of alleged wrong; (4) cost of obtaining attendance of witnesses and availability of compulsory process; (5) accessibility and location of sources of proof; and (6) possibility of delay and prejudice if transfer is granted. 28 U.S.C.A. § 1404(a).

**[3] Federal Courts 170B** ⚷0

170B Federal Courts
Public interest factors court should consider in assessing motion to transfer for convenience of parties and witnesses include: (1) administrative difficulties caused by court congestion; (2) local interest in adju-

dicating local disputes; (3) unfairness of burdening citizens in unrelated forum with jury duty; and (4) avoidance of unnecessary problems in conflict of laws. 28 U.S.C.A. § 1404(a).

**[4] Federal Courts 170B** ⚷0

170B Federal Courts
Plaintiffs' choice of forum is neither controlling nor determinative, but is still factor to be considered in assessing motion to transfer for convenience of parties and witnesses. 28 U.S.C.A. § 1404(a).

**[5] Federal Courts 170B** ⚷0

170B Federal Courts
Convenience of parties is accorded less weight than convenience of non-party witnesses in assessing motion to transfer for convenience of parties and witnesses. 28 U.S.C.A. § 1404(a).

**[6] Federal Courts 170B** ⚷0

170B Federal Courts
In venue transfer analysis, most important factor considered is whether key fact witnesses will be substantially inconvenienced if court should deny transfer. 28 U.S.C.A. § 1404(a).

**[7] Federal Courts 170B** ⚷0

170B Federal Courts
Party seeking transfer of venue for convenience of parties and witnesses must specifically identify key witnesses and outline substance of their testimony. 28 U.S.C.A. § 1404(a).

**[8] Federal Courts 170B** ⚷0

170B Federal Courts
Transfer of products liability suit from Texas to Arizona was warranted, even though plaintiffs chose to bring suit in Texas, products were manufactured outside of Arizona, and some defendants were in Texas, where plaintiffs resided in Arizona, key medical witnesses were in Arizona and were not subject to compulsory process in Texas, Arizona and Texas were equally inconvenient to many corporate defendants,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 3345264 (E.D.Tex.)

**(Cite as: --- F.Supp.2d ----)**

all significant events, including actual exposure to products, took place in Arizona, and it was likely that Arizona law would be applied to some, if not all, claims. 28 U.S.C.A. § 1404(a).

Collen Andrew Clark, The Clark Firm, Dallas, TX, Thomas E. Schwartz, Holloran Stewart & Schwartz, P.C., St. Louis, MO, for Plaintiffs.

Jeffrey Roberts Allen, Shannon Gracey Ratliff & Miller, Arlington, TX, Kevin Allen Koudelka, Jones Carr McGoldrick, Dallas, TX, Vic Houston Henry, Henry Oddo Austin & Fletcher, Dallas, TX, Jesse R. Pierce, King & Spalding, Daniel Brady Shilliday, Vinson & Elkins, Ricky Anthony Raven, Lakesha Deneen Harris, Tye Conrad Hancock, Thompson & Knight, James Michael Riley, Jr., Coats Rose Yale Ryman & Lee, Robert Philip Scott, Sue D. Rosenthal, Abrams Scott & Bickley, Houston, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER

WARD, District J.

**\*1** Before the Court is Plaintiffs' Motion to Dismiss Defendant Canyon State Oil Company, Inc. (# 40) and Defendant CRC Industries, Inc.'s Request to Reconsider Motion to Transfer Venue (# 46). The Court has carefully considered the parties' written submissions and GRANTS the plaintiffs' motion to dismiss Canyon State Oil Company, Inc. and GRANTS Defendant CRC Industries, Inc.'s request to reconsider the defendants' joint motion to transfer venue. The Court now vacates that portion of its previous order (# 28) denying Defendants' Joint Motion to Transfer Venue (# 18). After careful reconsideration, Defendants' Joint Motion to Transfer Venue is GRANTED and it is ordered that this case be transferred to the District of Arizona for the reasons set forth in this opinion.

### I. Motion to Dismiss Canyon State Oil Company, Inc.

[1] In the plaintiffs' first amended complaint, Canyon State Oil Company, Inc. ("Canyon") was added as a defendant. Canyon is an Arizona corporation headquartered in Phoenix, Arizona. If allowed to stand, the addition of Canyon would destroy diversity because the plaintiffs are also Arizona residents. The plaintiffs now request that Canyon be dismissed from the case. Rule 21 of the Federal Rules of Civil Pro-

cedure allows district courts to drop a dispensable nondiverse party at any time as long as it does not prejudice any of the parties. Newman-Green, Inc. v. Alfonzo-Larrain, et al., 490 U.S. 826, 832, 838, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) Under federal law, joint tortfeasors are dispensable parties. Highland Capital Management L.P. v. Schneider, et al., 2006 WL 2382917, *2 (2d Cir.2006) (citing Samaha v. Presbyterian Hosp. in New York, 757 F.2d 529, 532 (2d Cir.1985) (per curiam )). Furthermore, none of the defendants have opposed this request. Therefore, the plaintiffs' motion is GRANTED and Canyon is dismissed from this case.

### II. Motion to Transfer Venue

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Initially, the court must determine whether jurisdiction would be proper in the district requested in the motion to transfer, specifically the District of Arizona. The parties do not dispute that jurisdiction would be proper in Arizona under Section 1391(a)(2) because Mr. Overson came into contact with the allegedly dangerous products while working in Arizona.

[2][3] The court now turns to "the convenience of the parties and witnesses." The convenience determination involves private and public interest factors. In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir.2004) The private factors are the following: (1) the plaintiffs' choice of forum; (2) the convenience of the parties and material witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and the availability of the compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. Mohamed v. Mazda Corp., 90 F.Supp.2d 757, 771 (E.D.Tex.2000). The court also balances the following public interest factors: (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. Id.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3345264 (E.D.Tex.)
**(Cite as: --- F.Supp.2d ----)**

A. Private Factors

1. *Plaintiffs' Choice of Forum*

**\*2** [4] The plaintiffs' choice of forum is neither controlling nor determinative, but is still a factor to be considered. *In re Horseshoe Entm't,* 337 F.3d 429, 434 (5th Cir.2003). The plaintiffs chose to bring their suit in the Eastern District of Texas, Marshall Division. Therefore, this factor weighs against transfer.

2. *The Convenience of the Parties and the Witnesses*

[5] The Court will first assess the convenience of the parties. However, the convenience of the parties is accorded less weight in a transfer analysis than the convenience of non-party witnesses. *Shoemake v. Union Pac. R.R. Co.,* 233 F.Supp.2d 828, 832 (E.D.Tex.2002). The defendants are incorporated or headquartered in various states, including Texas, Wisconsin, Ohio, Pennsylvania, and others. Therefore, the defendants will be inconvenienced regardless of whether the case is transferred to Arizona or remains in Texas. On the other hand, the plaintiffs reside in the state of Arizona. In the Court's view, the convenience of the parties is neutral as to transfer.

[6][7] The Court now considers the convenience of the witnesses. Generally, in a venue transfer analysis, the most important factor considered is whether "key fact witnesses" will be substantially inconvenienced if the court should deny transfer. *Mohamed,* 90 F.Supp.2d at 774. Further, the convenience of non-party witnesses weighs more heavily in favor of transfer than the convenience of party witnesses. *Shoemake,* 233 F.Supp.2d at 832. The moving party must "specifically identify key witnesses and outline the substance of their testimony." *Mohamed,* 90 F.Supp.2d at 775 (quoting *Hupp v. Siroflex of America, Inc.,* 848 F.Supp. 744, 749 (S.D.Tex.1994)).

[8] In their moving papers, the defendants have listed several witnesses located in Arizona and have detailed the substance of their testimony. *Defendants' Joint Motion to Transfer Venue ("Defendants' Motion")* at 7-9. Although the defendants have not specifically identified all their key witnesses, they have specifically identified key medical witnesses located in Arizona. On the other hand, the plaintiffs argue

that the more important witnesses are corporate representatives with knowledge of product formulation and testing. *Plaintiffs' Response to Defendants' Joint Motion to Transfer Venue ("Plaintiffs' Response")* at 2. However, the plaintiffs have not specifically identified any of these key witnesses. Assuming that these corporate witnesses do exist, they are likely located in the various states where the defendant corporations are located. Therefore, these corporate witnesses will be inconvenienced regardless of whether the case is transferred to Arizona or remains in Texas. In the Court's view, the convenience of the witnesses weighs in favor of transfer

3. *The Place of the Alleged Wrong*

The plaintiffs allege that Mr. Overson was exposed to benzene products in Arizona which caused his injuries. However, the plaintiffs argue that the products were manufactured outside of Arizona. *Plaintiffs' Response* at 3. Given that the exposure occurred in Arizona, this factor weighs in favor of transfer.

4. *The Cost of Obtaining the Attendance of Witnesses and the Availability of Compulsory Process*

**\*3** The defendants have identified several witnesses located in Arizona. *Defendants' Motion* at 7-8. The cost of obtaining the attendance of these witnesses would be lower if the case were transferred to Arizona than if it remained in Texas. However, there will also be party witnesses and expert witnesses located across the country who will be required to travel regardless of whether the case is in Arizona or in Texas. Therefore, the cost of obtaining the attendance of witnesses weighs slightly in favor of transfer.

The witnesses from Arizona would also not be subject to the compulsory process in Texas. However, there are also witnesses located across the country that would not be subject to the compulsory process in either Arizona or Texas. In the Court's view, the availability of compulsory process weighs slightly in favor of transfer.

5. *The Availability and Location of Sources of Proof*

The sources of proof for all the parties are located in several different states, including both Texas and Ari-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 3345264 (E.D.Tex.)
**(Cite as: --- F.Supp.2d ----)**

zona. They can easily be sent to either Marshall, Texas or Arizona. The Court finds that this factor is neutral as to transfer.

### 6. *The Possibility of Delay and Prejudice if Transfer is Granted*

The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis "only in rare and special circumstances and when such circumstances are established by clear and convincing evidence." *Shoemake,* 233 F.Supp.2d at 834 (citing *In re Horseshoe Entm't,* 305 F.3d 354, 358 (5th Cir.2002)). Because it is still early in the litigation, the plaintiffs would not be prejudiced by a transfer. *Ledoux v. Isle of Capri Casinos, Inc.,* 218 F.Supp.2d 835, 838 (E.D.Tex.2002). Therefore, this factor is neutral. *Id.*

### B. Public Interest Factors

### 1. *The Administrative Difficulties Caused by Court Congestion*

The parties do not address this factor. Therefore, this factor is neutral as to transfer.

### 2. *The Local Interest in Adjudicating Local Disputes*

Some, if not all, of the products involved in this dispute were manufactured and tested outside of Arizona. However, the defendants argue that Arizona would be more interested in resolving this dispute because all the significant events, including the actual exposure to the products, took place in Arizona. *Defendants' Motion* at 11. Again, in this chemical exposure case, the Court finds that this factor weighs in favor of transfer.

### 3. *The Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty*

The defendants argue that the citizens of Arizona would have more of an interest in this case because all the significant events took place in Arizona. *Defendants' Motion* at 11-12. The Court agrees, and finds that this factor weighs in favor of transfer.

### 4. *The avoidance of unnecessary problems in conflict of laws*

The parties do not address this factor. However, there is a substantial likelihood that Arizona law will need to be applied to some, if not all, of the plaintiffs' products liability and negligence claims. The Court finds that this factor weighs in favor of transfer.

### III. Conclusion

**\*4** The Court GRANTS the plaintiffs' motion to dismiss Canyon from this case. In addition, the Court has carefully reconsidered Defendants' Joint Motion to Transfer Venue. The defendants' motion is GRANTED. Accordingly, this case is transferred to the District of Arizona.

E.D.Tex.,2006.
Overson v. Berryman Products
--- F.Supp.2d ----, 2006 WL 3345264 (E.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1830801 (Trial Motion, Memorandum and Affidavit) Defendants' Joint Reply to Plaintiffs' Opposition to Motion to Transfer Venue and Alternative Joinder to Ashland, Inc.'s Motion to Transfer Venue (May 23, 2006) Original Image of this Document (PDF)

• 2006 WL 1830800 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Opposition to Defendants' Joint Motion to Transfer Venue Pursuant to 28 U.S.C. |1404(a) (May 16, 2006) Original Image of this Document (PDF)

• 2006 WL 1830799 (Trial Pleading) Defendant Safety-Kleen Systems, Inc.'s Original Answer (May 1, 2006) Original Image of this Document (PDF)

• 2:06cv00114 (Docket) (Mar. 23, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 1

Slip Copy, 2006 WL 2634768 (E.D.Tex.)

**(Cite as: Slip Copy)**

**H**

Briefs and Other Related Documents

Singleton      v.      Volkswagen      of      America,
Inc.E.D.Tex.,2006.Only the Westlaw citation is cur-
rently available.

United States District Court,E.D. Texas,Marshall Di-
vision.

Richard SINGLETON, Ruth Singleton, Amy
Singleton, Individually and as Representative of The
Estate of Mariana Singleton, Deceased Minor,
Plaintiffs,

v.

VOLKSWAGEN OF AMERICA, INC., a New Jer-
sey Corporation; and Volkswagen, A.G., a foreign
Corporation organized under the laws of Germany,
Defendants.

**Civil Action No. 2-06-CV-222 (TJW).**

Sept. 12, 2006.

Jeffrey Todd Embry, Hossley & Embry, Tyler, TX,
for Plaintiffs.

Burgain Garfield Hayes, Burgain G. Hayes, Attorney
at Law, Austin, TX, for Defendants.

***MEMORANDUM OPINION AND ORDER***

T. JOHN WARD, District Judge.

**\*1** Before the Court is Defendant Volkswagen of
America, Inc.'s Motion to Transfer Venue (Doc. No.
3). After considering the filings of the parties and the
applicable law, the Court ORDERS that the defend-
ant's motion be DENIED for the reasons expressed
below.

**I. Factual Background**

This products liability action arises out of alleged in-
juries sustained by the plaintiffs as the result of an
automobile accident. On May 21, 2005, the plaintiffs,
residents of Collin County, Texas, were in a 1999
Volkswagen Golf being driven by Ruth Singleton
when it was struck in the rear by a 1999 Chrysler 300
driven by Colin R. Little. As a result of the impact,
the 1999 Volkswagen Golf spun around and struck
the rear of a flat-bed trailer, owned by Skinner Nurs-
eries of Denton County, Texas, parked on the

shoulder. The two passengers in the Volkswagen,
Richard and Mariana Singleton, received serious in-
juries. Mariana Singleton died after being transported
to a hospital. The plaintiffs contend that Defendant
Volkswagen of America, Inc. ("VWOA") is respons-
ible for their injuries as a result of the alleged defect-
ive design of the passenger seat and seat assembly of
the 1999 Volkswagen Golf.

On May 30, 2006, the plaintiffs filed suit in this
court, asserting claims of strict liability, breach of
warranty, and negligence against VWOA and Volk-
swagen, A.G. VWOA is a subsidiary of Volkswagen,
A.G., and a corporation organized under New Jersey
law. Volkwagen, A.G. is a German corporation.
VWOA seeks to have this action transferred to the
Dallas Division of the Northern District of Texas pur-
suant to 28 U.S.C. § 1404(a) for the convenience of
the parties and witnesses.

**II. Discussion**

Section 1404(a) provides that "[f]or the convenience
of parties and witnesses, in the interest of justice, a
district court may transfer any civil action to any dis-
trict or division where it might have been brought."
28 U.S.C. § 1404(a) (2004). It is within the district
court's sound discretion whether to transfer venue un-
der section 1404(a). *Mohamed v. Mazda Corp.,* 90
*F.Supp.2d 757, 768 (E.D.Tex.2000).* When consider-
ing whether to transfer venue, the district court "must
exercise its discretion in light of the particular cir-
cumstances of the case." *Hanby v. Shell Oil Co.,* 144
*F.Supp.2d 673, 676 (E.D.Tex.2001); In re Triton Ltd.
Sec. Litig.,* 70 *F.Supp.2d 678, 688 (E.D.Tex.1999)*
(stating that district courts have the discretion to de-
cide whether to transfer venue according to
"individualized, case-by-case consideration of con-
venience and fairness").

Under Section 1404(a), the analysis remains the same
regardless of whether the party moves for *inter* or *in-
tra* district transfer. *Mohamed,* 90 *F.Supp.2d at 768.*
When deciding whether to transfer venue, the court
balances the following two categories of interests:
"(1) the convenience of the litigants, and (2) the pub-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy, 2006 WL 2634768 (E.D.Tex.)

**(Cite as: Slip Copy)**

lic interests in the fair and efficient administration of justice." *Hanby,* 144 F.Supp.2d at 676. The convenience factors weighed by the district court are the following: (1) the plaintiff's choice of forum; (2) the convenience of the parties and material witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and the availability of the compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. *Mohamed,* 90 F.Supp.2d at 771. The court also balances the following public interest factors: (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *Id.* The moving party bears the burden of demonstrating that venue should be transferred to another forum. *Hanby,* 144 F.Supp.2d at 676. To meet this burden, the moving party must show that "the balance of convenience and justice *substantially* weighs in favor of transfer." *Mohamed,* 90 F.Supp.2d at 768.

*A. Convenience Factors*

*1. The plaintiff's choice of forum*

**\*2** The plaintiff's choice of forum is "a paramount consideration in any determination of [a] transfer request, and that choice should not be lightly disturbed." *In re Triton Ltd. Sec. Litig.,* 70 F.Supp.2d 678, 688 (E.D.Tex.1999) (quoting *Young v. Armstrong World Indus.,* 601 F.Supp. 399, 401 (N.D.Tex.1984)). The plaintiff's choice of forum will not be disturbed unless it is clearly outweighed by other factors. *Shoemake v. Union Pac. R.R. Co.,* 233 F.Supp.2d 828, 830 (E.D.Tex.2002). In a diversity action, such as this, venue is proper in a judicial district in which "any defendant resides." 28 U.S.C. § 1391(a)(1) (2005). When the defendant is a corporation, the corporation is "deemed to reside in any district in that State within which its contacts would be sufficient to be subject it to personal jurisdiction...." 28 U.S.C. § 1391(c) (2005). In this case, the Plaintiffs' choice of forum is the Marshall Division of the Eastern District of Texas. Venue is proper in the Eastern District of Texas because there is no question

that VWOA, a corporation licensed to do business in the State of Texas, is subject to the personal jurisdiction of this District. Furthermore, venue is proper in any division in this District.

*2. The convenience of parties and material witnesses*

The Court will first assess the convenience of the parties. In assessing the convenience of parties, third-party defendants are parties whose convenience must also be considered. *In re Volkswagen,* 371 F.3d 201, 204 (5th Cir.2004) (stating that "nothing in § 1404(a) ... limits the application of the terms 'parties' and 'witnesses' to those involved in an original complaint."). The convenience of the parties is accorded less weight in a transfer analysis than the convenience of nonparty witnesses. *Shoemake,* 233 F.Supp.2d at 832. In this case, the Defendants include a foreign corporation based in Germany and its subsidiary organized under the laws of New Jersey. The Defendants will be inconvenienced regardless of whether the case is transferred. On the other hand, at the time of the accident, the Plaintiffs resided in Plano, Collin County, Texas, and Mr. Little, the third-party defendant, resided in Garland, Dallas County, Texas. The distance between Plano and Marshall is approximately 153 miles, and the distance from Garland to Marshall is approximately 150 miles. Neither distance is far enough to weigh substantially in favor of a transfer. In the Court's view, the convenience of the parties does not weigh in favor of transfer.

The Court now considers the convenience of the witnesses. Generally, in a venue transfer analysis, the most important factor considered is whether "key fact witnesses" will be substantially inconvenienced if the court should deny transfer. *Mohamed,* 90 F.Supp.2d at 774. Further, the convenience of non-party witnesses weighs more heavily in favor of transfer than the convenience of party witnesses. *Shoemake,* 233 F.Supp.2d at 832. The moving party must "specifically identify key witnesses and outline the substance of their testimony." *Mohamed,* 90 F.Supp.2d at 775 (quoting *Hupp v. Siroflex of America, Inc.,* 848 F.Supp. 744, 749 (S.D.Tex.1994)).

**\*3** In its moving papers, the Defendant has submitted a list of potential witnesses who all live and work in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Dallas County or the Dallas area. *Defendant's Motion to Transfer Venue ("Defendant's Motion")* at 7. These witnesses include the third-party defendant, accident witnesses, accident investigators, treating medical personnel, and the medical examiner. Further, the Defendant has submitted two affidavits, one from an accident witness and the other from the accident investigator, stating their inconvenience of traveling to Marshall. *See Exhibits 4 and 5 attached to Defendant's Motion.* However, the Defendant did not explain why all of these witnesses are actually material to its case. Further, the Defendant did not outline the substance of these witnesses' testimony. With such scant information about these individuals, the Court cannot determine that they are indeed key fact witnesses whose convenience should be assessed in this analysis. Nevertheless, after considering the convenience of the witnesses, the Court finds that the convenience of non-party witnesses does not weigh in favor of transfer. The Defendant has not shown that its material, nonparty witnesses will be *substantially* inconvenienced if the Court denies transfer. The Defendant submits to the Court that Dallas is approximately 155 miles from Marshall. *See Exhibit 3 attached to Defendant's Motion.* This distance, however, is not substantial. *Mohamed, 90 F.Supp.2d at 776* (stating that "[g]iven the advances in transportation and communication, the [150 mile] distance between Marshall and Dallas is negligible.") This case is not analogous to *In re Volkswagen* where the non-party witnesses would have had to drive or fly a distance of approximately 400 miles to Marshall. *In re Volkswagen,* 371 F.3d at 204.

### 3. The place of the alleged wrong

It is undisputed that the alleged accident occurred in Dallas County, Texas, which is within the Dallas Division of the Northern District of Texas. However, the location of the product design and manufacture are also relevant, and occurred outside the Northern District of Texas. This factor weighs only slightly in favor of transfer.

### 4. The cost of obtaining the attendance of witnesses and the availability of compulsory process

In its moving papers, the Defendant states that the cost of bringing non-party and non-expert witnesses to Marshall would include time and money. *Defendant's Motion* at 8. Given the proximity of Dallas to Marshall, the cost of having these witnesses attend a trial in Marshall would be minimal. *Mohamed, 90 F.Supp.2d at 776* (stating that this Court will not "transfer a federal lawsuit for the sole reason of preventing a two-and-a-half hour drive by a few witnesses.") Thus, the cost of obtaining the attendance of witnesses does not weigh in favor of transfer.

The Defendant also states that all of the witnesses are outside of this Court's subpoena power because they reside more than one hundred miles from Marshall. *Defendant's Motion* at 8. The Defendant misconstrues the subpoena power of this Court. A court may compel any witness residing in the state in which the court sits to attend trial, subject to reasonable compensation if the witness incurs substantial expense. *See* Fed.R.Civ.P. 45(c)(3). Under this rule, this Court's subpoena power extends to all of the witnesses listed by the Defendant because they all reside in the State of Texas. Therefore, this factor does not weigh in favor of transfer.

### 5. The accessibility and location of sources of proof

**\*4** The Court notes that this factor has become less significant in a transfer analysis because of the advances in copying technology and information storage. *Mohamed, 90 F.Supp.2d at 778.* The Defendant argues that the evidence is more easily accessible from the Dallas Division of the Northern District of Texas because all of the documents and physical evidence relating to the accident, and other documents are in or near Dallas County. *Defendant's Motion* at 8. Any documents or evidence can be easily transported to Marshall. In the Court's view, this factor does not weigh in favor of transfer.

### 6. The possibility of delay and prejudice if transfer is granted

The Fifth Circuit has suggested that this factor may be relevant in a transfer analysis "only in rare and special circumstances and when such circumstances are established by clear and convincing evidence." *Shoemake,* 233 F.Supp.2d at 834 (citing *In re Horse-*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*shoe Entm't,* 305 F.3d 354, 358 (5th Cir.2002)). Because it is early in the litigation, the Plaintiffs would not be prejudiced by a transfer. *Ledoux v. Isle of Capri Casinos, Inc.,* 218 F.Supp.2d 835, 838 (E.D.Tex.2002). Therefore, this factor is neutral. *Id.*

### B. Public Interest Factors

#### 1. The administrative difficulties caused by court congestion

The Court should consider any administrative difficulties caused by court congestion in its transfer analysis. In its moving papers, Defendant states that both the Dallas Division of the Northern District and the Marshall Division of the Eastern District "move cases along with relative promptness." *Defendant's Motion* at 10. After considering this factor, the Court is not persuaded that it weighs in favor of transfer.

#### 2. The local interest in adjudicating local disputes

There is a local interest in resolving this litigation among the residents of the Dallas Division of the Northern District of Texas because the automobile accident occurred there. Furthermore, because the Defendant has brought a third-party claim against Colin Little, residents of the Dallas Division of the Northern District of Texas have an interest in a case involving one of their fellow residents that arose out of an accident within the Division. As the Plaintiffs point out, however, the citizens of Marshall also have an interest in this product liability case because the product is available in Marshall. *Plaintiffs' Response to Defendant's Motion to Transfer Venue* at 10-11. Therefore, this factor is neutral.

#### 3. The unfairness of burdening citizens in an unrelated forum with jury duty

Defendant contends that the residents of the Marshall Division should not be burdened with the jury duty and resolution of this dispute. *Defendant's Motion* at 10-11. Although the accident occurred in the Dallas Division of the Northern District of Texas, the Plaintiff's product liability claims against the Defendant are related to the Marshall Division. The citizens of Marshall would be interested to know whether there are defective products offered for sale in close proximity to the Marshall Division and whether they are being exposed to these products. *See Mohamed v. Mazda Motor Corp.,* 90 F.Supp.2d 757, 780 (E.D.Tex.2000). Therefore, this factor weighs against transfer.

#### 4. The avoidance of unnecessary problems in conflict of laws

**\*5** The plaintiffs assert products liability, breach of warranty, and negligence claims that arise under Texas law, and the defendant seeks a transfer between two federal district courts within the State of Texas. Consequently, the Court finds that this factor is inapplicable in this transfer analysis.

### III. Conclusion

The Court has considered the applicable factors under 28 U.S.C. § 1404(a). Although some factors weigh in favor of a transfer, others do not. The Defendant has not satisfied its burden of showing that the balance of convenience and justice substantially weighs in favor of transfer in this case. Upon application of the section 1404(a) factors to this case, the Court has exercised its discretion and has concluded that transfer to the Dallas Division of the Northern District of Texas is not warranted. Accordingly, the Court **DENIES** the Defendant's Motion to Transfer Venue.

E.D.Tex.,2006.
Singleton v. Volkswagen of America, Inc.
Slip Copy, 2006 WL 2634768 (E.D.Tex.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 3203284 (Trial Motion, Memorandum and Affidavit) Motion for More Definite Statement and Original Answer of Volkswagen AG (Nov. 6, 2006) Original Image of this Document (PDF)
• 2006 WL 3725064 (Trial Pleading) Motion for More Definite Statement and Original Answer of Volkswagen Ag (Nov. 6, 2006)
• 2006 WL 3201948 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Supplemental Response to Defendant Volkswagen of America, Inc.'s Motion to Reconsider its Motion to Transfer Venue (Oct. 19, 2006) Original Image of this Document (PDF)
• 2006 WL 3043895 (Trial Motion, Memorandum

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 141

**(Cite as: Slip Copy)**

and Affidavit) Reply of Volkswagen of America, Inc.
to Plaintiffs' Response to Motion for Reconsideration
(Oct. 18, 2006) Original Image of this Document
(PDF)

• 2006 WL 3043894 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Response to Defendant
Volkswagen of America, Inc.'s Motion to Reconsider
its Motion to Transfer Venue (Oct. 9, 2006) Original
Image of this Document (PDF)

• 2006 WL 3043893 (Trial Motion, Memorandum
and Affidavit) Volkswagen of America, Inc.'s Motion
for Reconsideration (Sep. 22, 2006) Original Image
of this Document (PDF)

• 2006 WL 3043832 (Trial Motion, Memorandum
and Affidavit) Memorandum Opinion and Order
(Sep. 11, 2006) Original Image of this Document
(PDF)

• 2006 WL 3043831 (Trial Motion, Memorandum
and Affidavit) Reply of Volkswagen of America, Inc.
to Plaintiffs' Response to Motion to Transfer Venue
(Jul. 21, 2006) Original Image of this Document
(PDF)

• 2006 WL 3043830 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Response to Defendant
Volkswagen of America, Inc.'s Motion to Transfer
Venue (Jul. 17, 2006) Original Image of this Docu-
ment (PDF)

• 2006 WL 2305248 (Trial Pleading) Volkswagen of
America, Inc.'s Third Party Complaint (Jun. 21,
2006) Original Image of this Document (PDF)

• 2006 WL 3043833 (Trial Motion, Memorandum
and Affidavit) Memorandum in Support of Volkswa-
gen of America, Inc.'s Motion to Transfer Venue
(Jun. 21, 2006) Original Image of this Document
(PDF)

• 2006 WL 1831252 (Trial Pleading) Plaintiffs' Ori-
ginal Complaint (May 30, 2006) Original Image of
this Document (PDF)

• 2:06cv00222 (Docket) (May 30, 2006)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 142

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP. | : | |
| | : | |
| and | : | |
| | : | |
| SEMICONDUCTOR COMPONENTS | : | |
| INDUSTRIES, LLC, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 6:06-cv-523 (LED) |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| SAMSUNG ELECTRONICS CO., LTD., | : | |
| SAMSUNG ELECTRONICS AMERICA, INC., | : | |
| SAMSUNG TELECOMMUNICATIONS | : | |
| AMERICA GENERAL, L.L.C., | : | |
| SAMSUNG SEMICONDUCTOR, INC., and | : | |
| SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO THE FIRST-TO-FILE RULE

Before the Court is Defendants' Motion to Transfer to the District of Delaware

Pursuant to the First-To-File Rule.  Having considered the motion, briefing regarding the

issue, arguments of the parties, and considerations of justice, the Court hereby GRANTS

said motion.

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |  |
|---|---|---|
| ON SEMICONDUCTOR CORP. | : | |
| and | : | |
| SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, | : | |
| Plaintiffs, | : | Civil Action No. 6:06-cv-523 (LED) |
| v. | : | JURY TRIAL DEMANDED |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : | |
| Defendants. | : | |

**ANSWER**

Defendants Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C. (collectively, "Defendants") hereby demand a jury trial and answer the allegations of the Complaint for Patent Infringement ("Complaint") filed by Plaintiffs ON Semiconductor Corp. and Semiconductor Components Industries, LLC (collectively, "Plaintiffs") as follows:

**THE PARTIES**

**Complaint Paragraph 1:**

1. Plaintiff ON Semiconductor is a Delaware corporation with its principal place of business at 5005 East McDowell Road, Phoenix, AZ 85008.

**Answer to Complaint Paragraph 1:**

    Admitted.

**Complaint Paragraph 2:**

2. Plaintiff Semiconductor Components, a Delaware limited liability company with its principal place of business at 5005 East McDowell Road, Phoenix, AZ 85008, is the principal domestic operating subsidiary of ON Semiconductor, and does business under the name of ON Semiconductor.

**Answer to Complaint Paragraph 2:**

    Defendants admit that Plaintiff Semiconductor Components is a Delaware limited

liability company with its principal place of business at 5005 East McDowell Road, Phoenix,

AZ 85008, and that Plaintiffs have represented that Plaintiff Semiconductor Components is

the principal domestic operating subsidiary of Plaintiff ON Semiconductor and does business

under the name "ON Semiconductor."  Except as so admitted, Defendants lack knowledge or

information sufficient to form a belief as to the allegations in Complaint Paragraph 2 and

therefore deny same.

**Complaint Paragraph 3:**

3. On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of Republic of Korea with its principal place of business at Samsung Main Building, 250, Taepyong-ro 2-ka, Chung-ku, Seoul 100-742, South Korea. On information and belief, SEC manufactures and, in cooperation with its subsidiaries, markets throughout the world, including in this district and elsewhere in the United States, a variety of semiconductor products including dynamic random access memory ("DRAM") devices.

USCA5 145

**Answer to Complaint Paragraph 3:**

Defendants admit the allegations in the first sentence of Complaint Paragraph 3, admit that co-defendant SEC manufactures and sells a wide range of products in the United States and abroad, including DRAMs, and admit that SEC has one or more subsidiaries. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations of Complaint Paragraph 3 and therefore deny same.

**Complaint Paragraph 4:**

4. Defendant Samsung Electronics America, Inc. ("SEA") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660. On information and belief, SEA is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of electronic and semiconductor products.

**Answer to Complaint Paragraph 4:**

Defendants admit the allegations in the first sentence of Complaint Paragraph 4, admit that SEA is subsidiary of SEC, admit that SEA markets consumer electronics and information technology products in the United States, and admit that SEA conducts business in the State of Texas as well as other states. Except as so admitted, Defendants deny the allegations in Complaint Paragraph 4, and deny that SEA has committed any acts of infringement within the Eastern District of Texas or elsewhere.

**Complaint Paragraph 5:**

5. Defendant Samsung Telecommunications America General, L.L.C. ("STA") is a Delaware limited liability company with its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082. On information and belief, STA is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of electronic and semiconductor products.

**Answer to Complaint Paragraph 5:**

Defendants admit the allegations in the first sentence of Complaint Paragraph 5, admit that STA markets personal and business communications products in the United States, and admit that STA conducts business in the State of Texas as well as other states. Except as so

USCA5 146

admitted, Defendants deny the allegations in Complaint Paragraph 5, and deny that STA has

committed any acts of infringement within the Eastern District of Texas or elsewhere.

**Complaint Paragraph 6:**

6.  Defendant Samsung Semiconductor, Inc. ("SSI") is a California corporation with its
    principal place of business at 3655 North First Street, San Jose, California 95134. On
    information and belief, SSI is a subsidiary of SEC and sells and otherwise markets in this
    district and elsewhere in the United States, a variety of electronic and semiconductor
    products.

**Answer to Complaint Paragraph 6:**

Defendants admit the allegations in the first sentence of Complaint Paragraph 6, admit

that SSI markets electronics products such as memory products, hard disk drives, and LCD

displays in the United States, and admit that SSI conducts business in the State of Texas as

well as other states.  Except as so admitted, Defendants deny the allegations in Complaint

Paragraph 6, and deny that SSI has committed any acts of infringement within the Eastern

District of Texas or elsewhere.

**Complaint Paragraph 7:**

7.  On information and belief, Defendant Samsung Austin Semiconductor, L.L.C. ("SAS") is
    a Delaware limited liability company with its principal place of business at 12100
    Samsung Boulevard, Austin, Texas 78754. On information and belief, SAS is a subsidiary
    of SEC and sells and otherwise markets, in this district and elsewhere in the
    United States, a variety of semiconductor products including DRAM devices.

**Answer to Complaint Paragraph 7:**

Defendants admit the allegations in the first sentence of Complaint Paragraph 7 and

admit that SAS conducts business in the State of Texas as well as other states.  Except as so

admitted, Defendants deny the allegations in Complaint Paragraph 7, and deny that SAS has

committed any acts of infringement within the Eastern District of Texas or elsewhere.

USCA5 147

## JURISDICTION AND VENUE

**Complaint Paragraph 8:**

8.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*

**Answer to Complaint Paragraph 8:**

Defendants admit that the Complaint purports to state claims against Defendants for patent infringement under the patent laws of the United States, but deny that they have committed any acts of infringement within the Eastern District of Texas or elsewhere. Defendants also admit that as a federal district court this Court has subject matter jurisdiction over patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338. Defendants deny, however, that this action was properly filed by Plaintiffs in this Court. This action is duplicative of an earlier-filed action involving the same issues and parties that is pending in the United States District Court for the District of Delaware, Civil Action No. 06-CV-0720 filed on November 30, 2006, and therefore should be transferred to the District of Delaware.

**Complaint Paragraph 9:**

9.  This Court has personal jurisdiction over each of the Defendants. The Defendants have had minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district and specifically as a result of, at least, the Defendants' distribution network wherein Defendants place their products that infringe Semiconductor Component's patents within the stream of commerce, which stream is directed at this district as well as Texas, and by committing the tort of patent infringement and/or contributing to or inducing acts of patent infringement by others within Texas and this district.

**Answer to Complaint Paragraph 9:**

Defendants admit that STA and SAS are subject to personal jurisdiction in the State of Texas, and that SEA and SSI conduct business in the State of Texas as well as other states. Except as so admitted, Defendants deny the allegations in Complaint Paragraph 9, and deny that they have committed any acts of infringement within the Eastern District of Texas or

5

USCA5 148

elsewhere.  Defendants further state that this action was improperly filed in this Court by

Defendants.  This action is duplicative of an earlier-filed action involving the same issues and

parties that is pending in the United States District Court for the District of Delaware, Civil

Action No. 06-CV-0720 filed on November 30, 2006, and therefore should be transferred to

the District of Delaware.

**Complaint Paragraph 10:**

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b)
    because Defendants have regularly conducted business in this judicial district and certain
    of the acts complained of herein occurred in this judicial district.

**Answer to Complaint Paragraph 10:**

Defendants deny that venue is proper in this district.  This action is duplicative of an

earlier-filed action involving the same issues and parties that is pending in the United States

District Court for the District of Delaware, Civil Action No. 06-cv-0720 filed on November

30, 2006.  The District of Delaware is therefore the proper venue for this action, and this case

should be transferred.  Plaintiffs have also failed to allege facts sufficient to demonstrate

under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) that Defendants would be subject to personal

jurisdiction in this District if it were a separate state, or that Defendants have a regular and

established place of business in this District.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 5,563,594

**Complaint Paragraph 11:**

11. The allegations contained in paragraphs 1 through 10 are incorporated by reference as if
    fully set herein.

**Answer to Complaint Paragraph 11:**

Defendants repeat and reallege their responses to paragraphs 1 through 10 of the

Complaint as though set forth in this paragraph.

USCA5 149

**Complaint Paragraph 12:**

12. United States Patent No. 5,563,594 ("the '594 patent"), entitled "Circuit and Method of Timing Data Transfers," was duly and legally issued by the United States Patent and Trademark Office on October 8, 1996. Plaintiffs hold all right and interest in the '594 patent, including the right to sue for past, present and future infringement. A copy of the '594 patent is attached hereto as Exhibit A.

**Answer to Complaint Paragraph 12:**

Defendants admit that the '594 patent is entitled "Circuit and Method of Timing Data Transfers" and was issued on October 8, 1996. Defendants further admit that a copy of the '594 patent is attached as Exhibit A to the Complaint along with a copy of a certificate of correction. Defendants further admit that Plaintiffs purport to hold all right and interest in the '594 patent including the right to sue for infringement. Except as so admitted, Defendants lack knowledge or information sufficient to form a belief as to the allegations in Complaint Paragraph 12 and therefore deny same.

**Complaint Paragraph 13:**

13. Defendants are infringing the '594 patent under one or more sections of 35 U.S.C., § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '594 patent.

**Answer to Complaint Paragraph 13:**

Denied.

**Complaint Paragraph 14:**

14. On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '594 patent.

**Answer to Complaint Paragraph 14:**

Denied.

**Complaint Paragraph 15:**

USCA5 150

15. Plaintiffs have been damaged by Defendants' infringement of the '594 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by them as a result of each of the Defendants' wrongful acts.

**Answer to Complaint Paragraph 15:**

Denied.

**Complaint Paragraph 16:**

16. Defendants' infringement of Semiconductor Component's exclusive rights under the '594 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

**Answer to Complaint Paragraph 16:**

Denied.

**Complaint Paragraph 17:**

17. Defendants have had actual knowledge of the '594 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**Answer to Complaint Paragraph 17:**

Denied.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,362,644**

**Complaint Paragraph 18:**

18. The allegations contained in paragraphs 1 through 17 are incorporated by reference as if fully set herein.

**Answer to Complaint Paragraph 18:**

Defendants repeat and reallege their responses to paragraphs 1 through 17 of the

Complaint as though set forth in this paragraph.

**Complaint Paragraph 19:**

19. United States Patent No. 6,362,644 ("the '644 patent"), entitled "Programmable Termination for Integrated Circuits," was duly and legally issued by the United States Patent and Trademark Office on March 26, 2002. Plaintiffs hold all right and interest in

USCA5 151

the '644 patent, including the right to sue for past, present and future infringement. A copy of the '644 patent is attached hereto as Exhibit B.

**Answer to Complaint Paragraph 19:**

Defendants admit that the '644 patent is entitled "Programmable Termination for Integrated Circuits" and was issued on March 26, 2002. Defendants further admit that a copy of the '644 patent is attached as Exhibit B to the Complaint. Defendants further admit that Plaintiffs purport to hold all right and interest in the '644 patent including the right to sue for infringement. Except as so admitted, Defendants lack knowledge or information sufficient to form a belief as to the allegations in Complaint Paragraph 19 and therefore deny same.

**Complaint Paragraph 20:**

20. Defendants are infringing the '644 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '644 patent.

**Answer to Complaint Paragraph 20:**

Denied.

**Complaint Paragraph 21:**

21. On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '644 patent.

**Answer to Complaint Paragraph 21:**

Denied.

**Complaint Paragraph 22:**

22. Plaintiffs have been damaged by Defendants' infringement of the '644 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

**Answer to Complaint Paragraph 22:**

Denied.

USCA5 152

**Complaint Paragraph 23:**

23. Defendants' infringement of Semiconductor Component's exclusive rights under the '644 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

**Answer to Complaint Paragraph 23:**

    Denied.

**Complaint Paragraph 24:**

24. Defendants have had actual knowledge of the '644 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**Answer to Complaint Paragraph 24:**

    Denied.

### COUNT III – INFRINGEMENT OF U.S. PATENT NO. 5,361,001

**Complaint Paragraph 25:**

25. The allegations contained in paragraphs 1 through 24 are incorporated by reference as if fully set herein.

**Answer to Complaint Paragraph 25:**

    Defendants repeat and reallege their responses to paragraphs 1 through 24 of the

Complaint as though set forth in this paragraph.

**Complaint Paragraph 26:**

26. United States Patent No. 5,361,001 ("the '001 patent"), entitled "Circuit and Method of Previewing Analog Trimming," was duly and legally issued by the United States Patent and Trademark Office on November 1, 1994. Plaintiffs hold all right and interest in the '001 patent, including the right to sue for past, present and future infringement. A copy of the '001 patent is attached hereto as Exhibit C.

**Answer to Complaint Paragraph 26:**

    Defendants admit that the '001 patent is entitled "Circuit and Method of Previewing

Analog Trimming" and was issued on November 1, 1994.  Defendants further admit that a

USCA5 153

copy of the '001 patent is attached as Exhibit C to the Complaint.  Defendants further admit

that Plaintiffs purport to hold all right and interest in the '001 patent including the right to sue

for infringement.  Except as so admitted, Defendants lack knowledge or information

sufficient to form a belief as to the allegations in Complaint Paragraph 26 and therefore deny

same.

**Complaint Paragraph 27:**

27. Defendants are infringing the '001 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '001 patent.

**Answer to Complaint Paragraph 27:**

Denied.

**Complaint Paragraph 28:**

28. On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '001 patent.

**Answer to Complaint Paragraph 28:**

Denied.

**Complaint Paragraph 29:**

29. Plaintiffs have been damaged by Defendants' infringement of the '001 patent.  Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

**Answer to Complaint Paragraph 29:**

Denied.

**Complaint Paragraph 30:**

30. Defendants' infringement of Semiconductor Component's exclusive rights under the '001 patent will continue to damage Plaintiffs business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

USCA5 154

**Answer to Complaint Paragraph 30:**

   Denied.


**Complaint Paragraph 31:**

31. Defendants have had actual knowledge of the '001 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**Answer to Complaint Paragraph 31:**

   Denied.


## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 5,000,827

**Complaint Paragraph 32:**

32. The allegations contained in paragraphs 1 through 31 are incorporated by reference as if fully set herein.

**Answer to Complaint Paragraph 32:**

   Defendants repeat and reallege their responses to paragraphs 1 through 31 of the

Complaint as though set forth in this paragraph.


**Complaint Paragraph 33:**

33. United States Patent No. 5,000,827 ("the '827 patent"), entitled "Method and Apparatus for Adjusting Plating Solution Flow Characteristics at Substrate Cathode Periphery to Minimize Edge Effect," was duly and legally issued by the United States Patent and Trademark Office on March 19, 1991. Plaintiffs hold all right and interest in the '827 patent, including the right to sue for past, present and future infringement. A copy of the '827 patent is attached hereto as Exhibit D.

**Answer to Complaint Paragraph 33:**

   Defendants admit that the '827 patent is entitled "Method and Apparatus for

Adjusting Plating Solution Flow Characteristics at Substrate Cathode Periphery to Minimize

Edge Effect" and was issued on March 19, 1991.  Defendants further admit that a copy of the

'827 patent is attached as Exhibit D to the Complaint.  Defendants further admit that

Plaintiffs purport to hold all right and interest in the '827 patent including the right to sue for

USCA5 155

infringement.  Except as so admitted, Defendants lack knowledge or information sufficient to

form a belief as to the allegations in Complaint Paragraph 33 and therefore deny same.

**Complaint Paragraph 34:**

34. Defendants are infringing the '827 patent under one or more sections of 35 U.S.C. § 271
     in this judicial district and elsewhere in the United States by the manufacture, use, sale,
     offer for sale and/or importation into the United States of product(s) falling within the
     scope of one or more claims of the '827 patent.

**Answer to Complaint Paragraph 34:**

    Denied.

**Complaint Paragraph 35:**

35. On information and belief, Defendants also contribute to and/or induce the infringement
     of at least one claim of the '827 patent.

**Answer to Complaint Paragraph 35:**

    Denied.

**Complaint Paragraph 36:**

36. Plaintiffs have been damaged by Defendants' infringement of the '827 patent. Plaintiffs
     are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as
     a result of each of the Defendants' wrongful acts.

**Answer to Complaint Paragraph 36:**

    Denied.

**Complaint Paragraph 37:**

37. Defendants' infringement of Semiconductor Component's exclusive rights under the '827
     patent will continue to damage Plaintiffs' business, causing irreparable harm, for which
     there is no adequate remedy at law, unless each of the Defendants is enjoined by this
     Court.

**Answer to Complaint Paragraph 37:**

    Denied.

USCA5 156

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

Defendants deny that Plaintiffs are entitled to any relief whatsoever from Defendants or this Court, either as requested in the Complaint or otherwise.

## GENERAL DENIAL

Defendants further deny each and every allegation contained in the Complaint to which Defendants have not specifically responded.

## AFFIRMATIVE DEFENSES

Defendants allege and assert the following defenses in response to the allegations of Plaintiffs' Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the affirmative defenses described below, Defendants specifically reserve all rights to allege additional affirmative defenses that become known through the course of discovery.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted as to one or more of the Defendants.

### Second Affirmative Defense

Venue is not proper in this judicial district. An earlier-filed action involving the same issues and parties is pending in the United States District Court for the District of Delaware, Civil Action No. 06-cv-0720 filed on November 30, 2006. Pursuant to the first-filed rule, the proper venue for this action is the United States District Court for the District of Delaware. Plaintiffs have also failed to demonstrate under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) that Defendants would be subject to personal jurisdiction in this District if it were a separate state, or that Defendants have a regular and established place of business in this District.

14

USCA5 157

### Third Affirmative Defense

Defendants have not directly or indirectly infringed and are not directly or indirectly infringing any valid and enforceable claim of any of U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and 5,000,827, either literally or under the doctrine of equivalents.

### Fourth Affirmative Defense

The claims of U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and 5,000,827 are invalid for failure to meet the requirements of the patent laws of the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

### Fifth Affirmative Defense

Plaintiffs are estopped, based on statements, representations, and admissions made during prosecution of the applications that led to U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and/or 5,000,827 from asserting any interpretation of the claims of U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and/or 5,000,827 that would be broad enough to cover any of Defendants' products or methods alleged to infringe U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and/or 5,000,827, either literally or under the doctrine of equivalents.

### Sixth Affirmative Defense

Plaintiffs are barred by the doctrine of laches from enforcing the claims of one or more of U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and 5,000,827 against Defendants.

### Seventh Affirmative Defense

Plaintiffs cannot satisfy the requirements applicable to their request for injunctive relief at least because any alleged injury to Plaintiffs is not immediate or irreparable and Plaintiffs have an adequate remedy at law.

15

USCA5 158

## REQUEST FOR JURY TRIAL

Defendants demand and request trial by jury on all issues raised that are triable by a jury.

Dated:  December 26, 2006

/s/ Michael E. Jones
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 North College 500 Plaza Tower
Tyler, Texas X 75702
(903) 597-8311
(903) 593-0846 (Facsimile)

*Attorneys for Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C.*

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 26, 2006.  Any other counsel of record will be served by first class on this same date.

/s/ Michael E. Jones

USCA5 159

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| ON SEMICONDUCTOR CORP. : <br> : <br> and : <br> : <br> SEMICONDUCTOR COMPONENTS : <br>   INDUSTRIES, LLC, : <br> : <br> : <br>         Plaintiffs, : <br> : <br>         v. : <br> : <br> SAMSUNG ELECTRONICS CO., LTD., : <br> SAMSUNG ELECTRONICS AMERICA, INC., : <br> SAMSUNG TELECOMMUNICATIONS : <br>   AMERICA GENERAL, L.L.C., : <br> SAMSUNG SEMICONDUCTOR, INC., and : <br> SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., : <br> : <br>         Defendants. : <br> : | <br><br><br><br><br><br><br><br>Civil Action No. 6:06-cv-523 (LED) <br><br>JURY TRIAL DEMANDED |

**<u>RULE 7.1 STATEMENT</u>**

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure and to enable District Judges

and Magistrate Judges of the Court to evaluate possible disqualification or recusal, the

undersigned counsel for Samsung Electronics America, Inc. ("SEA"), Samsung

Telecommunications America General, L.L.C. ("STA"), Samsung Semiconductor, Inc. ("SSI"),

and Samsung Austin Semiconductor L.L.C. ("SAS") certifies as follows:

USCA5 160

1.    SEA is a wholly owned subsidiary of Samsung Electronics Co., Ltd., which is a publicly held corporation organized under the laws of the Republic of Korea.  No other publicly held corporation owns 10% or more of SEA's stock.

2.    STA, SSI, and SAS are wholly owned subsidiaries of SEA.  No publicly held corporation owns 10% or more of the stock of STA, SSI, or SAS.

Respectfully submitted,

Dated:  December 26, 2006

*/s/ Michael E. Jones*
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 North College 500 Plaza Tower
Tyler, Texas X 75702
(903) 597-8311
(903) 593-0846 (Facsimile)

*Attorneys for Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C.*

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

USCA5 161

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 26, 2006.  Any other counsel of record will be served by first class on this same date.

*/s/ Michael E. Jones*

USCA5 162

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| ON SEMICONDUCTOR CORP. | : |
| | : |
| and | : |
| | : |
| SEMICONDUCTOR COMPONENTS | : |
|    INDUSTRIES, LLC, | : |
| | : |
| | : |
|           Plaintiffs, | :    Civil Action No. 6:06-cv-523 (LED) |
| | : |
|        v. | :    JURY TRIAL DEMANDED |
| | : |
| SAMSUNG ELECTRONICS CO., LTD., | : |
| SAMSUNG ELECTRONICS AMERICA, INC., | : |
| SAMSUNG TELECOMMUNICATIONS | : |
|    AMERICA GENERAL, L.L.C., | : |
| SAMSUNG SEMICONDUCTOR, INC., and | : |
| SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : |
| | : |
|          Defendants. | : |
| | : |

**DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO FILE AN AMENDED,**
**NON-REDACTED VERSION OF THEIR PREVIOUSLY FILED MOTION TO**
**TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO THE FIRST-TO-**
**FILE RULE, UNDER SEAL**

Defendants Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C. (collectively, "Defendants") hereby respectfully file their Motion for Leave to file an Amended, Non-Redacted version of their previously filed Motion to Transfer to the District of Delaware pursuant to the First-To-File rule, under seal, and would respectfully show the following:

A protective order is not yet in place in this action; therefore Defendants are unable to file documents, under seal, without leave of Court.

There is currently pending a first-filed action involving the same parties and patents in the United States District Court for the District of Delaware. Defendants recently filed a motion, in the District of Delaware, to enjoin Plaintiff from prosecuting this later-filed action in the Eastern District of Texas. Plaintiff requested that such motion be filed, under seal, due to allegedly confidential information contained therein.

Since Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-To-File Rule involves the same issues, and without waiving any rights to challenge Plaintiffs' confidentiality assertions, Defendants filed a Redacted version of their Motion to Transfer here in the Eastern District of Texas.

To fully outline their arguments and positions, Defendants respectfully request the ability to file a non-redacted version thereof, under seal, with the Court's permission.

Dated:  December 26, 2006

/s/ Michael E. Jones
Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 North College 500 Plaza Tower
Tyler, Texas X 75702
(903) 597-8311
(903) 593-0846 (Facsimile)

*Attorneys for Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C.*

2

USCA5 164

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on December 26, 2006.  Any other counsel of record will be served by first class on this same date.

*/s/ Michael E. Jones*

USCA5 165

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP. | : | |
| | : | |
| and | : | |
| | : | |
| SEMICONDUCTOR COMPONENTS | : | |
| INDUSTRIES, LLC, | : | |
| | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 6:06-cv-523 (LED) |
| | : | |
| v. | : | JURY TRIAL DEMANDED |
| | : | |
| SAMSUNG ELECTRONICS CO., LTD., | : | |
| SAMSUNG ELECTRONICS AMERICA, INC., | : | |
| SAMSUNG TELECOMMUNICATIONS | : | |
| AMERICA GENERAL, L.L.C., | : | |
| SAMSUNG SEMICONDUCTOR, INC., and | : | |
| SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : | |
| | : | |
| Defendants. | : | |
| | : | |

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO
FILE AN AMENDED, NON-REDACTED VERSION OF THEIR PREVIOUSLY
FILED MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT
TO THE FIRST-TO-FILE RULE**

Defendants Samsung Electronics America, Inc., Samsung Telecommunications

America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor

L.L.C. (collectively, "Defendants") filed their Motion for Leave to file an Amended, Non-

Redacted version of their previously filed Motion to Transfer to the District of Delaware

pursuant to the First-To-File rule, under seal.

The motion is not opposed by the Plaintiffs.  As such, it is GRANTED.  Defendants

are authorized to file an Amended, Non-Redacted version of their previously filed Motion to

Transfer to the District of Delaware pursuant to the First-To-File rule.

4

USCA5 166

5

USCA5 167

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

|  |  |  |
|---|---|---|
| ON SEMICONDUCTOR CORP. | : |  |
|  | : |  |
| and | : |  |
|  | : |  |
| SEMICONDUCTOR COMPONENTS | : |  |
| INDUSTRIES, LLC, | : |  |
|  | : |  |
|  | : |  |
| Plaintiffs, | : | Civil Action No. 6:06-cv-523 (LED) |
|  | : |  |
| v. | : | JURY TRIAL DEMANDED |
|  | : |  |
| SAMSUNG ELECTRONICS CO., LTD., | : |  |
| SAMSUNG ELECTRONICS AMERICA, INC., | : |  |
| SAMSUNG TELECOMMUNICATIONS | : |  |
| AMERICA GENERAL, L.L.C., | : |  |
| SAMSUNG SEMICONDUCTOR, INC., and | : |  |
| SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : |  |
|  | : |  |
| Defendants. | : |  |
|  | : |  |

## ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR LEAVE TO FILE AN AMENDED, NON-REDACTED VERSION OF THEIR PREVIOUSLY FILED MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO THE FIRST-TO-FILE RULE

Defendants Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C. (collectively, "Defendants") filed their Motion for Leave to file an Amended, Non-Redacted version of their previously filed Motion to Transfer to the District of Delaware pursuant to the First-To-File rule, under seal.

The motion is not opposed by the Plaintiffs. As such, it is GRANTED. Defendants are authorized to file an Amended, Non-Redacted version of their previously filed Motion to Transfer to the District of Delaware pursuant to the First-To-File rule.

4

USCA5 168

So ORDERED and SIGNED this 3rd day of January, 2007.

_____
**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

5

**SEALED DOCUMENT**

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP and SEMINCONDUCTOR COMPONENTS INDUSTRIES, LLC, | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 6:06-CV-523(LED) |
| SAMSUNG ELECTRONICS CO., LTD SAMSUNG ELECTRONICS AMERICA, INC. SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMINCONDUCTOR L.L.C. | § § § § § § § § | |
| Defendants. | § | |

**UNOPPOSED MOTION FOR LEAVE TO FILE UNDER SEAL PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF
DELAWARE PURSUANT TO THE FIRST TO FILE RULE**

Plaintiffs move for leave to file their opposition to Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-To-File Rule (Dkt No. 12), under seal, and in support thereof would respectfully show the following:

**I.**

A protective order is not yet in place in this action; therefore Plaintiffs are unable to file documents, under seal, without leave of Court. The motion to transfer was filed under seal at Plaintiffs' request because Plaintiffs believe that it contains confidential information.   As Plaintiffs believe that the opposition also includes confidential information, Plaintiffs seek leave to file it under seal as well.

USCA5 170

## II.

Defendants SEA, STA, SSI and SAS do not oppose the filing of the opposition under seal, but reserve the right to challenge Plaintiffs' confidentiality assertion.

USCA5 171

Respectfully submitted,

/s/ Kenneth R. Adamo
Kenneth R. Adamo
State Bar No. 00846960
kradamo@jonesday.com
Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
Tharan Gregory Lanier
tglanier@jonesday.com
CA Bar No. 138784

JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Of Counsel:
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025

Carl R. Roth
State Bar No. 17312000
cr@rothfirm.com
Michael C. Smith
ms@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 N Wellington Suite 200
P O Box 876
Marshall, Texas 75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

**ATTORNEYS FOR ON SEMICONDUCTOR
CORPORATION AND SEMICONDUCTOR
COMPONENTS INDUSTRIES, L.L.C.**

USCA5 172

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 5th day of January, 2007. Any other counsel of record will be served by facsimile transmission and/or first class mail.

/s/ Kenneth R. Adamo
Kenneth R. Adamo

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP and SEMINCONDUCTOR COMPONENTS INDUSTRIES, LLC, | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | Civil Action No. 6:06-CV-523(LED) |
| SAMSUNG ELECTRONICS CO., LTD SAMSUNG ELECTRONICS AMERICA, INC. SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMINCONDUCTOR L.L.C. | § § § § § § § | |
| Defendants. | § § | |

**ORDER GRANTING UNOPPOSED MOTION FOR LEAVE TO FILE PLAINTIFFS'
OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF
DELAWARE PURSUANT TO THE FIRST TO FILE RULE**

Before the Court is Plaintiffs' Unopposed Motion for Leave to file their Opposition to

Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-To-File Rule,

under seal. Having considered the motion, and the briefing regarding the issue, arguments of the

parties, and considerations of justice, the Court hereby GRANTS said motion.

USCA5 174

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP and | § | |
| SEMINCONDUCTOR COMPONENTS | § | |
| INDUSTRIES, LLC, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 6:06-CV-523(LED) |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD | § | |
| SAMSUNG ELECTRONICS AMERICA, INC. | § | |
| SAMSUNG TELECOMMUNICATIONS | § | |
| AMERICA GENERAL, L.L.C., SAMSUNG | § | |
| SEMICONDUCTOR, INC., and SAMSUNG | § | |
| AUSTIN SEMINCONDUCTOR L.L.C. | § | |
| | § | |
| Defendants. | § | |

## <u>NOTICE OF APPEARANCE</u>

The following designated attorney hereby enters an appearance as additional counsel of

record for Plaintiffs On Semiconductor Corp and Semiconductor Components Industries, LLC,

and is authorized to receive service on all pleadings, notices, orders and other papers in the

above-captioned matter on behalf of Plaintiffs.


Michael C. Smith
State Bar No.  18650410
THE ROTH LAW FIRM
115 N. Wellington, Suite 200
Marshall, Texas  75670
Telephone:  (903) 935-1665
Facsimile:  (903) 935-1797
Email:  ms@rothfirm.com

Respectfully submitted,

Carl R. Roth
State Bar No. 17312000
cr@rothfirm.com
Michael C. Smith
ms@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 N Wellington Suite 200
P O Box 876
Marshall, Texas 75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

Kenneth R. Adamo
State Bar No. 00846960
kradamo@jonesday.com
Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
Tharan Gregory Lanier
tglanier@jonesday.com
CA Bar No. 138784

JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Of Counsel:
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025

**ATTORNEYS FOR ON SEMICONDUCTOR CORPORATION AND SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C.**

USCA5 176

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 8th day of January, 2007.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

.

_____

Michael C. Smith

# SEALED DOCUMENT

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP and<br>SEMINCONDUCTOR COMPONENTS<br>INDUSTRIES, LLC, | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Civil Action No. 6:06-CV-523(LED) |
| SAMSUNG ELECTRONICS CO., LTD<br>SAMSUNG ELECTRONICS AMERICA, INC.<br>SAMSUNG TELECOMMUNICATIONS<br>AMERICA GENERAL, L.L.C., SAMSUNG<br>SEMICONDUCTOR, INC., and SAMSUNG<br>AUSTIN SEMINCONDUCTOR L.L.C. | §<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | §<br>§ | |

## ORDER GRANTING UNOPPOSED MOTION FOR LEAVE TO FILE PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO THE FIRST TO FILE RULE

Before the Court is Plaintiffs' Unopposed Motion for Leave to file their Opposition to Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-To-File Rule, under seal. Having considered the motion, and the briefing regarding the issue, arguments of the parties, and considerations of justice, the Court hereby GRANTS said motion.

**So ORDERED and SIGNED this 8th day of January, 2007.**



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

SEALED DOCUMENT

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP and SEMINCONDUCTOR COMPONENTS INDUSTRIES, LLC, | §<br>§<br>§<br>§ | |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | Civil Action No. 6:06-CV-523(LED) |
| SAMSUNG ELECTRONICS CO., LTD SAMSUNG ELECTRONICS AMERICA, INC. SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMINCONDUCTOR L.L.C. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | |
| Defendants. | § | |

## UNOPPOSED MOTION FOR LEAVE TO FILE UNDER SEAL PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO THE FIRST TO FILE RULE

Plaintiffs move for leave to file their Sur-Reply to Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-To-File Rule (Dkt No. 12), under seal, and in support thereof would respectfully show the following:

### I.

A protective order is not yet in place in this action; therefore Plaintiffs are unable to file documents, under seal, without leave of Court. The motion to transfer was filed under seal at Plaintiffs' request because Plaintiffs believe that it contains confidential information. As Plaintiffs believe that the Sur-Reply also includes confidential information, Plaintiff seeks leave to file it under seal as well.

SVI-43052v1

**II.**

Defendants SEA, STA, SSI and SAS do not oppose the filing of the Sur-Reply under seal, but reserve the right to challenge Plaintiffs' confidentiality assertion.

USCA5 180

Respectfully submitted,

/s/ Kenneth R. Adamo
Kenneth R. Adamo
State Bar No. 00846960
kradamo@jonesday.com
Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100
Tharan Gregory Lanier
tglanier@jonesday.com
CA Bar No. 138784

JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Of Counsel:
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025

Carl R. Roth
State Bar No. 17312000
cr@rothfirm.com
Michael C. Smith
ms@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 N Wellington Suite 200
P O Box 876
Marshall, Texas 75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

**ATTORNEYS FOR ON SEMICONDUCTOR
CORPORATION AND SEMICONDUCTOR
COMPONENTS INDUSTRIES, L.L.C.**

USCA5 181

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 19th day of January, 2007. Any other counsel of record will be served by facsimile transmission and/or first class mail.

/s/ Kenneth R. Adamo

SVI-43052v1

USCA5 182

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP and<br>SEMINCONDUCTOR COMPONENTS<br>INDUSTRIES, LLC,<br><br>     Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD<br>SAMSUNG ELECTRONICS AMERICA, INC.<br>SAMSUNG TELECOMMUNICATIONS<br>AMERICA GENERAL, L.L.C., SAMSUNG<br>SEMICONDUCTOR, INC., and SAMSUNG<br>AUSTIN SEMINCONDUCTOR L.L.C.<br><br>     Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 6:06-CV-523(LED) |

## ORDER GRANTING UNOPPOSED MOTION FOR LEAVE TO FILE UNDER SEAL PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO THE FIRST TO FILE RULE

Before the Court is Plaintiffs' Unopposed Motion for Leave to file Under Seal its Sur-Reply to Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-To-File Rule, under seal. Having considered the motion, and the briefing regarding the issue, arguments of the parties, and considerations of justice, the Court hereby GRANTS said motion.

USCA5 183

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP and<br>SEMINCONDUCTOR COMPONENTS<br>INDUSTRIES, LLC,<br><br>     Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD<br>SAMSUNG ELECTRONICS AMERICA, INC.<br>SAMSUNG TELECOMMUNICATIONS<br>AMERICA GENERAL, L.L.C., SAMSUNG<br>SEMICONDUCTOR, INC., and SAMSUNG<br>AUSTIN SEMINCONDUCTOR L.L.C.<br><br>     Defendants. | § § § § § § § § § § § § § § § § | Civil Action No. 6:06-CV-523(LED) |

## ORDER GRANTING UNOPPOSED MOTION FOR LEAVE TO FILE UNDER SEAL PLAINTIFFS' SUR-REPLY TO DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO THE FIRST TO FILE RULE

Before the Court is Plaintiffs' Unopposed Motion for Leave to file Under Seal its Sur-Reply to Defendants' Motion to Transfer to the District of Delaware Pursuant to the First-To-File Rule, under seal. Having considered the motion, and the briefing regarding the issue, arguments of the parties, and considerations of justice, the Court hereby GRANTS said motion.

**So ORDERED and SIGNED this 22nd day of January, 2007.**



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

SVI-43053v1

USCA5 184

SEALED DOCUMENT

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| ON SEMICONDUCTOR CORP. | : |
| | : |
| and | : |
| | : |
| SEMICONDUCTOR COMPONENTS | : |
|   INDUSTRIES, LLC, | : |
| | : |
| | : |
|         Plaintiffs, | :    Civil Action No. 6:06-cv-523 (LED) |
| | : |
|         v. | :    JURY |
| | : |
| SAMSUNG ELECTRONICS CO., LTD., | : |
| SAMSUNG ELECTRONICS AMERICA, INC., | : |
| SAMSUNG TELECOMMUNICATIONS | : |
|   AMERICA GENERAL, L.L.C., | : |
| SAMSUNG SEMICONDUCTOR, INC., and | : |
| SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : |
| | : |
|         Defendants. | : |
| | : |

## NOTICE OF APPEARANCE OF ADDITIONAL COUNSEL

Defendants Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C. (the "Samsung Defendants"), files this their Notice of Appearance of Additional Counsel, and hereby notifies the Court that Allen F. Gardner of the law firm Potter Minton, A Professional Corporation, 110 N. College, Suite 500, Tyler, Texas 75702, is appearing as additional counsel for the Samsung Defendants in the above-referenced matter. All pleadings, discovery, correspondence and other material should be served upon counsel at the address referenced above.

USCA5 185

Respectfully submitted,

**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas  75710
(903) 597 8311
(903) 593 0846 (Facsimile)


By:   */s/ Allen F. Gardner*
      ALLEN F. GARDNER
      State Bar No. 24043679
      allengardner@potterminton.com

*Attorneys for Samsung Electronics America,
Inc., Samsung Telecommunications America
General, L.L.C., Samsung Semiconductor,
Inc., and Samsung Austin Semiconductor
L.L.C.*


## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 29, 2007. Any other counsel of record will be served by first class mail on this same date.


/s/ Allen F. Gardner
Allen F. Gardner

USCA5 186

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

ON SEMICONDUCTOR CORPORATION,                    )
                                                 )
and                                              )
                                                 )
SEMICONDUCTOR COMPONENTS                         )    Civil Action No. 6:06-CV-523
   INDUSTRIES, L.L.C.                          )
                                                 )        Judge Leonard Davis
      Plaintiffs,                            )
                                                 )    **ON SEMICONDUCTOR'S**
   v.                                          )    **SUPPLEMENT TO ITS SUR-**
                                                 )    **REPLY IN SUPPORT OF ITS**
SAMSUNG ELECTRONICS CO., LTD.,                   )    **OPPOSITION TO SAMSUNG'S**
SAMSUNG ELECTRONICS AMERICA, INC.,               )    **MOTION TO TRANSFER TO**
SAMSUNG TELECOMMUNICATIONS                       )    **THE DISTRICT OF DELAWARE**
   AMERICA GENERAL, L.L.C.,                    )    **PURSUANT TO THE FIRST-TO-**
SAMSUNG SEMICONDUCTOR, INC., and                 )    **FILE RULE**
SAMSUNG AUSTIN SEMICONDUCTOR, L.L.C.,            )
                                                 )
      Defendants.                            )
                                                 )

Kenneth R. Adamo                    Michael C. Smith
Hilda C. Galvan                     THE ROTH LAW FIRM
JONES DAY                           115 N. Wellington, Suite 200
2727 North Harwood Street           Marshall, TX  75670
Dallas, TX  75201-1515              (903) 935-1665
(214) 220-3939
                                    *Attorneys for ON Semiconductor Corp. and*
Tharan Gregory Lanier               *Semiconductor Components Industries,*
Behrooz Shariati                    *LLC.*
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
(650) 739-3939

Dated:  February 16, 2007

USCA5 187

ON Semiconductor's January 23, 2007 Sur-Reply in Support of its Opposition to Samsung's Motion to Transfer to Delaware Pursuant to the First-to-File Rule ("ON Semiconductor's Sur-Reply"), Docket Item ("D.I.") 20, references a sealed January 12, 2007 brief filed by Samsung in Delaware in Opposition to ON Semiconductor's Motion to Dismiss the Original Delaware Complaint ("Samsung's January 12th Delaware Opposition").  (D.I. 20 at 3.) ON Semiconductor's Sur-Reply further states that ON Semiconductor will supplement the record with a copy of the public version of Samsung's January 12th Delaware Opposition after the public version is filed.  (*Id.* at n.1.)  Samsung filed the public version of its January 12th Delaware Opposition on February 12, 2007, and a copy is attached as Exhibit A.  ON Semiconductor's Sur-Reply refers to Exhibit A at 21.  (*See* D.I. 20 at 3.)

USCA5 188

Respectfully submitted,

/s/ Kenneth R. Adamo
Kenneth R. Adamo
State Bar No. 00846960
kradamo@jonesday.com
Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Tharan Gregory Lanier
tglanier@jonesday.com
CA Bar No. 138784
Of Counsel:
Behrooz Shariati
bshariati@jonesday.com
CA Bar No. 174436
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
Telephone: (650) 739-3939
Facsimile: (650) 739-3900

Carl R. Roth
State Bar No. 17312000
cr@rothfirm.com
Michael C. Smith
ms@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 N Wellington Suite 200
P O Box 876
Marshall, Texas 75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

ATTORNEYS FOR
ON SEMICONDUCTOR CORPORATION
AND SEMICONDUCTOR
COMPONENTS INDUSTRIES, L.L.C.

SVI-43936v1

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 16th day of February, 2007.  Any other counsel of record will be served by facsimile transmission and/or first class mail.

/s/ Kenneth R. Adamo
Kenneth R. Adamo

USCA5 190

# EXHIBIT A

USCA5 191



IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>SAMSUNG TELECOMMUNICATIONS<br>  AMERICA GENERAL, L.L.C.,<br>SAMSUNG SEMICONDUCTOR, INC., and<br>SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : | |
| Plaintiffs, | : | Civil Action No. 06-720 (***) |
| v. | : | |
| ON SEMICONDUCTOR CORP. | : |  |
| and | : | |
| SEMICONDUCTOR COMPONENTS<br>INDUSTRIES, LLC, | : | |
| Defendants. | : | |

**PLAINTIFFS' ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

<table>
<tr><td></td><td>Josy W. Ingersoll (No. 1088)<br>John W. Shaw (No. 3362)<br>Andrew A. Lundgren (No. 4429)<br>YOUNG CONAWAY STARGATT & TAYLOR, LLP</td></tr>
<tr><td>OF COUNSEL:</td><td>The Brandywine Building, 17th Floor<br>1000 West Street<br>Wilmington, DE 19801</td></tr>
</table>

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800


Dated: January 12, 2007

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, DE 19801
302-571-6600
*alundgren@ycst.com*

*Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., Samsung
Telecommunications America General, L.L.C.,
Samsung Semiconductor, Inc., and Samsung Austin
Semiconductor, L.L.C.*

USCA5 192

## TABLE OF CONTENTS

Page

NATURE AND STAGE OF THE PROCEEDING ................................................................2

SUMMARY OF ARGUMENT.............................................................................................3

STATEMENT OF FACTS....................................................................................................5

ARGUMENT ......................................................................................................................12

I.  LEGAL STANDARDS. ...........................................................................................12

II.  SEC HAD A REASONABLE APPREHENSION OF BEING SUED BY DEFENDANTS
    WHEN IT FILED THE ORIGINAL COMPLAINT ON NOVEMBER 30, 2006.........................14

    A.  The Parties' Pre-Suit Settlement Discussions Were Carried Out Under Threat Of
        Litigation, And SEC Therefore Had A Reasonable Apprehension Of Suit. .....................14

    B.  The Filing Of The Texas Action Confirms That Defendants Were Planning To
        Sue SEC For Patent Infringement, And Therefore That SEC Had A Reasonable
        Apprehension Of Being Sued.......................................................................................19

III.  THIS IS THE VERY TYPE OF CASE THE DECLARATORY JUDGMENT IS
      MEANT TO ADDRESS, AND THE COURT SHOULD THEREFORE HEAR THIS
      CASE.................................................................................................................................21

    A.  SEC's Declaratory Judgment Claims Comport With The Purpose Of The
        Declaratory Judgment Act...........................................................................................22

    B.  REDACTED ..........................................................................................................23

    C.  The Court Should Not Reward Defendants' Blatant Forum-Shopping.............................27

CONCLUSION ...................................................................................................................28

i

USCA5 193

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.,*
846 F.2d 731 (Fed. Cir. 1988) ............................................................................ 12, 22, 23

*C.R. Bard, Inc. v. Schwartz,*
716 F.2d 874 (Fed. Cir. 1983) ............................................................................ 20

*Capo, Inc. v. Dioptics Medical Products, Inc.,*
387 F.3d 1352 (Fed. Cir. 2004) .......................................................................... 21, 22, 23

*Clay Paky, S.p.A. v. Vari-Lite, Inc.,*
Case Nos. 99 Civ. 11401 and 11402 (BSJ),
2000 U.S. Dist. LEXIS 9802 (S.D.N.Y. July 12, 2000) ...................................... 16

*Correspondent Servs. Corp. v. First Equities Corp.,*
338 F.3d 119 (2d Cir. 2003) ............................................................................... 14

*Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation,*
297 F.3d 1343 (Fed. Cir. 2002) .......................................................................... 13

*Dow Chemical Co. v. Exxon Chemical Patents, Inc.,*
No. 94-572-SLR, 1995 WL 562289 (D. Del. Aug. 16, 1995) ............................ 14

*Electronics for Imaging, Inc. v. Coyle,*
394 F.3d 1341 (Fed. Cir. 2005) .......................................................................... 12

*Epic Systems Corp. v. Acacia Research Corp.,*
No. 06-255, 2006 WL 3355185 (D. Del. Nov. 16, 2006) .................................. 12

*Fina Research S.A. v. Baroid, Ltd.,*
141 F.3d 1479 (Fed. Cir. 1998) .......................................................................... 12

*Goodyear Tire & Rubber Co. v. Releasomers, Inc.,*
824 F.2d 953 (Fed. Cir. 1987) ............................................................................ 12, 20, 22

*Gotha v. United States,*
115 F.3d 176 (3d Cir. 1997) ............................................................................... 13

*Gould Elecs., Inc. v. United States,*
220 F.3d 169 (3d Cir. 2000) ............................................................................... 13

*Ivoclar Vivadent, Inc. v. Hasel,*
Case No. 02-CV-0316E(F),
2003 U.S. Dist. LEXIS 12611 (W.D.N.Y. June. 30, 2003) ................................ 15

ii

USCA5 194

*Livorsi Marine, Inc. v. Nordskog Publishing, Inc.*,
    268 F. Supp. 2d 994 (N.D. Ill. 2003) ................................................................... 18

*Millennium Products, Inc. v. Gravity Boarding Co., Inc.*,
    127 F. Supp. 2d 974 (N.D. Ill. 2000) ................................................................... 13

*Mortensen v. First Fed. Sav. and Loan*,
    549 F.2d 884 (3d Cir. 1977)................................................................................ 13

*Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*,
    57 F.3d 1051 (Fed. Cir. 1995).............................................................................. 18

*Russell Corp. v. Sara Lee Corp.*,
    129 F. Supp. 2d 1165 (N.D. Ill. 2001) .......................................................... 25, 26

*Syngenta Crop. Protection, Inc. v. Monsanto Company*,
    Civil Action No. 03-1062 (KAJ) (D. Del. Apr. 6, 2004)................................... 20

*Teva Pharms. USA, Inc. and Pfizer Inc.*,
    395 F.3d 1324 (Fed. Cir. 2005)............................................................................ 19

*Vermeer Mfg. Co. v. Deere & Co.*,
    379 F. Supp. 2d 645 (D. Del. 2005)..................................................................... 18

*Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*,
    157 F.R.D. 215 (D. Del. 1993) ............................................................................ 27

**Statutes**

28 U.S.C. § 2201 ......................................................................................................... 10

Fed. R. Civ. P. 12(b)(1)................................................................................................ 11

USCA5 195

Plaintiffs Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), Samsung Telecommunications America General, L.L.C. ("STA"), Samsung Semiconductor, Inc. ("SSI"), and Samsung Austin Semiconductor, L.L.C. ("SAS") submit this Answering Brief in opposition to Defendants' motion to dismiss for alleged lack of subject matter jurisdiction.

Defendants contend that SEC did not have a reasonable apprehension of being sued by Defendants when it filed this action on November 30, 2006. But Defendants' own conduct belies this contention. At 8:22 AM on Monday, December 4, 2006 — *less than two business days after SEC filed this action* — Defendants carried through on their threats of litigation and filed a duplicative patent infringement action against Plaintiffs in the United States District Court for the Eastern District of Texas, confirming that SEC's fear of being sued was not only reasonable, but dead right.

At bottom, this motion is an indirect attempt by Defendants to transfer this action to the Eastern District of Texas, a forum they perceive to be more favorable to their cause than the District of Delaware. That is the only explanation for Defendants' choice of forum, since — as set forth in Plaintiffs' pending motion to enjoin Defendants from pursuing the Texas action, which is incorporated herein by reference — the Eastern District of Texas has no relevant connection to any of the parties, witnesses, or sources of proof in this case.

As set forth below, because SEC had a reasonable apprehension of being sued by Defendants when it filed this action on November 30, 2006, Defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

USCA5 196

## NATURE AND STAGE OF THE PROCEEDING

SEC filed its original Complaint in this action (the "Delaware Action") on November 30, 2006, seeking a declaration that three United States patents purportedly owned by Defendants — U.S. Patent Nos. 5,563,594 (the "'594 Patent"), 6,362,644 (the "'644 Patent"), and 5,361,001 (the "'001 Patent") — are invalid and not infringed by SEC (D.I. 1).

Less than two business days later, on Monday, December 4, 2006 at 8:22 AM, Defendants filed a patent infringement action against SEC in the United States District Court for the Eastern District of Texas, Case No. 6:06 cv 523 (the "Texas Action"), alleging infringement by SEC of the same three patents at issue in the Delaware Action and a fourth patent, U.S. Patent No. 5,000,827 (the "'827 Patent"). (Ex. 1.) Defendants also named four SEC affiliates as co-defendants in the Texas Action —SEA, STA, SSI, and SAS.

Plaintiffs filed an Amended Complaint in the Delaware Action on December 21, 2006, adding SEA, STA, SSI, and SAS as co-plaintiffs with SEC, adding a claim for declaratory judgment of noninfringement and invalidity of the '827 patent, and adding a claim against Defendants for infringement of an SEC patent — U.S. Patent No. 5,252,177 (the "'177 Patent") (D.I. 8). Plaintiffs also filed on December 21, 2006 a motion to enjoin Defendants from pursuing the Texas Action (D.I. 10-12.)

Plaintiffs SEA, STA, SSI, and SAS filed a motion to transfer the Texas Action to this Court based on the Fifth Circuit's first-to-file rule on December 26, 2006.[1] Defendants filed an opposition to the motion to transfer on January 8, 2007.

---

[1] SEC, a Korean company with offices in Korea, has not been properly served with the Complaint in the Texas Action, and therefore did not join in the motion to transfer. If

DB02:5710059.1

065888.1001

USCA5 197

On December 27, 2006, Defendants filed this motion to dismiss, alleging that this Court does not have subject matter jurisdiction over this action because SEC did not have a reasonable apprehension of suit when it filed the original Complaint on November 30, 2006. Defendants also filed on the same day a motion to stay their response to Plaintiffs' motion to enjoin (D.I. 18), which Plaintiffs opposed on January 9, 2007 (D.I. 23).

On January 11, 2007, Defendants filed an opposition to Plaintiffs' motion to enjoin (D.I. 24), as well as a motion to dismiss the Amended Complaint as against SEA, STA, SSI, and SAS (D.I. 25).

## SUMMARY OF ARGUMENT

1.     SEC had an objectively reasonable apprehension of being sued by Defendants when it filed the Delaware Action on November 30, 2006, an apprehension that was proven to be correct when Defendants filed the Texas Action less than two business days later.



---

and when SEC is properly served by Defendants in the Texas Action via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, it will join in the motion to transfer.

USCA5 198

REDACTED

. This Court therefore had subject matter jurisdiction over this action as of November 30, 2006.

4.      Defendants nonetheless urge the Court to exercise its discretion under the Declaratory Judgment Act and dismiss this case.

REDACTED

5.      Defendants also argue that the Court should decline to hear this case because Defendants have been "unfairly deprived" of their forum of choice. But as set forth in Plaintiffs' motion to enjoin, the Eastern District of Texas has no relevant connection to the parties, witnesses, or sources of proof in this case. Defendants are in effect asking this Court to condone their blatant forum shopping through a dismissal of this case. The Court should not reward Defendants' tactics. Furthermore, SEC's choice

USCA5 199

of the District of Delaware as a forum for this action is perfectly reasonable and

appropriate, given that both Defendants are incorporated in Delaware. Defendants should

not be heard to complain that they must litigate this case in their chosen state of

incorporation.

### STATEMENT OF FACTS[2]

SEC manufactures and sells, among other things, semiconductor products known

as dynamic random access memories, or DRAMs. On September 15, 2005, Defendants,

REDACTED

, sent a letter to SEC accusing SEC of infringing the '594 and '644 patents

REDACTED                         . (D.I.

12, Ex. 1.)

REDACTED

USCA5 200

REDACTED

DB02:5710059.1

065888.1001

USCA5 201



065888.1001

USCA5 202

REDACTED

8

USCA5 203

REDACTED

9

USCA5 204



DB02:5710059.1

065888.1001

USCA5 205

REDACTED

Thereafter, on Monday, December 4, 2006 at 8:22 AM, Defendants filed the Texas Action, which included claims against SEC, SEA, STA, SSI, and SAS for infringement of the '594, '644, and '001 patents, as well as a fourth patent not disclosed to SEC REDACTED ., the '827 patent. (Ex. 1; Shim Dec. ¶ 15; D.I. 12, ¶ 19.)

Plaintiffs filed an Amended Complaint in the Delaware Action on December 21, 2006 adding SEA, STA, SSI, and SAS as co-plaintiffs, adding a request for declaratory judgment of noninfringement and invalidity of the '827 patent, and adding a claim of patent infringement against Defendants for infringement of SEC's '177 patent. (D.I. 8.)

On December 27, 2006, Defendants filed this motion to dismiss for lack of subject matter jurisdiction, contending that SEC did not have reasonable apprehension of being sued by Defendants when it filed this action on November 30, 2006.

11

065888.1001

USCA5 206

# ARGUMENT

## I. Legal Standards.

The purpose of declaratory judgment actions in patent cases is "to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear Tire & Rubber Co. v. Releasomers, Inc.*, 824 F.2d 953, 956 (Fed. Cir. 1987); *see also Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1346 (Fed. Cir. 2005).

The Declaratory Judgment Act requires the existence of an actual controversy before a federal court may exercise jurisdiction in a declaratory judgment action. 28 U.S.C. § 2201. In a patent case, an actual case or controversy exists when there is: (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. *See, e.g., Fina Research S.A. v. Baroid, Ltd.*, 141 F.3d 1479, 1481 (Fed. Cir. 1998). Furthermore, "[w]hen the [patentee's] conduct . . . falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." *Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.*, 846 F.2d 731, 736 (Fed. Cir. 1988). Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may present either a facial or factual challenge to the Court's subject matter jurisdiction. *See, e.g, Epic Systems Corp. v. Acacia Research Corp.*, No. 06-255, 2006 WL 3355185, *2 (D. Del. Nov. 16, 2006). In reviewing a facial challenge under Rule 12(b)(1), the Court must accept all factual allegations in the Complaint as true, and the Court may only consider the

USCA5 207

complaint and documents referenced in or attached to the complaint. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. *Mortensen v. First Fed. Sav. and Loan*, 549 F.2d 884, 891 (3d Cir. 1977). Instead, the Court may consider evidence outside the pleadings, including affidavits, depositions, and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). Any factual conflicts, however, should be resolved in favor of the exercise of jurisdiction. *See, e.g, Deprenyl Animal Health, Inc. v. University of Toronto Innovations Foundation*, 297 F.3d 1343, 1347 (Fed. Cir. 2002); *Millennium Products, Inc. v. Gravity Boarding Co., Inc.*, 127 F. Supp. 2d 974, 979 (N.D. Ill. 2000).

Defendants' motion to dismiss makes a factual, rather than a facial challenge,[3] to subject matter jurisdiction. (Br. at 14.) As set forth below, when the facts surrounding

---

[3] Nor could Defendants make a facial challenge to subject matter jurisdiction. The Complaint and Amended Complaint both allege facts that, if taken as true as they must be on a facial challenge, establish that an actual case or controversy had arisen under the Declaratory Judgment Act between SEC and Defendants as of the filing of the original Complaint on November 30, 2006. Specifically, the original Complaint and Amended Complaint both identically allege the following facts: (1) Defendants accused SEC of infringing the '594, '644, and '001 patents (D.I. 1, ¶¶ 13, 20, 27 and D.I. 8, ¶¶ 23, 33, 43); .-

REDACTED

. Taken as true, the foregoing allegations — an accusation of infringement by the patent holder        REDACTED

— are more than sufficient to plead the existence of an actual case or controversy between SEC and Defendants as of November 30, 2006 under Federal Circuit precedent. *See, e.g., EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir. 1996); *see also Dow*

13

USCA5 208

the parties' pre-suit discussions are considered, it is clear that this Court had subject matter jurisdiction over SEC's declaratory judgment claims as of the filing date of the original Complaint, November 30, 2006.

## II. SEC Had A Reasonable Apprehension Of Being Sued By Defendants When It Filed The Original Complaint On November 30, 2006.

### A. The Parties' Pre-Suit Settlement Discussions Were Carried Out Under Threat Of Litigation, And SEC Therefore Had A Reasonable Apprehension Of Suit.

The factual record demonstrates that SEC had a reasonable apprehension of being sued by Defendants when it filed the original Complaint on November 30, 2006, and this Court therefore had subject matter jurisdiction over this action as of that date.[4] The Federal Circuit has held that when a patent holder and a target company are engaged in patent licensing negotiations and the patent holder threatens during those negotiations to file suit if it is not satisfied with the result of the negotiations, an actual controversy exists

---

*Chemical Co. v. Exxon Chemical Patents, Inc.*, No. 94-572-SLR, 1995 WL 562289, *7 (D. Del. Aug. 16, 1995) (a reasonable apprehension suit existed where there was an accusation of infringement, an offer of a license, a refusal of the offer, and implicit threats of litigation).

The Amended Complaint further alleges that Defendants explicitly threatened SEC with litigation *prior* to SEC's filing of the original Complaint, further demonstrating the existence of an actual case or controversy as of November 30, 2006. (D.I. 8, ¶ 26, 36, 46.) Because the threats are alleged to have occurred *before* the filing of the original Complaint, these allegations relate back to the filing date of the original Complaint and may be used to demonstrate the existence of subject matter jurisdiction as of November 30, 2006, as Defendants concede in footnote 1 of their brief. *See, e.g., Correspondent Servs. Corp. v. First Equities Corp.*, 338 F.3d 119, 125 (2d Cir. 2003) (factual allegations in an amended complaint relate back to the filing date of the original complaint for purposes of establishing subject matter jurisdiction "if the underlying facts, if properly pled, would have supported jurisdiction at the time the action commenced").

[4] Defendants do not dispute that the second prong of the Federal Circuit's test for an actual case or controversy — present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity — is met in this case.

14

065888.1001

under the Declaratory Judgment Act and the target may file a declaratory judgment action at any time. *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 812 (Fed. Cir. 1996). Indeed, in *EMC*, the Federal Circuit found declaratory judgment jurisdiction where a single letter from a patent holder "made it reasonably clear that [the patent holder] intended to resort to litigation if it were not satisfied with the results of the parties' negotiations." *Id.* Thus, unlike Defendants' September 6, 2006 letter, which made an explicit threat of litigation, the letter in *EMC* contained only an implied threat of litigation. *Id.*

Furthermore, a reasonable apprehension of suit exists *even if the negotiations are on-going* — as was the case in *EMC* — and Defendants' contention that a court can never have subject matter jurisdiction over a declaratory judgment action where licensing negotiations are ongoing finds no support in Federal Circuit precedent and is flatly wrong. *EMC*, 89 F.3d at 811-12 ("A patentee's offer of a license, without more, is insufficient to establish the predicate for declaratory judgment jurisdiction . . . and merely proposed or ongoing license negotiations are likewise insufficient . . . But when the patentee takes steps that create a reasonable apprehension that he will seek redress through the courts, the alleged infringer is not required to wait for the patentee to decide when and where to sue, but can take the initiative and seek declaratory relief."); *see also Ivoclar Vivadent, Inc. v. Hasel*, Case No. 02-CV-0316E(F), 2003 U.S. Dist. LEXIS 12611, *23 (W.D.N.Y. June. 30, 2003) ("Thus, the fact that the parties may have been negotiating a possible patent license is not dispositive, but merely a factor that is, in this case, insufficient to overcome defendants' other threatening conduct that gave rise to Ivoclar's reasonable apprehension of an imminent patent infringement suit by ABCO."); *Clay Paky, S.p.A. v. Vari-Lite, Inc.*, Case Nos. 99 Civ. 11401 and 11402 (BSJ), 2000 U.S.

USCA5 210

Dist. LEXIS 9802, *15 (S.D.N.Y. July 12, 2000) ("Just because the parties proceeded to

initiate negotiations does not mean that the reasonable apprehension of litigation was ever

removed. Vari-Lite, having made its threat of litigation, cannot now claim that Clay Paky

and Coemar were unreasonable in their apprehension of impending litigation").

REDACTED

(D.I. 12, Ex. G)  Since the only other "path" for Defendants to enforce their legal rights

and remedies would be to sue SEC, the threat of litigation in this letter is undeniable.  Mr.

Botsch was also *reemphasizing* this threat, which means that he made it before.  This

letter thus *directly contradicts Mr. Botsch's sworn testimony* that he "never threatened

Samsung with litigation" (Botsch Dec. ¶ 27), and calls into question Mr. Botsch's

16

065888.1001

USCA5 211

disavowal of the litigation threats he made at the parties' February 15 and August 16, 2006 meetings and during his September 15, 2006 telephone conversation with Mr. Muir.

Further, just like in *EMC*, Defendants never abandoned this threatening posture during the weeks between the September 6, 2006 letter and the filing of the Delaware Action on November 30, 2006. Although Defendants cite to self-serving statements that they preferred an "amicable resolution" and preferred "not to litigate," the issue is not what they may have preferred, but what they were planning to do if settlement could not be reached. Defendants were prepared to litigate if a satisfactory settlement was not reached, and they informed SEC of that fact on a number of occasions. Further, as the Federal Circuit in *EMC* recognized, the Court must "look to substance rather than form" because "the parties are sensitive to the prospect of a declaratory judgment action and couch their exchanges in terms designed either to create or defeat declaratory judgment jurisdiction." *EMC*, 89 F.3d at 812.

SEC was within its rights to file a declaratory judgment action the moment Defendants threatened to litigate if a satisfactory settlement could not be reached. SEC waited to file suit, however, on the chance that costly and time-consuming litigation could ultimately be avoided

REDACTED

. SEC therefore chose to file a declaratory judgment action to protect itself against the uncertainty and delay concerning its right to sell the accused DRAM products caused by Defendants' threats. This is precisely the purpose of the Declaratory Judgment Act, and precisely what Mr. Shim told Mr. Botsch

USCA5 212

and Mr. Cave during their telephone conversations on November 30, 2006 after SEC filed this action.

The various cases Defendants cite for the proposition that a reasonable apprehension of suit cannot exist when licensing negotiations are ongoing are either inapposite or distinguishable. For example, Defendants rely on *EMC*, but in *EMC* the Federal Circuit found that the declaratory judgment plaintiff had a reasonable apprehension of suit despite the fact that negotiations were ongoing, because a threat of litigation had been made. *EMC*, 89 F.3d at 812. Defendants also cite to *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha*, 57 F.3d 1051 (Fed. Cir. 1995), but, as even the Federal Circuit acknowledged in *EMC*, in that case — unlike in this case — the patent holder did not threaten litigation. *Phillips*, 57 F.3d at 1052. Defendants also cite to *Vermeer Mfg. Co. v. Deere & Co.*, 379 F. Supp. 2d 645 (D. Del. 2005), but once again in that case the patent holder did not threaten to sue as the patent holder in this case did. *Vermeer*, 379 F. Supp. 2d at 649. Finally, Defendants rely on *Livorsi Marine, Inc. v. Nordskog Publishing, Inc.*, 268 F. Supp. 2d 994 (N.D. Ill. 2003), but again the patent holder in that case did not threaten litigation and, in fact, the court distinguished *EMC* on that basis. *Livorsi*, 268 F. Supp. 2d at 999.

Defendants also seek to manufacture an argument that SEC did not have reasonable apprehension of suit by mischaracterizing Mr. Muir's declaration filed in connection with Plaintiffs' motion to enjoin Defendants from pursuing the Texas Action (D.I. 12). In that Declaration, Mr. Muir was addressing a potential allegation of anticipatory filing, which can be an exception to the first-filed rule upon which the motion to enjoin is based. (D.I. 11 at 9-13.) The fact that Defendants did not threaten to

18

USCA5 213

file suit on or by a date certain does not mean that there was no threat of imminent litigation. As the Federal Circuit explained in *Teva Pharms. USA, Inc. and Pfizer Inc.*, 395 F.3d 1324 (Fed. Cir. 2005), the notion of immediacy in the declaratory judgment context has nothing to do with whether the patent holder will file suit by a date certain, but "reflects the Article III mandate that the injury in fact be 'concrete,' and 'actual or imminent, not conjectural or hypothetical.'" *Teva*, 395 F.3d at 1333. In this case, Defendants' litigation threats clearly satisfy the immediacy requirement of Article III. *EMC*, 89 F.3d at 811 ("We agree with EMC that the undisputed facts establish a sufficient controversy between the parties to give the district court statutory and constitutional authority to hear this declaratory judgment action."). In contrast, in *Teva* the patent holder did not threaten litigation, and the premature triggering of a 180-day exclusivity period under the Hatch-Waxman Act made it unlikely that the patent holder would file suit.

In view of the foregoing, SEC had a reasonable apprehension of being sued by Defendants when it filed the original Complaint on November 30, 2006. This Court, therefore, had subject matter jurisdiction over this action as of that date.

**B.     The Filing Of The Texas Action Confirms That Defendants Were Planning To Sue SEC For Patent Infringement, And Therefore That SEC Had A Reasonable Apprehension Of Being Sued.**

The fact that SEC had a reasonable apprehension of being sued by Defendants is confirmed by the fact Defendants actually *sued SEC* for patent infringement, and they did so less than two business days after SEC filed this action. This behavior is completely inconsistent with the picture Defendants paint in their motion papers of a patent holder that does not want to litigate.

19

USCA5 214

Moreover, Defendants included in their Texas complaint a claim for infringement of a patent — the '827 patent — that they did not disclose to SEC prior to filing the Texas Action. Unless Defendants would have this Court believe that, in the period of less than two business days between the filing of the Delaware Action and the filing of the Texas Action, Defendants analyzed the '827 patent and SEC's products for the first time and made the determination to sue SEC on that patent, it is obvious that Defendants were planning for some time to assert the '827 patent against SEC, and, since they kept it a secret, that they were planning to assert the '827 patent in litigation against SEC.

Defendants are incorrect that the Court may not consider events that occurred after the November 30, 2006 filing date of the Delaware Action to determine whether it had subject matter jurisdiction as of that date. The Federal Circuit has held that, in determining whether there exists a reasonable apprehension of suit under the "totality of the circumstances," it is appropriate and proper for a court to consider events occurring after the filing of a declaratory judgment action. In *C.R. Bard, Inc. v. Schwartz*, 716 F.2d 874, 881 (Fed. Cir. 1983), for example, the Federal Circuit held that a patentee's statements made as late as oral argument on appeal could be used to show the existence of a reasonable apprehension of suit. In *Goodyear*, the Federal Circuit reversed a finding of no reasonable apprehension of suit in part because the patentee's "candid revelation" at oral argument that it might bring suit "was directly contrary to the implicit and necessary assumption . . . that there was no case or controversy." *Goodyear*, 824 F.2d at 956.

Indeed, this Court in *Syngenta Crop. Protection, Inc. v. Monsanto Company*, Civil Action No. 03-1062 (KAJ) (D. Del. Apr. 6, 2004), relied on the fact that the defendant

20

USCA5 215

patent holder subsequently filed a patent infringement action in finding that a declaratory

judgment plaintiff had a reasonable apprehension of being sued by the patent holder:

> And finally, and not insignificantly, *you sued them*. You, in
> fact, did it. And what I — your opening lines in your brief are
> very telling to me on this point. You're distressed that they've
> taken away your forum of choice, which is not — I mean, that
> may very well go to the issue of where it is fair to try this, but
> *it speaks volumes about the reasonableness of apprehension
> of suit to me: That they thought you would sue them, and
> you did sue them*. And the — and *it only verifies that it was
> not unreasonable*.

(Ex. 2 at 38-39.)

Thus, far from being irrelevant, the fact that Defendants made good on their

repeated threats to sue SEC demonstrates that SEC's apprehension of being sued by

Defendants was not only reasonable, but was correct. But in any event, as discussed

above, even if Defendants had not filed suit, SEC still had a reasonable apprehension of

suit.

## III. This Is The Very Type Of Case The Declaratory Judgment Is Meant To Address, And The Court Should Therefore Hear This Case.

Defendants also ask this Court to exercise its discretion under the Declaratory

Judgment Act to dismiss this case. But before a Court may dismiss a declaratory

judgment action on a discretionary basis, "[t]he court must determine whether hearing the

case would serve the objectives for which the Declaratory Judgment Act was created . . .

[W]hen these objectives are served, dismissal is rarely proper." *Capo, Inc. v. Dioptics

Medical Products, Inc.*, 387 F.3d 1352, 1355 (Fed. Cir. 2004) (internal citations omitted).

Furthermore, "[t]here must be well-founded reasons for declining to entertain a

declaratory judgment action. Absent such reasons, when there has been a direct charge of

infringement by the patentee, and an actual controversy exists due to ongoing activity that

21

USCA5 216

has been accused of infringement, the accused infringer has the right to resolve the dispute." *Id.*

Because SEC's declaratory judgment claims comport with the objectives of the Declaratory Judgment Act, and because there are no well-founded reasons for declining to hear this declaratory judgment action, the Court should deny Defendants' motion to dismiss.

### A. SEC's Declaratory Judgment Claims Comport With The Purpose Of The Declaratory Judgment Act.

The purpose of declaratory judgment actions in patent cases is "to provide the allegedly infringing party relief from uncertainty and delay regarding its legal rights." *Goodyear*, 824 F.2d at 956. The Federal Circuit has explained that that the Declaratory Judgment Act was intended "to allow a party who is reasonably at legal risk because of an unresolved dispute, to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." *Capo*, 387 F.3d at 1354 -55 (internal citations omitted). Through the Declaratory Judgment Act, alleged infringers have a more attractive course of action than the "*in terrorem* choice between the incurrence of a growing potential liability for patent infringement and abandonment of their enterprises; they could clear the air by suing for a judgment that would settle the conflict of interests." *Arrowhead*, 846 F.2d at 735. The Declaratory Judgment Act thus protects industries from patentees who would "infect the competitive environment of the business community with uncertainty and insecurity" through the use of "guerrilla-like" tactics and attempts at "extra-judicial patent enforcement." *Id.*

This is a textbook case for application of the Declaratory Judgment Act. Defendants — who are seeking to enforce their patents against other members of the

USCA5 217

DRAM industry as well —accused SEC of infringing their patents through SEC's sales

of DRAM products, sales that amount to more than $1 billion annually.



............. Faced

with Defendants' litigation threats and their refusal to put a reasonable offer on the table,

on the one hand, and SEC's growing potential liability for patent infringement on the

other, SEC was perfectly within its rights to file a declaratory judgment action to resolve

the uncertainty and insecurity caused by Defendants' tactics. *Capo,* 387 F.3d at 1354 -55;

*Arrowhead*, 846 F.2d at 735.

REDACTED

USCA5 218

REDACTED

Third, Defendants' reliance on *EMC* is misplaced. In *EMC*, the declaratory judgment plaintiff and patent holder defendant were engaged in licensing discussions when the plaintiff filed suit. Because, REDACTED, the discussions were carried out under threat of litigation, the Federal Circuit found that the plaintiff had a reasonable apprehension of suit and that an actual controversy under the Declaratory Judgment Act existed. Nonetheless, the Federal Circuit affirmed the lower court's dismissal on discretionary grounds, citing a public policy against encouraging parties involved in licensing negotiations to file suit in order to gain leverage in the negotiations by forcing the patent holder "to consider whether as a practical matter it would be better to avoid litigation costs and any risk of adverse rulings that might render the patents less valuable. It would be reasonable to expect that, if there is in fact a market for the patents, the mere pendency of the lawsuit may negatively affect the value of the defendant's patents in that market and the price any potential purchaser, either the plaintiff or another prospective purchaser might be willing to pay." *EMC*, 89 F.3d at 810.

This policy concern does not apply to this case, however, because, unlike the patent holder in *EMC*, Defendants filed their own lawsuit against SEC, and therefore *voluntarily* made the choice to put their patents at risk of adverse rulings. If this Court

24

065888.1001

USCA5 219

were to dismiss this action, Defendants' patents would still be in litigation in Texas,

REDACTED

In *EMC* on the other hand, because the patentee did not file its own lawsuit, dismissal of the declaratory judgment action erased any litigation-based leverage that the declaratory judgment plaintiff obtained by filing suit. Thus, the policy that *EMC* was seeking to protect does not apply to this case.

The facts of *EMC* differ from this case in a number of other significant respects as well. For example, in *EMC* the parties continued to negotiate after the declaratory judgment action was filed, meeting in person two times.

REDACTED

) Furthermore, unlike in *EMC*, it is clear that this is a case "in which there is no real prospect of a non-judicial resolution of the dispute." *EMC*, 89 F.3d at 814.

REDACTED

*See, e.g., Russell Corp. v. Sara Lee Corp.*, 129 F. Supp. 2d 1165, 1169 (N.D. Ill. 2001) (denying motion to dismiss on discretionary grounds where parties were at an impasse in negotiations).

REDACTED

25

065888.1001

USCA5 220

REDACTED

Defendants also mischaracterize Mr. Shim's statements concerning a preference not to litigate — of course any prudent business prefers an amicable resolution over litigation, provided the terms of the resolution are acceptable — as well as Mr. Shim's statements concerning SEC's reasons for filing this action, in an attempt to make the facts of this case more resemble *EMC*. In *EMC*, however, the plaintiff invited the defendant to continue discussions after filing suit, and discussions in fact continue

REDACTED

. (Shim Dec. ¶ 12, 13.) Rather, Mr. Shim made a single counteroffer, which Defendants rejected and called a "joke." *Id.*

REDACTED

Under these circumstances, to dismiss this action because SEC filed suit to remove a cloud over its business put there by Defendants' threats would thwart the very purpose of the Declaratory Judgment Act. *See, e.g, Russell*, 129 F. Supp. 2d at 1169 ("We see no basis to impose what would amount to a requirement that a party engage in and complete ADR before filing suit. Russell was directly threatened with a lawsuit unless it paid for a license, something it was unwilling to do; under the circumstances, it was entitled to have its rights determined.").

26

065888.1001

USCA5 221

## C.    The Court Should Not Reward Defendants' Blatant Forum-Shopping.

Defendants also argue that the Court should exercise its discretion to dismiss this case because it should not be deprived of its forum of choice — the Eastern District of Texas —  But, as set forth in Plaintiffs' motion to enjoin Defendants from pursuing the Texas Action (D.I. 11 at 13-16), the Eastern District of Texas has no relevant connection to the parties, witnesses, or sources of proof. The inescapable conclusion is that Defendants' choice of the Eastern District of Texas is classic forum shopping. And by asking the Court to dismiss this action on that basis, Defendants are asking the Court to condone their improper litigation tactics. The Court should reject this argument out of hand.

REDACTED

Finally, as explained in Plaintiffs' motion to enjoin, SEC did not forum shop or file this action anticipatorily. (D.I. 11 at 9-13.) Because Defendants are both incorporated in Delaware, SEC's choice of Delaware as a forum for this dispute is both rational and appropriate, and Defendants should not be heard to complain that they have been forced to litigate in Delaware. *See, e.g., Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.*, 157 F.R.D. 215, 218 (D. Del. 1993) ("Absent some showing of a unique or unexpected burden, [Delaware] corporations should not be successful in arguing that litigation in their state of incorporation is inconvenient.") Further, Delaware does not inconvenience Defendants, nor does it offer Plaintiffs any unfair advantage or convenience over the Defendants. (D.I. 11 at 12-16.)

27

065888.1001

USCA5 222

Accordingly, the Court should deny Defendants' request that the Court exercise its discretion to dismiss this case.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss for lack of subject matter jurisdiction should be denied.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600
*alundgren@ycst.com*

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

*Attorneys for Plaintiffs Samsung Electronics
Co., Ltd., Samsung Electronics America, Inc.,
Samsung Telecommunications America
General, L.L.C., Samsung Semiconductor, Inc.,
and Samsung Austin Semiconductor, L.L.C.*

Dated: January 12, 2007

28

065888.1001

USCA5 223

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on January 12, 2007, I caused

to be electronically filed a true and correct copy of the foregoing document with the Clerk of the

Court using CM/ECF, which will send notification that such filing is available for viewing and

downloading to the following counsel of record:

> Karen Jacobs Louden, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on January 12, 2007, I caused a copy of the foregoing

document to be served by **hand delivery** on the above-listed counsel of record and on the

following non-registered participants in the manner indicated:

### BY FEDERAL EXPRESS

> Kenneth R. Adamo, Esquire
> Jones Day
> 2727 North Harwood Street
> Dallas, TX 75201

> T. Gregory Lanier, Esquire
> Behrooz Shariati, Esquire
> Jones Day
> 2882 Sand Hill Road, Suite 240
> Menlo Park, CA 94025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street
Wilmington, DE 19801
302-571-6600
*alundgren@ycst.com*

USCA5 224

# EXHIBIT 1

FILED CLERK
U.S. DISTRICT COURT

2006 DEC -4 AM 8: 22

TE . . . . . . . ERN

BY_____ ___._____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

|  |  |
|---|---|
| ON SEMICONDUCTOR CORPORATION, and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C. <br>        Plaintiffs, <br><br>     v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR, L.L.C., <br>        Defendants. | Civil Action No. 6 06cv523 <br><br> COMPLAINT |

COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff ON Semiconductor Corp. ("ON Semiconductor") and plaintiff Semiconductor

Components Industries, L.L.C. ("Semiconductor Components") (collectively, "Plaintiffs"), for

their Complaint against defendants Samsung Electronics Co., Ltd., Samsung Electronics

America, Inc., Samsung Telecommunications America General, L.L.C., Samsung

Semiconductor, Inc. and Samsung Austin Semiconductor, L.L.C. (collectively "Defendants"),

state as follows.

THE PARTIES

    1.    Plaintiff ON Semiconductor is a Delaware corporation with its principal place of

business at 5005 East McDowell Road, Phoenix, AZ 85008.

USCA5 226

2.     Plaintiff Semiconductor Components, a Delaware limited liability company with its principal place of business at 5005 East McDowell Road, Phoenix, AZ 85008, is the principal domestic operating subsidiary of ON Semiconductor, and does business under the name of ON Semiconductor.

3.     On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of Republic of Korea with its principal place of business at Samsung Main Building, 250, Taepyong-ro 2-ka, Chung-ku, Seoul 100-742, South Korea. On information and belief, SEC manufactures and, in cooperation with its subsidiaries, markets throughout the world, including in this district and elsewhere in the United States, a variety of semiconductor products including dynamic random access memory ("DRAM") devices.

4.     Defendant Samsung Electronics America, Inc. ("SEA") is a New York corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey 07660. On information and belief, SEA is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of electronic and semiconductor products

5.     Defendant Samsung Telecommunications America General, L.L.C. ("STA") is a Delaware limited liability company with its principal place of business at 1301 East Lookout Drive, Richardson, Texas 75082. On information and belief, STA is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of electronic and semiconductor products.

6.     Defendant Samsung Semiconductor, Inc. ("SSI") is a California corporation with its principal place of business at 3655 North First Street, San Jose, California 95134. On

MPI-41684v1                         - 2 -

USCA5 227

information and belief, SSI is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of electronic and semiconductor products.

7.   On information and belief, Defendant Samsung Austin Semiconductor, L.L.C. ("SAS") is a Delaware limited liability company with its principal place of business at 12100 Samsung Boulevard, Austin, Texas 78754. On information and belief, SAS is a subsidiary of SEC and sells and otherwise markets, in this district and elsewhere in the United States, a variety of semiconductor products including DRAM devices.

## JURISDICTION AND VENUE

8.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*

9.   This Court has personal jurisdiction over each of the Defendants. The Defendants have had minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district and specifically as a result of, at least, the Defendants' distribution network wherein Defendants place their products that infringe Semiconductor Component's patents within the stream of commerce, which stream is directed at this district as well as Texas, and by committing the tort of patent infringement and/or contributing to or inducing acts of patent infringement by others within Texas and this district.

10.   Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants have regularly conducted business in this judicial district and certain of the acts complained of herein occurred in this judicial district.

MPI-41884v1                                    - 3 -

USCA5 228

## COUNT 1 – INFRINGEMENT OF U.S. PATENT NO. 5,563,594

11. The allegations contained in paragraphs 1 through 10 are incorporated by reference as if fully set herein.

12. United States Patent No. 5,563,594 ("the '594 patent"), entitled "Circuit and Method of Timing Data Transfers," was duly and legally issued by the United States Patent and Trademark Office on October 8, 1996. Plaintiffs hold all right and interest in the '594 patent, including the right to sue for past, present and future infringement. A copy of the '594 patent is attached hereto as Exhibit A.

13. Defendants are infringing the '594 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '594 patent.

14. On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '594 patent.

15. Plaintiffs have been damaged by Defendants' infringement of the '594 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by them as a result of each of the Defendants' wrongful acts.

16. Defendants' infringement of Semiconductor Component's exclusive rights under the '594 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

17. Defendants have had actual knowledge of the '594 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

MPI-61884v1

- 4 -

USCA5 229

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,362,644

18.    The allegations contained in paragraphs 1 through 17 are incorporated by reference as if fully set herein.

19.    United States Patent No. 6,362,644 ("the '644 patent"), entitled "Programmable Termination for Integrated Circuits," was duly and legally issued by the United States Patent and Trademark Office on March 26, 2002.  Plaintiffs hold all right and interest in the '644 patent, including the right to sue for past, present and future infringement.  A copy of the '644 patent is attached hereto as Exhibit B.

20.    Defendants are infringing the '644 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '644 patent.

21.    On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '644 patent.

22.    Plaintiffs have been damaged by Defendants' infringement of the '644 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

23.    Defendants' infringement of Semiconductor Component's exclusive rights under the '644 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

24.    Defendants have had actual knowledge of the '644 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

MP1-41884v1                                    - 5 -

USCA5 230

## COUNT III – INFRINGEMENT OF U.S. PATENT NO. 5,361,001

25. The allegations contained in paragraphs 1 through 24 are incorporated by reference as if fully set herein.

26. United States Patent No. 5,361,001 ("the '001 patent"), entitled "Circuit and Method of Previewing Analog Trimming," was duly and legally issued by the United States Patent and Trademark Office on November 1, 1994. Plaintiffs hold all right and interest in the '001 patent, including the right to sue for past, present and future infringement. A copy of the '001 patent is attached hereto as Exhibit C.

27. Defendants are infringing the '001 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '001 patent.

28. On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '001 patent.

29. Plaintiffs have been damaged by Defendants' infringement of the '001 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

30. Defendants' infringement of Semiconductor Component's exclusive rights under the '001 patent will continue to damage Plaintiff's business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

31. Defendants have had actual knowledge of the '001 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

MPI-41884v1

- 6 -

USCA5 231

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 5,000,827

<u>32.</u>    The allegations contained in paragraphs 1 through 31 are incorporated by reference as if fully set herein.

<u>33.</u>    United States Patent No. 5,000,827 ("the '827 patent"), entitled "Method and Apparatus for Adjusting Plating Solution Flow Characteristics at Substrate Cathode Periphery to Minimize Edge Effect," was duly and legally issued by the United States Patent and Trademark Office on March 19, 1991. Plaintiffs hold all right and interest in the '827 patent, including the right to sue for past, present and future infringement. A copy of the '827 patent is attached hereto as Exhibit D.

<u>34.</u>    Defendants are infringing the '827 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '827 patent.

<u>35.</u>    On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '827 patent.

<u>36.</u>    Plaintiffs have been damaged by Defendants' infringement of the '827 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

<u>37.</u>    Defendants' infringement of Semiconductor Component's exclusive rights under the '827 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

MPI-41884v1                              - 7 -

USCA5 232

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment in its favor against each of the Defendants, and requests the following relief:

A. An adjudication that Defendants have infringed, contributed to the infringement of, and/or induced infringement of the '594, '644, '001, and '827 patents;

B. An adjudication that the '594, '644, '001, and '827 patents are valid and enforceable;

C. An accounting of all damages sustained by Plaintiffs as a result of Defendants' acts of infringement;

D. An award to Plaintiffs of actual damages adequate to compensate them for Defendants' acts of direct, contributory, and/or inducement of infringement, together with prejudgment and post-judgment interest and costs;

E. An award to Plaintiffs of enhanced damages, up to and including trebling of Plaintiffs' damages, pursuant to 35 U.S.C. § 284 for Defendants' willful infringement;

F. A preliminary and permanent injunction order against further infringement of the '594, '644, '001 and '827 patents by each of the Defendants, their officers, agents, servants, employees, subsidiaries, and those persons acting in concert with it, including related individuals and entities, customers, representatives, manufacturers, OEMs, dealers, and distributors;

G. An award to Plaintiffs their costs and reasonable attorney fees incurred in this action as provided by 35 U.S.C. § 285; and

H. That the Court award such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues and claims so triable.

MPI-41884v1                                    - 8 -

USCA5 233

Date: December 4, 2006

Respectfully submitted.

Nilda C Galvan

Kenneth R. Adamo
State Bar No. 00846960
kradamo@jonesday.com
Hilda C. Galvan
State Bar No. 00787512
hcgalvan@jonesday.com
JONES DAY
2727 North Harwood Street
Dallas, Texas 75201-1515
Telephone: (214) 220-3939
Facsimile: (214) 969-5100

Tharan Gregory Lanier
tglanier@jonesday.com
CA Bar No. 138784
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
Telephone: (650) 739-3939
Facsimile: (650) 739-1900

Carl R. Roth
State Bar No. 17312000
cr@rothfirm.com
Michael C. Smith
ms@rothfirm.com
115 N Wellington Suite 200
P O Box 876
Marshall, Texas 75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

ATTORNEYS FOR ON SEMICONDUCTOR
CORPORATION AND SEMICONDUCTOR
COMPONENTS INDUSTRIES, L.L.C.

Of Counsel:
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025

MPJ-41884.1

- 9 -

# EXHIBIT 2

1

```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                 IN AND FOR THE DISTRICT OF DELAWARE

 3                            - - -

 4   SYNGENTA CROP PROTECTION, INC.,   :    CIVIL ACTION
                                       :
 5              Plaintiff              :
                                       :
 6         vs.                         :
                                       :
 7   MONSANTO COMPANY and              :
     MONSANTO TECHNOLOGY LLC,          :
 8                                     :
              Defendants               :    NO. 03-1062 (KAJ)

 9                            - - -

10                                    Wilmington, Delaware
                                      Tuesday, April 6, 2004
11                                    11:00 o'clock, a.m.

12                            - - -

13   BEFORE:  HONORABLE KENT A. JORDAN, U.S.D.C.J.

14                            - - -

15   APPEARANCES:

16
              YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
17            BY:  JOHN W. SHAW, ESQ.

18                        -and-

19            FINNEGAN, HENDERSON, FARABOW, GARRETT &
              DUNNER, L.L.P.
20            BY:  DON O. BURLEY, ESQ. and
                   MICHAEL J. FLIBBERT, ESQ.
21
                        Counsel for Plaintiff
22

23                                    Valerie J. Gunning
                                      Official Court Reporter
24

25
```

USCA5 236

1  against giving Delaware -- I don't want to say give it
2  as much weight, but makes it more easy for Monsanto to
3  overcome the weight given to the Delaware filing.
4          The Symbol Technology case, I think in that
5  case you had a situation where two parties were sitting
6  down, this one had these patents, this one had these
7  patents (indicating), and then this one sued on these
8  patents, so the other side turned around and was afraid
9  about these patents.  It was one of those situations
10  where, yeah, maybe the patents aren't related, but they
11  were all being thrown into the same negotiation.  I
12  think that's a distinguishing factor there.
13          On the transfer, your Honor, I think this
14  case has nothing to do with Delaware other than some
15  parties are incorporated here.  Sure, suit was brought
16  first here, but I don't think that that should be -- I
17  think that's more recently overcome by the fact the
18  parties were trying to negotiate a license.  Syngenta
19  rushed to the courthouse and that activity should not be
20  encouraged by keeping the case here.
21          THE COURT:  Okay.  Thank you, sir.
22          I came into court on the basis of the papers
23  with my mind largely made up, but with an opportunity for
24  somebody to make a difference in their argument.  And
25  while the arguments are well presented, I'm still coming

USCA5 237

1   out where I thought I would on the basis of the papers

2   and that is that the motion to dismiss is denied.  The

3   motion to transfer is denied.  The motion to enjoin is

4   granted.

5           And I'm not going to take the time because,

6   frankly, I don't think it adds to the body of

7   jurisprudence that's important to sit down and write you

8   something, but I will give you your reasons right now.

9           First, there's some dispute about the precise

10  language that the parties used in speaking to each other,

11  but it does not appear to be disputed that there was an

12  initial contact between Monsanto and Syngenta initiated

13  by Monsanto in which specific reference was made to, Oh,

14  you've got these new patents, and, excuse me, this new

15  product and you're going to have more than an implication

16  that you're going to have an issue with us about our

17  patents on the Monsanto side with the precise language of

18  the remark being in dispute, but a clear reference to

19  settle or litigate.  Settle or we turn to our legal

20  solutions, which I think any reasonable person would

21  interpret and understand to mean we come to a business

22  solution or we will be in court.

23          I don't think even if you take the most

24  generous wording from Monsanto and say, they said legal

25  solution instead of we go to court, that that meant,

1   you know, we'll send you a contract. I mean, legal

2   solution in this context I think fairly implied we're

3   going to court.

4            I have to look at the totality of the

5   circumstances, too and, no matter who started it, the fact

6   remains that these two people are not strangers to each

7   other in court, so when somebody says we'll turn to legal

8   solutions in the context of what the parties have

9   experienced before, it was certainly not unreasonable to

10  think, well, that means we're going to see each other in

11  court again.

12           The analysts report is a factor. It's hard

13  to know quite how to weigh that because I think Mr.

14  Spears has an excellent point. You cannot control what

15  analysts say, but the reality is I have to look at the

16  reasonableness of the apprehension and it was not

17  unreasonable for them on the Syngenta side to believe

18  that when an analyst's report surfaces with a statement,

19  we believe Monsanto may sue on these patents, that the

20  source of that information was initially and originally

21  somebody from within Monsanto.

22           It might have got amplified, might have got

23  changed, but the seed of it somebody at Monsanto talking

24  about a patent dispute. So it's a factor. And it's not

25  unreasonable.

USCA5 239

1   In fact, it would be wholly reasonable for

2   them to believe they are talking to the trade about our

3   product.  They are implying suit.

4       So when you say they are not being heard,

5   nothing has happened, no customers are threatened, there's

6   more than one way to threaten customers.  And putting a

7   vibe out through the trade press is one way it happens.

8   So it wasn't unreasonable for Syngenta under these

9   circumstances to interpret that as another indicator that

10  we're going to end up in court with these folks.

11      The they aren't being damaged at all argument

12  I think fails to admit an undisputed fact, which is there

13  was a product approved, actively being marketed, and

14  consequently, the damage meter was and is running,

15  because if you're right, they're going to pay you, right

16  back to the -- to the day they started messing around

17  with your patents.  And so that's, again, another factor

18  to be considered.

19      And, finally, and not insignificantly, you

20  sued them.  You, in fact, did it.  And what I -- your

21  opening lines in your brief are very telling to me on

22  this point.  You're distressed that they've taken away

23  your forum of choice, which is not -- I mean, that may

24  very well go to the issue of where is it fair to try

25  this, but it speaks volumes about the reasonableness of

1  apprehension of suit to me: That they thought you would

2  sue them, and you did sue them. And the -- and it only

3  verifies that it was not unreasonable.

4         Now, that is not a factor all by itself. It's

5  certainly not dispositive, but it is a factor to be

6  weighed in the mix. And when I weigh that totality of

7  circumstances, I'm persuaded that there was a reasonable

8  apprehension that they will be sued on these patents and

9  that reasonable apprehension turned out to be dead right.

10         So the motion to dismiss for lack of subject

11  matter jurisdiction is denied.

12         The motion to transfer was, frankly, less of

13  a challenge for me, because the -- it got a little bit of

14  the back of Monsanto's hand. I don't think, frankly,

15  there was so much focus on that. To the extent there was

16  focus, it did not meet what I believe is the primary

17  point, which is if you have got a rational, reasonable

18  basis for your selection forum, that's paramount. It can

19  be outweighed, but you've got to have powerful factors to

20  outweigh it.

21         Here, there is a rational basis. Two

22  Delaware corporations in court resolving their problem is

23  not an irrational thing, it just isn't. You know, one

24  side or the other might prefer to be someplace else, but

25  the fact that you would be in your home turf, Monsanto,

40

1   does not make it unreasonable for Syngenta to sue you in

2   the place that Monsanto has chosen to be incorporated.

3           What I was able to take from the briefing

4   indicates to me that this is not only not local, it's not

5   even national.  It's got international implications.  This

6   is a product that two businesses, which are international

7   in character, are likely to be duking it out over, at

8   least in the business marketplace, and maybe in the legal

9   arena as well.  Outside the United States, too.

10          And so it is really a request to say, Hey,

11  give us our home turf, and that is not a sufficient basis

12  for disturbing a rationale choice of forum by the

13  plaintiff in the first instance.

14          I will note also that some of these home turf

15  decisions make specific note that you look at where you

16  are in relation physically to the plaintiff's headquarters

17  and, you know, for what it's worth, which in my mind isn't

18  a whole lot, but it's worth noting at least, they are

19  closer here than they would be out in the Eastern District

20  of Missouri to their American base.

21          And the reality of modern litigation s that

22  whether this is pending here or in the Eastern District,

23  you'd be doing exactly the same things.  You'll be going

24  around taking depositions.  You'll be exchanging documents.

25  You will be sending interrogatories to each other by

USCA5 242

41

1  e-mail or by Fax or by overnight, but the reality is, the

2  way the modern litigation rule works, there's virtually

3  nothing that would be different by this suit being

4  pre-tried here as opposed to the Eastern District.

5           The real question then becomes:  Is there

6  some overwhelming issue with respect to trial it that

7  would make it so much less convenient for Monsanto to be

8  here as to be the Eastern District.

9           And while I don't doubt that it would be more

10  convenient to be in your own hometown, I find nothing in

11  the record that indicates to me that this can't be tried

12  and tried perfectly well by sophisticated and well-heeled

13  and experienced, even in this court, corporation like

14  Monsanto if the litigation goes forward here, so there's

15  nothing that does substantially outweigh the paramount

16  consideration which the plaintiff's choice, rational

17  choice of forums do under the law.

18           So those are the reasons that the motion

19  to transfer is denied, and similarly, as all parties

20  acknowledge why it makes sense for me to enjoin further

21  litigation, Monsanto's mirror image suit in the Eastern

22  District.

23           And I want to put something else on the

24  record.  It would certainly have been, I think in the

25  courts -- if I were looking at this from a self-

USCA5 243

1   interested standpoint, I would drop-kick this case to

2   the Eastern District in a heartbeat because, heaven

3   knows, there's plenty of work in this District for the

4   Judges here to do.

5          This is not a -- this is not turf

6   consciousness or a desire to hold onto things.  On the

7   contrary, if you folks sat down and agreed to settle

8   the case, you might be happier than I, but not much, I

9   promise.  I just give you that assurance, that I'm not

10  holding onto this case because it is going to give

11  personal pleasure or there's a desire here to hold onto

12  stuff that ought to go elsewhere.

13         I am persuaded on the legal principles that

14  that is what I'm required to do, and that's why I'm doing

15  it.  I'm going to hold onto the case here because the

16  merits of what has been presented to me, Syngenta did have

17  a reasonable apprehension of suit.  Jurisdiction lies here.

18  The choice of forum was not irrational or unreasonable.

19  There's no counterveiling and outweighing set of factors

20  for a transfer and it logically follows, then, that the

21  duplicative suit should be enjoined.

22         You'll get a one-sentence order from me that

23  says for the reasons stated in open court, the motions

24  to dismiss and transfer to denied, motion to enjoin is

25  granted.  And then you won't be spending any more time,

USCA5 244

43

1    nor will I, on these preliminaries, and we can get to

2    the business of resolving the case on the merits.

3              All right.  Is there anything else that we

4    ought to be addressing while we're all together?  From the

5    plaintiff's side?

6              MR. FLIBBERT:  No, your Honor, I don't believe

7    so.

8              THE COURT:  From the defense?

9              MR. SPEARS:  Nothing further, your Honor.

10             THE COURT:  All right.  We're in recess.

11             (Court recessed at 11:55 p.m.)

12                            -  -  -

13

14

15

16

17

18

19

20

21

22

23

24

25

# UNREPORTED CASES

USCA5 246

LEXSEE 2000 US DIST LEXIS 9802

CLAY PAKY, S.p.A., Plaintiff, v. VARI-LITE, INC., Defendant. COEMAR, S.p.A., Plaintiff, v. VARI-LITE, INC., Defendant.

99 Civ. 11401 (BSJ), 99 Civ. 11402 (BSJ)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*2000 U.S. Dist. LEXIS 9802*

**July 12, 2000, Decided**
**July 14, 2000, Filed**

**DISPOSITION:** [*1] Defendant's motions to dismiss DENIED. Defendant's motions to transfer to the Northern District of Texas GRANTED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** In two related cases, defendant moved to dismiss declaratory judgment actions on the grounds that the court lacked subject matter jurisdiction, the complaints did not state a claim upon which relief could be granted, and the court lacked personal jurisdiction. Alternatively, defendant requested transfer.

**OVERVIEW:** Defendant was a Texas corporation with its principal place of business in Texas, and an office in New York. On August 5, 1999, counsel for defendant sent a letter to one of the plaintiff's headquarters indicating that the plaintiff's products might infringe defendant's patent. A nearly identical letter was sent to a second plaintiff. Plaintiffs brought declaratory judgment actions. Defendant moved to dismiss on the grounds that subject matter jurisdiction did not exist under *28 U.S.C.S. § 220,* and that the court lacked personal jurisdiction. The court found subject matter jurisdiction because plaintiffs' pleadings included allegations of a present and actual controversy. Accordingly, defendant's motions to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* was denied. The court next found that the defendant was doing business in New York and was subject to personal jurisdiction. Defendant's motion to dismiss under *Fed. R. Civ. P. 12(b)(2)* was therefore denied. Defendant's motion to transfer pursuant to *28 U.S.C.S. § 1404*(a) was granted because the center of gravity of the case was in Texas.

**OUTCOME:** Defendant's motions to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction were denied. Plaintiffs' pleadings included allegations of an actual controversy. Defendant was doing business in New York and was subject to personal jurisdiction. Transfer was granted because center of gravity of litigation was Texas.

**CORE TERMS:** patent, apprehension, negotiation, infringe, personal jurisdiction, actual controversy, convenience, motions to dismiss, licensing, lawsuit, subject matter jurisdiction, lighting, selling, counteroffer, Declaratory Judgment Act, declaratory judgment action, charge of infringement, choice of forum, infringement, license, declaratory judgment, exercise of personal jurisdiction, doing business, out-of-state, terminated, injunction, undisputed, non-party, enclosed, patentee

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Declaratory Judgment Actions > General Overview*
[HN1] See *28 U.S.C.S. § 2201*(a).

USCA5 247

2000 U.S. Dist. LEXIS 9802, *

*Civil Procedure > Justiciability > Case or Controversy Requirements > Actual Disputes*
*Civil Procedure > Declaratory Judgment Actions > General Overview*
*Constitutional Law > The Judiciary > Case or Controversy > Ripeness*
[HN2] An actual controversy is a jurisdictional prerequisite and must be present before a declaratory judgment action is ripe for adjudication.

*Civil Procedure > Justiciability > Case or Controversy Requirements > Actual Disputes*
*Patent Law > Infringement Actions > General Overview*
*Patent Law > Remedies > Declaratory Relief*
[HN3] The standard for determining whether an actual controversy is present in a declaratory judgment action concerning a patent has two elements: First, the defendant's conduct must have created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question. Second, plaintiff must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity.

*Civil Procedure > Justiciability > Case or Controversy Requirements > Actual Disputes*
[HN4] In order to demonstrate the presence of an actual controversy, the plaintiff has the burden of establishing by a preponderance of the evidence, inter alia, that it has a reasonable apprehension that it will be sued.

*Civil Procedure > Justiciability > Case or Controversy Requirements > Actual Disputes*
*Patent Law > Infringement Actions > General Overview*
[HN5] The test used to determine whether a plaintiff's apprehension of a lawsuit is reasonable is an objective one which focuses on whether the defendant's conduct rose to a level sufficient to indicate an intent to enforce its patent. An explicit charge of infringement would give rise to the reasonable apprehension necessary to demonstrate the presence of an actual controversy, however, an express charge of infringement is not essential.

*Civil Procedure > Justiciability > Case or Controversy Requirements > General Overview*
*Patent Law > Infringement Actions > General Overview*

[HN6] A court must consider the totality of the circumstances and determine whether the plaintiff has shown that objective circumstances support his apprehension of an impending lawsuit.

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN7] In deciding a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidentiary matters outside the pleadings.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > General Overview*
*Patent Law > Jurisdiction & Review > Standards of Review > General Overview*
*Patent Law > Jurisdiction & Review > Subject Matter Jurisdiction > Appeals*
[HN8] Although under the Federal Circuit's courtesy rule, district courts sitting in patent actions are generally guided by the law of the regional circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law, Federal Circuit law governs both substantive and procedural issues intimately involved in the substance of enforcement of the patent rights.

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN9] In order to defeat a motion to dismiss for lack of personal jurisdiction, the non-moving parties, need initially make only a prima facie showing of jurisdiction. The court's analysis of the adequacy of a non-moving party's prima facie showing of personal jurisdiction requires that the court first examine whether the exercise of jurisdiction is proper under the forum state's law, and then address whether the exercise of personal jurisdiction comports with due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN10] *N.Y. C.P.L.R. 301* provides general jurisdiction over a non-domiciliary defendant where that defendant is engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction. The non-domiciliary must be

USCA5 248

2000 U.S. Dist. LEXIS 9802, *

doing business in New York not occasionally or casually, but with a fair measure of permanence and continuity.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
[HN11] Jurisdiction under *N.Y. C.P.L.R. 301* must satisfy the constitutional requirement of due process. The exercise of jurisdiction must be based on defendant's minimum contacts with the state and must comport with traditional notions of fair play and substantial justice.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN12] District courts may transfer an action to another district in which the action could have been brought when doing so would serve the convenience of the parties and the witnesses and would be in the interest of justice. *28 U.S.C.S. § 1404*(a).

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN13] Whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN14] The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the defendant makes a clear and convincing showing that the balance of convenience favors the defendant's choice.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN15] In determining whether a transfer is warranted, a district court considers a number of factors, including: (1) the convenience of witnesses, (2) the location of relevant documents and the relative ease of access to sources of proof, (3) the convenience of the parties, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice based on the totality of the circumstances.

*Civil Procedure > Venue > Federal Venue Transfers > Convenience Transfers*
[HN16] The core determination under *28 U.S.C.S. § 1404*(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN17] The convenience of both the party and non-party witnesses is probably considered the single-most important factor in the analysis of whether a transfer should be granted.

*Civil Procedure > Venue > Federal Venue Transfers > General Overview*
[HN18] A plaintiff's choice of forum is generally entitled to substantial consideration. However, a plaintiff's choice is accorded less weight to the degree that the case's operative facts have little or no connection with the transferor forum.

COUNSEL: For CLAY PAKY S.P.A., plaintiff: Edward V. Filardi, Douglas R. Nemec, Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York, NY.

JUDGES: Barbara S. Jones, UNITED STATES DISTRICT JUDGE.

OPINION BY: Barbara S. Jones

OPINION:

OPINION & ORDER

BARBARA S. JONES
UNITED STATES DISTRICT COURT

In these two related cases, defendant Vari-Lite, Inc., moves pursuant to the Declaratory Judgment Act, *28 U.S.C. § 2201*, and *Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure* (Fed. R. Civ. P.) to dismiss the declaratory judgment actions brought separately by plaintiff Clay Paky S.p.A. and Coemar S.p.A., on the grounds that this Court lacks subject matter jurisdiction under the Declaratory Judgment Act, and the complaints do not state a claim upon which relief can be granted. n1 In addition, defendant moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). In the alternative, defendant requests that this Court exercise its discretion under *28 U.S.C. § 1404* and transfer these actions to the Northern District of Texas, Dallas

USCA5 249

Division. For the following reasons, defendant's motions to dismiss are denied, and defendant's motion to transfer [*2] venue is granted.

> n1 On June 27, 2000, plaintiffs amended their respective complaints as of right. The amendments have no impact on the merits of the pending motions.

## BACKGROUND

The following facts are, unless otherwise noted, undisputed. Vari-Lite is a Texas corporation with its principal place of business in Dallas, Texas, and an office in New York, New York. Vari-Lite is in the business of manufacturing and renting sound and lighting fixtures for use in stage, theater, television, and other applications. In particular, Vari-Lite manufactures "intelligent lighting" -- remotely controlled lights that change colors and positions, project images and are choreographed through the use of a computer. Among other patents, Vari-Lite currently owns U.S. Patent No. 4,392,187 ("the '187 patent"), entitled "Computer Controlled Lighting System." Vari-Lite products are manufactured, serviced and shipped from Vari-Lite's production facility in Dallas.

Plaintiffs Clay Paky and Coemar are Italian corporations, with their [*3] principal places of business in Italy, that manufacture various lighting products.

On August 5, 1999, counsel for Vari-Lite sent a letter to Clay Paky's Italian headquarters. n2 The entire letter is reprinted below:

> This firm represents Vari-Lite, Inc. ("Vari-Lite") in intellectual property matters.
>
> Vari-Lite is the owner of [the '187 patent], which covers lighting systems like the ones sold by Clay Paky. I have enclosed a copy of this patent for your review. Since the issuance of the '187 Patent, Vari-Lite has aggressively enforced its right to exclude others from making, using, or selling products covered by the '187 Patent. Most recently, a federal court in Texas ordered Martin to cease selling certain of its lighting products in the United States that infringe the '187 Patent. I have enclosed a copy of the injunction order for your review.
>
> It has come to our attention that Clay Paky sells a number of products in the United States that may infringe one or more claims of the '187 Patent. Specifi-

cally, we believe that the Stage Color line of luminaires (1200, 1000, 575, 300), Stage Zoom 1200, Stage Light 300, Golden Light 300, Golden Scan HPE, Stage Scan, Super Scan Zoom, [*4] Golden Scan 3, the MiniScan series, and Silverado may infringe claim 6 and other claims of the '187 Patent.

> This letter is to request that you cease and desist from making, using, selling, leasing, importing or offering for sale or lease in the United States the above-identified products, and any other products that infringe the '187 Patent. If you do not wish to discontinue such activities, please contact the undersigned to discuss the potential for licensing arrangement with Vari-Lite.
>
> If you believe that your products do not infringe the '187 Patent, I would appreciate hearing from you the reasons why you believe your products do not infringe no later than August 16, 1999.
>
> Thank you for your attention to this important matter, and I look forward to receiving your response.

(McCormack Aff. in 99 Civ. 11402, Ex. B.)

> n2 The records in these actions are confused. The August 5, 1999, letter to Clay Paky is not in the Clay Paky record, but can be found in the Coemar record. (See McCormack Aff. in 99 Civ. 11402, Ex. B.) Not surprisingly, the August 5, 1999, letter to Coemar can be found as Exhibit B to defendant's affidavit in the Clay Paky action. (See McCormack Aff. in 99 Civ. 11401, Ex. B.)

[*5]

Also on August 5, 1999, defendant sent a nearly identical letter to Coemar. n3 Coemar contacted Vari-Lite's attorneys and requested a face-to-face meeting with Vari-Lite to discuss a license under the '187 patent.

> n3 The letters to Clay Paky and Coemar are identical, except for the second sentence in the third paragraph that identifies which specific products "may infringe" the '187 patent.

USCA5 250

On August 26, 1999, Bruno Dedoro, president of Coemar, faxed Vari-Lite's counsel a letter requesting a face-to-face meeting with Vari-Lite on August 30, 1999, when Dedoro planned to be in North America on other business. Dedoro wrote, "The purpose of this meeting would be to understand directly from Vari-Lite on which basis [sic] the mentioned licensing arrangements could be reached without wasting money in disputes . . . . Obviously my approach has not to be interpreted [sic] in any way as an acknowledgement [sic] of any kind of liability in respect of your client's claim." (McCormack Aff. in 99 Civ. 11402, [*6] Ex. C.) Later that day, Vari-Lite's counsel responded by fax suggesting that Dedoro meet with Vari-Lite's President and CEO Harry R. Brutsche, III, in New York on August 30, 1999, when Brutsche and his lawyer would be in New York on other business.

On August 30, 1999, Vari-Lite CEO Brutsche met with Dedoro in New York and discussed a licensing arrangement. Brutsche and Dedoro agreed to continue negotiations on September 6, 1999, at a trade show in London both would be attending. The day after this initial meeting, Vari-Lite's counsel faxed Dedoro a proposal for a license. This August 31, 2000, letter makes no mention of litigation. n4

n4 Though there is no explicit mention of litigation, the letter, curiously, is captioned: "Re: *Vari-Lite, Inc. v. Martin Gruppen A/S, et al.*" (McCormack Aff. in 99 Civ. 11402, Ex. E.) The "Martin Gruppen" referenced in this letter is presumably the "Martin" mentioned in Vari-Lite's opening salvo to Coemar and Clay Paky and against whom Vari-Lite won an injunction.

On September 6, 1999, Brutsche [*7] and Dedoro met in London, and were joined by Pasquale Quadri and Enrico Caironi of Clay Paky. Through their representatives, Coemar and Clay Paky negotiated jointly at the meeting. Coemar and Clay Paky noted that each had historically enjoyed a good relationship with Vari-Lite and that they wanted to reach a resolution. Both Coemar and Clay Paky said that their presence in the U.S. market was not big enough to warrant litigation, which they wished to avoid. Both companies offered to make their financial records available to Vari-Lite in order to determine a reasonable royalty rate. Brutsche expressed his interest in entering into a licensing agreement with both Coemar and Clay Paky, and the three companies negotiated the amount of the licenses. Brutsche made no threats of litigation and no references to future litigation. Each company agreed to consider the offers on the table and to

continue negotiations after Coemar and Clay Paky provided financial information.

On September 22, 1999, Coemar and Clay Paky sent a written joint proposal to Vari-Lite. Their joint proposal contained information regarding Coemar and Clay Paky's sales volumes and earnings. The joint proposal was a counteroffer [*8] to an earlier offer by Vari-Lite. Brutsche considered this joint proposal a starting point for negotiation in earnest as it provided him with his first glimpse at their financial data.

Brutsche responded to the joint proposal by letter to both Coemar and Clay Paky on October 7, 1999. In the letter, Brutsche thanked Coemar and Clay Paky for their counteroffer, but termed it "inadequate to compensate Vari-Lite for sales of infringing products in the United States by Coemar and Clay Paky." Brutsche concluded by reducing Vari-Lite's initial demand by ten percent. Brutsche made no threat or mention of litigation.

In response to Vari-Lite's counteroffer, Enrico Caironi, Commercial Director of Clay Paky, called Brutsche on October 26, 1999. Caironi said that he hoped Vari-Lite was not offended by Coemar and Clay Paky's low offer and that Clay Paky was still hoping to work something out with Vari-Lite.

Later that same day, Dedoro, from Coemar, called Brutsche and expressed his continuing interest in entering into a licensing agreement with Vari-Lite. He said that he would soon be prepared to present another counteroffer for an increased royalty or licensing fee. Brutsche and Dedoro agreed [*9] to continue negotiations on November 19, 1999, when both would be in Orlando, Florida for a trade show.

On November 17, 1999, Clay Paky and Coemar separately filed the complaints in these actions. Nonetheless, Brutsche and Dedoro met in Orlando on November 20, 1999. Dedoro proposed yet another increased counteroffer. Brutsche, who was under the impression that Dedoro was speaking on behalf of both Coemar and Clay Paky, told Dedoro that he would take this latest offer under advisement. There have been no negotiations since. On February 24, 2000, Vari-Lite filed the pending motions.

I. Subject Matter Jurisdiction

Defendant's principal motion is that subject matter jurisdiction does not exist under the Declaratory Judgment Act, *28 U.S.C. § 2201.* The purpose of the Declaratory Judgement Act is to protect threatened parties from the uncertainty and anxiety resulting from a looming lawsuit. See *Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 889 (Fed. Cir. 1992).* [HN1] Section 2201(a) states:

USCA5 251

In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights [*10] . . . of any interested party seeking such declaration . . . . Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

*28 U.S.C. § 2201*(a). [HN2] An actual controversy is a jurisdictional prerequisite and must be present before a declaratory judgment action is ripe for adjudication. See *Shell Oil, 970 F.2d at 887*. [HN3] The standard for determining whether an actual controversy is present in a declaratory judgment action concerning a patent has two elements:

First, the defendant's conduct must have "created on the part of the declaratory plaintiff a reasonable apprehension that it will face an infringement suit if it commences or continues the activity in question." Second, "plaintiff must be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity."

*BP Chemicals Ltd. v. Union Carbide Corp., 757 F. Supp. 303, 304 (S.D.N.Y. 1991)* (citations omitted). [HN4] In order to demonstrate the presence of an actual controversy, "the plaintiff has the burden of establishing by a preponderance [*11] of the evidence, inter alia, that it has a reasonable apprehension that it will be sued." *Shell Oil, 970 F.2d at 887.*

[HN5] The test used to determine whether a plaintiff's apprehension of a lawsuit is reasonable is an objective one which focuses on whether the defendant's "conduct rose to a level sufficient to indicate an intent to enforce its patent." *Id. at 888.* An explicit charge of infringement would give rise to the reasonable apprehension necessary to demonstrate the presence of an actual controversy, however, an express charge of infringement is not essential. See *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 735 (Fed. Cir. 1988).* Under the standard articulated by the Federal Circuit in Shell Oil and *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051 (Fed. Cir. 1995)*, Vari-Lite's statements that the '187 patent "covers" products sold by the plaintiffs and that those products therefore "may infringe" the patent, in the context of a letter that is at

least in part an invitation to negotiate a license -- that is, to find a commercial resolution -- may be sufficiently well-crafted [*12] to avoid being an express charge of infringement. See *Shell Oil, 970 F.2d at 889; Phillips Plastics 57 F.3d at 1053-54.*

Assuming, without deciding, that the statements in Vari-Lite's August 5, 1999, letter do not constitute an explicit charge of infringement, [HN6] I must consider the totality of the circumstances and determine whether the plaintiff has shown that objective circumstances support his apprehension of an impending lawsuit. See *Shell Oil, 970 F.2d at 888; Phillips Plastics, 57 F.3d at 1053-54.*

[HN7] In deciding a motion to dismiss for lack of subject matter jurisdiction, a court may consider evidentiary matters outside the pleadings. *Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).* In these cases, an examination of the pleadings, the affidavits, and the correspondence between Vari-Lite, Clay Paky and Coemar, submitted as exhibits by the defendant, shows that the plaintiff's apprehension of a lawsuit was objectively reasonable.

Defendants contend that the parties were seeking a business solution and toward that end were involved in negotiations which were either [*13] (1) never terminated by any party, even after these suits were filed, or (2) unilaterally terminated by plaintiffs by filing these suits. The fact that Clay Paky or Coemar may have unilaterally terminated negotiations does not negate their reasonable apprehension of a lawsuit, however, especially when viewed in light of defendant's first letter which clearly threatened litigation. Defendant argues that merely informing Clay Paky and Coemar that Vari-Lite enforces its patent rights does not in and of itself create a reasonable apprehension of litigation. This argument may be true as far as it goes, but Vari-Lite's August 5, 1999, letters went much further than merely alerting Clay Paky and Coemar of Vari-Lite's patent. The letters warned that "Vari-Lite has aggressively enforced" its rights under the '187 patent and named a third party, Martin, that Vari-Lite had successfully enjoined. Vari-Lite even enclosed copies of the injunction order against Martin. "This is in effect a statement to the plaintiff to take notice that it is next on the list." *United Aircraft Corp. v. Giannini Controls Corp., 1967 U.S. Dist. LEXIS 8901, 156 U.S.P.Q. 557, 558 (S.D.N.Y. 1967).* Vari-Lite [*14] as much as wrote, "If you don't think we mean business and are serious about this matter, look and see what we have done to another alleged infringer." See id.

Defendant contends that the August 5, 1999, letters were merely an invitation to Clay Paky and Coemar to engage in licensing negotiations, and thus were the type of communication that the Federal Circuit has previously

USCA5 252

2000 U.S. Dist. LEXIS 9802, *

held did not create a justiciable controversy. See *Phillips Plastics, 57 F.3d at 1053.* Defendant's reliance on the Phillips Plastic decision, however, is misplaced. In Phillips Plastics, the patentee had not stated nor suggested that it would pursue legal recourse if it were not satisfied with the outcome of the proposed licensing negotiations. Id. The Federal Circuit Court of Appeals held that such circumstances were not sufficiently adverse to create a justiciable controversy. Id. The holding in Phillips Plastics, however, is inapplicable in a case such as the ones presented here, where defendant has obliquely accused Clay Paky and Coemar of infringing its patent, made specific demands on Clay Paky and Coemar, and issued thinly veiled threats of resorting to litigation [*15] if its demands are not met. Just because the parties proceeded to initiate negotiations does not mean that the reasonable apprehension of litigation was ever removed. Vari-Lite, having made its threat of litigation, cannot now claim that Clay Paky and Coemar were unreasonable in their apprehension of impending litigation. n5

> n5 This is not a case, like *Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852,* where the defendant, having once made a threat, later alleviated any reasonable apprehension of litigation by entering into a covenant not to sue.

Plaintiffs have shown objective circumstances which support their reasonable apprehension of a lawsuit, thereby satisfying the first requirement of demonstrating that an actual controversy existed at the time this declaratory judgment action was commenced. As to the second element, there is no dispute among the parties that plaintiffs have engaged in selling activity subject to a charge of infringement. Therefore, subject matter jurisdiction exists over this dispute under [*16] the Declaratory Judgment Act, and Vari-Lite's motions to dismiss pursuant to *Fed. R. Civ. P. 12(b)(1)* are DENIED.

Plaintiffs' pleadings include allegations of a present and actual controversy with respect to the validity, infringement, and enforceability of the *'187* patent. Such allegations state a cause of action for which the requested relief, a declaratory judgment, could be granted. Accordingly, defendant's motions to dismiss pursuant to *Fed. R. Civ. P. 12(b)(6)* are DENIED. The court must next consider defendant's alternative request that the complaint be dismissed on the ground of lack of personal jurisdiction, pursuant to *Federal Rule of Civil Procedure 12(b)(2).*

II. Personal Jurisdiction

[HN8] Although under the Federal Circuit's "courtesy rule," district courts sitting in patent actions are generally guided by the law of the regional "circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law," *Molins PLC v. Quigg, 837 F.2d 1064, 1066, 5 U.S.P.Q.2D (BNA) 1526, 1527 (Fed. Cir. 1988)* (citation omitted), Federal Circuit law governs both substantive and procedural issues "intimately involved in the substance of enforcement" [*17] of the patent rights. See *Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 428 (Fed. Cir. 1996)* (applying Federal Circuit law in holding that the district court had personal jurisdiction over out-of-state patentee defending an action seeking declaratory judgment of invalidity and noninfringement); see also *Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995)* (Federal Circuit law governs personal jurisdiction issue when the out-of-state party is the patentee defending a declaratory judgment action, rather than the alleged infringer); *Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1564-65 (Fed. Cir. 1994)* (applying Federal Circuit law in determining whether district court had personal jurisdiction over an out-of-state corporation accused of patent infringement). Therefore, the Court looks to Federal Circuit precedents in analyzing the personal jurisdictional issues.

[HN9] In order to defeat a motion to dismiss for lack of personal jurisdiction, Clay Paky and Coemar, as the non-moving parties, need initially make only a prima facie showing of jurisdiction. See *United States v. Ziegler Bolt and Parts Co., 111 F.3d 878, 880 (Fed. Cir. 1997).* [*18] The Court's analysis of the adequacy of a non-moving party's prima facie showing of personal jurisdiction requires that the Court first examine whether the exercise of jurisdiction is proper under the forum state's law, and then address whether the exercise of personal jurisdiction comports with due process. See *Graphic Controls Corp. v. Utah Medical Products, Inc., 149 F.3d 1382, 1385 (Fed. Cir. 1998).*

[HN10] New York's CPLR 301 provides general jurisdiction over a non-domiciliary defendant where that defendant is "engaged in such a continuous and systematic course of doing business here as to warrant a finding of [its] presence in this jurisdiction." *Beacon Enter., Inc. v. Menzies, 715 F.2d 757, 762 (2d Cir. 1983)* (quoting *Simonson v. Int'l Bank, 14 N.Y.2d 281, 200 N.E.2d 427, 251 N.Y.S.2d 433 (N.Y. 1964)).* "The non-domiciliary must be doing business in New York not occasionally or casually, but with a fair measure of permanence and continuity." Id. (internal quotations omitted). It is undisputed that Vari-Lite has an office in New York, employing thirteen people and accounting for approximately twelve percent of Vari-Lite's [*19] revenues in the most recent fiscal year, as well as a New York bank account. Vari-Lite is "doing business" in New York and is therefore subject to this Court's exercise of personal jurisdiction.

USCA5 253

See *Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985)*.

[HN11] Jurisdiction under CPLR 301 must also satisfy the constitutional requirement of due process. The exercise of jurisdiction must be based on defendant's "minimum contacts" with the state and must comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*. By maintaining an office in New York, Vari-Lite "purposefully availed itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958)*. Given Vari-Lite's presence and continuous business in New York, Vari-Lite cannot complain that it could not have "reasonably anticipated being haled before a court" in New York. *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)*. [*20] Therefore, this Court's exercise of personal jurisdiction over Vari-Lite comports with due process. Accordingly, defendant's motions to dismiss, pursuant to Rule 12(b)(2) for lack of personal jurisdiction are DENIED.

### III. Change of Venue

In short, all aspects of defendant's motions to dismiss are denied. Defendant also moves pursuant to *28 U.S.C. § 1404*(a) to transfer venue from the Southern District of New York to the Northern District of Texas. [HN12] District courts may transfer an action to another district in which the action could have been brought when doing so would serve the convenience of the parties and the witnesses and be in the interest of justice. See *28 U.S.C. § 1404*(a). [HN13] Whether to grant a change of venue requires a balancing of conveniences, which is left to the sound discretion of the district court." *Filmline (Cross-Country) Productions, Inc. v. United Artists Corp., 865 F.2d 513, 520 (2d Cir. 1989)*. [HN14] The burden of demonstrating the desirability of transfer lies with the moving party, and in considering the motion for transfer, a court should not disturb a plaintiff's choice of forum unless the [*21] defendant makes "make a clear and convincing showing that the balance of convenience favors" the defendant's choice. *Orb Factory Ltd. v. Design Science Toys Ltd., 6 F. Supp. 2d 203, 210 (S.D.N.Y. 1998)* (internal quotation omitted).

[HN15] In determining whether a transfer is warranted, a district court considers a number of factors, including: (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses;

(6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interest of justice based on the totality of the circumstances. See, e.g., *Pilates, Inc. v. Pilates Institute, Inc., 891 F. Supp. 175, 183 (S.D.N.Y. 1995); Stein v. Microelectronic Packaging, Inc., 1999 U.S. Dist. LEXIS 11375, No. 98 Civ. 8952, 1999 WL 540443 (S.D.N.Y. 1999)* (MBM).

[HN16] The "core determination" under § 1404(a) is "the center of gravity of the litigation, a key test [*22] of which is the convenience of witnesses . . . . Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." *Viacom Int'l, Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 868 (S.D.N.Y. 1991)*; see also *Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 988 (E.D.N.Y. 1991)* ("[HN17] The convenience of both the party and non-party witnesses is probably considered the single-most important factor in the analysis of whether a transfer should be granted.") (citing cases); *Arrow Elec., Inc. v. Ducommun Inc., 724 F. Supp. 264, 265 (S.D.N.Y. 1989)* ("In most cases, the convenience of the party and non-party witnesses is the most important factor in the decision whether to grant a motion for transfer.").

In the present case, these factors heavily favor transferring the case to Texas. It is undisputed that with the exception of plaintiffs, who reside in Italy, every witness -- both party and non-party -- resides or works in Dallas, Texas, and most, if not all, of the documentary evidence is in Texas. (See McCormack Aff. in 99 Civ. 11401, Ex. A; McCormack Aff. in 99 Civ. 11402, [*23] Ex. A.) In short, the "center of gravity" of this litigation is plainly in Texas, and the "local interest in having localized controversies decided at home" favors litigation there. *Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)*.

To be sure, [HN18] a plaintiffs' choice of forum is generally entitled to "substantial consideration." *In re Warrick, 70 F.3d 736, 741 (2d Cir. 1995)*. However, a plaintiff's choice "is accorded less weight to the degree that the case's operative facts have little or no connection with the transferor forum." *Totonelly v. Cardiology Assocs. of Corpus Christi, Inc., 932 F. Supp. 621, 623 (S.D.N.Y. 1996)*. Here, the operative facts have no connection with New York whatsoever. Therefore, plaintiffs' choice of forum is entitled to less deference than it would usually receive, and transfer is warranted. Accordingly, defendant's transfer motions herein are GRANTED and it is hereby ORDERED that these actions be transferred to the Northern District of Texas for all further proceedings.

### CONCLUSION

2000 U.S. Dist. LEXIS 9802, *

For the foregoing reasons, defendant's motions to dismiss are DENIED. Defendant's motions [*24] to transfer to the Northern District of Texas are GRANTED. The Clerk is directed to transfer these cases to the United States District Court for the Northern District of Texas.

**SO ORDERED:**

Barbara S. Jones

UNITED STATES DISTRICT JUDGE

New York, New York
July 12, 2000

USCA5 256

Westlaw.

Not Reported in F.Supp.                                          Page 1

Not Reported in F.Supp., 1995 WL 562289 (D.Del.)
(Cite as: Not Reported in F.Supp.)

H

Briefs and Other Related Documents
Dow Chemical Co. v. Exxon Chemical Patents,
Inc.D.Del.,1995.Only the Westlaw citation is
currently available.
United States District Court, D. Delaware
DOW CHEMICAL COMPANY, Plaintiff,
v.
EXXON CHEMICAL PATENTS, INC. and Exxon
Corporation, Defendants.
**Civ. A. No. 94-572-SLR.**

Aug. 16, 1995.

Donald F. Parsons, of Morris, Nichols, Arsht &
Tunnell, Wilmington, Delaware, for plaintiff. Of
counsel: Harry J. Roper, Raymond N. Nimrod,
Aaron A. Barlow, of Roper & Quigg, Chicago,
Illinois; and L. Wayne White, of Dow Chemical
Company, Freeport, Texas.
William J. Wade, of Richards, Layton & Finger,
Wilmington, Delaware, for defendants. Of
Counsel: David W. Plant, Glenn A. Ousterhout,
Duane-David Hough, Eric R. Hubbard, of Fish &
Neave, New York, New York.

MEMORANDUM OPINION
SUE L. ROBINSON, District Judge.

I. INTRODUCTION

*1 In this declaratory judgment action brought by
the Dow Chemical Company ("Dow"), plaintiff
seeks a declaration that the manufacture, sale, or
use of wire and cable devices which utilize Dow
ENGAGE polymers do not infringe United States
Patent No. 5,246,783 (the " '783 patent") held by
defendants, and that this patent is invalid. Plaintiff
also seeks a declaration that Exxon Corporation ("
Exxon Corp.") unfairly interfered with Dow's
contractual relations, as well as injunctive and
monetary relief.[FN1] (D.I. 62, Ex. 1). Before the
court is defendants' motion to dismiss for want of

subject matter jurisdiction. (D.I.66) For the reasons
that follow, the court shall deny defendants' motion.

II. BACKGROUND

Both parties in this litigation manufacture certain
polymers for use in, *inter alia,* wire and cable
devices. (D.I. 32 at 5) Two of defendants' polymers
are sold under the trade names VISTALON and
EXACT. Plaintiff's relevant product has the trade
name ENGAGE.

On September 21, 1993, the '783 patent was issued
to Exxon Chemical Patents, Inc.. (D.I. 9, Ex. 1)
The patent is entitled "Electrical Devices
Comprising Polymeric Insulating or
Semiconducting Members" and relates to wire and
cable devices covered with a polymer consisting of
particular characteristics. (*Id.;* D.I. 61 at 7) Also in
September of 1993, Dow introduced its first line of "
ITP [FN2]" polymer products under the trademark
name of AFFINITY. By February of 1994, Dow
had introduced a second line of ITP products, the
ENGAGE products, with two polymers (ENGAGE
CL 8001 and ENGAGE CL 8002) specifically for
cable wire use. (D.I. 26 at ¶¶ 9-7) By June, Dow
also developed a third ENGAGE product,
ENGAGE CL 8003, which is also designed for wire
and cable use.[FN3] (*Id.*)

The conduct of Exxon following the introduction of
its patent falls into two main categories. The first
category concerns Exxon's conduct toward plaintiff
and some significant communications between the
two. On December 15, 1993, Edward T. Duffy ("
Duffy"), Manager of Planning Polymers
Technology for Exxon Chemical, sent to Edwin
Gambrell ("Gambrell"), Vice President of Dow's
Business Platform for Insight Technology (which
includes ENGAGE), a November 10, 1993 press
release concerning the '783 patent. In the
accompanying letter, Exxon Chemical informed
Dow of the patent and stated:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 257

Not Reported in F.Supp.                                                           Page 2

Not Reported in F.Supp., 1995 WL 562289 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

To the best of my knowledge neither Dow nor its affiliates make, use or sell a product in the U.S. which falls within the scope of U.S. patent 5246783 . Accordingly, our patent might not apply directly to Dow's operations, but Dow is in a better position to make that assessment than I. In contrast, Dow's sale of ethylene polymers, based on metallocene technology, to the wire and cable industry, as described in your December 14 press release, could present patent related issues.

Under the circumstances Dow may have an interest in examining Exxon Chemical's patent (US 5246783). I believe that examination will lead Dow to conclude it would be appropriate to advise certain customers of the existence of Exxon Chemical's patent so those customers can test whether their wire and cable devices made with certain Dow polymers raise possible patent related issues.

*2 (D.I. 9, Ex. 2) (emphasis added).

Defendants had additional direct in-person communications with plaintiff. The relevant meetings occurred in the context of negotiations between the parties concerning a joint venture identified as project Xavier. While the parameters of the project remain unclear to the court, what is certain is that the joint venture negotiations coincided with, and were not entirely unrelated to, an ongoing interference proceeding conducted between the two parties with the United States Patent and Trademark Office (the "PTO"). (D.I. 52 at ¶ 7) The relevant meetings were the last of eleven such meetings occurring between February and August of 1994.

With respect to Exxon's conduct at two of these meetings, Gambrell alleges that on August 16, 1994, Doug Selman ("Selman") and Greg McPike (" McPike") of Exxon, stated that the '783 patent " gave Exxon the ability to stop Dow from participating in the wire and cable market...." (D.I. 25 at ¶ 3) Selman and McPike deny this allegation, arguing that because the purpose of their meeting was to encourage a joint venture, the tone of their meetings was congenial. Therefore, they argue that they would have said nothing hostile to a Dow representative. (D.I. 42 at ¶ 8; 39 at ¶¶ 16-26)

Gambrell also alleges that these actions were essentially repeated at a second meeting which took place August 29, 1994. Specifically, he alleges that McPike stated that "Exxon had been using the ' 783 patent aggressively in the marketplace so that wire and cable customers would be concerned about buying Dow's ENGAGE materials...." (D.I. 25 at ¶ 4) McPike denies making such statements, averring that it would have been counterproductive to do so. FN4

As to what actually occurred at these meetings, the dispute becomes simply a contest of fact between affiants. Given the contextual background noted *supra*, i.e., during August 1994 defendants were preparing a lengthy motion alleging inequitable conduct on the part of plaintiff before the PTO, and plaintiff had already considered this litigation (D.I. 58 at 9; 61 at 17), the court finds Gambrell's version of the tone of the meetings more compelling. FN5 On January 5, 1995, two months after plaintiff filed its original complaint, but five months before the stipulated amended filing date, G.S. Rizzo, Exxon Senior Vice President, wrote A.J. Carbone of Dow reemphasizing defendants' offer to license its product at $.075 per pound. (D.I. 67, Ex. 1)

The second area of activity which is relevant to the question of jurisdiction concerns defendants' conduct towards their and Dow's customers. In February of 1994, Exxon Chemical issued a letter to all potential customers announcing the patent and inviting them to license with Exxon Chemical. In describing Exxon Chemical's patent, Harland R. DeWitt ("DeWitt"), Director of Electricals and Specialty Polymer Group, stated the following:

The ethylene copolymers used to manufacture [wire and cable] devices specifically include polymers made with single site or metallocene catalysts, such as our EXACT plastomer resins. The existence of long chain branching in such polymers would not of itself preclude devices made with these polymers from being covered by Exxon's patent.

*3 We invite you to review [the accompanying press release's] content and to consider whether

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 258

Not Reported in F.Supp., 1995 WL 562289 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

your company's products (commercial and under development) are covered by its claims. If so, one easy way to license is to purchase EXACT plastomers from Exxon Chemical.... Licensing is also available for those who wish to manufacture covered devices not using Exxon polymers.

(D.I. 9, Ex. 4) (emphasis added). The letter continued to provide information as to the appropriate person to contact for information about both the EXACT product and licensing arrangements for products covered by the patent. No company has yet to accept defendants' offer to license at $.075 per pound. (D.I. 69 at 15)

Plaintiff argues that these letters were nothing more than veiled threats of litigation. This argument is supported by defendants' concession that the February 1994 letter's reference to "long chain polymers" was a direct reference to plaintiff's products. While defendants further argue that they included said reference to address a misconception in the marketplace created by Dow representatives for the benefit of the parties' customers, such does not alter the fact or the effect of the statement itself. (D.I. 33 at B44)

Activity occurring between defendants and customers also includes face-to-face meetings. Specifically, plaintiff urges, as a basis for jurisdiction, certain statements allegedly made by Peter C. Attwood ("Attwood"), Senior Account Executive for Exxon Chemical's Electricals and Specialty Polymers Group, to various Dow and Exxon customers. As a preliminary matter, the court notes that Exxon held out Attwood as an authoritative Exxon representative on the patent. Attwood had previously signed a December 13, 1993 letter sent to various customers announcing the patent and concluding with the following statement: "[I]f you have any questions about this patent or EXACT resins, please do not hesitate to call me...." [FN6] (D.I. 33 at B211)

Thomas A. Carr ("Carr"), Senior Product Manager for Dow, alleges that Attwood threatened American Insulated Wire ("AIW") by telling AIW's representatives that they could not use the ENGAGE polymer without violating the patent.

Carr also claims that Attwood made similar statements to representatives of Triangle Wire and Cable ("TWC").[FN7] (D.I. 26 at ¶¶ 15(a), 15(b), 16)

Carr's allegations are uniformly hearsay. Attwood denies engaging in any such behavior and insists that he followed Exxon's policy with respect to the '783 patent, by explaining to the customer that its attorney should review the patent claims and determine if its product is covered by the patent and, if so, should contact its polymer supplier to receive information about the polymer being supplied. (D.I. 41 at ¶ 4) With respect to AIW, Attwood acknowledges that he was asked directly by AIW employees over lunch whether the Dow ENGAGE polymers were covered by the patent. They also asked him what Exxon would do if a customer used a polymer covered by the patent but did not pay a license. Attwood avers that he explained the licensing policy, telling the AIW employees that it was unlikely that Exxon would sue a customer, but that it might consider defending its patent. (*Id.* at ¶ 10(e)) Attwood also disputes Carr's allegations with respect to TWC. (*Id.* at ¶ 12) Attwood's claim that his comments were consistent with company policy is supported by contemporaneous records which indicate that a copy of the patent was mailed to the customer, and that TWC was awaiting Dow's response to its inquiry about the '783 patent. (*Id.*, Ex. 8, 9) Attwood acknowledges that TWC called a meeting in June of 1994 to discuss the patent and, in said meeting, Exxon's attorney explained that Dow's patent concerning its own technology had no effect on whether a resulting product was covered by the Exxon's '783 patent. (*Id.* at ¶ 12(e))

*4 Were these the only allegations against Attwood and Exxon, the court would be compelled to favor the non-hearsay evidence over that of Mr. Carr. However, for two customers, General Cable Corporation ("General Cable") and BICC Corporation ("BICC"), plaintiff offers the testimony of said companies' representatives.[FN8] This evidence supports the version of Attwood's behavior as described by Carr. Thomas Falcofsky ("Falcofsky"), Corporate Vice President of Purchasing for General Cable, avers that after

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 259

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 562289 (D.Del.)
(Cite as: Not Reported in F.Supp.)

receipt of the February letter from Exxon, he believed that a potential conflict may have existed between Dow's product and the '783 patent. This belief was confirmed after meeting with Attwood. He felt that Attwood was "looking really to intimidate our relationship with Dow over this material." (D.I. 33 at B169-170, 200) He further " vaguely recalls the conversation" in which he inquired from Attwood about licensing information "with respect to the wire and cable patent" and " with respect to technology relating to the manufacture of polymers." [FN9] (*Id.* at B171-172) He further avers that his request was not well received and that Attwood stated that he would get back to him with information. Falcofsky cannot recall whether anyone ever contacted him with licensing information nor does he recall anyone ever informing him of the possibility of obtaining a license under the patent in order to use Dow's products. (*Id.* at B173-175) After his discussions with Attwood, Falcofsky believed that licensing under the patent was not readily available to General Cable if it were to use Dow's products.

Attwood's version of the facts differs greatly from Falcofsky's. Attwood denies ever making any of the alleged threats. Moreover, he states that Falcofsky inquired from him only about licenses to manufacture Exxon's EXACT polymers. Attwood states that he was surprised by this request since manufacturing polymers was not General Cable's business. Attwood's version of events is supported by a contemporaneous record in which he notes " Tom requested the name of a contact for EXACT licensing. Considering the nature of General Cable's business this request was unusual, but Tom would not elaborate on the reasons for his interest." (D.I. 41, Ex. 4) On May 30, 1994 Attwood sent a letter to Falcofsky identifying Mike Jeffries as the appropriate contact person for such an inquiry. (*Id.*, Ex. 6)

In surreply to defendants' representations, plaintiff also offers the testimony of Cardiff of BICC. He avers that prior to October 24, 1994, he believed that defendants would take legal action against Dow's customers if they used Dow's ENGAGE polymers to make wire and cable products.[FN10] (D.I. 54 at B345) Cardiff based this belief in part on

the February 1994 letter. (*Id.*) An April 1994 meeting also occurred between defendants and BICC for which the minutes of said meeting were kept. Evidence exists of record to find that defendants stated that the use of "alternative material," including Dow's material, would infringe the relevant patent. (*Id.* at 354, Cardiff at 86; D.I. 33 at B234)

**\*5** Plaintiff claims that, based on its knowledge of the above acts, it grew apprehensive of a lawsuit against it by Exxon. (D.I. 62 at ¶ 23) On October 25, 1994 plaintiff commenced this action seeking declaratory judgment concerning the '783 patent and a claim of unfair business practice against defendants. The court held oral argument on March 2, 1995. As stipulated by the parties, plaintiff then filed an amended complaint seeking the same relief on May 5, 1995. (D.I. 62; 65)

### III. DISCUSSION

Jurisdiction by this court over plaintiff's patent claim can only arise from the Declaratory Judgment Act (the "Act"). 28 U.S.C. §§ 2201 and 2202. " The existence of an actual controversy is an absolute predicate for declaratory judgment jurisdiction. When there is no actual controversy the court has no jurisdiction to decide the case. When there is an actual controversy and thus jurisdiction, the exercise of that jurisdiction is discretionary." *Spectronics Corp. v. H.B. Fuller Co.,* 940 F.2d 631, 633-634 (Fed.Cir.), *cert. denied,* 502 U.S. 1013 (1991) (citations omitted). No absolute right to a declaratory judgment exists. *Serco Servs. Co. L.P. v. Kelley Co., Inc.,* 34 U.S.P.Q.2d 1217 (Fed.Cir.1995); *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 733 n. 6 (Fed.Cir.1988). When a defendant files a motion to challenge the court's jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), the plaintiff has the burden of proof and must establish an actual case or controversy on the totality of the circumstances. *Spectronics,* 940 F.2d at 634 (citing *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 272 (1941)). When a factual dispute exists, it is plaintiff's burden to establish jurisdiction by the preponderance of the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 260

Not Reported in F.Supp., 1995 WL 562289 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

evidence. *West Interactive Corp. v. First Data Resources, Inc.,* 972 F.2d 1295, 1297 (Fed.Cir.1992).

"The presence or absence of jurisdiction must be determined on the facts existing at the time the complaint under consideration was filed." *Arrowhead,* 846 F.2d at 734 fn. 2; *see also West Interactive,* 972 F.2d at 1296. Therefore, the party seeking a declaratory judgment, in this case Dow, must plead facts initially sufficient to establish the existence of an actual controversy on May 5, 1995. *Arrowhead,* 846 F.2d at 736.

The purpose of the Act is to enable a party who is reasonably at risk because of an unresolved dispute to obtain a judicial resolution of that dispute without having to await commencement of legal action by the other side. *B.P. Chemicals, Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 977 (Fed.Cir.1992). Thus, the Act seeks to balance the interest of a plaintiff to resolve an imminent legal matter and that of a defendant who has no intention of seeking a lawsuit.

The Federal Circuit has set forth the following two-prong standard for determining whether "a case of actual controversy" exists in actions seeking a declaratory judgment of patent non-infringement or invalidity:
*6 First, the accused infringer must have actually produced or prepared to produce an allegedly infringing product. *Jervis B. Webb Co. v. Southern Sys., Inc.,* 742 F.2d 1388, 1398-99, 222 USPQ (BNA) 943, 949 (Fed.Cir.1984). The first prong " looks to the accused infringer's conduct and ensures that the controversy is sufficiently real and substantial." *Lang v. Pacific Marine and Supply Co.,* 895 F.2d 761, 764, 13 USPQ2d (BNA) 1820, 1822 (Fed.Cir.1990).... Second, the patent holder's conduct must create an objectively reasonable apprehension on the part of the accused infringer that the patent holder will initiate suit if the allegedly infringing activity continues.

*Spectronics,* 940 F.2d at 634 (citations omitted). Thus, the first prong of the test reviews plaintiff's conduct and the second that of defendant. *Arrowhead,* 846 F.2d at 736; *B.P. Chemicals,* 4

F.3d at 978. These actions are reviewed objectively. *Mobil Oil Corp. v. Advanced Envtl. Recycling Technologies, Inc.,* 26 U.S.P.Q.2d 1238, 1239 (D.Del.1992).

### A. Count One

#### 1. Preparation

Dow has the burden to establish that its customers have produced or are prepared to produce an infringing product. The Federal Circuit Court of Appeals has noted that this prong of the test requires plaintiff or its customers to "be engaged in an actual making, selling, or using activity subject to an infringement charge or must have made meaningful preparation for such activity." *Arrowhead,* 846 F.2d at 736. More recently the Federal Circuit has stated this test is met by establishing "present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *In re Laitran Machinery, Inc.,* 1995 U.S.App. LEXIS 6558, at *8 (Fed.Cir. March 21, 1995) (emphasis added).

As noted, the actual controversy must exist at the filing of the complaint. Subsequent to plaintiff's original complaint, it filed a supplemental complaint. Therefore the relevant date by which plaintiff must demonstrate adequate preparation is May 5, 1995. In said complaint plaintiff alleges that General Cable [FN11] has manufactured and sold portable cords in commercial quantities made from ENGAGE CL 8001.

Specifically, James Hemphill, a Dow project leader, avers that Dow began shipping commercial quantities of ENGAGE CL 8001 to General Cable in 1995. Indeed, the record reflects that General Cable purchased over $86,000 of ENGAGE CL 8001 which is enough polymer to produce between 200,000 and 1.8 million portable cords. (D.I. 70) Hemphill also avers that he has witnessed General Cable's production of portable cords using ENGAGE CL 8001. Dow purchased 100 such cords though its wholesaler, Wholesale Electric. (D.I. 63, Ex. A, ¶¶ 5-11; Ex. B, ¶¶ 5-6) This

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 261

Not Reported in F.Supp.

Not Reported in F.Supp., 1995 WL 562289 (D.Del.)
(Cite as: Not Reported in F.Supp.)

product, therefore, is commercially available.

Even if the court were to accept defendants' argument that the product was not "commercially available," defendants would not meet success. At a minimum, the record reflects "meaningful preparation" to production. The law does not offer bright guidelines for determining what actions by a possible patent infringer adequately constitute " meaningful preparation." It is clear that a plaintiff need not have engaged in the actual manufacture, use, or sale of an infringing product. *Interdigital Technology Corp. v. OKI Am.,* 845 F.Supp 276 (E.D.Pa1994). This court has previously held that jurisdiction exists when a minimal amount of testing remains. *BOC Healthcare, Inc. v. Nellcor, Inc.,* No. 92-715-SLR (D.Del. March 30, 1993). The court notes, however, that in *BOC* the defendant acknowledged that the product, if marketed, infringed.

*7 The Federal Circuit requires that the activity of the plaintiff and customers merely constitute " concrete steps" with the intent to produce an infringing product. Such has occurred prior to May 5, 1995, as evidenced by the commercial sale of products using the ENGAGE technology by General Cable. Therefore, the record reflects that as of May 1995, Dow and at least General Cable have taken concrete steps towards production with the intent to make or sell a possibly infringing product. *In re Laitran,* 1995 U.S.App. LEXIS 6558 at *8.

2. Reasonable Apprehension of Suit

"[A] patent holder's conduct must create an objectively reasonable apprehension on the part of the accused infringer that the patent holder will initiate suit if the allegedly infringing activity continues." *Spectronics.* 940 F.2d at 634 (*citing Arrowhead,* 846 F.2d at 736); *B.P. Chemicals,* 4 F.3d at 978. "The 'reasonable apprehension of suit' test requires more than the nervous state of mind of a possible infringer; it requires that the objective circumstances support such an apprehension." *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha,* 93-1530, slip op. at 5 (Fed.Cir. June 15,

1995). Whether a reasonable apprehension of suit exists is determined by the totality of the circumstances. *Arrowhead,* 846 F.2d at 737; *Mobil,* 26 USPQ2d at 1239. Such an analysis is done on a case by case basis.

The record indicates that plaintiff did, at the time of filing this action, have a reasonable apprehension that it, directly or indirectly, would be sued by defendants should Dow and its customers continue producing the products at issue. While the court agrees with defendants that the letters sent to both plaintiff and the customers did not explicitly threaten plaintiff or its customers, the specific reference to Dow and its products add to the totality of the circumstances which indicate a reasonable apprehension of suit.

The most compelling of this evidence is the information put forth by Gambrell of the threats made by McPike and Selman. As discussed, the court embraces Gambrell's description of the relevant conversations occurring during the project Xavier negotiations. Moreover, the representations of Falcofsky and Cardiff, while not without flaws, are worthy of some credence. (Cardiff, at 51-52; D.I. 54 at B345)

Defendants contend that the January 5, 1995 letter offering a license and plaintiff's refusal of such offer (D.I. 67 at 3), as well as a lack of knowledge on their part of the properties of plaintiff's product, implicitly preclude the existence of a case or controversy. Such a position is myopic and ignores the context in which this litigation has developed. With respect to the offer to license, it is simply outweighed by other actions of defendants which have implied a threat to sue. Moreover, the law does not require a party to either 1) enter into a licensing agreement for what it considers an invalid patent or 2) to engage in a costly business while awaiting suit by the patent holder. The Declaratory Judgment Act protects parties from such a Hobbesian choice, and allows them to sue for declaratory relief.

*8 With respect to defendants' lack of knowledge as to plaintiff's product, while the court is unwilling to embrace plaintiff's position (which would require a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 262

Not Reported in F.Supp., 1995 WL 562289 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

defendant to stipulate that it will not sue in order to eliminate a case or controversy), the court also refuses to adopt defendants' representation that insufficient information to sue is an adequate substitute for a stipulation not to sue. "Although a patentee's refusal to give assurances that it will not enforce its patent is relevant to the determination, this factor is not dispositive." *B.P. Chemicals*, 4 F.3d at 980 (citations omitted).

Therefore, while no one incident recited above may be sufficient to satisfy plaintiff's burden, reviewing the incidents under the totality of the circumstances-letters from defendants to Dow and their customers with veiled references to Dow's products, direct threats to Dow executives, and veiled threats to Dow customers by Exxon sales representatives-the court concludes that plaintiff has demonstrated a reasonable apprehension of suit.

### IV. CONCLUSION

For the reasons stated, the court shall deny defendants' motion to dismiss plaintiff's suit. The parties' remaining arguments concerning Count II are moot. An order consistent with this memorandum opinion shall issue.

> FN1. The defendants shall hereinafter be collectively referred to as "Exxon."

> FN2. ITP products are those which are produced using INSIGHT technology. (D.I. 26 at ¶ 3)

> FN3. Exxon claims that by December of 1993 it had made the policy decision to 1) extend or offer a license to all of its customers; 2) refrain from assertions or threats of infringement by marketing and sales representatives; and 3) refer inquiries concerning patent infringement to customers' own counsel. (D.I. 61 at 8)

> FN4. While the minutes of said meeting, drafted by Exxon and uncorrected by Gambrell after their receipt, do not reflect

such statements, the court notes that soon thereafter defendants filed interference proceedings in the PTO against plaintiff. (D.I. 39 at ¶¶ 26-29; 52 at ¶ 21)

> FN5. Exxon's argument that the conversations which occurred are similar to the "high level negotiations" which occurred in *Shell Oil Co. v. Amoco Corp.*, 970 F.2d 885 (Fed.Cir.1992) is misplaced. The negotiations in *Shell* were licensing negotiations, naturally lending themselves to statements about the effects of failing to purchase a license. *Id.* at 888. Such comments would be less receptive in another setting.

> FN6. Exxon argues that it did not authorize Attwood to threaten lawsuits. (D.I. 67 at 16) Viewed objectively, however, because the letter signed by Attwood indicates an apparent authority to address issues with respect to the patent, his statements about the patent could create a reasonable apprehension of suit.

> FN7. General Cable, AIW, BICC, and Triangle have all requested indemnification from Dow. (D.I. 61 at 56, 58)

> FN8. Plaintiff accuses defendants of intimidating customers into not filing promised affidavits which would support plaintiff's allegations of threats. As evidence, they selectively offer a portion of the testimony of Larry Cardiff ("Cardiff" ), Vice President of Procurement for BICC, while ignoring his explicit statement that he was not directly threatened by defendants. (Cardiff, 67-68, 100; D.I. 54 at B349, B371)

> FN9. Falcofsky is "not certain, but believe[s] [he] did" ask about both topics. (*Id.* at B172) He is not sure that he asked about the polymers, but is more sure that he requested licensing information about the wire and cable products. (*Id.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 263

Not Reported in F.Supp.                                                      Page 8

Not Reported in F.Supp., 1995 WL 562289 (D.Del.)
**(Cite as: Not Reported in F.Supp.)**

> B173-175)
>
> FN10. This witness no longer believes that simply the customer would be sued and, in light of this litigation, believes that Dow would be as well. (*Id.*)
>
> FN11. The court focusses on the production by General Cable because it is the most advanced in production of the customers at issue.

D.Del.,1995.
Dow Chemical Co. v. Exxon Chemical Patents, Inc.
Not Reported in F.Supp., 1995 WL 562289 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:94cv00572 (Docket) (Oct. 25, 1994)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 264

USCA5 265

Westlaw.

Slip Copy                                                                    Page 1

Slip Copy, 2006 WL 3355185 (D.Del.)
(Cite as: Slip Copy)

Briefs and Other Related Documents
Epic Systems Corp. v. Acacia Research
Corp.D.Del.,2006.Only the Westlaw citation is
currently available.
United States District Court,D. Delaware.
EPIC SYSTEMS CORPORATION, Plaintiff,
v.
ACACIA RESEARCH CORPORATION and,
Resource Scheduling Corporation, Defendants.
**No. CIVA 06-255 JJF.**

Nov. 16, 2006.

Nicholas J. Seay, James R. Cole, Anthony A.
Tomaselli, and Kristin Graham Noel, of Quarles &
Brady LLP, Madison, Wisconsin, Robert H.
Richards, III, Jeffrey L. Moyer, and Anne Shea Gaza
, of Richards, Layton & Finger, P.A., Wilmington,
Delaware, for Plaintiff.
Jonathan T. Suder, Edward E. Casto, Jr., and
Christie B. Lindsey, of Friedman, Suder & Cooke,
Forth Worth, Texas, Kathleen M. Jennings, and
Karen V. Sullivan, of Oberly, Jennings &
Rhodunda, P.A., Wilmington, Delaware, for
Defendants.

*MEMORANDUM OPINION*
FARNAN, J.
*1 Pending before the Court is Defendants' Motion
To Dismiss And, In The Alternative, Motion To
Transfer Venue (D.I.7).[FN1] For the reasons
discussed below, the Court will deny the Motion in
part and grant the Motion in part.

> FN1. In a letter dated July 13, 2006,
> Defendants withdrew the request for a
> transfer to the Eastern District of Texas.
> (D.I.20).

I. BACKGROUND

Plaintiff Epic Systems Corporation ("Epic") is a
Wisconsin corporation with its principal place of
business in Wisconsin. Defendants Acacia Research
Corporation ("Acacia") and Research Scheduling
Corporation ("RSC") are both Delaware
corporations with their principal places of business
in California. RSC is a wholly-owned subsidiary of
Acacia Global Acquisition, which is a
wholly-owned subsidiary of Acacia.

RSC acquired the rights to license and enforce U.S.
Patent No. 4,937,743 entitled "Method and System
For Scheduling, Monitoring And Dynamically
Managing Resources" ("the '743 patent"). This
system utilizes a computer system to manage
multiple resources in industries that rely on such
functions in their business operations.

On March 23, 2006, Acacia Vice President Edward
J. Treska sent a letter ("March 23 letter") informing
Plaintiff that Acacia believed Plaintiff's "Cadence"
product fell under the scope of the '743 patent and
would require a license. The letter also suggested
that other products might fall under the '743 Patent
as well. The letter further informed Plaintiff that
RSC was in the process of litigating infringement
actions against several companies for violation of
the '743 Patent, and that RSC and Acacia were
contemplating adding additional parties to the
action. The letter also invited the opportunity to
negotiate a licence.

On April 19, 2006, Plaintiff Epic filed the instant
action against Defendants Acacia and RSC seeking
Declaratory Judgment that the '743 Patent is invalid
and unenforceable and not infringed by Epic's
products. (D.I.1).

II. PARTIES' CONTENTIONS

By their Motion, Defendants contend the Court
should dismiss the Complaint in its entirety for lack
of subject matter jurisdiction pursuant to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 266

Slip Copy, 2006 WL 3355185 (D.Del.)
**(Cite as: Slip Copy)**

Fed.R.Civ.P. 12(b)(1) and dismiss Plaintiff's claims against Defendant Acacia for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Specifically, Defendants contend Plaintiff's Complaint fails to establish an "actual controversy" because Plaintiff cannot show it had a reasonable apprehension of imminent suit by Defendants. Defendants further contend that Plaintiff could have no reasonable apprehension of imminent suit because Defendant Acacia has no legal interest in the '743 patent and thus, could not file a patent infringement suit against Plaintiff. In the alternative, Defendants contend the Court should decline to exercise jurisdiction in order to avoid discouraging licensing negotiations.

In response, Plaintiff contends that it had a reasonable apprehension of suit from the March 23 letter and that Defendants do not provide any evidence that Acacia does not have a legal interest in the patent at issue. Plaintiff further contends that the Court's jurisdiction should be exercised because this action presents the type of controversy the Declaratory Judgment Act was created to address.

### III. LEGAL STANDARD

*2 Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a complaint for lack of jurisdiction over the subject matter, or if the plaintiff lacks standing to bring his claim. Motions brought under Rule 12(b)(1) may present either a facial or factual challenge to the Court's subject matter jurisdiction. In reviewing a facial challenge under Rule 12(b)(1), the standards relevant to Rule 12(b)(6) apply. In this regard, the Court must accept all factual allegations in the Complaint as true, and the Court may only consider the complaint and documents referenced in or attached to the complaint. *Gould Electronics Inc. v. U.S.,* 220 F.3d 169, 176 (3d Cir.2000). In reviewing a factual challenge to the Court's subject matter jurisdiction, the Court is not confined to the allegations of the complaint, and the presumption of truthfulness does not attach to the allegations in the complaint. *Mortensen v. First Fed. Sav. and Loan,* 549 F.2d 884, 891 (3d Cir.1977). Instead, the Court may consider evidence outside the pleadings, including

affidavits, depositions and testimony, to resolve any factual issues bearing on jurisdiction. *Gotha v. United States,* 115 F.3d 176, 179 (3d Cir.1997). Once the Court's subject matter jurisdiction over a complaint is challenged, the plaintiff bears the burden of proving that jurisdiction exists. *Mortensen,* 549 F.2d at 891.

### IV. DISCUSSION

*A. Whether Plaintiff Establishes An Actual Controversy For Purposes Of The Declaratory Judgment Act*

Defendants contend Plaintiff has not established an "actual controversy" because it did not have sufficient objectively reasonable apprehension of an imminent lawsuit. Specifically, Defendants contend that there was no threat of suit simply because it sent the March 23 letter intending to initiate negotiations to license the '743 patent. In response, Plaintiff contends that the March 23 letter contained threatening language which was sufficient to create reasonable apprehension of suit.

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction." 28 U.S.C. § 2201(a); *EMC Corp. v. Norand Corp.,* 89 F.3d 807, 801 (Fed.Cir.2004). An actual controversy exists when there are both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Gen-Probe, Inc. v. Vysis, Inc.,* 359 F.3d 1376, 1380 (Fed.Cir.2004) (quoting *BP Chems. Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978 (Fed.Cir.1993)). When the patentee's conduct falls short of an explicit threat, a court must look to the "totality of the circumstances" to determine whether the patentee's conduct gives rise to reasonable apprehension under the first prong of the test. *Arrowhead Indus. Water, Inc. v. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988) (quoting *Goodyear Tire & Rubber Co. v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 267

Slip Copy                                                                                    Page 3

Slip Copy, 2006 WL 3355185 (D.Del.)
**(Cite as: Slip Copy)**

*Releasomers,    Inc.,    824    F.2d    953,    955*
(Fed.Cir.1987)).

*3 The parties do not dispute that Plaintiff was
engaging in activity or intended to engage in
activity that could constitute infringement. Thus, the
Court will focus its inquiry on whether Plaintiff had
reasonable apprehension of imminent suit by
Defendants.

The Court concludes that it is a reasonable reading
of the March 23 letter to find that the paragraph in
which Defendants state "we intend to add additional
parties" to litigation pending in Texas involving the
'743 patent constitutes an explicit threat of
litigation. Further, considering the totality of the
circumstances, the Court concludes that Plaintiff
Epic has demonstrated reasonable apprehension of
suit sufficient to establish an "actual controversy."
Here, the March 23 letter was more than an offer to
open licensing negotiations or a mere assertion of
Defendants' bargaining position. The March 23
letter informed Plaintiff that Defendants intended to
add parties to pending lawsuits in Texas against
several companies for infringement of the '743
patent. Also in the March 23 letter, Defendants
proposed royalty rates for a license which "will
increase over time and as our litigation progresses."
Although courts have held that an offer of a license
is insufficient to create reasonable apprehension, "
when the patentee takes steps that create a
reasonable apprehension that he will seek redress
through the courts, the alleged infringer ... can take
the initiative and seek declaratory relief." *EMC
Corp.,* 89 F.3d at 811. The Court concludes
Plaintiff could reasonably conclude from the March
23 letter that Defendants were ready and willing to
bring an infringement suit directly against Plaintiff
or add Plaintiff to the pending litigation in Texas.
Thus, the Court concludes Plaintiff has established
that an "actual controversy" exists.

### B. *Whether The Court Should Exercise Jurisdiction Under The Declaratory Judgment Act*

Having determined that the Court has subject matter
jurisdiction under the Declaratory Judgment Act,
the Court must determine whether it is appropriate

to exercise that jurisdiction. While the Act grants
the Court jurisdiction, the Act allows district courts
to decline jurisdiction. In exercising this discretion,
courts must be mindful that the purpose of the Act
is to allow alleged infringers relief from uncertainty
and delay.

Defendants contend that the Court should decline its
jurisdiction to avoid hindering future licensing
negotiations. In response, Plaintiff contends that
Defendants have not offered a sound reason for the
Court not to exercise jurisdiction. Plaintiff also
argues that the Act was intended to alleviate the
type of insecurity created by Defendant Acacia's
March 23 letter.

In the circumstances here, the Court concludes that
exercising jurisdiction is appropriate. The Court
agrees with Plaintiff that Defendants have not
provided sufficient reasons to support the Court
declining jurisdiction. Accordingly, the Court will
deny Defendants' Motion To Dismiss to the extent it
requests dismissal of Plaintiff's Complaint in its
entirety (D.I.7).

### C. *Whether Acacia Should Be Dismissed From The Lawsuit.*

*4 Defendants contend that if jurisdiction is
exercised, only RSC should be a Defendant and
Acacia should be dismissed because Acacia had no
standing to sue Plaintiff for patent infringement, and
thus, Plaintiff could have no reasonable
apprehension of a lawsuit with Acacia. In response,
Plaintiff contends that Acacia should be a party to
this lawsuit because Acacia has a legal interest in
the '743 patent. Specifically, Plaintiff contends that
statements in the March 23 letter such as "we intend
to add additional parties," and "Acacia, through its
subsidiaries, licenses and enforces patents," create a
legal interest and infer that Acacia will bring the
suit against Plaintiff or be involved in the litigation
once it commenced.

The applicable federal law provides that only a
patentee, assignee, or exclusive licensee has
standing to bring a patent suit. *Rite-Hite Corp. v.
Kelly Co.,* 56 F.3d 1538, 1551-52 (Fed.Cir.1995).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 268

Slip Copy                                                                              Page 4

Slip Copy, 2006 WL 3355185 (D.Del.)
**(Cite as: Slip Copy)**

To the Court's knowledge, Acacia does not fall within any of these categories, and therefore, the Court concludes Acacia does not have standing to sue for infringement of the '743 patent. Accordingly, the Court will grant Defendant's Motion To Dismiss to the extent it requests dismissal of claims against Defendant Acacia (D.I.7).

## V. CONCLUSION

In sum, the Court will deny Defendants' Motion to the extent it requests dismissal of Plaintiff's Complaint in its entirety; however, the Court will grant the Motion to the extent it requests dismissal of claims against Defendant Acacia Research Corporation.

An appropriate Order will be entered.

## ORDER

At Wilmington, this *17* day of November, 2006, for the reasons set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that:

1) Defendants' Motion To Dismiss And In The Alternative Motion To Transfer Venue (D.I.7) is *DENIED in part* and *GRANTED in part.*

2) Remaining parties, within twenty (20) days of the date of this Order, shall submit a Joint Proposed Scheduling Order for the Court's consideration. If the parties are unable to reach an agreement, they shall outline their disputes in the Joint Proposed Scheduling Order.

D.Del.,2006.
Epic Systems Corp. v. Acacia Research Corp.
Slip Copy, 2006 WL 3355185 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1814093 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Brief in Support of Defendants' Motion to Dismiss and in the Alternative Motion to Transfer Venue (May 31, 2006) Original Image of this Document (PDF)
• 2006 WL 1814092 (Trial Motion, Memorandum and Affidavit) Plaintiff's Answering Brief in Opposition to Defendants' Motion to Dismiss and in the Alternative Motion to Transfer Venue (May 23, 2006) Original Image of this Document (PDF)
• 2006 WL 1814091 (Trial Motion, Memorandum and Affidavit) Defendants' Opening Brief in Support of Defendants' Motion to Dismiss and in the Alternative Motion to Transfer Venue (May 9, 2006) Original Image of this Document (PDF)
• 2006 WL 1205318 (Trial Pleading) Complaint (Apr. 19, 2006) Original Image of this Document (PDF)
• 1:06cv00255 (Docket) (Apr. 19, 2006)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

USCA5 269

USCA5 270

LEXSEE 2003 US DIST LEXIS 12611

IVOCLAR VIVADENT, INC., Plaintiff, -vs- DR. ROBERT W. HASEL and ABCO
RESEARCH, LLC., Defendants.

02-CV-0316E(F)

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF
NEW YORK

*2003 U.S. Dist. LEXIS 12611*

June 30, 2003, Decided

**DISPOSITION:** [*1] Defendants' motion to dismiss denied in its entirety. Defendants' motion to transfer venue granted.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff corporation sought a declaratory judgment pursuant to 28 U.S.C.S. § 2201(a) that certain patents owned by defendants, doctor and a limited liability company (LLC), were invalid and unenforceable. The doctor and the LLC moved to dismiss the complaint on the grounds that the court lacked personal and subject matter jurisdiction. In the alternative, the doctor and the LLC requested a transfer of the action under 28 U.S.C.S. § 1404(a).

**OVERVIEW:** The doctor was the inventor of patents for methods of restoring a tooth and the co-owner of the LLC, a Minnesota company whose function was to manage the prosecution and licensure of the patents. The corporation was a manufacturer of dental materials with its principal place of business in New York. The LLC sent two letters to the corporation indicating that several of its dental products infringed one or more of the LLC's patents. The corporation sought a declaratory judgment of non-infringement. The court found that the doctor and the LLC's activities in not only protecting but soliciting licensing fees in New York, when combined with their two "cease and desist" letters, evinced the requisite systemic and continuous activity to satisfy New York's "doing business" test. The LLC's communication of implicit threats of litigation to the corporation created a situation whereby it was reasonable for the corporation to apprehend the imminent commencement of a patent

infringement action. Thus, the prerequisite under the Declaratory Judgment Act, 28 U.S.C.S. § 2201(a), that an actual controversy must have existed at the time the complaint was filed, was satisfied.

**OUTCOME:** The doctor and the LLC's motion to dismiss was denied in its entirety. The doctor and the LLC's motion to transfer venue was granted and the clerk of court was directed to transfer the case to the United States District Court for the District of Minnesota.

**CORE TERMS:** patent, patent infringement, personal jurisdiction, license, motion to dismiss, negotiation, settlement, actual controversy, manufacturer, apprehension, infringement, infringe, infringer, licensing, composite, flowable, lawsuit, subject matter jurisdiction, enforcing, exercise jurisdiction, doing business, imminent, ongoing, dental, apprehend, wit, licensing agreement, patent license, enclosed, permanence

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN1] In opposition to a defendant's motion to dismiss for lack of personal jurisdiction, a plaintiff need make only a prima facie showing of personal jurisdiction in accordance with state law. In determining the disposition of a Fed. R. Civ. P. 12(b)(2) motion, the court may consider facts as presented in evidentiary material outside

USCA5 271

the pleadings. Such material is construed in the light most favorable to, and any doubts are resolved in favor of, the plaintiff.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*
*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > In Personam Actions > General Overview*
[HN2] N.Y. C.P.L.R. § 301 provides for jurisdiction over a foreign corporation if it does business in New York, not occasionally or casually, but regularly, continuously, and systematically thereby demonstrating a sufficiently fair measure of permanence to warrant a finding of the corporation's constructive presence here. That so-called "doing business" test requires a court to analyze the specific facts of each individual case to determine whether a foreign corporation's contacts and connections with New York demonstrate continuous and systematic activity. Finally, unlike New York's long-arm statute, a jurisdictional inquiry under N.Y. C.P.L.R. § 301 does not require that the plaintiff's cause of action emanate from or have any nexus to the defendant's business activity.

*Civil Procedure > Justiciability > Case or Controversy Requirements > Actual Disputes*
*Patent Law > Inequitable Conduct > Burdens of Proof*
*Patent Law > Infringement Actions > Burdens of Proof*
[HN3] Section 2201(a) (28 U.S.C.S. § 2201(a)) of the Declaratory Judgment Act authorizes a court to declare the rights of an interested party in a case of actual controversy. The purpose of the Act is to protect threatened parties from the uncertainty and anxiety resulting from a looming lawsuit. However, a prerequisite to any claim brought pursuant to 28 U.S.C.S. § 2201(a) is that an actual controversy must have existed at the time the complaint was filed. And in a patent case, a plaintiff must demonstrate: (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit; and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. The plaintiff bears the burden of proving that there is an actual controversy. Nonetheless, even if the plaintiff shows that an actual controversy existed, the exercise of jurisdiction over that cause of action is not mandatory but within the sound discretion of the court.

*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > General Overview*

*Patent Law > Infringement Actions > General Overview*
*Patent Law > Remedies > Declaratory Relief*
[HN4] In the context of a patent claim under the Declaratory Judgment Act, 28 U.S.C.S. § 2201, the test for determining whether a plaintiff's apprehension was reasonable is an objective one which focuses on whether the defendant's conduct rose to a level sufficient to indicate an intent to enforce its patent. In determining whether the plaintiff has demonstrated the requisite reasonable apprehension, the court must objectively consider the totality of the circumstances.

*Civil Procedure > Justiciability > Case or Controversy Requirements > Actual Disputes*
*Civil Procedure > Venue > General Overview*
*Civil Procedure > Declaratory Judgment Actions > Federal Judgments > Discretion*
[HN5] In the context of the Declaratory Judgment Act, 28 U.S.C.S. § 2201(a), even if there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction.

**COUNSEL:** For Ivoclar Vivadent, Inc, PLAINTIFF: Paul V Nunes, Esq, Underberg & Kessler, Rochester, NY USA.

For Ivoclar Vivadent, Inc, PLAINTIFF: William L Prickett, Esq, Kimberly C Nuzum, Esq, Michael H Brodowski, Esq, Testa, Hurwitz & Thibeault, LLP, Boston, MA USA.

For Robert W Hasel, Abco Research, LLC, DEFENDANTS: Jeremiah J McCarthy, Phillips Lytle Hitchcock Blaine & Huber, Buffalo, NY USA.

**JUDGES:** JOHN T. ELFVIN, S.U.S.D.J.

**OPINION BY:** JOHN T. ELFVIN

**OPINION:**

MEMORANDUM and ORDER n1

n1 This decision may be cited in whole or in any part.

Plaintiff Ivoclar Vivadent, Inc. ("Ivoclar") commenced this action April 26, 2002, pursuant to *28 U.S.C. § 2201(a)*, seeking a declaration that certain patents owned by defendants Dr. Robert W. Hasel and ABCO Research, LLC ("ABCO") are invalid and unenforceable.

USCA5 273

Defendants now move to dismiss the Complaint pursuant to *Rules 12(b)(2) and 12(b)(6)* of the Federal Rules [*2] of Civil Procedure ("FRCvP") n2 on the grounds that this Court lacks personal and subject matter jurisdiction. In the alternative, defendants request that this Court exercise its discretion pursuant to *28 U.S.C. § 1404(a)* and transfer this action to the United States District Court for the District of Minnesota. For the reasons stated hereinbelow, defendants' motion to dismiss will be denied and its request to transfer venue will be granted.

> n2 Although defendants have erroneously cited *FRCvP 12(b)(6)* as the basis for its motion to dismiss for lack of subject matter jurisdiction, the Court will treat such as a motion to dismiss pursuant to *FRCvP 12(b)(1)*.

The following facts are undisputed unless otherwise noted. Hasel, a resident of the State of Minnesota, is the inventor of *U.S. Patent Nos. 5,547,379* ("the *'379 patent*") 5,944,527 ("the '527 patent") and 6,315,567 ("the '567 patent") -- each entitled "Method of Restoring a Tooth." Hasel and Andrew Grossman are co-owners of ABCO, a Minnesota [*3] corporation whose function is to manage the prosecution and licensure of Hasel's patents. Hasel Decl. P5. Hasel assigned the rights to the three patents to ABCO. Ivoclar is a manufacturer of dental materials with its principal place of business in the Town of Amherst, N.Y.

On January 26, 2000 Grossman sent a letter to Robert A. Ganley, Ivoclar's Chairman of the Board, indicating that several of its marketed dental products infringed one or more of ABCO's patents and concluded with an offer for a license. n3 Hasel Decl. ABCO's counsel sent another letter to Ivoclar on December 4, 2001. The letter reads, in pertinent part:

> "For nearly two years, ABCO and Dr. Hasel pursued patent infringement litigation against Kerr Corporation concerning Kerr's sales of its flowable composite, Revolution(R). Last June, on the eve of trial, after completing all fact and expert discovery, dispositive motions and final pretrial procedures, Kerr agreed to settle the litigation on terms favorable to ABCO. Enclosed is a copy of the Consent Judgment entered by the Court in which Kerr stipulated that the *'379* and *'537* Patents are valid and enforceable and that Kerr's sales of its Revolution(R) product [*4] and their use constitute infringement

of the '527 Patent. As part of the settlement and to allow it to continue to sell its Revolution(R) products, Kerr also agreed to an ongoing license and royalty arrangement with ABCO.

> \*\*\*\*\*

> "Now that the litigation against Kerr has concluded and ABCO's patent portfolio has been strengthened by the issuance of the '567 Patent, ABCO will be enforcing these patents against other infringers.

> "Please be advised that ABCO believes that Vivadent/Ivoclar's sales of flowable composite products may infringe one or more claims of the *'379 Patent*, the '527 Patent, and/or '567 Patent." Compl., Ex. A.

Based on these two letters, plaintiff filed its Complaint seeking a declaratory judgment of non-infringement. In moving to dismiss pursuant to *FRCvP 12(b)(2)*, defendants initially argued that the sending of those two letters was insufficient to subject them to the personal jurisdiction of this Court. In response, plaintiff has offered evidence of defendants' other activities in New York.

> n3 The pertinent text of the letter reads as follows:

> > "This letter is to advise you, and to provide notice to you under *35 U.S.C. § 287*, that Vivadent/Ivoclar North America, Inc.'s Tetric Flow, Heliomolar Flow and Compoglass Flow products and possibly other restorative products infringe one or more claims of *U.S. Patent Nos. 5,547,379* and 5,944,527. A copy of each patent is enclosed.

> > "ABCO Research, LLC would be pleased to provide Vivadent/Ivoclar North America, Inc. with a nonexclusive license under the patents (enclosed)." Hasel Decl., Annex.

[*5]

ABCO sent seven letters to Harry Schein, Inc. ("Schein") -- one of Ivoclar's distributors whose headquarters are located in Melville, N.Y. -- between June 20, 2001 and November 16, 2001, regarding Schein's alleged infringement of ABCO's patents and a possible licensing agreement. The first such letter, dated June 20, 2001, contained virtually identical warnings and allegations as the subsequent December 4, 2001 letter sent to Ivoclar and also specified various products, including two of Ivoclar's -- *viz.*, the Heliomolar(R) Flow and the Tetric(R) Flow --, that ABCO believed "may infringe one or more of the claims of the '527 Patent, and, depending on their chemical makeup, perhaps the *'379 Patent* as well." Decl. of Alan S. Korman, Esq., Ex. B. Plaintiff also asserts that defendants met with Schein, on or about July 23, 2001, at Schein's offices in Melville to discuss ABCO's claims of infringement and a possible licensing agreement. n4 Korman Decl. P12. At the meeting, ABCO allegedly "informed Schein that [it] planned to file a patent infringement lawsuit against dental manufacturers, including Ivoclar." *Id.* P16. Ivoclar subsequently sent Schein a November 2, 2001 letter by [*6] which it indicated that ABCO had "elected to proceed to actively enforce their patents directly against manufacturers of flowable composites other than Kerr, including manufacturers who sell their flowable composites through Harry Schein." n5 *Id.*, Ex. G.

> n4 Plaintiff alleges that defendants also met with Pentron Corporation -- another dental manufacturer that had been accused of patent infringement by defendants -- on January 25, 2002 in New York City, to discuss the terms of a possible license agreement between the two parties. Korman Decl. P18.

> n5 Plaintiff claims that defendants filed separate lawsuits, on or about November 2, 2001, against two such manufacturers -- to wit, Danville Manufacturing, Inc. and Pulpdent Corporation -- in the United States District Court for the District of Minnesota. Korman Decl. P17.

Korman also alleges that ABCO's counsel called him several times between February and March of 2002 and offered to meet with him in New York City, or elsewhere, to discuss settlement of defendants' [*7] infringement claims against Ivoclar. The parties agreed to meet, in Chicago, Ill. on April 29, 2002. Ivoclar then commenced this action by filing its complaint with this Court on April 26, 2002. Three days later, on April 29, 2002, Korman met with Grossman and ABCO's attorney, Harry Manbeck, Jr., Esq., in Chicago to discuss settle-

ment of the patent infringement claims. The tone and content of that meeting has been vigorously debated by its participants. Manbeck and Grossman describe the meeting as "cordial" during which Korman had indicated his belief that Ivoclar's products did not infringe ABCO's patents and that such patents may be invalid. When asked to provide information supporting his position, Korman indicated to them that he would have to speak with his associates and get back to them. Manbeck and Grossman also assert that Korman told them that he had filed the April 26, 2002 Complaint but that "he would hold off on serving [it] pending further discussions with us." Grossman Decl. P3; *see also* Manbeck Decl. P8 ("During the meeting, Mr. Korman mentioned that he had filed the complaint in this action the previous Friday, April 26. However, he also said that he would hold [*8] off on serving the complaint pending further discussions with us."). Both Grossman and Manbeck assert that they were both led to believe that further discussions with Korman would follow, pending Korman's attempts to obtain the relevant information. Manbeck then spoke with Korman on June 13, 2002 during which conversation Korman told Manbeck that his European associates were finalizing their position and had been providing him with information for his review and that he would call Manbeck the following Monday, June 17. Manbeck asserts that Korman did not call on June 17 and that he has had no further contact with Korman since that time. Grossman also claims that he had no further contact with Korman after the April 29, 2002 meeting. Plaintiff served defendants with its Complaint on August 14, 2002.

Korman's version of events regarding the April 29, 2002 meeting is much different from that of defendants. Korman disputes defendants' contention that the meeting "was part of ongoing settlement discussions which provided a reasonable probability of producing a nonjudicial resolution of [the] dispute." Korman Sur-Reply Decl. P2. Korman alleges that, by April 26, 2002, prospects for settlement [*9] "were very slim" and that, although there had been no apparent change in either party's position before the April 29, 2002 meeting, he "planned to go ahead with the meeting so long as any hope remained ***." *Id.* P3. Korman further states that he "did not expect the discussions to result in a settlement and [he] did not provide either Mr. Manbeck or Mr. Grossman any basis from which a reasonable person could conclude that settlement was more than an improbable possibility" and that he "went ahead with the meeting with very low expectations for a settlement." *Ibid.* Thus, Korman concludes that Ivoclar "had a reasonable apprehension of being sued for patent infringement based on defendants' threats and their actual litigation against other companies." *Ibid.*

USCA5 275

2003 U.S. Dist. LEXIS 12611, *

Defendants' first argument in support of its motion to dismiss is that this Court lacks personal jurisdiction over them. They argue that both defendants are "located in Minnesota" and are "neither authorized nor licensed to do business in New York, nor do they have offices, employees, assets, or telephone listings in this state." Defendants further maintain that the two letters sent to plaintiff -- dated January 26, 2000 and [*10] December 4, 2001 -- are insufficient to subject them to this Court's personal jurisdiction.

Plaintiff points to the nature of defendants' business -- viz., licensing and enforcing patents -- and, for purposes of establishing personal jurisdiction under New York's Civil Practice Law and Rules ("CPLR") § 301, contends that they are "doing business" in New York. Additionally, plaintiff argues that defendants are subject to this Court's personal jurisdiction pursuant to CPLR § 302(a)(1) -- New York's long-arm statute -- because their New York activities qualify as a transaction of business as provided for by the statute.

[HN1] In opposition to defendants' motion to dismiss, plaintiff need make only a prima facie showing of personal jurisdiction in accordance with New York law. See Graphic Controls Corp. v. Utah Medical Products, Inc., 1997 U.S. Dist. LEXIS 7448, 1997 WL 276232, at *2 (W.D.N.Y. 1997) (applying New York law in determining whether the court had personal jurisdiction over the foreign defendant), aff'd, 149 F.3d 1382 (Fed. Cir. 1998); Capitol Records, Inc. v. Optical Recording Corp., 810 F. Supp. 1350, 1352 (S.D.N.Y 1992) (applying New York law and [*11] holding that the plaintiff needs only make a prima facie showing of personal jurisdiction in opposition to foreign defendant's FRCvP 12(b)(2) motion). In determining the disposition of a FRCvP 12(b)(2) motion, the court may consider facts as presented in evidentiary material outside the pleadings. Teachers' Retirement Sys. of LA v. A.C.L.N., Ltd., 2003 U.S. Dist. LEXIS 7869, 2003 WL 21058090, at *7 (S.D.N.Y. 2003). Such material is construed in the light most favorable to, and any doubts are resolved in favor of, the plaintiff. Ibid.; Graphic Controls, 1997 U.S. Dist. LEXIS 7448, [WL] at *2.

CPLR § 301 [HN2] provides for jurisdiction over a foreign corporation if it "does business in New York, not occasionally or casually, but regularly, continuously and systematically thereby demonstrating a sufficiently fair measure of permanence to warrant a finding of the corporation's constructive presence here." Graphic Controls, 1997 U.S. Dist. LEXIS 7448, [WL] at *2. This so-called "doing business" test requires a court to analyze the specific facts of each individual case to determine whether a foreign corporation's contacts and connections with New York demonstrate continuous and systematic activity. Ibid. (citing Landoil Resources Corp. v. Alexander &

Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990)). [*12] Finally, unlike New York's long-arm statute, a jurisdictional inquiry under CPLR § 301 does not require that the plaintiff's cause of action "emanate from or have any nexus to the defendant's business activity." Ibid.

Defendants' activities in New York are substantial and sufficiently continuous to support the exercise of personal jurisdiction over them under CPLR § 301. Initially, it is important to note that ABCO's sole function is to manage, enforce and license its patents and that it lacks the "traditional indicia of doing business because it does not manufacture or sell tangible goods." Capitol Records, at 1353. Accordingly, the frequency and nature of ABCO's New York business activities must be analyzed within such a context in determining whether such contacts demonstrate the requisite degree of permanence. See Capitol Records, at 1353 (noting that, for the purposes of establishing personal jurisdiction, a company's business activities conducted in New York must not be peripheral to its "main business" but must be a substantial part of that corporation's business). ABCO sent at least ten letters, between January 26, 2000 and December 4, 2001, to three different [*13] companies that related to its efforts to enforce and license its patents. n6 In addition, ABCO's counsel made numerous phone calls to plaintiff during which ABCO had offered to meet with Ivoclar in New York to negotiate a possible license, solicited licensing fees and reiterated its infringement claims. Korman Decl. P9. ABCO also traveled to New York twice to meet with Schein and Pentron Corp. to discuss possible licensing agreements. Defendants do not dispute that they engaged in such activities and, while the Court recognizes that, without more, the two letters that ABCO had sent to Ivoclar would be insufficient for this Court to exercise jurisdiction over defendants -- see Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1360-1361 (Fed. Cir. 1998) (finding that three cease-and-desist letters did not confer personal jurisdiction over a foreign defendant) -- , defendants' other activities in not only protecting its patents but soliciting licensing fees in New York, when combined with their two "cease and desist" letters, evince the requisite permanence -- i.e., systemic and continuous activity -- to satisfy New York's "doing business" test. Thus, [*14] although ABCO has no offices, employees, assets or telephone listings in New York, it is subject to the personal jurisdiction of this Court because it has extensively engaged in its primary business activity -- to wit, enforcing and licensing its patents -- in New York. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction will be denied. n7

USCA5 276

2003 U.S. Dist. LEXIS 12611, *

n6 Such letters comprised the two "cease and desist" letters to Ivoclar, a virtually identical one sent to Heraeus Kulzer, Inc. and the previously discussed seven letters that had been sent to Schein.

n7 The Court will decline to address whether ABCO is subject to personal jurisdiction under *CPLR § 302* inasmuch as the issue is moot.

The Court next addresses defendants' motion to dismiss based on its argument that there was no actual controversy at the time plaintiff filed its complaint and that this Court therefore lacks subject matter jurisdiction over this case.

*Section 2201(a) of the Declaratory Judgment Act* [HN3] authorizes a court to declare the [*15] rights of an interested party in a case of actual controversy. *28 U.S.C. § 2201.* The purpose of the Act "is to protect threatened parties from the uncertainty and anxiety resulting from a looming lawsuit." *Clay Paky, S.p.A. v. Vari-Lite, Inc.,* 2000 U.S. Dist. LEXIS 9802, 2000 WL 977709, at *3 (S.D.N.Y. 2000). However, a prerequisite to any claim brought pursuant to *section 2201(a)* is that an actual controversy must have existed at the time the complaint was filed. *Bausch & Lomb Inc. v CIBA Corp.,* 39 F. Supp. 2d 271, 273 (W.D.N.Y. 1999); see also *R & P Pools, Inc. v. New Kayak Pool Corp.,* 2001 U.S. Dist. LEXIS 1505, 2001 WL 135823, at *2 (W.D.N.Y. 2001) ("To proceed in the absence of a case or controversy would involve the court in rendering a forbidden advisory opinion.") (quotation and citation omitted). And, in a case such as this, plaintiff must demonstrate "'(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit, and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity. [*16] '" n8 *R & P Pools, 2001 U.S. Dist. LEXIS 1505, [WL] at *2* (quoting *B.P. Chemicals, Ltd. v. Union Carbide Corp.,* 4 F.3d 975, 978) (Fed. Cir. 1993). The plaintiff bears the burden of proving that there is an actual controversy. *Ibid.* Nonetheless, even if plaintiff shows that an actual controversy existed, the exercise of jurisdiction over this cause of action is not mandatory but within the "sound discretion of [this] court." *Ibid.*

n8 There is no issue for the Court regarding plaintiff's satisfaction of the second prong inasmuch as it is undisputed that plaintiff has sold a product that allegedly infringes defendants' patents.

Plaintiff contends that an actual controversy existed because it had a reasonable apprehension that ABCO would imminently file a patent infringement suit. [HN4] The test for determining whether plaintiff's apprehension was reasonable is an objective one "which focuses on whether the defendant's 'conduct rose to a level sufficient to indicate an intent to enforce its patent.'" *Clay Paky,* 2000 U.S. Dist. LEXIS 9802, [WL] at *4 [*17] (quoting *Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 888 (Fed. Cir. 1992)).* In determining whether plaintiff has demonstrated the requisite reasonable apprehension, the Court must objectively consider the totality of the circumstances. n9 *Ibid.*

n9 In deciding defendants' motion to dismiss for lack of subject matter jurisdiction, this Court may consider evidence outside the pleadings. *Indium Corp. of America v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).*

Plaintiff contends that the efforts put forth by ABCO in attempting to enforce and license its patents n10 created a situation where it was reasonable for Ivoclar to apprehend that ABCO was imminently close to filing a patent infringement action against it. Plaintiff places particular significance on the threatening language contained within ABCO's December 4, 2001 letter by which ABCO had (1) alleged that Ivoclar's products may have infringed its patents, (2) informed Ivoclar that it had obtained a Consent Judgment [*18] in its patent infringement action against Kerr corporation, (3) informed Ivoclar that it "will be enforcing [its] patents against other infringers" and (4) invited Ivoclar to negotiate a license. *See* Compl., Ex. A.

n10 Conduct which included the two letters sent to Ivoclar, the various phone conversations between counsel for Ivoclar and ABCO, the seven letters sent to Schein and the commencement of three separate lawsuits against other alleged infringers -- to wit, Kerr Corporation, Pulpdent Corporation and Danville Manufacturing, Inc.

Defendants counter that no actual controversy existed at the time plaintiff filed its Complaint because the parties were still conducting settlement negotiations with regard to the alleged patent infringement. In support, defendants direct the Court to the fact that Ivoclar had commenced this action on April 26, 2002 -- three days before the parties' April 29, 2002 settlement conference in Chicago -- and that Korman had subsequently agreed

at the conclusion of such meeting [*19] to refrain from serving the Complaint pending further discussions. Defendants argue that such facts refute plaintiff's contention that it reasonably believed that it was facing an imminent patent infringement lawsuit and, further, that to allow plaintiff to utilize its premature complaint as a negotiating tool during ongoing negotiations would defeat the purpose of the *Declaratory Judgment Act*.

Plaintiff has shown that it was objectively reasonable for it to apprehend that it was the target of an imminent patent infringement lawsuit by ABCO. Defendants' December 4, 2001 letter warned Ivoclar that (1) several of its marketed products "may infringe" ABCO patents, (2) ABCO had pursued patent infringement litigation for nearly two years against another alleged infringer, Kerr Corporation, resulting in a settlement with "terms favorable to ABCO" and (3) it "will be enforcing [its] patents against other infringers." Such warnings, in effect, were "a statement to the plaintiff to take notice that it is next on the list." *Clay Paky*, 2000 U.S. Dist. LEXIS 9802, [WL] at *4 (quotations and citations omitted). n11 In other words, it was reasonable for Ivoclar to interpret the letter as a threat from ABCO by which ABCO [*20] was saying to Ivoclar, "If you don't think we mean business and are serious about this matter, look and see what we have done to another alleged infringer." *Ibid.* (quotation and citation omitted). In addition to such implicit threats of litigation, defendants' other conduct -- to wit, commencing litigation against other alleged infringers and indicating to Schein that it had "elected to proceed to actively enforce their patents directly against manufacturers of flowable composites other than Kerr, including manufacturers who sell their flowable composites through Harry Schein" n12 -- contributed to an environment or, more appropriately, adverse circumstances whereby it would have been reasonable for Ivoclar to apprehend that ABCO was about to commence a patent infringement action against it.

n11 *See also Clay-Paky*, 2000 U.S. Dist. LEXIS 9802, [WL] at *4 (finding that a letter, similar to the one here that was sent by ABCO, -- by which the defendant had warned the declaratory plaintiff that (1) it had aggressively enforced its patent rights against a named third-party, (2) plaintiff's product "may infringe" the defendant's patent, (3) plaintiff should "cease and desist" from selling its product and (4) if plaintiff chose to continue selling its product to contact the defendant in order to discuss a license -- was one that "clearly threatened litigation").

[*21]

n12 Korman Decl., Ex. G.

Defendants argue however that the holding in *Phillips Plastics Corp. v. Kato Hatsujou Kabushiki Kaisha, 57 F.3d 1051 (Fed. Cir. 1995)*, lends support for its motion to dismiss. In *Phillips Plastics*, the Federal Circuit Court of Appeals held that the defendant's conduct in merely attempting to conduct license negotiations did not create a justiciable controversy. Significantly, the Court held that, "the offer of a patent license does not create an actual controversy" and that "when there are proposed or ongoing license negotiations, a litigation controversy normally does not arise until the negotiations have broken down." *Phillips Plastics, at 1053.* Seizing on such language, defendants argue that no justiciable controversy existed in this case because plaintiff filed its Complaint three days before a scheduled meeting where the parties were supposed to discuss a licensing agreement. Defendants' reliance on *Phillips Plastics* is misplaced because therein the patentee had merely invited license negotiations and had neither "stated nor suggested [*22] that it would pursue legal recourse if it were not satisfied with the outcome of the proposed licensing negotiations." *Clay-Paky*, 2000 U.S. Dist. LEXIS 9802, [WL] at *5; *see also Conmed Corp. v. ERBE Electromedizin GMBH, 129 F. Supp. 2d 461, 466 (N.D.N.Y. 2001)* (distinguishing *Phillips Plastics* based on the same premise); *EMC Corp. v. Norand Corp., 89 F.3d 807, 812 (Fed. Cir. 1996)* (distinguishing *Phillips Plastics* as a case where all that was present was "negotiation unaccompanied by threats of legal action"). Here, in contrast, ABCO communicated implicit threats of litigation, which created a situation whereby it was reasonable for Ivoclar to apprehend the imminent commencement of a patent infringement action. As explained by the *Clay Paky* court, defendants' oblique accusations of patent infringement and "thinly veiled threats of resorting to litigation" render the present case inapposite to that of *Phillips Plastics. Clay-Paky*, 2000 U.S. Dist. LEXIS 9802, [WL] at *5. Furthermore, the fact that the parties had entered into negotiations regarding a possible patent license does not necessarily mean that ABCO's reasonable apprehension of litigation had necessarily been removed. *See ibid.* ("Just [*23] because the parties proceeded to initiate negotiations does not mean that the reasonable apprehension of litigation was ever removed."). Thus, the fact that the parties may have been negotiating a patent license is not dispositive, but merely a factor that is, in this case, insufficient to overcome defendants' other threatening conduct that gave rise to Ivoclar's reasonable apprehension of an imminent patent infringement suit by ABCO.

Having found that the Court has both personal jurisdiction over the defendants and subject matter jurisdic-

tion over this case, the Court must finally determine whether to exercise jurisdiction in this case. *See EMC Corp., at 810* [HN5] ("Even if there is an actual controversy, the district court is not required to exercise declaratory judgment jurisdiction, but has discretion to decline that jurisdiction.") (citing *Public Serv. Comm'n v. Wycoff Co., 344 U.S. 237, 241, 97 L. Ed. 291, 73 S. Ct. 236 (1952)*). However, the issue has become moot and the Court will decline to exercise jurisdiction in this case because plaintiff has now joined in defendants' request to transfer venue, pursuant to *28 U.S.C. § 1404(a)*, from the Western District [*24] of New York to the District of Minnesota. n13 Therefore, rather than exercise jurisdiction in this matter, the Court will transfer this case to the District of Minnesota inasmuch as both parties have indicated that such Court is a mutually preferable and convenient forum.

n13 Plaintiff and defendants have submitted a Stipulation and Order dated June 27, 2003 by which they have agreed to transfer this action to the United States District Court for the District of Minnesota provided that this Court finds an actual case or controversy.

Accordingly, it is hereby ***ORDERED*** that defendants' motion to dismiss is denied in its entirety, that defendants' motion to transfer venue is granted and that the Clerk of this Court is directed to transfer this case to the United States District Court for the District of Minnesota.

DATED: June 30, 2003

　　JOHN T. ELFVIN

　　S.U.S.D.J.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

|  |  |  |
|---|---|---|
| ON SEMICONDUCTOR CORP. | : | |
| and | : | |
| SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, | : | |
|  | : | |
| Plaintiffs, | : | Civil Action No. 6:06-cv-523 (LED) |
| v. | : | JURY |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : | |
| Defendants. | : | |

## DEFENDANTS' NOTICE OF COLLATERAL PROCEEDINGS

In accordance with Local Rule CV-42(a), Defendants Samsung Electronics America, Inc., Samsung Telecommunications America General L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C. submit this Notice of Collateral Proceedings to advise the Court of developments in the first-filed action between the parties pending in the United States District Court for the District of Delaware, Civil Action No. 06-720 (the "Delaware Action").[1]

---

[1] Defendant Samsung Electronics Co., Ltd. ("SEC"), a Korean company with offices in Korea, has not been served with the Complaint in this action. If and when SEC is served by Plaintiffs

USCA5 280

As the Court is aware, the Delaware Action was originally assigned to Judge Kent A. Jordan, but was subsequently reassigned to Magistrate Judge Mary Pat Thynge for pretrial proceedings following Judge Jordan's elevation to the Third Circuit. Defendants have filed a motion with the Delaware court to enjoin Plaintiffs from pursuing this action in this Court, and Plaintiffs have filed motions to dismiss the Delaware Action for alleged lack of subject matter jurisdiction. Magistrate Judge Thynge does not appear to have the authority to decide these motions absent consent of the parties, and while Defendants consent to Magistrate Judge Thynge deciding these motions, Plaintiffs do not.

Defendants therefore filed a motion to reassign the Delaware Action to a District Judge in Delaware on February 16, 2007. (Ex. 1.) On February 20, 2007, Magistrate Judge Thynge issued an order scheduling a combined status and scheduling conference for March 14, 2007, at which time it is expected that Magistrate Judge Thynge will address the motion to reassign and discuss scheduling in the Delaware Action. (Ex. 2.)

via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, SEC will respond to the Complaint.

USCA5 281

Dated:  February 22, 2007                    Respectfully submitted,


                                             /s/ Allen F. Gardner
                                             Michael E. Jones
                                             State Bar No. 10929400
                                             mikejones@potterminton.com
                                             Allen F. Gardner
                                             State Bar No. 24043679
                                             allengardner@potterminton.com
                                             POTTER MINTON
                                             110 North College 500 Plaza Tower
                                             Tyler, Texas 75702
                                             (903) 597-8311 – Telephone
                                             (903) 593-0846 – Facsimile

                                             *Attorneys for Samsung Electronics America,*
                                             *Inc., Samsung Telecommunications America*
                                             *General, L.L.C., Samsung Semiconductor,*
                                             *Inc., and Samsung Austin Semiconductor*
                                             *L.L.C.*


OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

## CERTIFICATE OF SERVICE

    I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 22nd day of February, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by first class mail on this same date.


                                             /s/ Allen F. Gardner

3

USCA5 282

EXHIBIT 1

USCA5 283

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., <br> SAMSUNG ELECTRONICS AMERICA, INC., <br> SAMSUNG TELECOMMUNICATIONS <br>   AMERICA GENERAL, L.L.C., <br> SAMSUNG SEMICONDUCTOR, INC., and <br> SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., <br><br>             Plaintiffs, <br><br>          v. <br><br> ON SEMICONDUCTOR CORP. <br><br> and <br><br> SEMICONDUCTOR COMPONENTS <br> INDUSTRIES, LLC, <br><br>           Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> :    Civil Action No. 06-CV-0720 (***) <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## PLAINTIFFS' MOTION TO REASSIGN CASE

Plaintiffs Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc.

("SEA"), Samsung Telecommunications America General, L.L.C. ("STA"), Samsung

Semiconductor, Inc. ("SSI"), and Samsung Austin Semiconductor, L.L.C. ("SAS") (collectively,

"Plaintiffs"), hereby move to have this action reassigned to a District Judge of this Court. This

motion is necessitated by Defendants' refusal to consent to having Magistrate Judge Thynge —

to whom this action was assigned for pretrial proceedings following Judge Jordan's elevation to

the Third Circuit — decide the two pending motions to dismiss filed by Defendants (D.I. 14 and

25). Defendants are attempting to use that refusal to gain an unfair advantage over Plaintiffs in

USCA5 284

this Court and in the Eastern District of Texas where Defendants filed a duplicative action after this action was filed.

## I.    BACKGROUND

SEC filed its original declaratory-judgment Complaint in this action (the "Delaware Action") on November 30, 2006, seeking a declaration that three United States patents purportedly owned by Defendants are invalid and not infringed by SEC (D.I. 1).  This action was assigned to Judge Jordan on December 6, 2006, and was subsequently assigned to Magistrate Judge Thynge for pretrial proceedings following Judge Jordan's elevation to the Third Circuit.

On December 4, 2006, Defendants filed an infringement action against SEC in the United States District Court for the Eastern District of Texas, Case No. 6:06 cv 523 (the "Texas Action"), alleging infringement by SEC of the same three patents at issue in the Delaware Action, as well as a fourth patent.  Defendants also named four SEC affiliates as co-defendants in the Texas Action —SEA, STA, SSI, and SAS.

Plaintiffs filed an Amended Complaint in the Delaware Action on December 21, 2006, adding SEA, STA, SSI, and SAS as co-plaintiffs with SEC, adding claims for declaratory judgment of noninfringement and invalidity of the '827 patent, and adding a claim against Defendants for infringement of an SEC patent (D.I. 8).  Plaintiffs also filed on December 21, 2006 a motion to enjoin Defendants from pursuing the Texas Action (D.I. 10-12.)

On December 26, 2006, Plaintiffs SEA, STA, SSI, and SAS filed a motion to transfer the Texas Action to this Court pursuant to the Fifth Circuit's first-to-file rule.[1]  That motion is fully briefed and pending before the Texas court.

---

[1] SEC, a Korean company with offices in Korea, has not been served with the Complaint in the Texas Action, and therefore did not join in the motion to transfer.  If and when SEC is served by Defendants in the Texas Action via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, it will join in the motion to transfer.

065888.1001

USCA5 285

On December 27, 2006, Defendants filed a motion to dismiss the original Complaint, alleging that this Court does not have subject matter jurisdiction over this action because SEC did not have a reasonable apprehension of suit when it filed the original Complaint on November 30, 2006 (D.I. 14). On January 11, 2007, Defendants filed an opposition to Plaintiffs' motion to enjoin (D.I. 24), as well as a motion to dismiss the Amended Complaint (D.I. 25). The motions to dismiss and motion to enjoin are fully briefed.

On February 5, 2007, Plaintiffs notified Defendants that they consented to Magistrate Judge Thynge's jurisdiction over the pending motions to dismiss and motion to enjoin, and inquired whether Defendants also consented. (Ex. A.) Defendants responded on February 8, 2007, informing Plaintiffs that they did not consent to Magistrate Judge Thynge deciding the pending motions. (Ex. B.)

## II.    ARGUMENT

Defendants are unfairly citing Judge Jordan's elevation to the Third Circuit, and the fact that Magistrate Judge Thynge does not have the statutory authority to decide the pending motions to dismiss absent their consent — which they are withholding — as reason for both this Court and the Texas court to depart from the first-filed rule. For example, Defendants made the following argument to the Texas court in opposing Plaintiffs' motion to transfer the Texas Action to this Court:

> Transferring this action to Delaware would deny ON Semiconductor timely
> adjudication of its patent rights . . . and relegates ON Semiconductor to waiting
> for nomination and confirmation of a judge before its motion to dismiss SEC's
> improperly filed declaratory judgment action can be decided or the action can be
> fully prosecuted.

(Ex. C, at 16.)

While there is no reason to believe at this juncture that a replacement for Judge Jordan will not be promptly named or that the resolution of this action will be delayed at all, Defendants

3

USCA5 286

should not be permitted to gain an unfair advantage by manufacturing the potential for delay

through the filing of dispositive motions coupled with a refusal to consent to Magistrate Judge

Thynge's jurisdiction. Moreover, SEC should not be deprived of its choice of forum because

Judge Jordan was elevated to the Third Circuit. SEC obviously had no control over which Judge

was originally assigned to this case, or over the timing of Judge Jordan's elevation.

     This action is the first-filed action, and this Court, not the second-filed Texas court,

should decide where this case should proceed. *See, e.g., Cadle Co. v. Whataburger of Alice, Inc.*,

174 F.3d 599, 606 (5th Cir. 1999) (under the "first-to-file" rule, the court in which an action is

first filed is the appropriate court to determine whether subsequently filed cases involving

substantially similar issues should proceed). Thus, to ensure that this Court decides where the

parties' dispute should be resolved, Plaintiffs respectfully request reassignment of this case to a

District Judge of this Court.

     WHEREFORE, Plaintiffs respectfully request that the Court enter an order (i) reassigning

this case to District Judge of this Court; and (ii) granting such further relief as the Court deems

just and proper.

                         Respectfully submitted,

Dated: February 17, 2007           /s/ *Andrew A. Lundgren*
                            Josy W. Ingersoll (No. 1088)
                            John W. Shaw (No. 3362)
                            Andrew A. Lundgren (No. 4429)
                            **YOUNG CONAWAY STARGATT**
                            **& TAYLOR LLP**
                            The Brandywine Building
                            1000 West Street
                            P.O. Box 391
                            Wilmington, Delaware 19899-0391
                            (302) 571-6600
                            *alundgren@ycst.com*

4

USCA5 287

OF COUNSEL:

John M. Desmarais
James E. Marina
**KIRKLAND & ELLIS LLP**
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

*Attorneys for Plaintiffs Samsung Electronics
Co., Ltd., Samsung Electronics America, Inc.,
Samsung Telecommunications America
General, L.L.C., Samsung Semiconductor,
Inc., and Samsung Austin Semiconductor,
L.L.C.*

5

065888.1001

USCA5 288

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on February 17, 2007, I

caused to be electronically filed a true and correct copy of the foregoing document with the Clerk

of the Court using CM/ECF, which will send notification that such filing is available for viewing

and downloading to the following counsel of record:

> Karen Jacobs Louden, Esquire
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on February 17, 2007, I caused a copy of the foregoing

document to be served by **hand delivery** on the above-listed counsel of record and on the

following non-registered participants in the manner indicated:

### BY E-MAIL

> Kenneth R. Adamo, Esquire
> Jones Day
> 2727 North Harwood Street
> Dallas, TX 75201
>
> T. Gregory Lanier, Esquire
> Behrooz Shariati, Esquire
> Jones Day
> 2882 Sand Hill Road, Suite 240
> Menlo Park, CA 94025

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/S/ ANDREW A. LUNDGREN
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street
Wilmington, DE 19801
302-571-6600
alundgren@ycst.com

# EXHIBIT A

USCA5 290

# YOUNG CONAWAY STARGATT & TAYLOR, LLP

BEN T. CASTLE
SHELDON N. SANDLER
RICHARD A. LEVINE
RICHARD A. ZAPPA
FREDERICK N. IOBST
RICHARD H. MORSE
DAVID C. MCBRIDE
JOSEPH M. NICHOLSON
CRAIG A. KARSNITZ
BARRY M. WILLOUGHBY
JOSY W. INGERSOLL
ANTHONY G. FLYNN
JEROME K. GROSSMAN
EUGENE A. DIPRINZIO
JAMES L. PATTON, JR.
ROBERT L. THOMAS
WILLIAM D. JOHNSTON
TIMOTHY J. SNYDER
BRUCE L. SILVERSTEIN
WILLIAM W. BOWSER
LARRY J. TARABICOS
RICHARD A. DILIBERTO, JR.
MELANIE K. SHARP
CASSANDRA F. ROBERTS
RICHARD J.A. POPPER
TERESA A. CHEEK
NEILLI MULLEN WALSH

JANET Z. CHARLTON
ROBERT S. BRADY
JOEL A. WAITE
BRENT C. SHAFFER
DANIEL P. JOHNSON
CRAIG D. GREAR
TIMOTHY JAY HOUSEAL
MARTIN S. LESSNER
PAULINE K. MORGAN
C. BARR FLINN
NATALIE WOLF
LISA B. GOODMAN
JOHN W. SHAW
JAMES P. HUGHES, JR.
EDWIN J. HARRON
MICHAEL R. NESTOR
MAUREEN D. LUKE
ROLIN P. BISSELL
SCOTT A. HOLT
JOHN T. DORSEY
M. BLAKE CLEARY
CHRISTIAN DOUGLAS WRIGHT
DANIELLE GIBBS
JOHN J. PASCHETTO
NORMAN M. POWELL
ELENA C. NORMAN

JOSEPH M. BARRY
SEAN M. BEACH
SANJAY BHATNAGAR
DONALD J. BOWMAN, JR.
TIMOTHY P. CAIRNS
JEFFREY T. CASTELLANO
KARA HAMMOND COYLE
KRISTEN SALVATORE DEPALMA
MARGARET M. DIBIANCA
MARY F. DUGAN
ERIN EDWARDS
KENNETH J. ENOS
IAN S. FREDERICKS
JAMES J. GALLAGHER
SEAN T. GREECHER
STEPHANIE L. HANSEN
DAWN M. JONES
KAREN E. KELLER
JENNIFER M. KINKUS
EDWARD J. KOSMOWSKI
JOHN C. KUFFEL
KAREN LANTZ
TIMOTHY E. LENGKEEK

ANDREW A. LUNDGREN
MATTHEW B. LUNN
JOSEPH A. MALFITANO
ADRIA B. MARTINELLI
MICHAEL W. MCDERMOTT
MARIBETH L. MINELLA
EDMON L. MORTON
D. FON MUTTAMARA-WALKER
JENNIFER R. NOEL
ADAM W. POFF
SETH J. REIDENBERG
SARA BETH A. REYBURN
CHERYL A. SANTANIELLO
      (NJ & PA ONLY)
MICHELE SHERRETTA
MONTE T. SQUIRE
MICHAEL P. STAFFORD
CHAD S.C. STOVER
JOHN E. TRACEY
TRAVIS N. TURNER
MARGARET B. WHITEMAN
SHARON M. ZIEG

SPECIAL COUNSEL
JOHN D. MCLAUGHLIN, JR.
KAREN L. PASCALE
PATRICIA A. WIDDOSS

SENIOR COUNSEL
CURTIS J. CROWTHER

OF COUNSEL
BRUCE M. STARGATT
STUART B. YOUNG
EDWARD B. MAXWELL, 2ND

THE BRANDYWINE BUILDING
1000 WEST STREET, 17TH FLOOR
WILMINGTON, DELAWARE 19801

P.O. BOX 391
WILMINGTON, DELAWARE 19899-0391

(302) 571-6600
(800) 253-2234 (DE ONLY)
FAX: (302) 571-1253

110 WEST PINE STREET
P.O. BOX 594
GEORGETOWN, DELAWARE 19947
(302) 856-3571
(800) 255-2234 (DE ONLY)
FAX: (302) 856-9338

WWW.YOUNGCONAWAY.COM

DIRECT DIAL: 302-571-6743
DIRECT FAX: 302-571-3511
alundgren@ycst.com

February 5, 2007

Karen Jacobs Louden
Morris Nichols Arsht & Tunnell LLP
1201 N. Market Street
Wilmington, DE 19801

        Re:  *Samsung Electronics Co. Ltd. v. ON Semiconductor Corp.*, C.A. No. 06-720

Dear Karen:

        Please let us know whether Defendants object to Magistrate Judge Thynge deciding Plaintiffs' pending motion to enjoin (D.I. 10) and Defendants' two pending motions to dismiss (D.I. 14 and 25). Plaintiffs have no objection to Magistrate Judge Thynge deciding these motions.

        Very truly yours,

Andrew A. Lundgren

AAL:cac

cc:   James Marina, Esquire

065888.1001

USCA5 291

# EXHIBIT B

USCA5 292

# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

302 658 9200
302 658 3989 Fax

Karen Jacobs Louden
302 351 9227
302 425 4681 Fax
klouden@mnat.com

February 8, 2007

**By Hand**

Andrew A. Lundgren, Esq.
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

Re:  *Samsung Electronics Co. v. ON Semiconductor Corp.*, C.A. No. 06-720

Dear Andrew:

I write in response to your February 5, 2007 letter, in which you ask whether defendants ("ON Semiconductor") object to Magistrate Judge Thynge deciding Plaintiff's pending motion to enjoin (D.I. 10) and ON Semiconductor's two pending motions to dismiss (D.I. 14 and 25). ON Semiconductor does not consent to the Magistrate Judge deciding those motions, which implicate important substantive rights. Defendants' motions to dismiss are case dispositive and plaintiff's motion seeks injunctive relief. By statute, such matters are to be decided by an Article III Judge. *See* 28 U.S.C. § 636(b). ON Semiconductor is not willing to waive its statutory right. In any event, we do not see how having Judge Thynge decide these motions would be likely to expedite matters given what we understand about her caseload.

Sincerely,

Karen

Karen Jacobs Louden

730454.2

FEB 0 1 2007

# EXHIBIT C

USCA5 294

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORPORATION, | ) ) ) | |
| and | ) ) | Civil Action No. 6:06-CV-523 |
| SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C. | ) ) ) | Judge Leonard Davis |
| Plaintiffs, | ) ) ) | **ON SEMICONDUCTOR'S OPPOSITION TO SAMSUNG'S** |
| v. | ) ) | **MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO THE FIRST-TO-FILE RULE** |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR, L.L.C., | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

FILED UNDER SEAL

Kenneth R. Adamo
Hilda C. Galvan
JONES DAY
2727 North Harwood Street
Dallas, TX 75201-1515
(214) 220-3939

Tharan Gregory Lanier
Behrooz Shariati
JONES DAY
2882 Sand Hill Road, Suite 240
Menlo Park, CA 94025
(650) 739-3939

Dated: January 8, 2007

Michael C. Smith
THE ROTH LAW FIRM
115 N. Wellington, Suite 200
Marshall, TX 75670
(903) 935-1665

*Attorneys for ON Semiconductor Corp. and Semiconductor Components Industries, L.L.C.*

MPI-42628v1

declaratory judgment action and wise judicial administration instructs that such an abuse of the judicial system should not be rewarded.

### 3. Granting This Motion May Deny ON Semiconductor The Prompt Legal Resolution Of Its Patent Rights To Which It Is Entitled

By Standing Order, the Delaware action as been "reassigned to [a] vacant judicial position" since December 15, 2006. (Lanier Dec., Ex. 4.)  ON Semiconductor filed a motion to dismiss the Delaware action for lack of subject matter jurisdiction on December 27, 2006, and has received no indication of when the motion will come before a judge with authority to decide it. (Lanier Dec., Ex. 1.)  Transferring this action to Delaware would deny ON Semiconductor timely adjudication of its patent rights, including rights to the '827 patent, and relegates ON Semiconductor to waiting for nomination and confirmation of a judge before its motion to dismiss SEC's improperly filed declaratory judgment action can be decided or the action can be fully prosecuted.  This result would be at odds with the very purpose of the Declaratory Judgment Act, under which SEC brought the Delaware Action, which is to permit a party to initiate legal action where the interests of another party to a dispute "may be served by delay in taking legal action." *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F.3d 975, 977 (Fed. Cir. 1993). As such, sound judicial administration calls for this motion to be denied so the Declaratory Judgment Act itself cannot be used to delay these proceedings.

This current motion is different from other motions to transfer patent actions under the first-filed rule, where courts "assume, of course, that there will be prompt action in the [transferee] theatre." *Kerotest*, 342 U.S. at 183.  Indeed, this Court has transferred actions under the first-filed rule to jurisdictions where judges were actively addressing the matters.  *See National Instruments Corp. v. SoftWire Tech., LLC*, No. 2:03-CV-047, 2003 U.S. Dist. LEXIS 26952, ** 4-5 (E.D. Tex. May 9, 2003) (Ward, J.) (transferring to a district in which the Eastern

USCA5 296

EXHIBIT 2

USCA5 297

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD.,     :
et a.,                             :
                                   :
                    Plaintiffs,    :
                                   :
        v.                         :     C. A. No. 06-720-***
                                   :
ON SEMICONDUCTOR CORP. and         :
SEMICONDUCTOR COMPONENTS           :
INDUSTRIES, LLC,                   :
                                   :
                    Defendants.    :

## ORDER

At Wilmington, Delaware, this **20th** day of **February, 2007.**

IT IS ORDERED that a status/scheduling teleconference with Judge

Thynge has been scheduled for **Wednesday, March 14, 2007 at 2:00 p.m. Eastern**

**Time.  Defense counsel shall initiate the teleconference call.**

Local counsel are reminded of their obligations to inform out-of-state

counsel of this Order.  To avoid the imposition of sanctions, counsel shall advise the

Court immediately of any problems regarding compliance with this Order.


                        /s/ Mary Pat Thynge
                        UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORPORATION and | § | |
| SEMICONDUCTOR COMPONENTS | § | |
| INDUSTRIES, LLC | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:06-cv-523 [LED] |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| SAMSUNG ELECTRONICS AMERICA, INC., | § | JURY DEMANDED |
| SAMSUNG TELECOMMUNICATIONS | § | |
| AMERICA GENERAL, LLC, SAMSUNG | § | |
| SEMICONDUCTOR, INC., and SAMSUNG | § | |
| AUSTIN SEMICONDCUTOR, LLC | § | |

**DEFENDANTS' SECOND NOTICE OF COLLATERAL PROCEEDINGS**

In accordance with Local Rule CV-42(a), Defendants Samsung Electronics America, Inc., Samsung Telecommunications America General L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C. submit this Second Notice of Collateral Proceedings to advise the Court of developments in the first-filed action between the parties pending in the United States District Court for the District of Delaware, Civil Action No. 06-720 (the "Delaware Action").

On March 14, 2007, the parties participated in a status/scheduling conference before Magistrate Judge Mary Pat Thynge, to whom the Delaware Action has been assigned for pretrial proceedings following Judge Jordan's elevation to the Third Circuit (transcript attached as Exhibit A).  Magistrate Judge Thynge informed the parties that the Delaware Action will proceed to discovery notwithstanding Plaintiffs' pending motions to dismiss, and has ordered the parties to submit a proposed scheduling order with proposed discovery and trial dates by March 26, 2007.  (*See* Tr. at 10-13.)

1

USCA5 299

Respectfully submitted,

Dated:  March 15, 2007

/s/ Michael E. Jones
_____
Michael E. Jones
SBN: 10929400
mikejones@potterminton.com
Allen F. Gardner
SBN: 24043679
allengardner@potterminton.com
POTTER MINTON
110 North College 500 Plaza Tower
Tyler, Texas 75702
(903) 597-8311

*Attorneys for Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C.*
_____

OF COUNSEL:

John M. Desmarais
jdesmarais@kirkland.com
James E. Marina
jmarina@kirkland.com
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 15, 2007.  Any other counsel of record will be served by first class on this same date.

/s/ Michael E. Jones
_____

USCA5 300

# EXHIBIT A

USCA5 301

SHEET 1

1

```
 1         IN THE UNITED STATES DISTRICT COURT

 2         IN AND FOR THE DISTRICT OF DELAWARE

 3                         - - -

    SAMSUNG ELECTRONICS CO., LTD.,        CIVIL ACTION
 4  et al.,                          :
                                     :
 5         Plaintiffs,               :
                                     :
 6  v.                               :
                                     :
 7  ON SEMICONDUCTOR CORP. and        :
    SEMICONDUCTOR COMPONENTS          :
 8  INDUSTRIES, LLC,                  :
                                     :
 9         Defendants.               NO. 06-720 (***)
                         - - -
10
                    Wilmington, Delaware
11         Wednesday, March 14, 2007 at 2:01 p.m.
                    TELEPHONE CONFERENCE
12
                         - - -
13
    BEFORE:    HONORABLE MARY PAT THYNGE, Magistrate Judge
14
                         - - -
15  APPEARANCES:

16
            YOUNG CONAWAY STARGATT & TAYLOR
17          BY:  JOHN W. SHAW, ESQ., and
                 ANDREW A. LUNDREN, ESQ.
18
                 and
19
            KIRKLAND & ELLIS, LLP
20          BY:  JAMES E. MARINA, ESQ., and
                 JENNIFER J. SCHMIDT, ESQ.
21               (New York, New York))

22               Counsel for Plaintiff

23

24
                         Brian P. Gaffigan
25                       Registered Merit Reporter
```

USCA5 302

SHEET 2

2

```
1    APPEARANCES: (Continued)
2
3            MORRIS NICHOLS ARSHT & TUNNELL
             BY:  KAREN JACOBS LOUDEN, ESQ., and
4                 RICHARD J. BAUER, ESQ.
5                 and
6            JONES DAY
             BY:  BEHROOZ SHARIATI, ESQ.
7                 (Palo Alto, California)
8                 Counsel for Defendant
9
10                      - oOo -
11              P R O C E E D I N G S
12        (REPORTER'S NOTE:  The following telephone
13   conference was held in chambers, beginning at 2:01 p.m.)
14        THE COURT:  Good afternoon, this is Judge
15   Thynge.
16        MS. JACOBS LOUDEN:  Good afternoon.
17        MR. MARINA:  Good afternoon, Your Honor.
18        THE COURT:  Who do I have on the line on behalf
19   of Samsung, please?
20        MR. LUNDGREN:  Good afternoon, Your Honor.  This
21   is Andrew Lundgren and John Shaw from Young Conaway.
22        MR. MARINA:  And James Marina and Jennifer
23   Schmidt from Kirkland & Ellis.
24        THE COURT:  All right.  Thank you very much.
25        And who is on the line on behalf of On
```

3

```
1    Semiconductor, et al?
2        MS. JACOBS LOUDEN:  Good afternoon, Your Honor.
3    This is Karen Jacobs Louden and Rich Bauer from Morris
4    Nichols Arsht & Tunnell.  And I have on the line with me
5    Behrooz Shariati from Jones Day.
6        MR. SHARIATI:  Good afternoon, Your Honor.
7        THE COURT:  Good afternoon.
8        And I don't believe you have a scheduling order
9    in this case; is that correct, counsel?
10        MR. MARINA:  That's correct.
11        MR. SHARIATI:  Yes, Your Honor.
12        THE COURT:  And this call is to schedule this
13   case up through, and including, case dispositive motions,
14   because I will not be deciding those.  And I understand
15   there are presently two such motions, motion to dismiss
16   for lack of jurisdiction over the subject matter, which is
17   DI No. 14, and also another motion to dismiss for lack of
18   jurisdiction over the subject matter.  I also am aware there
19   is a motion to enjoin defendants from pursuing a duplicative
20   Texas action and a motion to stay the motion to enjoin.  I
21   was a little bit confused as to why two motions to dismiss
22   for lack of jurisdiction over the subject matter were filed.
23        MR. SHAW:  Your Honor, it's John Shaw.  We had
24   amended our complaint; and at that point, there was a second
25   motion filed, which the second motion to dismiss was filed
```

4

```
1    on our amended complaint seeking to get that one dismissed.
2    That is why you have two.
3        MS. JACOBS LOUDEN:  Your Honor, this is Karen
4    Jacobs Louden.  That being said, we don't believe the first
5    one is moot in the sense that we think that the Court needs
6    to look at what the circumstances were at the time of the
7    original filing.  We did file a second motion to dismiss to
8    address the second pleading but this isn't a situation where
9    the second motion has mooted the first.
10        THE COURT:  Well, did you file it on different
11   issues, a different basis for lack of subject matter
12   jurisdiction?
13        MS. JACOBS LOUDEN:  There are similarities
14   between the two motions, obviously, but they address each
15   pleading and the facts existing as of that pleading.
16        MR. MARINA:  This is James Marina from Kirkland.
17   The basis of the first motion is that there was no subject
18   matter jurisdiction as of the original filing date.  The
19   basis of the second motion is the same, that there was no
20   jurisdiction as of the original filing date and, therefore,
21   there is no jurisdiction with respect to the amended
22   complaint as well.  They're the same issues.
23        THE COURT:  All right.  I understand that.
24   But doesn't the amended complaint and the amended pleading
25   basically replace or eliminate -- or not eliminate but it
```

5

```
1    takes priority or precedence clearly over of the first
2    pleading.  So why does the Court have to address the first
3    motion?
4        MR. MARINA:  That's our view, Your Honor.  Under
5    Rule 15, we filed an amended pleading before they responded
6    to the original pleading and, therefore, that is the
7    operative pleading.
8        MS. JACOBS LOUDEN:  Your Honor, the reason is
9    that the second pleading, it's our position that it does not
10   relate back or certain of the allegations do not relate back
11   because some of the amended pleading alleges new facts that
12   did not exist at the time of the original pleading.
13        THE COURT:  Okay.  So you are saying they're not
14   rising out of the same transaction and occurrence?
15        MS. JACOBS LOUDEN:  That's correct.
16        MR. SHARIATI:  That's correct, Your Honor.
17        THE COURT:  Well, wait a minute, counsel.  Let's
18   investigate this a little bit further.  What is the basis
19   for lack of subject matter jurisdiction for this Court for
20   both of the motions?
21        MR. SHARIATI:  Your Honor, this is Barry
22   Shariati.  If I may?  The basis of the motion regarding
23   the original complaint was that there was no reasonable
24   apprehension by Samsung of a loss of an imminent lawsuit as
25   sort of a topic.
```

United States District Court - Honorable Mary Pat Thynge

USCA5 303

SHEET 3

**6**

1    THE COURT: Like no case or controversy.
2    MR. MARINA: That is it essentially, Your Honor,
3  yes. This is the classic DJ jurisdiction issue. There was
4  a subsequent lawsuit in Texas which the other motions
5  addressed the motion to enjoin and et cetera.
6    THE COURT: But you filed a Texas action after
7  the action had been filed in Delaware.
8    MR. SHARIATI: Yes, Your Honor. And the amended
9  complaint essentially draws, tries to use that Texas action
10  as justification for the first lawsuit. In other words, it
11  says that -- I'm just summarizing here -- that apprehension
12  was reasonable because they went ahead and sued us.
13    THE COURT: How soon did you sue them after they
14  filed the suit against you?
15    MR. SHARIATI: Yes, Your Honor.
16    THE COURT: How soon did you sue them?
17    MR. SHARIATI: Four days.
18    THE COURT: Four days.
19    MR. SHARIATI: Yes.
20    THE COURT: I would suggest that is probably
21  strong evidence of a reasonable apprehension, but okay.
22    MR. SHARIATI: With all due respect, Your Honor,
23  I don't think we're here to argue the motion.
24    THE COURT: No.
25    MR. SHARIATI: But I would disagree. The facts

**7**

1  would dispute that. In any event, if the original complaint
2  is essentially superseded by the amended complaint, then
3  there is really no basis for a DJ action to begin with, and
4  the Texas action becomes the first filed action at that
5  point. So if the Court wants to take the position that
6  the original complaint went away by filing the amended
7  complaint, we're perfectly happy with that, but that would
8  make the Texas action the first filed complaint.
9    THE COURT: No, not necessarily. Even if it's
10  superseded does not necessarily automatically mean that
11  you suddenly eliminate the filing date for the amended
12  complaint. The question is under Rule 15, what letter it
13  is, C or something like that, or A, whether or not it's
14  arising out of the same case or controversy or other
15  relationships to have it relate back.
16    MS. JACOBS LOUDEN: Right. That's the relation
17  back issue, Your Honor.
18    MR. MARINA: May I respond, Your Honor?
19    THE COURT: Go right ahead.
20    MR. MARINA: So just to be clear, the complaint
21  was filed on behalf of Samsung Electronics Co., which is
22  a Korean entity. They filed their mirror image lawsuit
23  against -- and I'll call that entity "SEC" -- against SEC
24  and four other Samsung companies. The purpose of the
25  amended complaint was to bring those new parties into this

**8**

1  case. The allegations with respect to reasonable
2  apprehension as it relates to SEC have not changed and they
3  are identical in the original complaint and in the amended
4  complaint. So there is no question of relation back. Plus,
5  the new claims also relate back. They relate to the assert-
6  ion of patents against Samsung and sort of attempts to get
7  license fees under threat of litigation. It's all the same
8  case.
9    THE COURT: Are you representing to the Court
10  that really all your amended complaint did, in essence, was
11  to add plaintiffs?
12    MR. MARINA: Right. So it contains the same
13  allegations with respect to the original plaintiff and
14  specifically says: Because a reasonable case or controversy
15  had arisen, the original complaint was filed November 30th.
16  Subsequent to that, they filed their complaint against SEC
17  and bringing in four sort of indirect or related to Samsung
18  companies. The amended complaint sort of used that suit or
19  points to that suit as a basis for their claims; right? Not
20  the original plaintiffs' claims.
21    THE COURT: I understand that.
22    MS. JACOBS LOUDEN: Your Honor, this is Karen
23  Jacobs Louden. The amended complaint also brings in new
24  patents. It DJ's on the additional patents on the Texas
25  suit but it also brings in a new patent in this suit, so

**9**

1  that certainly is a different transaction.
2    THE COURT: I understand what you are saying.
3  But as to the extent that it adds the parties, are you
4  suggesting that by adding parties on that basis that it's
5  not out of the same case or controversy?
6    MR. SHARIATI: No, Your Honor. It is not our
7  position --
8    THE COURT: I mean out of the same transaction.
9    MR. SHARIATI: This is Barry Shariati. Our
10  motion does not address the addition of the parties. Our
11  motion addresses the addition of the filing of the suit
12  itself, the Texas suit itself as a basis. And so in that
13  respect, our argument has been there is no relation back
14  because that is an entirely new event that did not occur
15  prior to November 30th.
16    MR. MARINA: Right. So that event doesn't
17  relate back does not mean that the events that occurred
18  beforehand that were in the original pleading don't relate
19  back.
20    THE COURT: That is exactly right. That is
21  exactly right. But let's just talk about what we're going
22  to do as far as a schedule is concerned.
23    Have the parties viewed or have counsel
24  discussed with one another my standard scheduling order?
25    MR. SHARIATI: No, Your Honor. We, I sent an

USCA5 304

SHEET 4

10

1    e-mail to Mr. Marina some time ago, I think it was in early
2    February or maybe even late January even, inviting him to
3    have a Rule 16 conference in the Texas case but I do not get
4    a response.  But we have not reviewed the Court's standard
5    scheduling order in the Delaware case.
6            THE COURT:  Well, the Court's standard
7    scheduling order for cases that I handle, whether I am a
8    trial judge or not, you can find on the Court's website and
9    I would strongly suggest that you look it over.  That the
10   parties' counsel, by March 26th, provide me with a proposed
11   scheduling order.  If you cannot agree on the dates, that is
12   fine, just tell me what dates each side is proposing.  And
13   I'll deal with the scheduling order or the proposed
14   scheduling order once I get it.
15           My view is this case continues on here until
16   the Court addresses the issues and that includes discovery.
17   And that is not only my view, I think that is probably the
18   view of Judge Jordan when he was here as well as a few of
19   the other judges on the bench.  So this case will proceed,
20   and it will proceed along a scheduling order to be entered.
21   And if one side or the other doesn't wish to be involved in
22   that discussion, that's fine.  Then I will just decide and
23   put in the dates that I think are appropriate.
24           MR. SHARIATI:  Your Honor, I just wanted to make
25   clear that as I hear the Court's view here, that the fact

11

1    discovery is starting in Delaware in no way prejudices our
2    motions.
3            THE COURT:  Absolutely not.  It does not have
4    any effect on it.  It's just that by the time that the
5    motion may very well be addressed, because two of them
6    involve motions to dismiss, which I will not be deciding,
7    those motions may sit for quite some time, and this case
8    is not going to sit.  We're going to try to move it along
9    as best we can even in light of the fact there are some
10   outstanding motions, case dispositive motions sitting out
11   there.
12           MS. JACOBS LOUDEN:  Then, Your Honor, you had
13   said the schedule should be through case dispositive
14   motions?
15           THE COURT:  Also give me some suggestions that
16   you have regarding the pretrial date and trial date because
17   I will keep a record of that for the next judge, but that
18   doesn't necessarily mean that you are going to see an order
19   that includes those.  But I'll be interested in knowing as
20   to the parties' projection as to when they think this case
21   will be ready for trial.  That would be helpful.  But more
22   likely than not, the actual order that this Court will enter
23   will go through the case dispositive motion provisions.  All
24   right?
25           So I will see that I think I said on March 26th,

12

1    and I look forward to seeing it, and then I will review it
2    and enter the appropriate order.
3            MR. SHARIATI:  Your Honor, if an order comes
4    forward in the case from Texas, would it be appropriate to
5    have a conference and revisit this issue, do you think?
6            THE COURT:  Oh, certainly, you can still.  I'm
7    going to be base-tending this case until you get a new
8    Article III judge on it.  So if there is any concerns that
9    you have, issues relating to discovery or other matters,
10   you certainly can bring it to my attention.  Absolutely.
11           MR. SHARIATI:  Great.
12           THE COURT:  You are not restricted on that.
13           MR. SHARIATI:  Yes, because our understanding
14   is Judge Davis generally does not have hearings on these
15   type of motions and you actually may very well be working on
16   the Texas motion, which would at least simplify the whole
17   transfer, motion to enjoin, et cetera.  So I just want to
18   make sure we could bring that to Your Honor's attention when
19   we have some sort of indication from Texas on it.
20           THE COURT:  You certainly can bring it to my
21   attention.
22           MR. MARINA:  This is James Marina.  We've been
23   keeping Judge Davis apprised of developments in this case,
24   and he knows there is a conference today and we will let him
25   know the results of this conference as well.

13

1            THE COURT:  Well, you can explain to him that
2    I want a scheduling order in this case to get this case
3    moving along and to start moving it along.  If counsel has
4    any difficulty with what needs to be done or any concerns
5    regarding my standard scheduling order, you can certainly
6    call me and we can have a short telephone conference about
7    it but my intent is to move this case as best we can even
8    though we don't have an Article III judge assigned to it
9    and do what we can because, later on, depending upon what
10   happens in these cases, I may very well be deciding the case
11   dispositive motions.  It's just as this present time I'm not
12   going to be.  And that may be motivated somewhat by when,
13   how soon we end up getting an Article III judge or how freed
14   up the schedules are of the other Article III judges that
15   presently sitting on this court.
16           Thank you, counsel.
17           (The attorneys respond, "Thank you, Your
18   Honor.")
19           THE COURT:  Take care now.  Good-bye.
20           (Telephone conference ends at 2:16 p.m.)

USCA5 305

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

|  |  |  |
|---|---|---|
| ON SEMICONDUCTOR CORP. | : | |
| | : | |
| and | : | |
| | : | |
| SEMICONDUCTOR COMPONENTS | : | |
|   INDUSTRIES, LLC, | : | |
| | : | |
| | : | |
|      Plaintiffs, | : | Civil Action No. 6:06-cv-523 |
| | : | |
|      v. | : | JURY TRIAL DEMANDED |
| | : | |
| SAMSUNG ELECTRONICS CO., LTD., | : | |
| SAMSUNG ELECTRONICS AMERICA, INC., | : | |
| SAMSUNG TELECOMMUNICATIONS | : | |
|   AMERICA GENERAL, L.L.C., | : | |
| SAMSUNG SEMICONDUCTOR, INC., and | : | |
| SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : | |
| | : | |
|      Defendants. | : | |
| | : | |

## ANSWER OF SAMSUNG ELECTRONICS CO., LTD.

     Defendant Samsung Electronics Co., Ltd. ("SEC") hereby respectfully demands a jury

trial and answers the allegations of the Complaint for Patent Infringement ("Complaint") filed

by Plaintiffs ON Semiconductor Corp. and Semiconductor Components Industries, LLC

(collectively, "Plaintiffs") as follows:

USCA5 306

## THE PARTIES

**Complaint Paragraph 1:**

1. Plaintiff ON Semiconductor is a Delaware corporation with its principal place of business at 5005 East McDowell Road, Phoenix, AZ 85008.

**Answer to Complaint Paragraph 1:**

    Admitted.

**Complaint Paragraph 2:**

2. Plaintiff Semiconductor Components, a Delaware limited liability company with its principal place of business at 5005 East McDowell Road, Phoenix, AZ 85008, is the principal domestic operating subsidiary of ON Semiconductor, and does business under the name of ON Semiconductor.

**Answer to Complaint Paragraph 2:**

    SEC admits that Plaintiff Semiconductor Components is a Delaware limited liability

company with its principal place of business at 5005 East McDowell Road, Phoenix, AZ

85008, and that Plaintiffs have represented that Plaintiff Semiconductor Components is the

principal domestic operating subsidiary of Plaintiff ON Semiconductor and does business

under the name "ON Semiconductor."  Except as so admitted, SEC lacks knowledge or

information sufficient to form a belief as to the allegations in Complaint Paragraph 2 and

therefore denies same.

**Complaint Paragraph 3:**

3. On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of Republic of Korea with its principal place of business at Samsung Main Building, 250, Taepyong-ro 2-ka, Chung-ku, Seoul 100-742, South Korea. On information and belief, SEC manufactures and, in cooperation with its subsidiaries, markets throughout the world, including in this district and elsewhere in the United States, a variety of semiconductor products including dynamic random access memory ("DRAM") devices.

USCA5 307

**Answer to Complaint Paragraph 3:**

SEC admits the allegations in the first sentence of Complaint Paragraph 3, admits that

its subsidiaries manufacture and sell a wide range of products in the United States and

abroad, including DRAMs, and admits that it has one or more subsidiaries.  Except as so

admitted, SEC denies the allegations in Complaint Paragraph 3, and denies that it has

committed any acts of infringement within the Eastern District of Texas or elsewhere.

**Complaint Paragraph 4:**

4. Defendant Samsung Electronics America, Inc. ("SEA") is a New York corporation with
   its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey
   07660. On information and belief, SEA is a subsidiary of SEC and sells and otherwise
   markets, in this district and elsewhere in the United States, a variety of electronic and
   semiconductor products.

**Answer to Complaint Paragraph 4:**

SEC admits the allegations in the first sentence of Complaint Paragraph 4, admits that

SEA is subsidiary of SEC, admits that SEA markets consumer electronics and information

technology products in the United States, and admits that SEA conducts business in the State

of Texas as well as other states.  Except as so admitted, SEC denies the allegations in

Complaint Paragraph 4, and denies that SEA has committed any acts of infringement within

the Eastern District of Texas or elsewhere.

**Complaint Paragraph 5:**

5. Defendant Samsung Telecommunications America General, L.L.C. ("STA") is a
   Delaware limited liability company with its principal place of business at 1301 East
   Lookout Drive, Richardson, Texas 75082. On information and belief, STA is a subsidiary
   of SEC and sells and otherwise markets, in this district and elsewhere in the United
   States, a variety of electronic and semiconductor products.

**Answer to Complaint Paragraph 5:**

SEC admits the allegations in the first sentence of Complaint Paragraph 5, admits that

STA markets personal and business communications products in the United States, and

admits that STA conducts business in the State of Texas as well as other states.  Except as so

3

USCA5 308

admitted, SEC denies the allegations in Complaint Paragraph 5, and denies that STA has

committed any acts of infringement within the Eastern District of Texas or elsewhere.

**Complaint Paragraph 6:**

6.  Defendant Samsung Semiconductor, Inc. ("SSI") is a California corporation with its
    principal place of business at 3655 North First Street, San Jose, California 95134. On
    information and belief, SSI is a subsidiary of SEC and sells and otherwise markets in this
    district and elsewhere in the United States, a variety of electronic and semiconductor
    products.

**Answer to Complaint Paragraph 6:**

SEC admits the allegations in the first sentence of Complaint Paragraph 6, admits that

SSI markets electronics products such as memory products, hard disk drives, and LCD

displays in the United States, and admits that SSI conducts business in the State of Texas as

well as other states.  Except as so admitted, SEC denies the allegations in Complaint

Paragraph 6, and denies that SSI has committed any acts of infringement within the Eastern

District of Texas or elsewhere.

**Complaint Paragraph 7:**

7.  On information and belief, Defendant Samsung Austin Semiconductor, L.L.C. ("SAS") is
    a Delaware limited liability company with its principal place of business at 12100
    Samsung Boulevard, Austin, Texas 78754. On information and belief, SAS is a subsidiary
    of SEC and sells and otherwise markets, in this district and elsewhere in the
    United States, a variety of semiconductor products including DRAM devices.

**Answer to Complaint Paragraph 7:**

SEC admits the allegations in the first sentence of Complaint Paragraph 7 and admits

that SAS conducts business in the State of Texas as well as other states.  Except as so

admitted, SEC denies the allegations in Complaint Paragraph 7, and denies that SAS has

committed any acts of infringement within the Eastern District of Texas or elsewhere.

USCA5 309

## JURISDICTION AND VENUE

**Complaint Paragraph 8:**

8.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, including 35 U.S.C. § 271 *et seq.*

**Answer to Complaint Paragraph 8:**

SEC admits that the Complaint purports to state claims for patent infringement under the patent laws of the United States, but denies that SEC or any of the other Defendants have committed any acts of infringement within the Eastern District of Texas or elsewhere. SEC also admits that as a federal district court this Court has subject matter jurisdiction over patent infringement claims pursuant to 28 U.S.C. §§ 1331 and 1338. SEC denies, however, that this action was properly filed by Plaintiffs in this Court. This action is duplicative of an earlier-filed action involving the same issues and parties that is pending in the United States District Court for the District of Delaware, Civil Action No. 06-CV-0720 filed on November 30, 2006, and therefore should be transferred to the District of Delaware.

**Complaint Paragraph 9:**

9.  This Court has personal jurisdiction over each of the Defendants. The Defendants have had minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district and specifically as a result of, at least, the Defendants' distribution network wherein Defendants place their products that infringe Semiconductor Component's patents within the stream of commerce, which stream is directed at this district as well as Texas, and by committing the tort of patent infringement and/or contributing to or inducing acts of patent infringement by others within Texas and this district.

**Answer to Complaint Paragraph 9:**

SEC admits that it conducts business in the United States. Except as so admitted, SEC denies the allegations in Complaint Paragraph 9, and denies that SEC or any of the other Defendants have committed any acts of infringement within the Eastern District of Texas or elsewhere. SEC further states that this action was improperly filed in this Court by

USCA5 310

Plaintiffs.  This action is duplicative of an earlier-filed action involving the same issues and

parties that is pending in the United States District Court for the District of Delaware, Civil

Action No. 06-CV-0720 filed on November 30, 2006, and therefore should be transferred to

the District of Delaware.

**Complaint Paragraph 10:**

10. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Defendants have regularly conducted business in this judicial district and certain of the acts complained of herein occurred in this judicial district.

**Answer to Complaint Paragraph 10:**

SEC denies that venue is proper in this district.  This action is duplicative of an

earlier-filed action involving the same issues and parties that is pending in the United States

District Court for the District of Delaware, Civil Action No. 06-CV-0720 filed on November

30, 2006.  The District of Delaware is therefore the proper venue for this action, and this case

should be transferred.  Plaintiffs have also failed to demonstrate that venue is proper in this

judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b), because Plaintiffs have

failed to demonstrate that SEC would be subject to personal jurisdiction in this District if it

were a separate State.

**COUNT I – INFRINGEMENT OF U.S. PATENT NO. 5,563,594**

**Complaint Paragraph 11:**

11. The allegations contained in paragraphs 1 through 10 are incorporated by reference as if fully set herein.

**Answer to Complaint Paragraph 11:**

SEC repeats and realleges its responses to paragraphs 1 through 10 of the Complaint

as though set forth in this paragraph.

USCA5 311

**Complaint Paragraph 12:**

12. United States Patent No. 5,563,594 ("the '594 patent"), entitled "Circuit and Method of Timing Data Transfers," was duly and legally issued by the United States Patent and Trademark Office on October 8, 1996. Plaintiffs hold all right and interest in the '594 patent, including the right to sue for past, present and future infringement. A copy of the '594 patent is attached hereto as Exhibit A.

**Answer to Complaint Paragraph 12:**

SEC admits that the '594 patent is entitled "Circuit and Method of Timing Data Transfers" and was issued on October 8, 1996. SEC further admits that a copy of the '594 patent is attached as Exhibit A to the Complaint filed with the Court, along with a copy of a certificate of correction. SEC further admits that Plaintiffs purport to hold all right and interest in the '594 patent including the right to sue for infringement. Except as so admitted, SEC lacks knowledge or information sufficient to form a belief as to the allegations in Complaint Paragraph 12 and therefore denies same.

**Complaint Paragraph 13:**

13. Defendants are infringing the '594 patent under one or more sections of 35 U.S.C., § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '594 patent.

**Answer to Complaint Paragraph 13:**

Denied.

**Complaint Paragraph 14:**

14. On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '594 patent.

**Answer to Complaint Paragraph 14:**

Denied.

USCA5 312

**Complaint Paragraph 15:**

15. Plaintiffs have been damaged by Defendants' infringement of the '594 patent.  Plaintiffs are entitled to recover from each of the Defendants the damages sustained by them as a result of each of the Defendants' wrongful acts.

**Answer to Complaint Paragraph 15:**

    Denied.

**Complaint Paragraph 16:**

16. Defendants' infringement of Semiconductor Component's exclusive rights under the '594 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

**Answer to Complaint Paragraph 16:**

    Denied.

**Complaint Paragraph 17:**

17. Defendants have had actual knowledge of the '594 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**Answer to Complaint Paragraph 17:**

    Denied.

**COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,362,644**

**Complaint Paragraph 18:**

18. The allegations contained in paragraphs 1 through 17 are incorporated by reference as if fully set herein.

**Answer to Complaint Paragraph 18:**

    SEC repeats and realleges its responses to paragraphs 1 through 17 of the Complaint

as though set forth in this paragraph.

USCA5 313

**Complaint Paragraph 19:**

19. United States Patent No. 6,362,644 ("the '644 patent"), entitled "Programmable Termination for Integrated Circuits," was duly and legally issued by the United States Patent and Trademark Office on March 26, 2002. Plaintiffs hold all right and interest in the '644 patent, including the right to sue for past, present and future infringement. A copy of the '644 patent is attached hereto as Exhibit B.

**Answer to Complaint Paragraph 19:**

SEC admits that the '644 patent is entitled "Programmable Termination for Integrated Circuits" and was issued on March 26, 2002. SEC further admits that a copy of the '644 patent is attached as Exhibit B to the Complaint filed with the Court. SEC further admits that Plaintiffs purport to hold all right and interest in the '644 patent including the right to sue for infringement. Except as so admitted, SEC lacks knowledge or information sufficient to form a belief as to the allegations in Complaint Paragraph 19 and therefore denies same.

**Complaint Paragraph 20:**

20. Defendants are infringing the '644 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '644 patent.

**Answer to Complaint Paragraph 20:**

Denied.

**Complaint Paragraph 21:**

21. On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '644 patent.

**Answer to Complaint Paragraph 21:**

Denied.

**Complaint Paragraph 22:**

22. Plaintiffs have been damaged by Defendants' infringement of the '644 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

USCA5 314

**Answer to Complaint Paragraph 22:**

Denied.


**Complaint Paragraph 23:**

23. Defendants' infringement of Semiconductor Component's exclusive rights under the '644 patent will continue to damage Plaintiffs' business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

**Answer to Complaint Paragraph 23:**

Denied.


**Complaint Paragraph 24:**

24. Defendants have had actual knowledge of the '644 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**Answer to Complaint Paragraph 24:**

Denied.


**COUNT III – INFRINGEMENT OF U.S. PATENT NO. 5,361,001**


**Complaint Paragraph 25:**

25. The allegations contained in paragraphs 1 through 24 are incorporated by reference as if fully set herein.

**Answer to Complaint Paragraph 25:**

SEC repeats and realleges its responses to paragraphs 1 through 24 of the Complaint

as though set forth in this paragraph.


**Complaint Paragraph 26:**

26. United States Patent No. 5,361,001 ("the '001 patent"), entitled "Circuit and Method of Previewing Analog Trimming," was duly and legally issued by the United States Patent and Trademark Office on November 1, 1994. Plaintiffs hold all right and interest in the '001 patent, including the right to sue for past, present and future infringement. A copy of the '001 patent is attached hereto as Exhibit C.

USCA5 315

**Answer to Complaint Paragraph 26:**

SEC admits that the '001 patent is entitled "Circuit and Method of Previewing Analog Trimming" and was issued on November 1, 1994. SEC further admits that a copy of the '001 patent is attached as Exhibit C to the Complaint filed with the Court. SEC further admits that Plaintiffs purport to hold all right and interest in the '001 patent including the right to sue for infringement. Except as so admitted, SEC lacks knowledge or information sufficient to form a belief as to the allegations in Complaint Paragraph 26 and therefore denies same.

**Complaint Paragraph 27:**

27. Defendants are infringing the '001 patent under one or more sections of 35 U.S.C. § 271 in this judicial district and elsewhere in the United States by the manufacture, use, sale, offer for sale and/or importation into the United States of product(s) falling within the scope of one or more claims of the '001 patent.

**Answer to Complaint Paragraph 27:**

Denied.

**Complaint Paragraph 28:**

28. On information and belief, Defendants also contribute to and/or induce the infringement of at least one claim of the '001 patent.

**Answer to Complaint Paragraph 28:**

Denied.

**Complaint Paragraph 29:**

29. Plaintiffs have been damaged by Defendants' infringement of the '001 patent. Plaintiffs are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as a result of each of the Defendants' wrongful acts.

**Answer to Complaint Paragraph 29:**

Denied.

USCA5 316

**Complaint Paragraph 30:**

30. Defendants' infringement of Semiconductor Component's exclusive rights under the '001 patent will continue to damage Plaintiffs business, causing irreparable harm, for which there is no adequate remedy at law, unless each of the Defendants is enjoined by this Court.

**Answer to Complaint Paragraph 30:**

    Denied.

**Complaint Paragraph 31:**

31. Defendants have had actual knowledge of the '001 patent and their infringement is deliberate and willful, entitling Plaintiffs to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

**Answer to Complaint Paragraph 31:**

    Denied.

## COUNT IV – INFRINGEMENT OF U.S. PATENT NO. 5,000,827

**Complaint Paragraph 32:**

32. The allegations contained in paragraphs 1 through 31 are incorporated by reference as if fully set herein.

**Answer to Complaint Paragraph 32:**

    SEC repeats and realleges its responses to paragraphs 1 through 31 of the Complaint

as though set forth in this paragraph.

**Complaint Paragraph 33:**

33. United States Patent No. 5,000,827 ("the '827 patent"), entitled "Method and Apparatus for Adjusting Plating Solution Flow Characteristics at Substrate Cathode Periphery to Minimize Edge Effect," was duly and legally issued by the United States Patent and Trademark Office on March 19, 1991. Plaintiffs hold all right and interest in the '827 patent, including the right to sue for past, present and future infringement. A copy of the '827 patent is attached hereto as Exhibit D.

**Answer to Complaint Paragraph 33:**

    SEC admits that the '827 patent is entitled "Method and Apparatus for Adjusting

Plating Solution Flow Characteristics at Substrate Cathode Periphery to Minimize Edge

USCA5 317

Effect" and was issued on March 19, 1991.  SEC further admits that a copy of the '827 patent

is attached as Exhibit D to the Complaint filed with the Court.  SEC further admits that

Plaintiffs purport to hold all right and interest in the '827 patent including the right to sue for

infringement.  Except as so admitted, SEC lacks knowledge or information sufficient to form

a belief as to the allegations in Complaint Paragraph 33 and therefore denies same.

**Complaint Paragraph 34:**

34. Defendants are infringing the '827 patent under one or more sections of 35 U.S.C. § 271
    in this judicial district and elsewhere in the United States by the manufacture, use, sale,
    offer for sale and/or importation into the United States of product(s) falling within the
    scope of one or more claims of the '827 patent.

**Answer to Complaint Paragraph 34:**

 Denied.


**Complaint Paragraph 35:**

35. On information and belief, Defendants also contribute to and/or induce the infringement
    of at least one claim of the '827 patent.

**Answer to Complaint Paragraph 35:**

 Denied.


**Complaint Paragraph 36:**

36. Plaintiffs have been damaged by Defendants' infringement of the '827 patent. Plaintiffs
    are entitled to recover from each of the Defendants the damages sustained by Plaintiffs as
    a result of each of the Defendants' wrongful acts.

**Answer to Complaint Paragraph 36:**

 Denied.


**Complaint Paragraph 37:**

37. Defendants' infringement of Semiconductor Component's exclusive rights under the '827
    patent will continue to damage Plaintiffs' business, causing irreparable harm, for which
    there is no adequate remedy at law, unless each of the Defendants is enjoined by this
    Court.

USCA5 318

**Answer to Complaint Paragraph 37:**

Denied.

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

SEC denies that Plaintiffs are entitled to any relief whatsoever from Defendants or this Court, either as requested in the Complaint or otherwise.

## GENERAL DENIAL

SEC further denies each and every allegation contained in the Complaint to which SEC has not specifically responded.

## AFFIRMATIVE DEFENSES

SEC alleges and asserts the following defenses in response to the allegations of Plaintiffs' Complaint, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. In addition to the affirmative defenses described below, SEC specifically reserves all rights to allege additional affirmative defenses that become known through the course of discovery.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Venue is not proper in this judicial district. An earlier-filed action involving the same issues and parties is pending in the United States District Court for the District of Delaware, Civil Action No. 06-CV-0720 filed on November 30, 2006. Pursuant to the first-filed ruled, the proper venue for this action is the United States District Court for the District of Delaware. Plaintiffs have also failed to demonstrate that venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and (c) and 1400(b), because Plaintiffs have failed to

14

USCA5 319

demonstrate that SEC would be subject to personal jurisdiction in this District if it were a separate State.

**Third Affirmative Defense**

Defendants have not directly or indirectly infringed and are not directly or indirectly infringing any valid and enforceable claim of any of U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and 5,000,827, either literally or under the doctrine of equivalents.

**Fourth Affirmative Defense**

The claims of U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and 5,000,827 are invalid for failure to meet the requirements of the patent laws of the United States, including without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

**Fifth Affirmative Defense**

Plaintiffs are estopped, based on statements, representations, and admissions made during prosecution of the applications that led to U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and/or 5,000,827 from asserting any interpretation of the claims of U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and/or 5,000,827 that would be broad enough to cover any of Defendants' products or methods alleged to infringe U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and/or 5,000,827, either literally or under the doctrine of equivalents.

**Sixth Affirmative Defense**

Plaintiffs are barred by the doctrine of laches from enforcing the claims of one or more of U.S. Patent Nos. 5,563,594, 6,362,644, 5,361,001, and 5,000,827.

**Seventh Affirmative Defense**

Plaintiffs cannot satisfy the requirements applicable to their request for injunctive relief at least because any alleged injury to Plaintiffs is not immediate or irreparable and Plaintiffs have an adequate remedy at law.

USCA5 320

## REQUEST FOR JURY TRIAL

SEC respectfully demands and requests trial by jury on all issues raised that are triable by a jury.

Dated:  April 20, 2007

*/s/ Allen F. Gardner*
Michael E. Jones
State Bar No. 10929400
Allen F. Gardner
State Bar No. 24043679
POTTER MINTON
110 North College 500 Plaza Tower
Tyler, Texas X 75702
Telephone:  (903) 597-8311
Facsimile:  (903) 593-0846
mikejones@potterminton.com
allengardner@potterminton.com

Attorneys for *Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C.*

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 20th day of April, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by first class mail on this same date.

*/s/ Allen F. Gardner*

16

USCA5 321

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| ON SEMICONDUCTOR CORP. | : |
| | : |
| and | : |
| | : |
| SEMICONDUCTOR COMPONENTS | : |
|    INDUSTRIES, LLC, | : |
| | : |
| | : |
|       Plaintiffs, | :   Civil Action No. 6:06-cv-523 |
| | : |
|       v. | : |
| | : |
| SAMSUNG ELECTRONICS CO., LTD., | : |
| SAMSUNG ELECTRONICS AMERICA, INC., | : |
| SAMSUNG TELECOMMUNICATIONS | : |
|    AMERICA GENERAL, L.L.C., | : |
| SAMSUNG SEMICONDUCTOR, INC., and | : |
| SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : |
| | : |
|       Defendants. | : |
| | : |

**RULE 7.1 STATEMENT OF SAMSUNG ELECTRONICS CO., LTD.**

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, the undersigned counsel for

Samsung Electronics Co., Ltd. ("SEC") certifies that SEC is a publicly held corporation

organized under the laws of the Republic of Korea and that no publicly held corporation owns

10% or more of SEC's stock.

USCA5 322

Respectfully submitted,

Dated: April 20, 2007

*/s/ Allen F. Gardner*
Michael E. Jones
State Bar No. 10929400
Allen F. Gardner
State Bar No. 24043679
POTTER MINTON
110 North College 500 Plaza Tower
Tyler, Texas X 75702
Telephone:  (903) 597-8311
Facsimile:   (903) 593-0846
mikejones@potterminton.com
allengardner@potterminton.com

*Attorneys for Samsung Electronics Co., Ltd.,*
*Samsung Electronics America, Inc., Samsung*
*Telecommunications America General,*
*L.L.C., Samsung Semiconductor, Inc., and*
*Samsung Austin Semiconductor L.L.C.*

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 20th day of April, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by first class mail on this same date.

*/s/ Allen F. Gardner*

USCA5 323

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| ON SEMICONDUCTOR CORP. | : |
| | : |
| and | : |
| | : |
| SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, | : |
| | : |
| | : |
| Plaintiffs, | : Civil Action No. 6:06-cv-523 |
| | : |
| v. | : |
| | : |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | : |
| | : |
| Defendants. | : |

## SAMSUNG ELECTRONICS CO., LTD.'S NOTICE OF JOINDER IN MOTION TO TRANSFER TO DISTRICT OF DELAWARE

Defendant Samsung Electronics Co., Ltd. hereby joins in the Motion To Transfer To The District Of Delaware Pursuant To The First-To-File Rule filed by Defendants Samsung Electronics America, Inc., Samsung Telecommunications America General, L.L.C., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor L.L.C. on December 26, 2006 (D.I. 7.)

Respectfully submitted,

Dated: April 20, 2007

*/s/ Allen F. Gardner*
Michael E. Jones
State Bar No. 10929400
Allen F. Gardner
State Bar No. 24043679
POTTER MINTON
110 North College 500 Plaza Tower
Tyler, Texas X 75702
Telephone:  (903) 597-8311
Facsimile:  (903) 593-0846
mikejones@potterminton.com
allengardner@potterminton.com

*Attorneys for Samsung Electronics Co., Ltd.,*
*Samsung Electronics America, Inc., Samsung*
*Telecommunications America General,*
*L.L.C., Samsung Semiconductor, Inc., and*
*Samsung Austin Semiconductor L.L.C.*

OF COUNSEL:

John M. Desmarais
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, New York 10022-4675
(212) 446-4800

## CERTIFICATE OF SERVICE

I hereby certify that the following counsel of record who are deemed to have consented to electronic service are being served this 20th day of April, 2007, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by first class mail on this same date.

*/s/ Allen F. Gardner*

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | | |
|---|---|---|
| **ON SEMICONDUCTOR CORPORATION and SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC** | § § § § | |
| **Plaintiffs** | § § | **CASE NO.  6:06CV523** **PATENT CASE** |
| **vs.** | § § | |
| **SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, LLC and SAMSUNG SEMICONDUCTOR, INC.** | § § § § § § § | |
| **Defendants** | § | |

## NOTICE OF SCHEDULING CONFERENCE, PROPOSED DISCOVERY ORDER, AND PROPOSED DATES FOR DOCKET CONTROL ORDER

The Court, *sua sponte*, issues this Notice of Scheduling Conference, Proposed Dates for Docket Control Order and Proposed Discovery Order.

## NOTICE OF SCHEDULING CONFERENCE

**Pursuant to Fed. R. Civ. P. 16 and Local Rule CV-16, the Scheduling Conference in this case is set for June 13, 2007 at 2:00 p.m. at the United States Courthouse, 211 West Ferguson, 3rd Floor, Judge Leonard Davis's Court, Tyler, Texas.** The parties are directed to meet and confer in accordance with Fed. R. Civ. P. 26(f) and P.R. § 2-1 no later than fourteen (14) days before the conference. The parties are excused from the requirement of filing a written proposed discovery plan in this case.

**Stipulation of the Parties with Notice of Agreement - No Court Appearance Required – IF THE PARTIES FILE AN AGREEMENT NOTICE WITH THE COURT SEVEN (7) DAYS BEFORE THE CONFERENCE DATE**

The Court does not require the parties to attend the Scheduling Conference if the parties agree to the following and file a Notice of Agreement containing this information at least seven days before the conference date. **IF THE PARTIES FAIL TO FILE AN AGREEMENT NOTICE WITH THE COURT SEVEN (7) DAYS BEFORE THE CONFERENCE DATE, THE PARTIES MUST ATTEND THE SCHEDULING CONFERENCE ON THE DATE SET FORTH ABOVE.** Upon receipt of the Notice of Agreement, the Court will issue a Docket Control

USCA5 326

Order, Discovery Order, and Mediation Order without the necessity of the parties' appearance.  The Notice of Agreement is to contain the following information:

a.    The guidelines contained in the Discovery Order as outlined in Appendix A;
b.    The proposed dates for the Docket Control Order as outlined in Appendix B;
c.    A mediator (name, address and phone number);
d.    Deadline by which to complete mediation; and
e.    Length of trial.

**So ORDERED and SIGNED this 2nd day of May, 2007.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

2

USCA5 327

## PROPOSED DISCOVERY ORDER

If the parties do <u>not</u> file a Notice of Agreement with the Court seven days before the Scheduling Conference date, the proposed Discovery Order set forth in the attached Appendix A will be discussed at the conference. The parties should also be prepared to discuss whether the Court should authorize the filing under seal of any documents containing confidential information.

## PROPOSED DATES FOR DOCKET CONTROL ORDER

If the parties do <u>not</u> file a **Notice of Agreement** with the Court **seven days** before the Scheduling Conference date, the proposed dates for the Docket Control Order set forth in the attached Appendix B will be discussed at the conference.

In Appendix B, the Court has set the dates for the *Markman* hearing, dispositive motion deadline, pretrial conference, jury selection, and trial. Prior to the Scheduling Conference, the parties are to confer as to all interim dates. The parties are to then fill in the remaining dates of the Docket Control Order according to the descriptions given in the form. The parties may modify these dates, but only to the extent the modifications do not affect the *Markman* hearing, dispositive motion, or trial dates. **The parties are to file their Joint Proposed Docket Control Order with the Court no fewer than three (3) days before the Scheduling Conference**. The parties' Joint Proposed Docket Control Order will be discussed at the Scheduling Conference.

USCA5 328

**APPENDIX A**

**PROPOSED DISCOVERY ORDER**

After review of the pleaded claims and defenses in this action and in furtherance of the management of the Court's docket under Fed. R. Civ. P. 16, the Court enters the following Discovery Order:

1.  **Disclosures.**  Within thirty (30) days after the Scheduling Conference, and without awaiting a discovery request, each party shall disclose to every other party the following information:

    A.    the correct names of the parties to the lawsuit;
    B     the name, address, and telephone number of any potential parties;
    C.    the legal theories and, in general, the factual bases of the disclosing party's claims or defenses (the disclosing party need not marshal all evidence that may be offered at trial);
    D.    the name, address, and telephone number of persons having knowledge of relevant facts, a brief statement of each identified person's connection with the case, and a brief, fair summary of the substance of the information known by such person;
    E.    any indemnity and insuring agreements under which any person or entity may be liable to satisfy part or all of a judgment entered in this action or to indemnify or reimburse for payments made to satisfy the judgment;
    F.    any settlement agreements relevant to the subject matter of this action;
    G.    any statement of any party to the litigation;

2.  **Additional Disclosures.**  Each party shall provide to every other party the following information:

    A.    the disclosures required by the Court's Patent Rules in accordance with the deadlines set forth in said rules and the Court's Docket Control Order;
    B.    to the extent that any party pleads a claim for relief or defensive matter other than those addressed in the Patent Rules[1], within forty-five (45) days after the Scheduling Conference and without awaiting a discovery request, a copy of all documents, data compilations and tangible things in the possession, custody, or control of the party that are relevant to those additionally pleaded claims or defenses involved in this action.  By written agreement of all parties, alternative forms of disclosure may be provided in lieu of paper copies.  For example, the parties may agree to exchange images of documents electronically or by means of computer disk; or the parties may agree to review and copy disclosure materials at the offices of the attorneys representing the parties instead of requiring each side to furnish paper copies of the disclosure materials; and

---

[1]  The Patent Rules are Appendix M to the Local Rules which are available on the Court's website at www.txed.uscourts.gov.

USCA5 329

C.  within forty-five (45) days after the Scheduling Conference a complete computation of any category of damages claimed by any party to the action, making available for inspection and copying (See Local Rule CV-34), the documents or other evidentiary materials on which such computation is based, including materials bearing on the nature and extent of injuries suffered; and those documents and authorizations described in Local Rule CV-34.

3.  **Testifying Experts.**  By the date provided in the Docket Control Order, each party shall disclose to the other party or parties:

A.  the expert's name, address, and telephone number;

B.  the subject matter on which the expert will testify;

C.  the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the disclosing party, documents reflecting such information;

D.  if the expert is retained by, employed by, or otherwise subject to the control of the disclosing party;

(1)  all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(2)  the expert's current resume and bibliography.

4.  **Discovery Limitations.**  Discovery is limited in this cause to the disclosures described in Paragraphs 1 - 3 together with 60 interrogatories, 60 requests for admissions, the depositions of the parties, depositions on written questions of custodians of business records for third parties, depositions of two expert witnesses per side or the parties may agree on a number of hours of depositions.  "Side" means a party or a group of parties with a common interest.

5.  **Privileged Information.**  There is no duty to disclose privileged documents or information. However, the parties are directed to meet and confer concerning privileged documents or information after the Scheduling Conference.  By the date provided in the Docket Control Order, the parties shall exchange privilege logs identifying the documents or information and the basis for any disputed claim of privilege in a manner that, without revealing information itself privileged or protected, with enable the other parties to assess the applicability of the privilege or protection. A party may move the Court for an order compelling the production of any privileged documents or information identified on any other party's privilege log.  If such a motion is made, the party asserting privilege shall file with the Court within thirty (30) days of the filing of the motion to compel any proof in the form of declarations or affidavits to support their assertions of privilege, along with the documents over which privilege is asserted for in camera inspection.  If the parties have no disputes concerning privileged documents or information, then the parties shall file a notice so stating by the date provided

USCA5 330

in the Docket Control Order.

6. **Pre-trial Disclosures.**  By the date provided in the Docket Control Order, each party shall provide to every other party the following disclosures regarding the evidence that the disclosing party intends to present at trial:

    A.    The name and, if not previously provided, the address and telephone number, of each witness, separately identifying those whom the party expects to present at trial and those whom the party may call if the need arises.

    B.    The designation of those witnesses whose testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony.

    C.    An appropriate identification of each document or other exhibit, including summaries of other evidence, separately identifying those which the party expects to offer and those which the party may offer if the need arises.

By the date provided in the Docket Control Order, a party may serve and file a list disclosing (1) any objections to the use under Rule 32(a) of a deposition designated by another party under subparagraph "B." above; and (2) any objections, together with the grounds therefor, that may be made to the admissibility of materials identified under subparagraph "C." above. Objections not so disclosed, other than objections under Rules 402 and 403 of the Federal Rules of Evidence, shall be deemed waived unless excused by the Court for good cause shown.

7. **Signature.**  The disclosures required by this order shall be made in writing and signed by the party or counsel and shall constitute a certification that, to the best of the signer's knowledge, information and belief, such disclosure is complete and correct as of the time it is made.

8. **Exchange of Disclosures.**  If feasible, counsel shall meet to exchange disclosures required by this order; otherwise, such disclosures shall be served as provided by Fed. R. Civ. P. 5.

9. **Notification of the Court.**  The parties shall promptly file a notice with the Court that the disclosures required under this order have taken place.

10. **Duty to Supplement.**  After disclosure is made pursuant to this order, each party is under a duty to supplement or correct its disclosures immediately if the party obtains information on the basis of which it knows that the information disclosed was either incomplete or incorrect when made, or is no longer complete or true.

11. **Protective Orders.**  A copy of the Court's standard protective order is available on the Court's website at www.txed.uscourts.gov entitled "Judge Davis Standard Protective Order." A party may request that the Court issue the Protective Order.  However, a party may propose the issuance of or move to modify the terms of the Protective Order for good cause.

USCA5 331

12.  **Rules of Practice.**  The Court's rules of practice for patent cases are on the Court's website at www.txed.uscourts.gov.

13.  **Discovery Disputes.**  Counsel are directed to contact the chambers of the undersigned for any "hot-line" disputes before contacting the Discovery Hotline provided by Local Rule CV-26(f).  If the undersigned is not available, the parties shall proceed in accordance with Local Rule CV-26(f).

14.  **No Excuses.**  A party is not excused from the requirements of this Discovery Order because it has not fully completed its investigation of the case, or because it challenges the sufficiency of another party's disclosures, or because another party has not made its disclosures.  Absent court order to the contrary, a party is not excused from disclosure because there are pending motions to dismiss, to remand or to change venue.  Parties asserting the defense of qualified immunity may submit a motion to limit disclosure to those materials necessary to decide the issue of qualified immunity.

15.  **E-Filing.**  Except for good cause shown or as provided in the Local Rules, all documents (with exception of those documents referenced in the local rules) in cases pending in this Court shall be filed electronically.  This includes notices of disclosure, notices of no privilege issues, proposed orders, and mediator's reports.  The file in each case is maintained electronically.  Neither the clerks office nor the Court will maintain a paper file except as provided in the local rules.

When filing electronically, the Court prefers:

    (i)      that documents be published to PDF and then filed with the Court rather than filing scanned documents;

    (ii)     proposed orders be included as attachments to motions filed rather than incorporated within the body of the filed motion;

    (iii)    proposed orders should NOT contain an "it is so ordered" designation, signature line, or date line since this information is contained in the Judge's electronic signature stamp and

    (iv)    proposed orders should NOT contain the word "Proposed" in the title of the document.

16.  **Courtesy Paper Copies.**  In cases pending before this Court, the parties are exempt from complying with Local Rule CV-5 which requires that paper copies be provided to the presiding judge's chambers if a document exceeds five pages in length.  Paper copies will not be accepted by this Court unless specifically requested or as provided below.

17.  **Hearing Notebooks.**  Within ten days following the filing of responses to dispositive or Daubert motions, the movant is to provide the Court with an original and one copy of a hearing notebook containing the motion, any response, any reply and any surreply with the

USCA5 332

corresponding docket numbers on each and all pleadings and exhibits appropriately tabbed.

18.    **Wireless Internet Access.**    Wireless internet access is now available in the Tyler Courthouse.  To access the wireless network, users will need a login ID and password, which are changed weekly.  The current login ID and password will be available at the security desk in the lobby, through Chambers, or through the Clerk's office.

19.    **Requests for Production.**    Because documents relevant to any claim or defense are to be produced pursuant to the Patent Rules and paragraphs one and two of this Order, requests for production are unnecessary.  However, should a party believe that certain relevant documents have not been produced, that party may request said documents by letter.  The Court will entertain a motion to compel documents without the necessity of a movant propounding formal requests for production.

20.    **Sealed Documents.**    In cases pending before this Court, the parties are notified that, unless a motion requesting otherwise is received from one or both of the parties within ten (10) days from the date of this notice, the Court will issue an order directing the Clerk's office to docket the "title" of all sealed documents (this does not include the substance of the document) on the Court's case management system.

USCA5 333

## APPENDIX B

## DOCKET CONTROL ORDER

It is hereby **ORDERED** that the following schedule of deadlines is in effect until further order of this Court:

| | |
|---|---|
| **June 15, 2009**<br>Court designated date – not flexible without good cause - Motion Required | **9:00 a.m. JURY TRIAL as reached at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| *Day of Trial* | EXHIBITS & EXHIBIT LISTS: Each party is requested to provide the Court with one original set of exhibits and three copies of the exhibit list. The Court's preferred format for Exhibit Lists is available on the Court's website at www.txed.uscourts.gov under "Judges' Orders & Information."<br><br>The original exhibits that are agreed upon by the parties, should be ready to be tendered to the Clerk of the Court at the beginning of trial. Other exhibits that are admitted during trial should be tendered to the Clerk of the Court immediately after admission.<br><br>The parties are further requested to have all exhibits labeled with the following information on each label: Designation of Plaintiff's or Defendant's Exhibit Number and Case Number. For example:<br><br>**Plaintiff's Exhibit**<br>Exhibit No. _____<br>Case No. _____<br><br>**Defendant's Exhibit**<br>Exhibit No. _____<br>Case No. _____ |
| **June 8, 2009**<br>Court designated date – not flexible without good cause - Motion Required | **9:00 a.m. JURY SELECTION at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |

USCA5 334

| | |
|---|---|
| **May 21, 2009**<br>Court designated date – not flexible without good cause - Motion Required | **9:00 a.m. PRETRIAL CONFERENCE at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.**<br>All pending motions will be heard. |
| *2 days before pretrial* | Parties to file estimates of the amount of time they request at jury selection and trial for (1) voir dire, (2) opening statements, (3) direct and cross examinations, and (4) closing arguments. |
| *3 days before pretrial* | Motions in Limine due. The parties are directed to confer and advise the Court on or before 3:00 o'clock p.m. the day before the pre-trial conference which paragraphs are agreed to and those that need to be addressed at the pre-trial conference. |
| *5 days before pretrial* | Pretrial Objections due. |
| *20 days before pretrial* | Objections to Rebuttal Deposition Testimony due. |
| *25 days before pretrial* | Rebuttal Designations and Objections to Deposition Testimony due. Cross examination line and page numbers to be included. In video depositions, each party is responsible for preparation of the final edited video in accordance with their parties' designations and the Court's rulings on objections. |
| *35 days before pretrial* | Pretrial Disclosures due.<br>Video and Stenographic Deposition Designation due. Each party who proposes to offer deposition testimony shall file a disclosure identifying the line and page numbers to be offered. |
| *55 days before pretrial* | **Joint Pretrial Order, Joint Proposed Jury Instructions with citation to authority and Form of the Verdict for jury trials due.** Proposed Findings of Fact and Conclusions of Law with citation to authority for bench trials.<br>Notice of Request for Daily Transcript or Real Time Reporting of Court Proceedings due. If a daily transcript or real time reporting of court proceedings is requested for trial or hearings, the party or parties making said request shall file a notice with the Court and email the Court Reporter, Shea Sloan, at shea_sloan@txed.uscourts.gov. |
| *At least 15 days after dispositive motion date below* | **Response to Dispositive Motions (including *Daubert* motions) due.** Responses to dispositive motions filed prior to the dispositive motion deadline, including *Daubert* motions, shall be due in accordance with Local Rule CV-7(e). |
| **December 29, 2008**<br>Court designated date – not flexible without good cause – Motion Required | **Dispositive Motions due from all parties and any other motions that may require a hearing (including *Daubert* motions)**; Motions for Summary Judgment shall comply with Local Rule CV-56. |
| *3 days before Dispositive Motions* | Parties to Identify Rebuttal Trial Witnesses. |

USCA5 335

| | |
|---|---|
| *14 days before Dispositive Motions* | Parties to Identify Trial Witnesses; Amend Pleadings (after Markman Hearing). It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings. It is necessary to file a Motion for Leave to Amend after the deadline. However, except as provided in Patent Rule 3-6, if the amendment would effect infringement contentions or invalidity contentions, a motion must be made pursuant to Patent Rule 3-7 irrespective of whether the amendment is made prior to this deadline. |
| *28 days before Dispositive Motions* | **Discovery Deadline.** |
| *58 days before Dispositive Motions* | Parties designate rebuttal expert witnesses (non-construction issues), Rebuttal expert witness reports due. Refer to Local Rules for required information. |
| *68 days before Dispositive Motions* | Parties with burden of proof designate expert witnesses (non-construction issues). Expert witness reports due. Refer to Local Rules for required information. |
| *98 days before Dispositive Motions* | Comply with P.R.3-7 - Furnishing documents and privilege logs pertaining to willful infringement. |
| **August 28, 2008** | ***Markman* Hearing at 9:30 a.m. at the United States District Court, 211 West Ferguson, 3ʳᵈ Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| *10 days before Markman Hearing* | Parties shall jointly submit a claim construction chart on computer disk in WordPerfect format or in such other format as the Court may direct in accordance with P.R. 4-5(d). |
| *14 days before Markman Hearing* | Parties to file a notice with the Court stating the estimated amount of time requested for the *Markman* Hearing. The Court will notify the parties if it is unable to accommodate this request.<br><br>**Comply with P.R. 4-5(c)** - Reply brief and supporting evidence due re response to claim construction. The moving party is to provide the Court with 2 binders containing their reply brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |
| *21 days before Markman Hearing* | **Comply with P.R. 4-5(b)** - Responsive brief and supporting evidence due to party claiming patent infringement. The moving party is to provide the Court with 2 binders containing their *Markman* brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their *Markman* brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |
| *35 days before Markman Hearing* | **Comply with P.R. 4-5(a)** - The party claiming patent infringement shall serve and file an opening brief and any evidence supporting its claim construction. The moving party is to provide the Court with 2 binders containing their *Markman* brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their *Markman* brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |

11

USCA5 336

| | |
|---|---|
| *42 days before Markman Hearing* | Deadline for parties, if they desire, to provide Court with tutorials concerning technology involved in patent. If a technical advisor has been appointed, each party that provides a tutorial shall provide a copy to the advisor. |
| *49 days before Markman Hearing* | **Discovery Deadline - Claim Construction Issues.** |
| *63 days before Markman Hearing* | Respond to Amended Pleadings. |
| *70 days before Markman Hearing* | Parties to provide name, address, phone number, and curriculum vitae for three (3) agreed technical advisors and information regarding the nominees' availability for *Markman* hearing or a statement that they could not reach an agreement as to any potential technical advisor. |
| *77 days before Markman Hearing* | Amended Pleadings (pre-claim construction) due from all parties. It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings. It is necessary to file a Motion for Leave to Amend after the deadline. However, if the amendment would affect infringement contentions or invalidity contentions, a motion must be made pursuant to Patent Rule 3-7 irrespective of whether the amendment is made prior to this deadline. |
| *80 days before Markman Hearing* | **Comply with P.R. 4-3 - Filing of Joint Claim Construction and Prehearing Statement.** |
| *110 days before Markman Hearing* | Comply with P.R. 4-2 - Exchange of Preliminary Claim Constructions and Extrinsic Evidence. Privilege Logs to be exchanged by parties (or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| *65 days from Sched Conference* | Comply with P.R. 4-1 - Exchange Proposed Terms and Claim Elements for Construction. |
| *55 days from Sched Conference* | Comply with P.R. 3-3 - Invalidity Contentions due. Thereafter, it is necessary to obtain leave of Court to add and/or amend invalidity contentions, pursuant to Patent Rule 3-6. Add any inequitable conduct allegations to pleadings. It is not necessary to file a motion for leave to add inequitable conduct allegations to pleadings prior to this date. Thereafter, it is necessary to obtain leave of Court to add inequitable conduct allegations to pleadings. |
| *10 days from Sched Conf* | Comply with P.R. 3-1 and P.R. 3-2 - Disclosure of Asserted Claims and Infringement Contentions due. Thereafter, it is necessary to obtain leave of Court to add and/or amend infringement contentions, pursuant to Patent Rule 3-6. Join Additional Parties. It is not necessary to file a motion to join additional parties prior to this date. Thereafter, it is necessary to obtain leave of Court to join additional parties. Add new patents and/or claims for patents-in-suit. It is not necessary to file a motion to add additional patents or claims prior to this date. Thereafter, it is necessary to obtain leave of Court to add patents or claims. |
| | Mediation. The Court refers most cases to mediation. The parties should discuss proposed mediators and timing of mediation prior to the Scheduling Conference and be prepared with a recommendation for the Court. |

USCA5 337

| *Deadline Date* | **Mediation to be completed.  (Name), (address), and (phone number)** is appointed as mediator in this cause.  The mediator shall be deemed  to have agreed to the terms of Court Ordered Mediation Plan of the United States District Court of the Eastern District of Texas by going forth with the mediation in accordance with this order.  General Order 99-2. |
|---|---|
| *No. of trial days* | **EXPECTED LENGTH OF TRIAL** |

In the event that any of these dates fall on a weekend or Court holiday, the deadline is modified to be the next Court business day.

The parties are directed to Local Rule CV-7(d), which provides in part that "[i]n the event a party fails to oppose a motion in the manner prescribed herein the Court will assume that the party has no opposition."  Local Rule CV-7(e) provides that a party opposing a motion has 15 days in which to serve and file supporting documents and briefs after which the Court will consider the submitted motion for decision.

## OTHER LIMITATIONS

(a)    All depositions to be read into evidence as part of the parties' case-in-chief shall be EDITED so as to exclude all unnecessary, repetitious, and irrelevant testimony; ONLY those portions which are relevant to the issues in controversy shall be read into evidence.

(b)    The Court will refuse to entertain any motion to compel discovery filed after the date of this Order unless the movant advises the Court within the body of the motion that counsel for the parties have first conferred in a good faith attempt to resolve the matter.  See Eastern District of Texas Local Rule CV-7(h).

(c)    The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(i)    The fact that there are motions for summary judgment or motions to dismiss pending;

(ii)    The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(iii)    The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

USCA5 338

AO 456 (Rev. 5/85) Notice

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS

**ON SEMICONDUCTOR CORPORATION**

**N O T I C E**

**V.**

**SAMSUNG ELECTRONICS CO., LTD**   **CASE NUMBER: 6:06-CV-523**

TYPE OF CASE:

☒  **CIVIL**     ☐    **CRIMINAL**

☒ **TAKE NOTICE** that a proceeding in this case has been set for the place, date, and time set forth below:

| PLACE | ROOM NO. |
|---|---|
| **UNITED STATES DISTRICT COURT 211 WEST FERGUSON, 3RD FLOOR TYLER, TEXAS 75702** | **306 - JUDGE DAVIS'S COURTROOM** |
| | DATE AND TIME: **JUNE 13, 2007 @ 2:00 PM** |

TYPE OF PROCEEDING

## MOTION HEARING
### Motion to Change Venue - Dkt #7

Date:  5.3.2007

**DAVID J. MALAND**
CLERK OF THE COURT

(BY) *Rosa L. Ferguson*, Courtroom Deputy

TO:  All Counsel of Record

**FILED - 5/03/07**
**U.S. DISTRICT COURT - EASTERN DISTRICT OF TEXAS**
**DAVID J MALAND, CLERK**

USCA5 339

**Appendix K**

Revised: 1/24/07 FILED CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
TYLER **DIVISION**
**APPLICATION TO APPEAR PRO HAC VICE**

2007 JUN 11 PM 4: 14

TEXAS EASTERN

1. This application is being made for the following: Case # 6:06-CV-00523-LED    BY_____
Style: ON Semiconductor Corporation et al. v. Samsung Electronics Co., Ltd. et al.

2. Applicant is representing the following party/ies: Defendants Samsung Electronics Co., Ltd. et al.

3. Applicant was admitted to practice in New York (state) on March 27, 1989 (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle). If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses. N/A

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:
New York, E.D.N.Y., S.D.N.Y., Fed Cir., 2d Cir., 11th Cir., D.C. Cir., U.S. Supreme Ct.

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, John M. Desmarais _____ do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date 6/8/07          Signature _____

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### APPLICATION TO APPEAR PRO HAC VICE (Continued)

Name (please print) ___John M. Desmarais___

State Bar Number ___2261782 (New York Bar No.)___

Firm Name: ___Kirkland & Ellis LLP___

Address/P.O. Box: ___153 E. 53rd Street, 36th Floor___

City/State/Zip: ___New York, New York  10022___

Telephone #: ___212-446-4800___

Fax #: ___212-446-4900___

E-mail Address: ___jdesmarais@kirkland.com___

Secondary E-Mail Address: _____

Applicant is authorized to enter an appearance as counsel for the party/parties listed above. This

application has been approved for the court on: ___**6/12/07**___

_David J. Maland_ (signature)

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

Deputy Clerk

USCA5 341

# United States District Court

for the

Eastern District of Texas at Tyler

Date:        **Monday, June 11, 2007**

Received from:

**POTTER MINTON**

**P.O. BOX 359**

**TYLER, TX 75710**

| Account | | Description |
|---------|--|-------------|
| 085000 | - | Attorney Admission Fees |
| 086400 | - | New Case Fee |
| 086900 | - | Filing Fees |
| 121000 | - | Conscience Fund |
| 129900 | - | Gifts |
| 143500 | - | Interest |
| 322340 | - | Sale of Publications |
| 322350 | - | Copy Fees |
| 322360 | - | Miscellaneous Fees |
| 322380 | - | Recoveries of Court Costs |
| 322386 | - | Cost of Prosecution |
| 504100 | - | Crime Victims Fund |
| 508800 | - | Immigration Fees |
| 510000 | - | Civil Filing Fee (1/2) |
| 5100PL | - | Partial Filing Fee (PLRA) |
| 510100 | - | Registry Fee |
| 604700 | - | Registry Funds/General and Special Funds |
| 613300 | - | Unclaimed Monies |
| 6855XX | - | Deposit Funds |

| Account | Amount |
|---------|--------|
| 6855XX | **$50.00** |
| | |
| **Total** | **$50.00** |

Payment method:      **Check**

Case or other reference:      **6:06CV523**

Comments:      **PHV APPS FOR JOHN M. DESMARAIS AND JAMES E. MARINA - FIRM CK 066487**

Received by:      **MC** _____

**Appendix K**

Revised: 1/24/07 FILED CLERK
U.S. DISTRICT COURT

2007 JUN 11 PM 4: 14

TEXAS EASTERN

BY_____

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER **DIVISION**
## APPLICATION TO APPEAR PRO HAC VICE

1. This application is being made for the following: Case # 6:06-CV-00523-LED

Style: ON Semiconductor Corporation et al v. Samsung Electronics Co., Ltd. et al.

2. Applicant is representing the following party/ies: Defendants Samsung Electronics Co., Ltd. et al.

3. Applicant was admitted to practice in New York (state) on February 19, 1997 (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle). If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses. N/A

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:
New York, New Jersey, D. N.J., E.D.N.Y., S.D.N.Y., E.D. Wis., Fed. Cir ., 2d. Cir.

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, James E. Marina do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date 6/8/07        Signature _Jam E. Mari_

USCA5 343

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### APPLICATION TO APPEAR PRO HAC VICE (Continued)

Name (please print) James E. Marina

State Bar Number 2792125 (New York Bar No.)

Firm Name: Kirkland & Ellis LLP

Address/P.O. Box: 153 E. 53rd Street, 36th Floor

City/State/Zip: New York, New York 10022

Telephone #: 212-446-4800

Fax #: 212-446-4900

E-mail Address: jmarina@kirkland.com

Secondary E-Mail Address: _____

Applicant is authorized to enter an appearance as counsel for the party/parties listed above. This

application has been approved for the court on: **6/12/07**

David J. Maland, Clerk
U.S. District Court, Eastern District of Texas

By _____
Deputy Clerk

# United States District Court

for the

Eastern District of Texas at Tyler

Date: **Monday, June 11, 2007**

Received from:

**POTTER MINTON**

**P.O. BOX 359**

**TYLER, TX 75710**

| Account | | Description |
|---|---|---|
| 085000 | – | Attorney Admission Fees |
| 086400 | – | New Case Fee |
| 086900 | – | Filing Fees |
| 121000 | – | Conscience Fund |
| 129900 | – | Gifts |
| 143500 | – | Interest |
| 322340 | – | Sale of Publications |
| 322350 | – | Copy Fees |
| 322360 | – | Miscellaneous Fees |
| 322380 | – | Recoveries of Court Costs |
| 322386 | – | Cost of Prosecution |
| 504100 | – | Crime Victims Fund |
| 508800 | – | Immigration Fees |
| 510000 | – | Civil Filing Fee (1/2) |
| 5100PL | – | Partial Filing Fee (PLRA) |
| 510100 | – | Registry Fee |
| 604700 | – | Registry Funds/General and Special Funds |
| 613300 | – | Unclaimed Monies |
| 6855XX | – | Deposit Funds |

| Account | Amount |
|---|---|
| 6855XX | $50.00 |
| | |
| **Total** | **$50.00** |

Payment method: **Check**

Case or other reference: **6:06CV523**

Comments: **PHV APPS FOR JOHN M. DESMARAIS AND JAMES E. MARINA - FIRM CK 066487**

Received by: **MC**

USCA5 345

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORPORATION, and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C.<br><br>Plaintiffs,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR, L.L.C.,<br><br>Defendants. | § § § § § § § § § § § § § § § § § | CASE NO. 6:06-CV-523 (LED) |

## STATUS REPORT REGARDING PROPOSED DOCKET CONTROL ORDER

Pursuant to the Court's May 2, 2007 Notice of Scheduling Conference, Proposed Discovery Order, and Proposed Dates for Docket Control Order, the parties to this action, by and through their attorneys of record, have met and conferred. Pursuant to the discussions, the parties have reached agreement on the dates contained in the Proposed Docket Control Order attached hereto as Exhibit 1. The parties are in disagreement with respect to the following additional terms proposed by defendants:

- Defendants have proposed the following preamble for the docket control order: "In the event that this action is not transferred to the United States District Court for the District of Delaware, the parties agree as follows unless otherwise indicated:" Plaintiffs disagree that the Court's order should await the ruling on the motion to transfer and request that the order go into effect upon issuance.

USCA5 346

- Defendants have proposed the following limitation for e-mail discovery: "The parties agree that email production in this action and the Delaware action shall be limited to nonprivileged emails that refer to an opposing party or an opposing party's patent(s)-in-suit. The parties, however, reserve the right to seek additional email production should additional production become necessary." Plaintiffs disagree with this statement because it does not correctly state the agreement reached by the parties regarding the production of emails and should not be included in the order.

Other than these two issues, the attached draft is otherwise agreed to in all respects as we understand the discussions between the parties.

Dated:  June 12, 2007                          Respectfully submitted,

                                        /s/ Michael Smith
                                        Kenneth R. Adamo
                                        State Bar No. 00846960
                                        kradamo@jonesday.com
                                        Hilda C. Galvan
                                        State Bar No. 00787512
                                        hcgalvan@jonesday.com
                                        JONES DAY
                                        2727 North Harwood Street
                                        Dallas, Texas 75201-1515
                                        Telephone: (214) 220-3939
                                        Facsimile: (214) 969-5100

                                        Tharan Gregory Lanier
                                        tglanier@jonesday.com
                                        CA Bar No. 138784
                                        Of Counsel:
                                        Behrooz Shariati
                                        bshariati@jonesday.com
                                        CA Bar No. 174436
                                        JONES DAY
                                        2882 Sand Hill Road, Suite 240
                                        Menlo Park, CA 94025
                                        Telephone: (650) 739-3939
                                        Facsimile: (650) 739-3900

Carl R. Roth
State Bar No. 17312000
cr@rothfirm.com
Michael C. Smith
ms@rothfirm.com
THE ROTH LAW FIRM, P.C.
115 N Wellington Suite 200
P O Box 876
Marshall, Texas 75670
Telephone: (903) 935-1665
Facsimile: (903) 935-1797

*Attorneys for ON Semiconductor Corp. and
Semiconductor Components Industries,
LLC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on June 20, 2006.  Any other counsel of record will be served by first class U.S. mail.

/s/ Michael Smith
Kenneth R. Adamo

USCA5 349

# EXHIBIT 1

USCA5 350

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORPORATION, and | § | |
| SEMICONDUCTOR COMPONENTS | § | |
|   INDUSTRIES, L.L.C. | § | |
| | § | CASE NO. 6:06-CV-523 (LED) |
| Plaintiffs, | § | |
| | § | PATENT CASE |
| v. | § | |
| | § | |
| SAMSUNG ELECTRONICS CO., LTD., | § | |
| SAMSUNG ELECTRONICS AMERICA, INC., | § | |
| SAMSUNG TELECOMMUNICATIONS | § | |
|   AMERICA GENERAL, L.L.C., | § | |
| SAMSUNG SEMICONDUCTOR, INC., and | § | |
| SAMSUNG AUSTIN SEMICONDUCTOR, | § | |
|   L.L.C., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PROPOSED DOCKET CONTROL ORDER**

In accordance with the Scheduling Conference held herein on the 13th day of June, 2007, it is hereby **ORDERED** that the following schedule of deadlines is in effect until further order of this court:

USCA5 351

| | |
|---|---|
| **June 15, 2009**<br><br>Court designated date – not flexible without good cause - Motion Required | **9:00 a.m. JURY TRIAL as reached at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| **June 15, 2009** | EXHIBITS & EXHIBIT LISTS:  Each party is requested to provide the Court with an original and two courtesy copies of exhibits and exhibit lists. The Court's preferred format for Exhibit Lists is available on the Court's website at www.txed.uscourts.gov under "Judges' Orders & Information."<br><br>If exhibits are voluminous, provide only specific pages that pertain to the issues on the two courtesy copies.  The original exhibits that are agreed upon by the parties should be ready to be tendered to the Clerk of the Court at the beginning of trial.  Other exhibits that are admitted during trial should be tendered to the Clerk of the Court immediately after admission.<br><br>The parties are further requested to have all exhibits labeled with the following information on each label: Designation of Plaintiff's or Defendant's Exhibit Number and Case Number.  For example: |
| **June 8, 2009**<br><br>Court designated date – not flexible without good cause - Motion Required | **9:00 a.m. JURY SELECTION at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| **May 21, 2009**<br><br>Court designated date – not flexible without good cause - Motion Required | **9:00 a.m. PRETRIAL CONFERENCE at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| May 18, 2009 | Parties to file estimates of the amount of time they request at jury selection and trial for (1) voir dire, (2) opening statements, (3) direct and cross examinations, and (4) closing arguments. |
| May 14, 2009 | Motions in Limine due.  The parties are directed to confer and advise the Court on or before 3:00 o'clock p.m. the day before the pre-trial conference which paragraphs are agreed to and those that need to be addressed at the pre-trial conference. |
| May 14, 2009 | Pretrial Objections due. |
| May 1, 2009 | Objections to Rebuttal Deposition Testimony due. |
| April 27, 2009 | Rebuttal Designations and Objections to Deposition Testimony due.  Cross examination line and page numbers to be included.  In video depositions, each party is responsible for preparation of the final edited video in accordance with their parties' designations and the Court's rulings on objections. |
| April 16, 2009 | Pretrial Disclosures due.<br>Video and Stenographic Deposition Designation due.  Each party who proposes to offer deposition testimony shall file a disclosure identifying the line and page numbers to be offered. |

| March 27, 2009 | **Joint Pretrial Order, Joint Proposed Jury Instructions with citation to authority and Form of the Verdict for jury trials due.** Proposed Findings of Fact and Conclusions of Law with citation to authority for bench trials.<br><br>Notice of Request for Daily Transcript or Real Time Reporting of Court Proceedings due. If a daily transcript or real time reporting of court proceedings is requested for trial or hearings, the party or parties making said request shall file a notice with the Court and email the Court Reporter, Shea Sloan, at shea_sloan@txed.uscourts.gov. |
|---|---|
| February 13, 2009 | **Response to Dispositive Motions (including *Daubert* motions) due.** Responses to dispositive motions filed prior to the dispositive motion deadline, including *Daubert* motions, shall be due in accordance with Local Rule CV-7(e). |
| **January 18, 2009**<br><br>Court designated date – not flexible without good cause – Motion Required | **Dispositive Motions due from all parties and any other motions that may require a hearing (including *Daubert* motions);** Motions for Summary Judgment shall comply with Local Rule CV-56. |
| December 23, 2008 | Parties to Identify Rebuttal Trial Witnesses. |
| December 15, 2008 | Parties to Identify Trial Witnesses; Amend Pleadings (after Markman Hearing). It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings. It is necessary to file a Motion for Leave to Amend after the deadline. However, except as provided in Patent Rule 3-6, if the amendment would effect infringement contentions or invalidity contentions, a motion must be made pursuant to Patent Rule 3-7 irrespective of whether the amendment is made prior to this deadline. |
| December 1, 2008 | **Discovery Deadline.** |
| November 10, 2008 | Parties designate rebuttal expert witnesses (non-construction issues), Rebuttal expert witness reports due. Refer to Local Rules for required information. |
| October 22, 2008 | Parties with burden of proof designate expert witnesses (non-construction issues). Expert witness reports due. Refer to Local Rules for required information. |
| September 22, 2008 | Comply with P.R.3-7 – Furnishing documents and privilege logs pertaining to willful infringement. |
| **August 28, 2008** | ***Markman* Hearing at 9:30 a.m. at the United States District Court, 211 West Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| August 14, 2008 | Parties shall jointly submit a claim construction chart on computer disk in WordPerfect format or in such other format as the Court may direct in accordance with P.R. 4-5(d). |
| August 14, 2008 | Parties to file a notice with the Court stating the estimated amount of time requested for the *Markman* Hearing. The Court will notify the parties if it is unable to accommodate this request.<br><br>**Comply with P.R. 4-5(c)** - Reply brief and supporting evidence due re response to claim construction. The moving party is to provide the Court with 2 binders containing their reply brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |

| | |
|---|---|
| August 7, 2008 | **Comply with P.R. 4-5(b)** - Responsive brief and supporting evidence due to party claiming patent infringement. The moving party is to provide the Court with 2 binders containing their *Markman* brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their *Markman* brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |
| July 24, 2008 | **Comply with P.R. 4-5(a)** - The party claiming patent infringement shall serve and file an opening brief and any evidence supporting its claim construction. The moving party is to provide the Court with 2 binders containing their *Markman* brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their *Markman* brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |
| July 17, 2008 | Deadline for parties, if they desire, to provide Court with tutorials concerning technology involved in patent. If a technical advisor has been appointed, each party that provides a tutorial shall provide a copy to the advisor. |
| July 10, 2008 | **Discovery Deadline - Claim Construction Issues.** |
| June 30, 2008 | Claim Construction Prehearing Conference |
| June 26, 2008 | Respond to Amended Pleadings. |
| June 19, 2008 | Parties to provide name, address, phone number, and curriculum vitae for three (3) agreed technical advisors and information regarding the nominees' availability for *Markman* hearing or a statement that they could not reach an agreement as to any potential technical advisor. |
| June 12, 2008 | Amended Pleadings (pre-claim construction) due from all parties. It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings. It is necessary to file a Motion for Leave to Amend after the deadline. However, if the amendment would affect infringement contentions or invalidity contentions, a motion must be made pursuant to Patent Rule 3-7 irrespective of whether the amendment is made prior to this deadline. |
| June 9, 2008 | **Comply with P.R. 4-3 - Filing of Joint Claim Construction and Prehearing Statement.** |
| May 10, 2008 | Comply with P.R. 4-2 - Exchange of Preliminary Claim Constructions and Extrinsic Evidence. Privilege Logs to be exchanged by parties (or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| April 11, 2008 | Mediation is to be completed. Michael Patterson, 515 S. Vine Ave. Tyler, TX 75702, (903) 592-4433, is appointed as mediator in this cause. The mediator shall be deemed to have agreed to the terms of Court Ordered Mediation Plan of the Unite States District Court of the Eastern District of Texas by going forth with the mediation in accordance with this order. |
| September 17, 2007 | Comply with P.R. 4-1 - Exchange Proposed Terms and Claim Elements for Construction. |
| September 7, 2007 | Comply with P.R. 3-3 - Invalidity Contentions due. Thereafter, it is necessary to obtain leave of Court to add and/or amend invalidity contentions, pursuant to Patent Rule 3-6.<br>Add any inequitable conduct allegations to pleadings. It is not necessary to file a motion for leave to add inequitable conduct allegations to pleadings prior to this date. Thereafter, it is necessary to obtain leave of Court to add inequitable conduct allegations to pleadings. |

USCA5 354

| July 27, 2007 | Comply with P.R. 3-1 and P.R. 3-2 - Disclosure of Asserted Claims and Infringement Contentions due.  Thereafter, it is necessary to obtain leave of Court to add and/or amend infringement contentions, pursuant to Patent Rule 3-6.<br>Join Additional Parties.  It is not necessary to file a motion to join additional parties prior to this date.  Thereafter, it is necessary to obtain leave of Court to join additional parties.<br>Add new patents and/or claims for patents-in-suit.  It is not necessary to file a motion to add additional patents or claims prior to this date.  Thereafter, it is necessary to obtain leave of Court to add patents or claims. |
| *Deadline Date* | **Mediation to be completed.  (Name), (address), and (phone number)** is appointed as mediator in this cause.  The mediator shall be deemed  to have agreed to the terms of Court Ordered Mediation Plan of the United States District Court of the Eastern District of Texas by going forth with the mediation in accordance with this order.  General Order 99-2. |
| *No. of trial days* | **EXPECTED LENGTH OF TRIAL** |

In the event that any of these dates fall on a weekend or Court holiday, the deadline is modified to be the next Court business day.

In the event that any of these dates fall on a weekend or Court holiday, the deadline is modified to be the next Court business day.

The parties are directed to Local Rule CV-7(d), which provides in part that "[i]n the event a party fails to oppose a motion in the manner prescribed herein the Court will assume that the party has no opposition."  Local Rule CV-7(e) provides that a party opposing a motion has **15 days** in which to serve and file supporting documents and briefs after which the Court will consider the submitted motion for decision.

## OTHER LIMITATIONS

(a)    All depositions to be read into evidence as part of the parties' case-in-chief shall be **EDITED** so as to exclude all unnecessary, repetitious, and irrelevant testimony; **ONLY** those portions which are relevant to the issues in controversy shall be read into evidence.

(b)    The Court will refuse to entertain any motion to compel discovery filed after the date of this Order unless the movant advises the Court within the body of the motion that counsel for the parties have first conferred in a good faith attempt to resolve the matter.  See Eastern District of Texas Local Rule CV-7(h).

(c)    The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(i)    The fact that there are motions for summary judgment or motions to dismiss pending;

(ii)    The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(iii)    The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

USCA5 356

# EXHIBIT 1

USCA5 357

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

|  |  |  |
|---|---|---|
| **ON SEMICONDUCTOR CORPORATION, and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C.** | § § § § | |
| **Plaintiffs,** | § § § | **CASE NO. 6:06-CV-523 (LED)** **PATENT CASE** |
| **v.** | § § | |
| **SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR, L.L.C.,** | § § § § § § § § | |
| **Defendants.** | § § § | |

## PROPOSED DOCKET CONTROL ORDER

In accordance with the Scheduling Conference held herein on the 13th day of June, 2007, it is hereby **ORDERED** that the following schedule of deadlines is in effect until further order of this court:

| | |
|---|---|
| **June 15, 2009**<br><br>Court designated date – not flexible without good cause - Motion Required | **9:00 a.m. JURY TRIAL as reached at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| **June 15, 2009** | EXHIBITS & EXHIBIT LISTS:  Each party is requested to provide the Court with an original and two courtesy copies of exhibits and exhibit lists. The Court's preferred format for Exhibit Lists is available on the Court's website at www.txed.uscourts.gov under "Judges' Orders & Information."<br><br>If exhibits are voluminous, provide only specific pages that pertain to the issues on the two courtesy copies.  The original exhibits that are agreed upon by the parties should be ready to be tendered to the Clerk of the Court at the beginning of trial.  Other exhibits that are admitted during trial should be tendered to the Clerk of the Court immediately after admission.<br><br>The parties are further requested to have all exhibits labeled with the following information on each label: Designation of Plaintiff's or Defendant's Exhibit Number and Case Number.  For example: |
| **June 8, 2009**<br><br>Court designated date – not flexible without good cause - Motion Required | **9:00 a.m. JURY SELECTION at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| **May 21, 2009**<br><br>Court designated date – not flexible without good cause - Motion Required | **9:00 a.m. PRETRIAL CONFERENCE at the United States District Court, 211 W. Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| May 18, 2009 | Parties to file estimates of the amount of time they request at jury selection and trial for (1) voir dire, (2) opening statements, (3) direct and cross examinations, and (4) closing arguments. |
| May 14, 2009 | Motions in Limine due.  The parties are directed to confer and advise the Court on or before 3:00 o'clock p.m. the day before the pre-trial conference which paragraphs are agreed to and those that need to be addressed at the pre-trial conference. |
| May 14, 2009 | Pretrial Objections due. |
| May 1, 2009 | Objections to Rebuttal Deposition Testimony due. |
| April 27, 2009 | Rebuttal Designations and Objections to Deposition Testimony due.  Cross examination line and page numbers to be included.  In video depositions, each party is responsible for preparation of the final edited video in accordance with their parties' designations and the Court's rulings on objections. |
| April 16, 2009 | Pretrial Disclosures due.<br>Video and Stenographic Deposition Designation due.  Each party who proposes to offer deposition testimony shall file a disclosure identifying the line and page numbers to be offered. |

USCA5 359

| | |
|---|---|
| March 27, 2009 | **Joint Pretrial Order, Joint Proposed Jury Instructions with citation to authority and Form of the Verdict for jury trials due.** Proposed Findings of Fact and Conclusions of Law with citation to authority for bench trials.<br>Notice of Request for Daily Transcript or Real Time Reporting of Court Proceedings due. If a daily transcript or real time reporting of court proceedings is requested for trial or hearings, the party or parties making said request shall file a notice with the Court and email the Court Reporter, Shea Sloan, at shea_sloan@txed.uscourts.gov. |
| February 13, 2009 | **Response to Dispositive Motions (including *Daubert* motions) due.** Responses to dispositive motions filed prior to the dispositive motion deadline, including *Daubert* motions, shall be due in accordance with Local Rule CV-7(e). |
| **January 18, 2009**<br><br>Court designated date – not flexible without good cause – Motion Required | **Dispositive Motions due from all parties and any other motions that may require a hearing (including *Daubert* motions)**; Motions for Summary Judgment shall comply with Local Rule CV-56. |
| December 23, 2008 | Parties to Identify Rebuttal Trial Witnesses. |
| December 15, 2008 | Parties to Identify Trial Witnesses; Amend Pleadings (after Markman Hearing). It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings. It is necessary to file a Motion for Leave to Amend after the deadline. However, except as provided in Patent Rule 3-6, if the amendment would effect infringement contentions or invalidity contentions, a motion must be made pursuant to Patent Rule 3-7 irrespective of whether the amendment is made prior to this deadline. |
| December 1, 2008 | **Discovery Deadline.** |
| November 10, 2008 | Parties designate rebuttal expert witnesses (non-construction issues), Rebuttal expert witness reports due. Refer to Local Rules for required information. |
| October 22, 2008 | Parties with burden of proof designate expert witnesses (non-construction issues). Expert witness reports due. Refer to Local Rules for required information. |
| September 22, 2008 | Comply with P.R.3-7 – Furnishing documents and privilege logs pertaining to willful infringement. |
| **August 28, 2008** | ***Markman* Hearing at 9:30 a.m. at the United States District Court, 211 West Ferguson, 3rd Floor, Courtroom of Judge Leonard Davis, Tyler, Texas.** |
| August 14, 2008 | Parties shall jointly submit a claim construction chart on computer disk in WordPerfect format or in such other format as the Court may direct in accordance with P.R. 4-5(d). |
| August 14, 2008 | Parties to file a notice with the Court stating the estimated amount of time requested for the *Markman* Hearing. The Court will notify the parties if it is unable to accommodate this request.<br><br>**Comply with P.R. 4-5(c)** - Reply brief and supporting evidence due re response to claim construction. The moving party is to provide the Court with 2 binders containing their reply brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |

USCA5 360

| August 7, 2008 | **Comply with P.R. 4-5(b)** - Responsive brief and supporting evidence due to party claiming patent infringement. The moving party is to provide the Court with 2 binders containing their *Markman* brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their *Markman* brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |
|---|---|
| July 24, 2008 | **Comply with P.R. 4-5(a)** - The party claiming patent infringement shall serve and file an opening brief and any evidence supporting its claim construction. The moving party is to provide the Court with 2 binders containing their *Markman* brief and exhibits appropriately tabbed. If a technical advisor has been appointed the moving party is to provide their *Markman* brief on disk or CD along with a hard copy, tabbed and bound in notebook format with exhibits to the advisor. |
| July 17, 2008 | Deadline for parties, if they desire, to provide Court with tutorials concerning technology involved in patent. If a technical advisor has been appointed, each party that provides a tutorial shall provide a copy to the advisor. |
| July 10, 2008 | **Discovery Deadline - Claim Construction Issues.** |
| June 30, 2008 | Claim Construction Prehearing Conference |
| June 26, 2008 | Respond to Amended Pleadings. |
| June 19, 2008 | Parties to provide name, address, phone number, and curriculum vitae for three (3) agreed technical advisors and information regarding the nominees' availability for *Markman* hearing or a statement that they could not reach an agreement as to any potential technical advisor. |
| June 12, 2008 | Amended Pleadings (pre-claim construction) due from all parties. It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings. It is necessary to file a Motion for Leave to Amend after the deadline. However, if the amendment would affect infringement contentions or invalidity contentions, a motion must be made pursuant to Patent Rule 3-7 irrespective of whether the amendment is made prior to this deadline. |
| June 9, 2008 | **Comply with P.R. 4-3 - Filing of Joint Claim Construction and Prehearing Statement.** |
| May 10, 2008 | Comply with P.R. 4-2 - Exchange of Preliminary Claim Constructions and Extrinsic Evidence. Privilege Logs to be exchanged by parties (or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| April 11, 2008 | Mediation is to be completed. Michael Patterson, 515 S. Vine Ave. Tyler, TX 75702, (903) 592-4433, is appointed as mediator in this cause. The mediator shall be deemed to have agreed to the terms of Court Ordered Mediation Plan of the Unite States District Court of the Eastern District of Texas by going forth with the mediation in accordance with this order. |
| September 17, 2007 | Comply with P.R. 4-1 - Exchange Proposed Terms and Claim Elements for Construction. |
| September 7, 2007 | Comply with P.R. 3-3 - Invalidity Contentions due. Thereafter, it is necessary to obtain leave of Court to add and/or amend invalidity contentions, pursuant to Patent Rule 3-6. <br> Add any inequitable conduct allegations to pleadings. It is not necessary to file a motion for leave to add inequitable conduct allegations to pleadings prior to this date. Thereafter, it is necessary to obtain leave of Court to add inequitable conduct allegations to pleadings. |

USCA5 361

| July 27, 2007 | Comply with P.R. 3-1 and P.R. 3-2 - Disclosure of Asserted Claims and Infringement Contentions due.  Thereafter, it is necessary to obtain leave of Court to add and/or amend infringement contentions, pursuant to Patent Rule 3-6.<br>Join Additional Parties.  It is not necessary to file a motion to join additional parties prior to this date.  Thereafter, it is necessary to obtain leave of Court to join additional parties.<br>Add new patents and/or claims for patents-in-suit.  It is not necessary to file a motion to add additional patents or claims prior to this date.  Thereafter, it is necessary to obtain leave of Court to add patents or claims. |
| *Deadline Date* | **Mediation to be completed.  (Name), (address), and (phone number)** is appointed as mediator in this cause.  The mediator shall be deemed  to have agreed to the terms of Court Ordered Mediation Plan of the United States District Court of the Eastern District of Texas by going forth with the mediation in accordance with this order.  General Order 99-2. |
| *No. of trial days* | **EXPECTED LENGTH OF TRIAL** |

In the event that any of these dates fall on a weekend or Court holiday, the deadline is modified to be the next Court business day.

In the event that any of these dates fall on a weekend or Court holiday, the deadline is modified to be the next Court business day.

The parties are directed to Local Rule CV-7(d), which provides in part that "[i]n the event a party fails to oppose a motion in the manner prescribed herein the Court will assume that the party has no opposition."  Local Rule CV-7(e) provides that a party opposing a motion has **15 days** in which to serve and file supporting documents and briefs after which the Court will consider the submitted motion for decision.

## <u>OTHER LIMITATIONS</u>

(a)    All depositions to be read into evidence as part of the parties' case-in-chief shall be **EDITED** so as to exclude all unnecessary, repetitious, and irrelevant testimony; **ONLY** those portions which are relevant to the issues in controversy shall be read into evidence.

(b)    The Court will refuse to entertain any motion to compel discovery filed after the date of this Order unless the movant advises the Court within the body of the motion that counsel for the parties have first conferred in a good faith attempt to resolve the matter.  See Eastern District of Texas Local Rule CV-7(h).

(c)    The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(i)    The fact that there are motions for summary judgment or motions to dismiss pending;

(ii)    The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(iii)    The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

USCA5 363

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS

### TYLER  DIVISION

**DATE:** June 13, 2007

**JUDGE**                                                **REPORTER:** Shea Sloan
LEONARD DAVIS

**LAW CLERKS:** Andrea Houston, Rene Trevino

| | |
|---|---|
| **ON Simiconductor Corp.**<br>**Plaintiffs**<br><br>**vs.**<br><br>**Samsung Electronics America, Inc.**<br>**Defendants** | **CIVIL ACTION NO**: 6:06-CV-523<br><br><br>**Scheduling Conference &**<br>**Motion Hrg (Dkt #7)** |

| ATTORNEYS FOR PLAINTIFFS | ATTORNEY FOR DEFENDANT |
|---|---|
| Ken Adamo (Jones Day)<br>Behrooz Shariati (Jones Day)<br>Michael Smith (Roth Firm) | Mike Jones (Potter Minton)<br>Allen Gardner (Potter Minton)<br>John DeMarais (Kirkland & Ellis)<br>James Marina (Kirkland & Ellis) |

On this day, came the parties by their attorneys and the following proceedings were had:

**OPEN:**  2:05 pm                       **ADJOURN:**    2:27 pm

| TIME: | MINUTES: |
|---|---|
| 2:05 pm | Case called.  Mr. Adamo, Mr. Smith & Mr. Shariati announced ready for plaintiff.  Mr. Jones, Mr. Gardner, Mr. DeMarais & Mr. Marina announced ready for defendant. |
| 2:06 pm | Court will take up **Motion to Transfer (Dkt #7).** |
| 2:06 pm | Mr. DeMarais presented Motion to Transfer. |
| 2:10 pm | Mr. Adamo responded. |
| 2:18 pm | Mr. DeMarais responded. |
| 2:24 pm | Mr. Adamo further responded. |
| 2:25 pm | Court addressed the parties and Court has visited with Judge Thynge this morning.  Court will transfer case to Delaware.  Court will be happy to receive this case back here. |
| 2:27 pm | There being nothing further, Court adjourned. |

**DAVID J. MALAND, CLERK**

**FILED: 6.13.2007**

BY: *Rosa L. Ferguson*, Courtroom Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **ON SEMICONDUCTOR CORPORATION and** | § | |
| **SEMICONDUCTOR COMPONENTS** | § | |
| **INDUSTRIES, LLC** | § | |
| | § | |
| **Plaintiffs** | § | **CASE NO.  6:06-CV-523** |
| | § | **PATENT CASE** |
| **vs.** | § | |
| | § | |
| **SAMSUNG ELECTRONICS CO., LTD.,** | § | |
| **SAMSUNG ELECTRONICS AMERICA, INC.,** | § | |
| **SAMSUNG TELECOMMUNICATIONS** | § | |
| **AMERICA GENERAL, LLC and SAMSUNG** | § | |
| **SEMICONDUCTOR, INC.** | § | |
| | § | |
| **Defendants** | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion to transfer pursuant to the first-to-file rule (Docket

No. 12).  Having considered the motion, all other relevant briefing, and the applicable law, the Court

**GRANTS** Defendants' motion to transfer.

## BACKGROUND

On November 30, 2006, Samsung Electronics Co. Ltd. ("SECL") filed suit in the District of

Delaware seeking a declaration that ON Semiconductor Corporation and Semiconductor

Components Industries, LLC's (collectively "ON Semiconductor") three United States patents—U.S.

Patent Nos. 5,563,594 ("the '594 patent"), 6,362,644 ("the '644 patent"), and 5,361,001 ("the '001

patent")—are invalid and not infringed by SECL.

On December 4, 2006, ON Semiconductor filed suit in this Court against SECL and

Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, and

USCA5 365

Samsung Semiconductor Inc. ("the other Samsung entities") alleging infringement of the '594 patent, the '644 patent, the '001 patent, and a fourth patent not at issue in the Delaware action, U.S. Patent No. 5,000,827 ("the '827 patent").

On December 21, 2006, SECL amended its complaint in the Delaware action to add the other Samsung entities as co-plaintiffs, a claim for declaratory judgment of invalidity and noninfringement of the '827 patent, and a claim against ON Semiconductor for infringement of U.S. Patent No. 5,252,177 ("the '177 patent").

Samsung now moves this Court to transfer this action under the first-to-file rule to the District of Delaware where the declaratory judgment action is pending. ON Semiconductor argues this action is the first filed because SECL's amended complaint was filed after ON Semiconductor filed suit here and does not related back to SECL's original compliant, SECL filed its complaint in bad faith, and judicial economy is best served by proceeding in Texas.

## APPLICABLE LAW

When overlapping suits are filed in multiple federal courts, each court must decide whether to keep the case, or whether interests of judicial economy favor transferring the case to a sister court so all issues can be resolved in the same forum. *See Tex. Instruments, Inc. v. Micron Semiconductor,* 815 F. Supp. 994, 997–98 (E.D. Tex. 1993). "The general rule favors the forum of the first-filed action" as the forum for resolving all the issues in dispute. *Genetech v. Eli Lilly & Co.,* 998 F.2d 931, 937 (Fed. Cir. 1993). Exceptions to this rule though "are not rare, and are made when justice or expediency requires." *Id.*

The first-to-file rule applies when the two actions involve closely related questions or subject matter or the core issues substantially overlap, but the core issues do not need to be identical. *Tex. Instruments Inc.*, 815 F. Supp. at 997. A subsequent action that does not have complete identity of

USCA5 366

the parties can still substantially overlap on the substantive issues of the first-filed action, warranting dismissal or transfer. *Superior Sav. Ass'n v. Bank of Dallas*, 705 F. Supp. 326, 328–29 (N.D. Tex. 1989); *see Save Power Ltd. v. Sintek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997).

Once it has been proven that the two actions might substantially overlap, the court with the second-filed action transfers the case to the court where the first-filed action is pending. The court of the first-filed action then decides if the cases actually do substantially overlap and require consolidation. *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599 (5th Cir. 1999). The underlying policies supporting the first-to-file rule are comity and the orderly administration of justice. *Superior Sav. Ass'n*, 705 F. Supp. at 331.

## ANALYSIS

ON Semiconductor contends this action is the first filed because SECL's original complaint is no longer a live pleading and SECL's amended complaint was filed after ON Semiconductor filed suit here and does not related back to SECL's original compliant. ON Semiconductor's arguments that its complaint was filed first are meritless. Although SECL amended its complaint to add the other Samsung entities as plaintiffs and claims on two additional patents, SECL's amended complaint is not so different from its original complaint that the original complaint should be disregarded for the first-to-file analysis.

As originally filed, both suits involved SECL and ON Semiconductor and the '594, '644, and '001 patents. As amended, the Delaware action involves all of the same parties and patents as the Texas action. The first-to-file rule only requires substantial overlap; it does not require that the core issues and parties be identical. *Tex. Instruments Inc.*, 815 F. Supp. at 997; *Superior Sav. Ass'n*, 705 F. Supp. at 328–29; *see Save Power Ltd.*, 121 F.3d at 950. Accordingly, the Delaware action is the first filed.

3

USCA5 367

ON Semiconductor also argues that the SECL filed suit in Delaware in bad faith because the parties were still involved in licensing negotiations. This Court will leave it to the Delaware court to determine whether that suit was improperly filed.

Finally, ON Semiconductor argues the litigation should proceed in Texas because a district judge has not been assigned to the case in Delaware. However, a magistrate judge has been designated to hear and determine any nondispositive pretrial matters. *See* 28 U.S.C. § 636. Accordingly, the Court will not assume that the litigation will not receive prompt attention in Delaware.

## CONCLUSION

Since the Delaware action is the first filed, the Court **GRANTS** Samsung's motion and **ORDERS** the case transferred to the district judge and magistrate judge assigned *Samsung Electronics Co. Ltd. v. ON Semiconductor Corporation* in the District of Delaware. Should the Delaware court determine that SECL's original complaint was not properly filed, this Court would be happy to receive this case back under the first-to-file rule.

So ORDERED and SIGNED this 21st day of June, 2007.



**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**

USCA5 368