IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ON SEMICONDUCTOR CORP. and<br>SEMICONDUCTOR COMPONENTS<br>INDUSTRIES, LLC,<br><br>        Plaintiffs,<br><br>   v.<br><br>SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>SAMSUNG TELECOMMUNICATIONS<br>  AMERICA GENERAL, L.L.C.,<br>SAMSUNG SEMICONDUCTOR, INC., and<br>SAMSUNG AUSTIN SEMICONDUCTOR L.L.C.,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 07-449 (JJF) |
| SAMSUNG ELECTRONICS CO., LTD.,<br>SAMSUNG ELECTRONICS AMERICA, INC.,<br>SAMSUNG TELECOMMUNICATIONS<br>  AMERICA GENERAL, L.L.C.,<br>SAMSUNG SEMICONDUCTOR, INC., and<br>SAMSUNG AUSTIN SEMICONDUCTOR L.L.C.,<br><br>        Plaintiffs,<br><br>   v.<br><br>ON SEMICONDUCTOR CORP. and<br>SEMICONDUCTOR COMPONENTS<br>INDUSTRIES, LLC,<br><br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 06-720 (JJF) |

**ON SEMICONDUCTOR CORP. AND SEMICONDUCTOR COMPONENTS
INDUSTRIES, LLC'S OPENING BRIEF IN SUPPORT OF
<u>THEIR MOTION TO COMPEL DISCOVERY</u>**

                                         MORRIS, NICHOLS, ARSHT & TUNNELL LLP
                                         Karen Jacobs Louden (#2881)
                                         Richard J. Bauer (#4828)
                                         1201 N. Market Street
                                         P.O. Box 1347
                                         Wilmington, DE  19899
                                         (302) 658-9200
                                         klouden@mnat.com
                                         rbauer@mnat.com
                                         *Attorneys for ON Semiconductor Corp.*
                                          *and Semiconductor Components Industries, LLC*

February 7, 2008

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ....................................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ...............................................................2

SUMMARY OF ARGUMENT ................................................................................................4

STATEMENT OF FACTS .......................................................................................................4

    A.    Technology At Issue. .......................................................................................4

    B.    Samsung Refuses To Produce Basic Technical Information About The Design Of The Accused Products And The Processes By Which They Are Made ...................................................6

    C.    Samsung Refuses To Produce Documents Concerning Other Legal Or Administrative Proceedings Involving The Same Accused Products................................................................9

ARGUMENT ..........................................................................................................................10

    A.    Samsung Should Be Compelled To Produce GDS2 And Schematic Databases Showing The Layout And Design Of Samsung's Accused Products................................................10

    B.    Samsung Should Be Compelled To Produce Information And Documents Showing Its Electroplating Methods......................... 12

    C.    Samsung Should Be Compelled To Produce Documents Concerning Any Legal Or Administrative Proceedings Involving The Same Accused Products. ............................................... 13

CONCLUSION .......................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Cornell Res. Found. v. Hewlett Packard Co.*,
   223 F.R.D. 55 (N.D.N.Y. 2003)..................................................................................................10

*MOSAID Techs. Inc. v. Samsung Elecs. Co.*,
   No. 01-4340-WJM, 2004 U.S. Dist. LEXIS 23595 (D.N.J. Oct. 1, 2004) ...............................11

*Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*,
   206 F.R.D. 392 (D. Del. 2002) ..................................................................................................11

*Pitney Bowes, Inc. v. Kern Int'l, Inc.*,
   239 F.R.D. 62 (D. Conn. 2006)..................................................................................................10

*Promos Techs., Inc. v. Freescale Semiconductor, Inc.*,
   No. 06-788-JJF (D. Del. Oct. 31, 2007) ....................................................................................10


**FEDERAL RULES**

Fed. R. Civ. P. 26.............................................................................................................................13

**INTRODUCTION**

Samsung[1] filed its complaint more than a year ago and the document production cutoff is barely a month away. Nevertheless, Samsung still refuses to produce basic technical information and documents sufficient to show the design, layout and manufacture of its accused products. ON Semiconductor[2] respectfully requests that the Court order Samsung to comply with its discovery obligations and produce the following documents that ON Semiconductor requested more than ten months ago:

> 1)   Technical information and documents showing the design and layout of the accused products including schematic and GDS2 database systems used to design and fabricate Samsung's accused products;
>
> 2)   Manufacturing process information, including process flows, used in manufacturing the products accused of infringing ON Semiconductor's process patent; and
>
> 3)   All pleadings, transcripts, expert reports, settlement agreements and exhibits from legal or administrative proceedings involving the Samsung products at-issue in this case.

This basic technical information and documents used to design and manufacture Samsung's accused products are not only directly and highly relevant to the claims and defenses asserted in this litigation, but are *central* to the infringement issues which Samsung has asked this Court to decide.

ON Semiconductor repeatedly has requested that Samsung produce these key documents. Samsung's counsel agreed – *twice* – and represented that it would produce these documents by January 15, 2008. The vast majority of Samsung's 140,000 page production,

---

[1]   "Samsung" refers collectively to Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America General, LLC, Samsung Semiconductor, Inc. and Samsung Austin Semiconductor, LLC.

[2]   "ON Semiconductor" refers collectively to ON Semiconductor Corp. and Semiconductor Components Industries, L.L.C.

1

however, consisted of documents from Samsung's public web site. Although a random smattering of technical documents was included in Samsung's production, none of them contained a complete description of a single product, nor was produced in usable form.[3] Indeed, many of the documents were unreadable. When asked why the key documents ON Semiconductor requested were not produced, as previously agreed, Samsung's counsel acknowledged that Samsung had design and layout documentation, including schematic and GDS2 databases, but had intentionally withheld them because Samsung decided that they are irrelevant. To the contrary, the requested schematic and GDS2 databases contain information critical to demonstrating that Samsung's products, and the processes used to manufacture them, infringe ON Semiconductor's patents – the very issue Samsung brought before this Court over a year ago.

## NATURE AND STAGE OF THE PROCEEDINGS

Samsung filed its declaratory judgment action more than a year ago, on November 30, 2006, seeking a declaration that three of ON Semiconductor's patents are invalid and not infringed. (C.A. No. 06-720 (D.I. 1).) The three ON Semiconductor patents Samsung challenged are U.S. Patent Nos. 5,563,594, 6,362,644 and 5,361,001 (collectively "ON Semiconductor's Circuit Patents") – all of which relate to electronic circuits used in semiconductor chips. (*Id*.) Samsung amended its complaint on December 21, 2006, to add a declaratory judgment count on a fourth ON Semiconductor patent – U.S. Patent No. 5,000,827 ("the '827 patent") – and assert infringement of one Samsung patent – U.S. Patent No. 5,252,177

---

[3]  Samsung did not produce any documents or information sufficient to identify or cross-correlate the few technical documents to Samsung's products, as requested **nine months** ago in ON Semiconductor's second set of document requests.

("the '177 patent"). (D.I. 8.) Both the '827 and '177 patents involve processes for manufacturing semiconductors. (*Id*. Exs. D and E.)

Nearly nine months ago, both sides served and responded to requests for production and interrogatories. (D.I. 67-69, 71-73.) The two cases were then reassigned to this Court,[4] and on October 5, 2007, the Court entered a Scheduling Order requiring all document production "to be completed by **March 21, 2008**."[5] (C.A. No. 07-449-JJF (D.I. 47 ¶ 3(a)) (emphasis in original).) Shortly after entry of the Scheduling Order, the parties began negotiating a three-level Protective Order, which the Court entered on January 8, 2008. (C.A. No. 06-270 (D.I. 88), C.A. No. 07-449 (D.I. 61).) Both parties produced documents as of January 16, 2008.

Although Samsung assured ON Semiconductor that it would produce basic technical information and documents sufficient to show the design and layout of its products, it was immediately apparent that Samsung's production fell short. After unsuccessful conferences with Samsung's counsel regarding Samsung's inadequate document production, ON Semiconductor filed a motion to compel Samsung to produce information and documents critical to the infringement issues before the Court. This is ON Semiconductor's opening brief in support of that motion.

---

[4] This action was initially assigned to the judicial vacancy, and referred to Magistrate Judge Thynge for all pretrial proceedings. (D.I. 7.) After a scheduling order was entered on July 30, 2007 (D.I. 80), the parties exchanged initial disclosures on August 13, 2007. (D.I. 81, 82.) Meanwhile, on July 19, 2007, the patent infringement action ON Semiconductor brought against Samsung in the Eastern District of Texas asserting the same four ON Semiconductor patents at issue here in Samsung's declaratory judgment action was transferred to this Court. (C.A. No. 07-449-JJF.)

[5] At the Scheduling Conference, the Court consolidated discovery in C.A. No. 06-720 with C.A. No. 07-449, and vacated the Scheduling Order entered by Magistrate Judge Thynge in C.A. No. 06-720. (*See* C.A. 06-720 (Oral Order Entered on Oct. 10, 2007).)

3

**SUMMARY OF ARGUMENT**

ON Semiconductor moves to compel Samsung to produce three categories of information and documents which have been withheld by Samsung and which are central to the infringement issues Samsung has asked this Court to resolve. These three categories are:

1) Technical information and documents showing the design and layout of the accused products including schematic and GDS2 database systems used to design and fabricate Samsung's accused products;

2) Manufacturing process information, including process flows, used in manufacturing the products accused of infringing ON Semiconductor's process patent; and

3) All pleadings, transcripts, expert reports, settlement agreements and exhibits from legal or administrative proceedings involving the Samsung products at-issue in this case.

These documents are directly and highly relevant to the claims and defenses in this litigation, and in fact, are critical to adjudication of the key issue of infringement in this case, as they are the very blueprints used to design and manufacture the Samsung products at-issue. Samsung's refusal to produce them – nine months after they were requested and one month before the cutoff of document production – unnecessarily burdens and prejudices ON Semiconductor in preparing its case for trial. ON Semiconductor further requests that the Court order Samsung to provide the proprietary software it uses for its schematic and GDS2 database systems, along with the license keys necessary to access that software upon production, particularly given the short time remaining in discovery.

**STATEMENT OF FACTS**

A.   <u>Technology At Issue.</u>

Each of ON Semiconductor's Circuit Patents claim certain types and operation of electronic circuits that are made up of claimed components in claimed configurations. (*See* C.A.

4

No. 06-720 (D.I. 8 Exs. A-C).)   ON Semiconductor's '827 patent relates to electroplating methods used to manufacture semiconductor chips. (*Id*. Ex. D.)

Today's electronic integrated circuits are enormously complicated. As a result, they are designed with "Electronic Design Automation" or "EDA" tools – *i.e*., computer-aided engineering and design software – because modern multi-million-transistor circuits are too complex to design by hand. A function of EDA tools is to translate high-level descriptions of an integrated circuit into the basic components that will be fabricated on a chip. To put the current discovery dispute in context, it is helpful to understand this multi-step design and fabrication process.

The process begins with designing and verifying the functionality of a circuit at a very high level, for example, using "Register-transfer level" or "RTL" Designs. At this level, individual transistors are not yet considered. Aided by EDA tools, the RTL design is converted to the transistor-level designs, referred to as "netlists" or "schematics." The netlists describe in words the connections that the RTL design requires for each transistor. "Schematics" are created with other EDA tools using the netlist information to provide an easy-to-read diagram of the circuit's components – *i.e.*, the transistors, capacitors, resistors and their connections. A single modern integrated circuit, or "chip," may have millions of transistors and can be tested with EDA tools before a company begins to manufacture a chip.

Finally, using more EDA tools, the physical "layout" of the chip's individual components is generated from the schematic. The layout information, stored as a "GDS2" database, is the blueprint used for manufacturing the actual semiconductor chip. The manufacturing steps are set forth in the fabrication facilities' "process flows." It is difficult – if not impossible – to interpret circuit's design from a GDS2 database absent provided by

schematic databases. Both schematic and GDS2 databases are created and stored using several proprietary software programs. For ON Semiconductor to obtain access to any of Samsung's programs, it is difficult, time consuming, and expensive. Samsung, however, is already using them.

> B. Samsung Refuses To Produce Basic Technical Information About The Design Of The Accused Products And The Processes By Which They Are Made.

ON Semiconductor served Samsung with document requests more than ten months ago, that sought, among other things, all documents concerning Samsung's non-infringement contentions with respect to the four ON Semiconductor patents challenged in its amended complaint. (Bauer Decl. Ex. 1 (Request Nos. 25, 32-39).) In response, Samsung agreed, subject to its objections, that it would "produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search." (*Id*. at 18, 23-27.)

Several weeks later, on May 8, 2007, ON Semiconductor posed additional requests seeking basic technical documents relating to "schematics, specifications, catalogs, data sheets, design manuals, and drawings" sufficient to show whether Samsung's accused products infringe any claim of ON Semiconductor's Circuit Patents. (Bauer Decl. Ex. 2 (Request No. 103; *see also* Request Nos. 95-102, 104-105, and 111-121).) ON Semiconductor also sought information relevant to its '827 patent, such as documents showing "the electroplating methods [or] procedures performed by SAMSUNG using . . . the Novellus Sabre® system." (*Id.* (Request No. 110; *see also* Request Nos. 95-102, 106-109).) Samsung responded to most of these requests, such as Request Nos. 95-105 and 111-121, that it would "produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search," subject to its objections. (*Id*. 6-9, 14-19.) As to requests specifically targeting only the '827 patent, such as Request Nos. 106-110, however, Samsung responded that, subject to its

6

objections, it would "produce responsive, non-privileged documents relating to *methods specifically accused of infringing the '827 patent* to the extent such documents exist and are located after a reasonable search." (*Id*. at 11-13 (emphasis added).)

Because schematic and GDS2 databases show the structure, components and design of integrated circuits, and process flows detail the particular electroplating methods used in fabrication, ON Semiconductor prioritized the production of these documents. On January 4, 2008, ON Semiconductor indicated that it would file a motion to compel "to get on the Court's docket for February" unless Samsung's counsel confirmed that it would "produce, at a minimum," five categories of information and documents "on or before January 15, 2008." (Bauer Decl. Ex. 3.) Among those categories were "[d]esign information for the accused Samsung products" including "*design databases, netlists, schematics, GDS2 layout information*, design documents, and specifications," as well as "documentation of the development, design, and operation of any electroplating methods performed in production of the accused Samsung products," including "process flows." (*Id.* (emphasis added).) As in its responses to ON Semiconductor's documents requests, Samsung's counsel agreed, stating that "Samsung will be producing non-privileged documents responsive to the [January 4] categories by January 15." (Bauer Decl. Ex. 4.)

Samsung failed to abide by its agreements, however. About 130,000 pages of the 140,000 pages Samsung produced on January 15 were from Samsung's public web site, and none of the remaining 10,000 pages included the GDS2 layout information or process flow documents requested on January 4. (Bauer Decl. Ex. 5.) Instead, Samsung produced some copies of schematics that were in many respects incomplete, illegible or incomprehensible, and without any correlation to Samsung's products.

7

When asked why it did not produce what it agreed to, Samsung's counsel claimed for the first time that "layout design documentation, including netlists and GDS2 layout information, is irrelevant to the patents involved in this action." (Bauer Decl. Ex. 6.) Samsung ignores that the incomplete schematics it produced for a few thousand transistors do not describe the layouts of the accused circuits provided in schematic and GDS2 databases. Moreover, even if Samsung produced the documents, as it agreed to, reviewing them is time consuming and expensive, given that they are stored using proprietary, commercially available software programs that can only be viewed with licenses keys.

As to information about electroplating methods, Samsung concedes that it uses the Novellus Sabre® System, one of the systems explicitly identified in ON Semiconductor's document requests. Yet Samsung refuses to produce the requested documents, asserting that they are "beyond [ON Semiconductor's] infringement contentions in this case." (*Id*. at 2.) That assertion is based on a single example plucked from ON Semiconductor's responses to one of Samsung's contention interrogatories,[6] but overlooks the detailed claim chart that follows in which ON Semiconductor accuses Samsung, "[o]n information and belief," of using "Sab[er] Systems (Novellus)." (Bauer Decl. Ex. 7, at 23.) Using the words "include" and "such as" in a response to a contention interrogatory does not limit the scope of document production.

---

[6]   Samsung is presumably referring to ON Semiconductor's response to Samsung's Interrogatory No. 1 in which ON Semiconductor stated: "On information and belief, claims 1 and 2 of the '827 patent are infringed by processes used to make Samsung products *that include* plated structures *such as* 'bumped die' or 'wafer level packaging' with a pitch of less than about 150 microns (μm)." (Bauer Decl. Ex. 7, at 21-22 (emphasis added).) Samsung conveniently ignores the words "include" and "such as" and insists this response limits Samsung's discovery obligations to only "'bumped die' or wafer level packaging' with a pitch of less than about 150 microns (μm)." (Bauer Decl. Ex. 6.)

ON Semiconductor attempted to resolve these issues with Samsung's counsel, writing them letters on January 23, 30 and 31, and holding teleconferences with them on January 31 and February 7. (*See*, *e.g*., Bauer Decl. Exs 5, 8-9.) Samsung has been unwilling to change its position, however.

C. Samsung Refuses To Produce Documents Concerning Other Legal Or Administrative Proceedings Involving The Same Accused Products.

In its first set of document requests, ON Semiconductor also requested all documents concerning any legal or administrative proceedings involving the accused products, such as "pleadings, transcripts of hearings, depositions, trial transcripts, settlement agreements, and . . . exhibits." (Bauer Decl. Ex. 1 (Request No. 42).) Samsung responded that, "[s]ubject to its general and specific objections, Samsung will produce responsive, non-privileged documents to the extent such documents exist and are located after a reasonable search." (*Id*. at 29-30.)

On January 30, 2008, after ON Semiconductor reiterated its request for such documents, Samsung incorrectly asserted that they "are not relevant to the claims or defenses in this case." (Bauer Decl. Ex. 6; *see also* Ex. 9.) Any admissions, for example, that Samsung has made about its own products, such as design, circuitry, manufacture or operation, are relevant to the same products placed at issue by Samsung's declaratory judgment claims. Furthermore, any statements about the sales or marketing of those products may be relevant to damages here. To date, however, Samsung has refused to produce such materials. (Bauer Decl. Exs. 9 at 3.)

9

**ARGUMENT**

      A.      Samsung Should Be Compelled To Produce GDS2 And Schematic Databases Showing The Layout And Design Of Samsung's Accused Products.

Samsung should be compelled to produce basic technical information and documents showing the design, layout, structure, operation and components of its own products, including schematic databases, which diagram the circuitry implemented in Samsung's products, as well as GDS2 databases, which provide the final layout used to manufacture the products. This information is highly material to demonstrating that Samsung's electronic circuits have the structure and operation claimed by the ON Semiconductor patents.

This Court and others have routinely permitted such discovery in cases involving semiconductor technology similar to that at issue here. Indeed, this Court recently granted a motion to compel similar information, ordering the production of "circuit diagrams" and "electronic copies of the RTL [(Register Transfer Level) circuit design] documentation." *Promos Techs., Inc. v. Freescale Semiconductor, Inc.*, No. 06-788-JJF (D. Del. Oct. 31, 2007) (Farnan, J.) (Bauer Decl. Ex. 10); *see also Pitney Bowes, Inc. v. Kern Int'l, Inc.*, 239 F.R.D. 62, 65-66 (D. Conn. 2006) ("[T]he technical specifications in drawings related to . . . the accused devices at issue in the case [are] not only directly and highly relevant, but indeed are critical to the infringement claims asserted in the case."); *Cornell Res. Found. v. Hewlett Packard Co.*, 223 F.R.D. 55, 75 (N.D.N.Y. 2003) (ordering accused infringer to make available to plaintiffs' expert "the technical drawings and specifications which it maintains in the ordinary course of its business in electronic format regarding the [accused] family of processors").

Samsung's conduct belies its duty of full disclosure, and is inconsistent with the broad type of discovery allowed under the Federal Rules of Civil Procedure.[7] *Novartis Pharms. Corp. v. Eon Labs Mfg., Inc.*, 206 F.R.D. 392, 394 (D. Del. 2002) ("The Federal Rules of Civil Procedure allow for a broad scope of discovery."). That Samsung is withholding the requested technical information is particularly ironic, given that Samsung has previously been sanctioned for refusing to produce "documents regarding schematics, completion reports, netlists and other technical documents." *MOSAID Techs. Inc. v. Samsung Elecs. Co.*, No. 01-4340-WJM, 2004 U.S. Dist. LEXIS 23595, at *8-10, 15-16 (D.N.J. Oct. 1, 2004) (affirming sanctions that included jury instruction allowing an adverse inference of infringement, noting "Samsung had an obligation to produce relevant, responsive documents regarding schematics, completion reports, netlists and other technical documents" and "[i]t is not for Samsung to dictate to [patentee] what evidence it should and should not be able to rely upon to prove its case").

Any further withholding of this information will only cause greater delay given the looming March 21 document production cutoff. Yet, Samsung has neither produced this information nor provided any information about the database systems it uses. Had Samsung produced this documentation when it agreed to, on January 15, 2008, ON Semiconductor could have identified the proper software tools and obtained access to them. Instead, by withholding the requested information, Samsung has deprived ON Semiconductor of a meaningful opportunity to conduct a proper infringement analysis of Samsung's accused products.

---

[7]  Not only are these documents relevant, but Samsung cannot use the confidential nature of the documents as an excuse to withhold them. In fact, not only was Samsung obligated to produce relevant documents on an attorneys eyes only basis under Del. L.R. 26.2, but the Protective Order protects such confidential documents, and the parties agreed that, "[i]n light of the high level of security afforded 'Highly Confidential – Outside Counsel Eyes Only' information, no party may withhold production of discoverable information solely on the grounds that such information is a trade secret." (C.A. 06-720 (D.I. 88 at 13).)

Accordingly, Samsung should be ordered to produce not only the documents responsive to Request Nos. 95-102, 104-105 and 111-121, including schematic and GDS2 databases, but also the software and license keys for viewing them. Producing software with license keys would minimize the prejudice to ON Semiconductor by allowing it begin it analysis as soon as possible.

### B. Samsung Should Be Compelled To Produce Information And Documents Showing Its Electroplating Methods.

Samsung is obligated to produce documents, including process flows, sufficient to show the electroplating methods used to make its products because they are relevant to Samsung's declaratory judgment claim with respect to the '827 patent. Although that alone warrants producing them, Samsung has admitted that it uses the Novellus Sabre® system, which is explicitly identified in ON Semiconductor's document requests as a system used to perform electroplating. Remarkably, however, Samsung refuses to produce documents related to this system because it believes they are "beyond [ON Semiconductor's] infringement contentions in this case." Samsung is wrong.

First, as mentioned above, Samsung ignores ON Semiconductor's detailed claim chart in which ON Semiconductor identifies the system that admittedly is at issue in this case – the Novellus Saber®. Second, Samsung misunderstands the meaning and use of the words "include" and "such as" in ON Semiconductor's interrogatory responses – which were intended to provide preliminary contentions at the early stages of the litigation without the benefit of discovery. These early contentions do not (and cannot) limit the scope of Samsung's discovery obligations.[8]

---

[8] Indeed Samsung has demanded and received documents of much broader scope then the products Samsung identified in its own "infringement contention." Samsung responded to ON Semiconductor's Interrogatory No. 5, stating: "Samsung alleges upon information

Thus, Samsung should be ordered to produce documents responsive to ON Semiconductor Request Nos. 106-110, including process flows and other documents relating to Samsung's use of the Novellus Sabre® System.

> C. Samsung Should Be Compelled To Produce Documents Concerning Any Legal Or Administrative Proceedings Involving The Same Accused Products.

Samsung should be ordered to produce documents concerning any legal or administrative proceedings involving the same products at issue in this litigation, including any pleadings, transcripts of hearings, depositions, trial transcripts, settlement agreements and exhibits. Samsung's assertion that these documents are not relevant here is wrong.

What Samsung says about its own products in any other legal or administrative action is directly relevant to the issues Samsung brought before this Court when it filed its declaratory judgment action. *See* Fed. R. Civ. P. 26 Advisory Committee Notes 2000 Amendment ("A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents . . . ***involving the same product, could be properly discoverable*** under the revised standard.") (emphasis added). So too, these materials are relevant to damages.

Although Samsung's burden (if any) is extremely low, as these materials should already have been collected, Samsung refuses to produce them. Thus, Samsung should be

---

and belief that at least products NCP5331 and MC33275D3 were manufactured using the method of claim 8 of the '177 patent." (Bauer Decl. Ex. 11 at 20-21.) Samsung made clear during meet and confer discussions however, that it does not believe Samsung limited its own document requests to materials related to products NCP5331 and MC33275D3. ON Semiconductor has produced documents, including process flows, regarding ON Semiconductor products beyond NCP5331 and MC33275D3, that are responsive to Samsung's document requests.

13

compelled to produce documents responsive to ON Semiconductor Request 42, including documents concerning any legal or administrative proceedings involving its accused products.

## CONCLUSION

For the foregoing reasons, ON Semiconductor's motion to compel discovery should be granted.

                                MORRIS, NICHOLS, ARSHT & TUNNELL LLP

                                */s/ Richard J. Bauer (#4828)*
                                Karen Jacobs Louden (#2881)
                                Richard J. Bauer (#4828)
                                1201 N. Market Street
                                P.O. Box 1347
                                Wilmington, DE  19899
                                (302) 658-9200
                                klouden@mnat.com
                                rbauer@mnat.com
                                *Attorneys for ON Semiconductor Corp.*
                                *and Semiconductor Components Industries, LLC*

*Of Counsel*:

Kenneth R. Adamo
JONES DAY
2727 North Harwood Street
Dallas, TX  75201-1515
(214) 220-3939

Tharan Gregory Lanier
Behrooz Shariati
JONES DAY
1755 Embarcadero Road
Palo Alto, CA  94303
(650) 739-3939

February 7, 2008
1483870

14

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that on February 7, 2008, I electronically filed the foregoing with the Clerk of the Court using CM/ECF, which will send notification of such filing(s) to the following:

> Josy W. Ingersoll
> John W. Shaw
> Andrew A. Lundgren

I also certify that copies were caused to be served on February 7, 2008 upon the following in the manner indicated:

**BY HAND AND EMAIL**

> Josy W. Ingersoll
> John W. Shaw
> Andrew A. Lundgren
> YOUNG, CONAWAY, STARGATT & TAYLOR LLP
> The Brandywine Building
> 1000 West Street, 17th Flr.
> Wilmington, DE  19899

**BY EMAIL**

> John M. Desmarais
> James E. Marina
> KIRKLAND & ELLIS
> 153 East 53rd Street
> New York, NY  10022

*/s/ Richard J. Bauer (#4828)*
_____
Richard J. Bauer (#4828)