IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., Plaintiffs, v. ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, Defendants. | Civil Action No. 06-720 (JJF) |
| ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, Plaintiffs, v. SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., Defendants. | Civil Action No. 07-449 (JJF) |

**SAMSUNG'S ANSWERING BRIEF IN OPPOSITION
TO ON SEMICONDUCTOR'S AND SEMICONDUCTOR
COMPONENTS INDUSTRIES, LLC'S MOTION TO COMPEL**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
(302) 571-6600
*alundgren@ycst.com*

*Attorneys for Samsung Electronics Co., Ltd.,
Samsung Electronics America, Inc., Samsung
Telecommunications America General, L.L.C.,
Samsung Semiconductor, Inc., and Samsung
Austin Semiconductor, L.L.C.*

OF COUNSEL:

John M. Desmarais
Jon T. Hohenthaner
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022-4611
212-446-4800
*jdesmarais@kirkland.com*
*jhohenthaner@kirkland.com*
*jmarina@kirkland.com*

Dated: February 25, 2008

**TABLE OF CONTENTS**

Page

NATURE AND STAGE OF THE PROCEEDINGS ....................................................................1

SUMMARY OF ARGUMENT ............................................................................................2

STATEMENT OF FACTS ...............................................................................................3

ARGUMENT...................................................................................................................5

  I.  Samsung Already Produced Relevant Documents Showing The Design
    And Layout Of The Accused Products. ....................................................................5

  II.  Samsung Already Produced Materials Reasonably Relevant To The
    Asserted '827 Patent Even Though Defendants Have Yet To Accuse A
    Single Samsung Product Of Infringing That Patent. .............................................7

  III.  Defendants Provide No Basis For Demanding All Documents From Other
    Proceedings. .........................................................................................................9

CONCLUSION.................................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

**<u>Cases</u>**

*Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159 (D. Del. 2001)...................................... 7

*Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232 (D. Del. 1992)........................ 9, 10

*Wyeth v. Impax Labs., Inc.*, C.A. No. 06-222-JJF, ___ F. Supp. 2d ___, 2006 WL
    3091331 (D. Del. Oct. 26, 2006) .............................................................................. 5, 11

**<u>Rules</u>**

Fed. R. Civ. P. 26(b)(1).................................................................................................... 5

Fed. R. Civ. P. 26(b)(2)............................................................................................ 5, 7, 9, 11

**<u>Other Authorities</u>**

*CIF Licensing, LLC v. Agere Systems, Inc.*, C.A. No. 07-170-JJF (D. Del. Nov. 9, 2007)
(Transcript) ........................................................................................................... 8

Plaintiffs Samsung Electronics Co., Ltd. ("SEC"), Samsung Electronics America, Inc. ("SEA"), Samsung Telecommunications America General, L.L.C. ("STA"), Samsung Semiconductor, Inc. ("SSI"), and Samsung Austin Semiconductor, L.L.C. ("SAS") (collectively, "Samsung") submit this answering brief in opposition to the motion to compel (D.I. 93)[1] filed by ON Semiconductor Corp. and Semiconductor Components Industries, LLC ("Defendants").

## NATURE AND STAGE OF THE PROCEEDINGS

SEC filed its original Complaint in this action on November 30, 2006, seeking a declaration that three United States patents purportedly owned by Defendants—U.S. Patent Nos. 5,563,594 ("the '594 patent"), 6,362,644 ("the '644 patent"), and 5,361,001 ("the '001 patent")—are invalid and not infringed by SEC. (D.I. 1.) Four days later, Defendants filed a duplicative patent infringement action against SEC in the U.S. District Court for the Eastern District of Texas, Case No. 6:06-CV-523 (the "Texas Action"), alleging infringement by SEC of the same three patents at issue in the Delaware Action and a fourth patent, U.S. Patent No. 5,000,827 ("the '827 patent"). Defendants also named four SEC affiliates as co-defendants in the Texas Action—SEA, STA, SSI, and SAS. Samsung subsequently filed an Amended Complaint in this action, adding SEA, STA, SSI, and SAS as co-plaintiffs, seeking a declaration that the '827 patent is invalid and not infringed, and adding a claim by SEC against Defendants for infringement of U.S. Patent No. 5,252,177 ("the '177 patent"). (D.I. 8.) Defendants did not file an Answer, but rather, moved to dismiss Samsung's complaints for lack of jurisdiction. (D.I. 14, 25.) Those motions are still pending.

---

[1]    D.I. references are to Civil Action No. 06-720-JJF unless otherwise noted.

By Order dated June 21, 2007, the U.S. District Court for the Eastern District of Texas transferred the Texas Action to this Court in accordance with the first-to-file rule. Thereafter, on October 5, 2007, this Court ordered the two cases consolidated for purposes of discovery, and entered a Scheduling Order providing that "document production shall be commenced so as to be completed by March 21, 2008." (D.I. 47 (C.A. No. 07-449-JJF).) Pursuant to that Scheduling Order, both parties began their initial document productions last month, in mid-January 2008. Just over three weeks later, and over one month before the document production deadline set by the Court, Defendants filed the instant motion to compel. (D.I. 93.)

## SUMMARY OF ARGUMENT

Defendants' motion to compel seeks three categories of documents from Samsung. First, with respect to the asserted '594 patent, the '644 patent, and the '001 patent, Defendants demand production of "[t]echnical information and documents showing the design and layout of the accused products including schematics and GDS2 database systems used to design and fabricate Samsung's accused products." But Samsung already produced the relevant circuit schematics for the products accused of infringing these three patents. Without explaining why the circuit schematics already produced by Samsung are not sufficient, Defendants demand production of highly proprietary "GDS2 database" documentation relating to *manufacturing* the accused products. There is no dispute, however, that these patents do not relate to manufacturing. The additional materials sought by Defendants thus provide nothing relevant to the claims or defenses at issue that is not otherwise provided by the circuit schematics already produced. Indeed, Defendants have been unable to articulate any legitimate need for such information, and their motion should thus be denied.

Second, with respect to the asserted '827 patent, Defendants demand production of "[m]anufacturing process information, including process flows, used in manufacturing the

2

products accused of infringing ON Semiconductor's process patent." Despite accusing roughly 190 different Samsung part numbers of infringement of the other patents in suit, Defendants have yet to accuse a single Samsung product or process of infringing the '827 patent. Accordingly, while Samsung has already produced materials reasonably relevant to that patent, Defendants' demand that Samsung produce documents relating to countless products and processes that are not even accused of infringement should be rejected.

Finally, Defendants demand production of "[a]ll pleadings, transcripts, expert reports, settlement agreements and exhibits from legal or administrative proceedings involving the Samsung products at-issue in this case." Once again, however, Defendants fail to explain why any particular document from another proceeding is likely to be non-duplicative and relevant to any particular issue here, or reasonably limit their request to a manageable set of materials. Defendants' inability to identify any legitimate need for any of the above materials demonstrates that the demands are not reasonably tailored to the claims and defenses in this action, and instead likely designed to burden Samsung with unnecessary expense. Accordingly, for the reasons discussed herein, Defendants' motion should be denied.

## STATEMENT OF FACTS

Defendants assert four patents relating to dynamic random access memory ("DRAM") products against Samsung in this action.[2] Specifically, Defendants contend that approximately 190 different Samsung part numbers infringe the '594 patent, the '644 patent, and/or the '001 patent. (Bauer Decl. Ex. 7 at 9-21.) Defendants have not, however, identified any Samsung

---

[2]     Samsung also asserts its own '177 patent against Defendants.

products that allegedly infringe the fourth asserted patent—the '827 patent. (Bauer Decl. Ex. 7 at 21-24.)

As discussed above, both parties began producing documents just a few weeks ago, in mid-January 2008. (Exs. A and B.) The parties' productions are scheduled to be completed by March 21, 2008. (D.I. 47 (1:07-CV-00449-JJF).) To date, Samsung has produced well over 200,000 pages of documents, compared with just over 20,000 pages produced by Defendants. Nonetheless, despite the clear deficiencies in Defendants' own production, Defendants began complaining about Samsung's production and demanding grossly overbroad categories of documents almost immediately. (Bauer Decl. Ex. 5.)

In an attempt to resolve any disputes and understand the nature of Defendants' demands, Samsung met-and-conferred with Defendants on both January 31, 2008, and February 7, 2008. During those meet-and-confer telephone conferences, Defendants were unable to provide any basis for demanding the broad categories of documents now at issue in this motion or explain why Samsung's existing production was not sufficient. (Ex. C.) Instead, Defendants rushed to file their motion to compel, which still fails to articulate why the requested documents are not duplicative of other materials already provided and how they are relevant to any claim or defense in this action. (D.I. 95.)

While Samsung does not oppose producing reasonably relevant, non-duplicative materials, Samsung has already incurred substantial expense in doing so. Samsung should not be forced to produce vast quantities of additional materials, at great expense, when Defendants cannot even articulate why those materials are necessary to any actual claim or defense in this action. Accordingly, as discussed below, Defendants' motion to compel should be denied.

## ARGUMENT

Pursuant to Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery of any matter, not privileged, that is relevant to the claim or defense of any party." Fed. R. Civ. P. 26(b)(1). *See also Wyeth v. Impax Labs., Inc.*, C.A. No. 06-222-JJF, ___ F. Supp. 2d ___, 2006 WL 3091331, at *1 (D. Del. Oct. 26, 2006). A court may, however, limit discovery "if the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *Id. See also* Fed. R. Civ. P. 26(b)(2). As discussed below, Samsung has already produced the documentation concerning the requested categories of information to which Defendants are reasonably entitled. The remaining categories of information sought by Defendants are unreasonably burdensome and overbroad, and bear no reasonable relationship to the claims and defenses in this action. Samsung therefore respectfully requests that the Court deny the motion to compel. *See* Fed. R. Civ. P. 26(b)(2).

## I.    Samsung Already Produced Relevant Documents Showing The Design And Layout Of The Accused Products.

The first category of documents sought by Defendants is "[t]echnical information and documents showing the design and layout of the accused products including schematics and GDS2 database systems used to design and fabricate Samsung's accused products." (D.I. 93.) Those documents allegedly relate to Defendants' assertion of the '594, '644, and '001 patents against roughly 190 different Samsung part numbers. (Bauer Decl. Ex. 7 at 9-21.)

The asserted claims of the '594, '644, and '001 patents are directed to circuit configurations, electrical connections, and logical operations of electrical circuits on semiconductor chips. (McAlexander Decl. at ¶ 4.) Samsung already produced the electrical

5

circuit schematics with that information for the accused products, which provide sufficient information to determine whether or not those products meet the limitations of the asserted claims. (McAlexander Decl. at ¶¶ 5-6.)  For example, Samsung produced over 11,000 pages of schematics, circuit diagrams, timing diagrams, and technical specifications on January 15, 2008. Additionally, in response to Defendants' complaints that the circuit schematics were not "in usable form" and that Defendants had difficulty identifying or cross-correlating those documents with the accused products (D.I. 95 at 2), Samsung re-produced the circuit schematics in electronic format, and additionally provided Defendants with a cross-reference list of accused products and corresponding schematic numbers. (Ex. D.)

Despite already having all the circuit schematics necessary for analyzing infringement, Defendants additionally demand production of a massive volume of highly proprietary GDS2 database files for the approximately 190 different Samsung part numbers accused of infringement.  But Defendants have no legitimate need for such information.  As Defendants admit, a GDS2 database "provide[s] the final layout used to manufacture products" and "is the blueprint used for manufacturing the actual semiconductor chip" in accordance with the electrical circuit schematics.  (D.I. 95 at 5, 10.)  Indeed, GDS2 database files are directed to *manufacturing* the physical layout of the circuits represented in the electrical circuit schematics, and thus represent the geometry of objects by their physical characteristics, such as size, shape, dimensions, and physical location on the semiconductor chip.  (McAlexander Decl. at ¶ 7.) There is no dispute, however, that the patents-in-suit do not relate to manufacturing the physical layout of the circuits on the semiconductor chips.  Accordingly, such files provide no information necessary to determine whether or not the accused products meet the limitations of

6

the asserted claims that is not otherwise provided in the electrical circuit schematics already produced by Samsung. (McAlexander Decl. at ¶¶ 8-9.)

Not surprisingly, throughout the meet-and-confer process, Defendants were unable to articulate any reason for demanding production of the GDS2 database files in addition to the circuit schematics. Instead, Defendants argue that Samsung should bear the burden of producing its most proprietary information simply because Defendants assert that they are "entitled to this information." Under the Federal Rules of Civil Procedure, however, Defendants are not entitled to duplicative and irrelevant information. *See Novartis Pharms. Corp. v. Abbott Labs.*, 203 F.R.D. 159, 164 (D. Del. 2001) (denying motion to compel where "further production would be duplicative and cumulative of what [was] already produced and further production would be burdensome."). Indeed, the Federal Rules of Civil Procedure provide that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; … or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). Accordingly, in view of Defendants' failure to articulate any legitimate reason why the electrical circuit schematics already produced by Samsung are not sufficient, Defendants' motion to compel should be denied.

## II.    Samsung Already Produced Materials Reasonably Relevant To The Asserted '827 Patent Even Though Defendants Have Yet To Accuse A Single Samsung Product Of Infringing That Patent.

The second category of documents sought by Defendants is "[m]anufacturing process information, including process flows, used in manufacturing the products accused of infringing

ON Semiconductor's process patent," *i.e.*, the '827 patent. (D.I. 93.) Defendants' demand, however, is at best premature because they have yet to accuse a single Samsung product of infringing the '827 patent.[3] (Bauer Decl. Ex. 7 at 21-24.) Before demanding documents, however, Defendants must first at least identify the products they accuse of infringement. *See CIF Licensing, LLC v. Agere Systems, Inc.*, C.A. No. 07-170-JJF (D. Del. Nov. 9, 2007), Transcript of Motion to Compel, at 4:24-5:02 ("You can't say to them, look across your product line and tell us everything that meets our claim language.") (Ex. E).

Defendants nonetheless attempt to circumvent their obligations to identify products of infringement by characterizing the "types" of products that theoretically could infringe the '827 patent:

> On information and belief, claims 1 and 2 of the '827 patent are *infringed by processes used to make Samsung products that include plated structures such as "bumped die" or "wafer level packaging" with a pitch of less than about 150 microns (um).* The infringing Samsung products include, but are not limited to, products formed with metallized bumps, such as those formed by the Wafer-level Fabricated Package (WFP) package type.
>
> *    *    *
>
> On further information and belief, Samsung implements at least one of the following cup plating machines from the identified manufacturer: SlimCell ECP (Applies Materials); Sable Systems (Novellus); Raider ECD/ECD310 (SemiTool).

(Bauer Decl. Ex. 7 at 21-23 (emphasis added).) But Samsung has not located any products that fit that description, which Samsung explained to Defendants by letter dated January 30, 2008:

> The Novellus Sabre is the only one of these systems that Samsung uses, and, based on our investigations to date, Samsung does not use the Novellus Sabre system to manufacture "'bumped die' or

---

[3]    In contrast, Defendants accused roughly 190 Samsung part numbers of infringing the other patents-in-suit. (Bauer Decl. Ex. 7 at 9-21.)

> 'wafer level packaging' with a pitch of less than about 150 microns (um).

(Bauer Decl. Ex. 6.) There is, therefore, nothing further to produce at this time.[4]

Finally, Defendants assert that even though they have yet to accuse a single Samsung product of infringing the '827 patent, the Court should order Samsung to collect and produce a massive volume of documents beyond the scope of their infringement contentions, consisting of all "process flows and other documents relating to Samsung's use of the Novellus Sabre System." (Defendants Br. at 13.) That demand, however, bears no reasonable relationship to any claim or defense in this action, and should be denied. *See Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 258 (D. Del. 1992) (denying motion to compel because "Defendants, the parties moving to compel discovery of these documents, have failed to fulfill their burden of showing the permissibility and relevance of these extremely broad discovery requests."); Fed. R. Civ. P. 26(b)(2).

## III.    Defendants Provide No Basis For Demanding All Documents From Other Proceedings.

The final category of documents sought by Defendants is "[a]ll pleadings, transcripts, expert reports, settlement agreements and exhibits from legal or administrative proceedings involving the Samsung products at-issue in this case." (D.I. 93.) During the course of the meet-and-confer process, Samsung attempted to work with Defendants to determine exactly what relevant materials from other proceedings were sought that were not cumulative of other

---

[4]    Despite Defendants' failure to identify any allegedly infringing products, Samsung nonetheless produced documents concerning the Novellus Sabre system, the only machine identified by Defendants that Samsung even uses. Samsung's investigation, however, demonstrates that it does not use that machine in the manner identified by Defendants as potentially infringing.

materials already produced (or to be produced) from Samsung's business records. But Defendants were unable or unwilling to narrow their request to information relevant to the claims or defenses at issue here, or articulate any legitimate need for the broad category of documents demanded.

For example, during the meet-and-confer process, Defendants speculated that such materials could be relevant to claim construction, but could not articulate any basis to support that assertion. Apparently realizing that assertion was legally unsupportable, Defendants now speculate that the requested materials could be relevant to damages issues. (D.I. 95 at 13.) Again, however, Defendants fail to articulate any legitimate basis for their assertion—Defendants fail to identify any particular document from any proceeding that may be relevant to any specific issue here. *See Standard Chlorine*, 821 F. Supp. at 258 (denying motion to compel because Defendants "failed to fulfill their burden of showing the permissibility and relevance of these extremely broad discovery requests."). Indeed, simply because another proceeding may have involved one of the hundreds of products-at-issue here does not mean that all documents from such proceeding are relevant to any issue in this patent infringement action.

Defendants also incorrectly assert that their demand is not overly burdensome. (D.I. 95 at 10.) Defendants have not, however, reasonably limited their request to any particular proceeding or document(s). Instead, Defendants demand all documents from *any* "legal or administrative proceedings involving the Samsung products at-issue in this case" (D.I. 93), even though they have accused roughly 190 different Samsung part numbers of infringement in this case. Samsung should not be forced to embark on that massive endeavor absent a very good

reason—which Defendants have not provided here.[5] *See Wyeth*, ___ F. Supp. 2d ___, 2006 WL 3091331, at *1; Fed. R. Civ. P. 26(b)(2).

Nonetheless, if during the course of discovery Samsung locates any non-duplicative documents from another legal or administrative proceeding that appear reasonably relevant to the claims or defenses in this action, Samsung will produce them. But Samsung should not be forced to scour its entire company for all documents related to other proceedings when Defendants cannot articulate any legitimate reason for demanding such documents, and refuse to narrowly tailor their request to materials reasonably relevant to this case. *See* Fed. R. Civ. P. 26(b)(2)(C).

---

[5]    In addition to the burden of trying to locate documents responsive to Defendants' demand, it is likely that many of such documents would be subject to confidentiality agreements with third parties and/or governed by protective orders, further complicating review and production.

## CONCLUSION

For the foregoing reasons, Samsung respectfully requests that this Court deny Defendants' motion to compel (D.I. 93).

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
*alundgren@ycst.com*

*Attorneys for Samsung Electronics Co., Ltd.,*
*Samsung Electronics America, Inc., Samsung*
*Telecommunications America General, L.L.C.,*
*Samsung Semiconductor, Inc., and Samsung*
*Austin Semiconductor, L.L.C.*

OF COUNSEL:

John M. Desmarais
Jon T. Hohenthaner
James E. Marina
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022-4611
212-446-4800
*jdesmarais@kirkland.com*
*jhohenthaner@kirkland.com*
*jmarina@kirkland.com*

Dated: February 25, 2008

12

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on February 25, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Karen Jacobs Louden, Esquire [klouden@mnat.com]
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on February 25, 2008, I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

> ### BY E-MAIL
>
> Behrooz Shariati, Esquire [bshariati@jonesday.com]
> T. Gregory Lanier, Esquire [tglanier@jonesday.com]
> Jones Day
> 1755 Embarcadero Road
> Palo Alto, CA 94025
>
> Kenneth R. Adamo [kradamo@jonesday.com]
> Jones Day
> 2727 North Harwood Street
> Dallas, TX 75201-1515

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
302-571-6600
alundgren@ycst.com

# EXHIBIT A

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

To Call Writer Directly:
(212) 446-6442
rleonard@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

Dir. Fax: (212) 446-4900

January 15, 2008

**By Federal Express and Email (without enclosures)**

Behrooz Shariati
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303

Re:   *Samsung Electronics Co., Ltd., et al. v. ON Semiconductor Corp., et al.*, C.A. No. 06-720 (JJF) and *ON Semiconductor Corp., et al. v Samsung Electronics Co., Ltd., et al.,* C.A. No. 07-449 (JJF)

Dear Mr. Shariati:

      Please find enclosed an external hard drive containing documents bearing numbers SAMSUNG0000001-SAMSUNG0146390.  These documents are being produced by Samsung Electronics Co., Ltd., *et al.*

Sincerely,

Robert P. Leonard
Legal Assistant

RPL

Enclosures

cc:    James E. Marina(via email without enclosures)
John W. Shaw(via email without enclosures)
Karen J. Louden(via email without enclosures)

Chicago        Hong Kong        London        Los Angeles        Munich        San Francisco        Washington, D.C.

# EXHIBIT B

Direct Number:  (650) 739-3977
mdelosangeles@jonesday.com

January 16, 2008

**<u>VIA HAND DELIVERY</u>**

Robert Leonard
Kirkland & Ellis LLP
Citigroup Center
153 East 53rd Street
New York, NY 10022

> *Re:      ON Semiconductor, Corp., v. Samsung Electronics Co. Ltd., et al. Case No. 1:07-cv-00449 JJF and Samsung Electronics Co. Ltd., v. ON Semiconductor Corp. Case No. 1:06-cv-00720 JJF*

Dear Robert:

Pursuant to our earlier discussion, enclosed please find a disk containing single page tiff images of documents bearing Bates numbers ON_00000001 through ON_00016662.  Due to technical issues, we are producing ON_00004267, ON_00004268, ON_00004277-80, ON_00004287, ON_00004573, ON_00004696-97, ON_00004698-99, ON_00012244, ON_00015221-22, and ON_00015247-50 in hard copy format.

Should you have any questions regarding the enclosed, please feel free to call.

Very truly yours,

Michelle S. Delos Angeles
Paralegal

Enclosure

cc:  James Marina (via email without enclosures)
      Karen Jacobs Louden (via email without enclosures)
      John W. Shaw (via email without enclosures)

# EXHIBIT C

# KIRKLAND & ELLIS LLP

#### AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

(212) 446-4800

www.kirkland.com

John C. Spaccarotella
To Call Writer Directly:
(212) 446-4997
jspaccarotella@kirkland.com

Facsimile:
(212) 446-4900

Dir. Fax: (212) 446-4900

February 8, 2008

Cora L. Schmid, Esq.
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303

Re:    *ON Semiconductor Corp. v. Samsung Electronics Co., Ltd.*
       Civil Action No. 1:07-cv-00449 (JJF)
       *Samsung Electronics Co., Ltd. v. ON Semiconductor Corp.*
       Civil Action No. 1:06-cv-00720 (JJF)

Dear Ms. Schmid:

I'm writing in response to your letter of February 7, 2008 regarding our conference of the same day.

The primary reason for me requesting the conference was to better understand your positions regarding our discovery dispute in an attempt to amicably resolve these issues. In our conference, and in your letter, you still failed to provide a reason why you believe you're entitled to GDS2 layouts and schematics. You discussed the need to confirm what Samsung is actually selling, and the need to capture circuit timing information. I suggested some alternatives, such as perhaps providing you or a third party the ability to run simulations on a Samsung controlled workstation to capture the timing information you need. You mentioned that this, along with the circuit schematics that you already have, would get us closer to a resolution, but that it would not be enough. You failed to articulate, however, what additional information you need that only GDS2 layouts would provide other than to reiterate your position that you believe your entitled to this information. We understand your position, but want to understand what information you need so that we can provide it to you in an effective and less burdensome manner.

As for the second issue regarding the process flows for the Novellus Sabre System, I mentioned that it was my belief that you had all of the relevant information that Samsung had in its custody or control. The only "client issue" that we have, as recited in your letter, is related solely to the timing of a response, because Samsung is a Korean company celebrating the Lunar New Year, and as I mentioned on the call, me not being able to understand your requests in your letter of January 31, 2008. Anything other than these issues regarding our client is a

Chicago        Hong Kong        London        Los Angeles        Munich        San Francisco        Washington, D.C.

## KIRKLAND & ELLIS LLP

February 8, 2008
Page 2

misunderstanding on your part.  I also mentioned that I would again discuss this with our client now that I have a better understanding of what you're looking for.

We will continue to discuss these issues with our client and get back to you shortly in an attempt to resolve this dispute.

Sincerely,

John C. Spaccarotella

JCS

# EXHIBIT D

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

Citigroup Center
153 East 53rd Street
New York, New York 10022-4611

To Call Writer Directly:
(212) 446-6442
rleonard@kirkland.com

(212) 446-4800

www.kirkland.com

Facsimile:
(212) 446-4900

Dir. Fax: (212) 446-4900

February 22, 2008

**By Federal Express and Email (without enclosures)**

Behrooz Shariati
Jones Day
1755 Embarcadero Road
Palo Alto, CA 94303

Re:   *Samsung Electronics Co., Ltd., et al. v. ON Semiconductor Corp., et al.*, C.A. No. 06-720 (JJF)
and *ON Semiconductor Corp., et al. v Samsung Electronics Co., Ltd., et al.*, C.A. No. 07-449 (JJF)

Dear Mr. Shariati:

Please find enclosed a DVD containing documents bearing numbers SAMSUNG0146391-SAMSUNG0233821. Also enclosed is a CD, bearing number SAMSUNG0233822, containing an electronic version of Samsung's circuit schematics. Finally, attachment A is a cross-reference list identifying each accused Samsung part number and corresponding schematic number. Please let us know if you have any questions.

Sincerely,

Robert P. Leonard
Legal Assistant

Enclosures

cc:   Jon Hohenthaner(via email without enclosures)
      John W. Shaw(via email without enclosures)
      Karen J. Louden(via email without enclosures)

Chicago        Hong Kong        London        Los Angeles        Munich        San Francisco        Washington, D.C.

**ATTACHMENT A**

| **Part Number** | **Schematic Number** |
|---|---|
| K4D261638K | GS-06011913 |
| K4D263238K | GS-06011913 |
| K4H1G0438A | GS-04110309 |
| K4H1G0638C | GS-04031916 |
| K4H1G0738C | GS-04031916 |
| K4H1G0838A | GS-04110309 |
| K4H2G0638A | GS-04110309 |
| K4H510438C | GS-04031916 |
| K4H510638E | GS-02102910 |
| K4H510638H | GM-05050609 |
| K4H510738E | GS-02102910 |
| K4H510738H | GM-05050609 |
| K4H510838C | GS-04031916 |
| K4H510838D | GR-04100535 |
| K4H511638C | GS-04031916 |
| K4H511638D | GR-04100535 |
| K4H560438E | GS-02102910 |
| K4H560438H | GM-05050609 |
| K4H560838E | GS-02102910 |
| K4H560838H | GM-05050609 |
| K4H561638H | GM-05050609 |
| K4J52324QE | GARNET_G_512M_GDDR3-G6_X32-ME-REV00 |

| | |
|---|---|
| K4J55323QG | GS-05022503 |
| K4N51163QC | GS-04080310 |
| K4N51163QE | GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 |
| K4N56163QG | GS-05101020 |
| K4T1G044QA | GS-03121207 |
| K4T1G044QC | GS-06042703 |
| K4T1G084QA | GS-03121207 |
| K4T1G084QC | GS-06042703 |
| K4T1G164QC | GS-06042703 |
| K4T2G044QM | GS-04110407 |
| K4T2G084QM | GS-04110407 |
| K4T51043QC | GS-04080310 |
| K4T51043QE | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| K4T51083QC | GS-04080310 |
| K4T51083QE | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| K4T51163QC | GS-04080310 |
| K4T56043QF | GS-03092220 |
| K4T56083QF | GS-03092220 |
| K4U52324QE | GS-05110916 |
| K4X28163PH | GS-05011814 |
| K4X51163PC | GS-04102106 |
| K4X51323PC | GS-04102106 |
| K4X51323PE | PD060200007 |
| K4X56163PG | GS-05010610 |

2

| | |
|---|---|
| K4X56323PG | GS-05010610 |
| M312L2820EG(Z)0 | GS-02102910 |
| M312L2820HZ0 | GM-05050609 |
| M312L2828ET(U)0 | GS-02102910 |
| M312L2828HU0 | GM-05050609 |
| M312L2920CUS | GS-04031916 |
| M312L2920CZ0 | GS-04031916 |
| M312L2923CUS | GS-04031916 |
| M312L2923CZ0 | GS-04031916 |
| M312L3223HUS | GM-05050609 |
| M312L3223HZ0 | GM-05050609 |
| M312L5128AU0 | GS-04110309 |
| M312L5128AUl | GS-04110309 |
| M312L5620AUS | GS-04110309 |
| M312L5623AUS | GS-04110309 |
| M312L5628CU0 | GS-04031916 |
| M312L5720CZ0 | GS-04031916 |
| M312L6420EG(Z)0 | GS-0210910 |
| M312L6420ET(U)S | GS-0210910 |
| M312L6420HUS | GM-05050609 |
| M312L6420HZ0 | GM-05050609 |
| M312L6423ET(U)S | GS-02102910 |
| M312L6423EG(Z)0 | GS-02102910 |
| M312L3223ET(U)S | GS-02102910 |
| M312L3223EG(Z)0 | GS-02102910 |

3

| | |
|---|---|
| M312L6423HUS | GM-05050609 |
| M312L6423HZ0 | GM-05050609 |
| M312L6523CUS | GS-04031916 |
| M312L6523CZ0 | GS-04031916 |
| M368L2923CUN | GS-04031916 |
| M368L2923DUN | GR-04100535 |
| M368L3223ET | GS-0210910 |
| M368L3223HUS | GM-05050609 |
| M368L3324CUS | GS-04031916 |
| M368L3324DUS | GR-04100535 |
| M368L6423ET(U)M | GS-0210910 |
| M368L6423HUN | GM-05050609 |
| M368L6523CUS | GS-04031916 |
| M368L6523DUS | GR-04100535 |
| M378T2863AZ3 | GS-03121207 |
| M378T2863CZ3 | GS-06042703 |
| M378T2953CZ3 | GS-03121207 |
| M378T2953CZ3 | GS-04080310 |
| M378T2953EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M378T3354CZ3 | GS-04080310 |
| M378T3354EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M378T5663AZ3 | GS-03121207 |
| M378T5663CZ3 | GS-06042703 |
| M378T5763MZ3 | GS-04110407 |

4

| | |
|---|---|
| M378T6453FZ3 | GS-03092220 |
| M378T6553CZ3 | GS-04080310 |
| M378T6553EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M381L2923CUM | GS-04031916 |
| M381L2923DUM | GR-04100535 |
| M381L3223ET(U)M | GS-0210910 |
| M381L3223HUM | GM-05050609 |
| M381L6423ET(U)M | GS-0210910 |
| M381L6423HUM | GM-05050609 |
| M381L6523CUM | GS-04031916 |
| M381L6523DUM | GR-04100535 |
| M391T2863AZ3 | GS-03121207 |
| M391T2953CZ3 | GS-04080310 |
| M391T2953EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M391T5663AZ3 | GS-03121207 |
| M391T5663CZ3 | GS-06042703 |
| M391T5763MZ3 | GS-03121207 |
| M391T6453FZ3 | GS-03092220 |
| M391T6553CZ3 | GS-04080310 |
| M391T6553EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M392T2863CZA | GS-06042703 |
| M392T2950CZA | GS-04080310 |
| M392T2950EZA | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |

| | |
|---|---|
| M392T2953CZA | GS-04080310 |
| M392T2953EZA | GS-04080310 |
| M392T5160CJA | GS-06042703 |
| M392T5660CZA | GS-06042703 |
| M392T5663CZA | GS-06042703 |
| M392T6553CZA | GS-04080310 |
| M392T6553EZA | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M393T1K66MZ3 | GS-04110407 |
| M393T1K66MZA | GS-04110407 |
| M393T2863AZ3 | GS-03121207 |
| M393T2863AZA | GS-03121207 |
| M393T2863CZ3 | GS-06042703 |
| M393T2863CZA | GS-06042703 |
| M393T2950CZ3 | GS-04080310 |
| M393T2950CZA | GS-04080310 |
| M393T2950EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M393T2950EZA | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M393T2953CZ3 | GS-04080310 |
| M393T2953CZA | GS-04080310 |
| M393T2953EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M393T2953EZA | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M393T3253FG(Z)3 | GS-03092220 |

| | |
|---|---|
| M393T3253FZ3 | GS-0210910 |
| M393T5160CZ0 | GS-06042703 |
| M393T5160CZ4 | GS-06042703 |
| M393T5160CZA | GS-06042703 |
| M393T5166AZ4 | GS-04110309 |
| M393T5166AZA | GS-04110309 |
| M393T5168AZ0 | GS-04110309 |
| M393T5263MZ3 | GS-04110407 |
| M393T5263MZA | GS-04110407 |
| M393T5660AZ3 | GS-03121207 |
| M393T5660AZA | GS-03121207 |
| M393T5660CZ3 | GS-06042703 |
| M393T5660CZA | GS-06042703 |
| M393T5663AZ3 | GS-03121207 |
| M393T5663AZA | GS-03121207 |
| M393T5663CZ3 | GS-06042703 |
| M393T5663CZA | GS-06042703 |
| M393T5750CZ3 | GS-04080310 |
| M393T5750CZ4 | GS-04080310 |
| M393T5750CZA | GS-04080310 |
| M393T5750EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M393T5750EZ4 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M393T5750EZA | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |

| | |
|---|---|
| M393T6453FG(Z)3 | GS-03092220 |
| M393T6553CZ3 | GS-04080310 |
| M393T6553CZA | GS-04080310 |
| M393T6553EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M393T6553EZA | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M395T2953CZ4 | GS-04080310 |
| M395T2953EZ4 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M395T6553CZ4 | GS-04080310 |
| M395T6553EZ4 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M470L2923DV0 | GR-04100535 |
| M470L3224HU0 | GM-05050609 |
| M470L3324CU0 | GS-04031916 |
| M470L3324DU0 | GR-04100535 |
| M470L6524CU0 | GS-04031916 |
| M470T2864AZ3 | GS-03121207 |
| M470T2864CZ3 | GS-06042703 |
| M470T2953CZ3 | GS-04080310 |
| M470T2953EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M470T3354CZ3 | GS-04080310 |
| M470T3354EZ3 | GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-FBGA-ME-REV0 (for VH) |
| M470T5663CZ3 | GS-06042703 |
| M470T5669AZ0 | GS-04110309 |

8

M470T6464AZ3      GS-03121207

M470T6464CZ3      GS-06042703

M470T6554CZ3      GS-04080310


M470T6554EZ3      GS-05072506 (for VB) or GARNET_G_512M_GDDR2-G6_X4/X8/X16-
                  FBGA-ME-REV0 (for VH)

# EXHIBIT E



**WILCOX & FETZER LTD.**

## In The Matter Of:

# CIF Licensing, LLC v. Agere Systems, Inc.

### Transcript of Proceedings

### C.. # 07-170 JJF

### November 9, 2007

Wilcox & Fetzer, Ltd.
Phone: 302-655-0477
Fax: 302-655-0497
Email: depos@wilfet.com
Internet: www.wilfet.com

Page 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CIF LICENSING, LLC,           )
                              )
      Plaintiff,              )
                              )
v.                            )  C.A. No. 07-170 JJF
                              )
AGERE SYSTEMS, INC.,          )
                              )
      Defendant.              )


                    Courtroom 4B
                    844 King Street
                    Wilmington, Delaware


                    Friday, November 9, 2007
                    10:10 a.m.


BEFORE:   THE HONORABLE JOSEPH J. FARNAN, JR.
          United States District Court Judge


                TRANSCRIPT OF PROCEEDINGS


                    WILCOX & FETZER
        1330 King Street - Wilmington, Delaware 19801
                    (302) 655-0477
                    www.wilfet.com

Page 2

1    THE COURT: CIF Licensing versus Agere.
2    Mr. Shaw, good morning.
3        MR. SHAW: Good morning, Your Honor. For
4    Agere, John Shaw and Ian Saffer from Townsend and
5    Townsend and Crew.
6        MR. ROVNER: Philip Rovner for CIF
7    Licensing. Mike Connolly from McDermott Will & Emery in
8    D.C.
9        THE COURT: Apparently you can't get
10   together on discovery here. Actually, I guess I see
11   Mr. Rovner was, interestingly, previously involved in a
12   similar dispute, I think. I think the movant here has
13   put into the record -- my thoughts have always been about
14   how these disputes work unless there's something that the
15   judge doesn't understand, and that's why I thought I
16   would get you in, because maybe I'm missing something.
17   But I kind of think your side of the case might have
18   heard this kind of language before from the judge. You
19   had an obligation to tell people, look, this is your
20   product, you think it infringes, here's why, you know
21   we're accusing you of infringing, you have got something
22   that we believe infringes. And that ought to be the
23   baseline.
24        That was Judge Jordan talking previously.

Page 3

1    When I look at these, I kind of get the sense that a
2    defendant -- as the other judges of the court I think
3    view this, I view it, and that is that the defendant
4    doesn't have any kind of a linking or contemporaneous
5    obligation to give up discovery that would in any way
6    thwart their effort to get discovery from the party suing
7    them.
8        So what's different about this case that
9    would interrupt those kind of principles?
10       MR. ROVNER: Mr. Connolly is going to
11   address those.
12       MR. CONNOLLY: Good morning, Your Honor.
13   Mike Connolly.
14       In this case, in our definition of products
15   that was given to Agere, we listed 10 specific products
16   that we wanted discovery on. In our response to their
17   interrogatories, we identified 11 as accused products.
18   They know the specific products. And in the two
19   meet-and-confers we had before this hearing we offered to
20   limit the period of discovery to initially start going
21   six years back. We said, look, just give us a bare list
22   of your products going back six years. We will tick off
23   the ones that we want and then we can talk about it if
24   there's further need to talk.

Page 4

1        I feel like we have been accommodating in
2    saying we will give you specific products, not some
3    general definition, not something that you think is
4    overbroad. We will go to spec products and tell you
5    which ones are at issue. We're not trying to tie that or
6    we don't need to tie that to contentions that we already
7    have in order to win the case. If it's appropriate,
8    we're happy to file representative infringement
9    contentions on the products we know about for whatever
10   that will help. I don't think it limits discovery in any
11   way.
12       THE COURT: This happens in every case.
13   That's why I was interested in reading this transcript
14   that was attached as an exhibit by the movant. We say
15   this so many times. If you want to sue people, fine, sue
16   them, but have in mind exactly what it is you're accusing
17   them of doing, exactly what you have in mind. Doesn't
18   matter.
19       Then it goes on to say, and that means if
20   you say you produced an accused device, you need to have
21   some basis for having an accused device and ask them,
22   okay, tell us about this accused device, which is what
23   you say you're doing.
24       Then there's this little bit of a tag. You

Page 5

1    can't say to them, look across your product line and tell
2    us everything that meets our claim language. That's the
3    second part of what you're saying you're not getting.
4    Sort of the same thing, unless I'm missing something.
5        MR. CONNOLLY: I guess what I'm saying is
6    we're precisely not doing that second thing. The
7    complaint initially was your product --
8        THE COURT: You're satisfied with the
9    discovery responses you have gotten?
10       MR. CONNOLLY: Oh, no.
11       THE COURT: In essence, they're responding
12   to what you claim?
13       MR. CONNOLLY: No. I guess what I'm saying
14   is we have given them a specific list of products that
15   we're saying accused that we know about. We're saying
16   tell us what products you have had in the last six years,
17   which is information that's hard to define off whatever
18   sources we have. We are not saying to them here's our
19   claim, you guys give us everything that infringes this
20   claim.
21       THE COURT: What they're saying is the
22   family of this litigation are the products you know about
23   right now. You're saying are there any other products.
24   Is that what you're asking?

2 (Pages 2 to 5)

Page 6

1    MR. CONNOLLY: That's essentially it, in
2 the sense that we know about these products, we know that
3 they infringe, we believe that they do, and I believe
4 we're entitled to discovery on those. We have identified
5 them for them. They are withholding that discovery on
6 the basis that they don't think they should have to give
7 discovery on other products. That seems to me two
8 different issues. They have lumped it together.
9    But on the other products we're saying,
10 look, if you think our definition is too generic, just
11 give us your products going back six years. Hardly an
12 onerous task. We will give you any other specific
13 products by product name that we believe infringe.
14 Discovery begins on those and we're happy to give initial
15 infringement contentions, final infringement contentions,
16 all in accordance with the --
17    THE COURT: You haven't done that yet.
18    MR. CONNOLLY: No.
19    THE COURT: That's the point of their
20 motion. I understand what you're saying about other
21 products and what you told me in the papers was, well,
22 you know, we got to get this other information and all
23 and their motion, essentially the argument is premature.
24 They're saying, you sued us, tell us everything that

Page 7

1 we're asking for about what you sued us about, and
2 actually that's very timely, and this other stuff you
3 want shouldn't be contingent in any way on what we're
4 entitled to as a defendant at this point.
5    What you're saying is we don't want to give
6 you our -- I think the cleanest interpretation of what
7 you're saying is and the way I would probably try to say
8 it is, all right, we will give you everything about the
9 products we noticed, but this isn't our whole case
10 possibly. So you're on notice we're going to supplement.
11 And then they can't come in here at the near end of the
12 fact discovery and say they just dropped these other
13 15 products on us and we shouldn't have to comply,
14 because you have told them, there is more we think and
15 we're willing to give you complete discovery now in your
16 request and you understand we may be getting more later.
17    MR. CONNOLLY: That's right, Your Honor.
18 And I think this all grew out of this notion that if we
19 don't give them -- if we don't reduce the number of
20 claims, give them claim construction, give them detailed
21 infringement contentions, they're not going to give us
22 anything even on the products we have accused. Obviously
23 they know --
24    THE COURT: They're going to have to give

Page 8

1 you on the products you have accused.
2    MR. CONNOLLY: Right. So out of that kind
3 of block came this. I agree with you, our infringement
4 contentions on the products we know about do not need to
5 be linked to their discovery. We can give them
6 contentions on what we have got. Obviously it helps both
7 parties the more information we have, the more detailed
8 those can be, the further along we get in this case. So
9 we're happy to do what we need to do to move discovery
10 along in this case.
11    THE COURT: You agree with Judge Jordan
12 that, when you sued them, you had a complete case in
13 mind.
14    MR. CONNOLLY: Absolutely, as to products
15 we knew about. Like I said, we have named those products
16 over and over again.
17    THE COURT: That's the complete case you've
18 got to give them. Not only name those products, you've
19 got to give them all your contentions about those
20 products.
21    MR. CONNOLLY: We're happy to do that,
22 Your Honor.
23    THE COURT: Good.
24    MR. CONNOLLY: We would ask production move

Page 9

1 along.
2    THE COURT: That's the point I'm trying to
3 make. It's not a quid pro quo. That's what
4 Judge Jordan was trying to say in that transcript.
5    Now, if you think that they're not either
6 through a meet-and-confer or through a demand providing
7 you with what you're entitled to at this juncture of the
8 litigation, your remedy is to come here next month with
9 your motion to compel.
10    MR. CONNOLLY: I understand that,
11 Your Honor. Unfortunately, it looks like we may end up
12 seeing you again. I just was worried that reading their
13 motion and their proposal would be that they would get to
14 stay their discovery until we gave infringement
15 contentions. As long as that's not in the case, then we
16 don't need to go into that.
17    THE COURT: Sometimes I thought that's not
18 a bad solution, but these cases are too complex to do
19 that. I'm staying on defendant's discovery until you lay
20 your case out as you knew it when you filed it, but you
21 would all think I didn't understand anything about
22 litigation, so I can't do that. I wouldn't do that.
23 You're entitled to have responsive discovery, too, and
24 hopefully you won't be put to a motion.

Page 10

1    MR. CONNOLLY: I hope so, too.
2    THE COURT: Thank you.
3    MR. CONNOLLY: Could I clear something up
4  on the Honeywell case you referred to that's in their
5  papers?
6    THE COURT: Sure.
7    MR. CONNOLLY: The issue that was addressed
8  in Exhibit A of the transcript that's in defendant's
9  reply papers in Honeywell, the plaintiff was seeking
10  discovery on the other products, and Judge Jordan, as you
11  noted, said no.
12    In this case we're not seeking discovery.
13  We just want identity. Honeywell was merely asking for
14  the identity of the products as opposed to discovery.
15    THE COURT: I understand that. What
16  Judge Jordan was dealing with was an interesting
17  discussion about foundation and a prior ruling and he had
18  to go back and reread it all.
19    What I was trying to draw out of that is
20  that the obligations for discovery aren't reciprocal.
21  Obligations of discovery are based on what you ask for if
22  you can't work it out in a meet-and-confer and we make a
23  decision on the request. And too many lawyers, and a
24  little bit in this motion, think that it's reciprocal.

Page 11

1  That's the only principle I was drawing out of
2  Judge Jordan. There is no reciprocal obligation that's
3  established.
4    In fact, I'm always amazed in a discovery
5  dispute why anybody cites a case, a transcript, or
6  anything. First of all, I don't believe in pressing it
7  at all. But if you believed in it a little bit, it
8  certainly wouldn't apply to discovery. The only thing
9  that would be applicable to discovery are the rules and
10  facts of this case. What we say in any other case is all
11  contextual.
12    I understand what you're saying. I'm on
13  board.
14    MR. CONNOLLY: I often wondered what would
15  happen in the other case had Honeywell proposed a
16  compromise that we're doing here.
17    THE COURT: You never got to that. I was
18  only drawing the pearls of Judge Jordan's wisdom about
19  discovery not being reciprocal, what the obligations are
20  under the rules when you sue or if you get discovery
21  served on you as a defendant.
22    MR. CONNOLLY: Understood. Thank you, Your
23  Honor.
24    THE COURT: Thank you. I can't imagine

Page 12

1  what you have to say. I think you won.
2    MR. SAFFER: Mr. Shaw told me to be
3  exceedingly brief. I will be.
4    When can we have the plaintiff's
5  contentions that you described, the accused products
6  versus the asserted claims with claim constructions?
7    THE COURT: Now that you understand what I
8  have said, I'm going to let you go back and talk to each
9  other, because I want you to get this discovery in a more
10  fluid exchange. But I'm not thinking it's going to be
11  more than 20 days that you're going to be able to have
12  this exchange and set out in some cooperative way what
13  you each have to do to get the case moving forward in a
14  complete way.
15    I think you both agree there's going to be
16  representative claims here ultimately. That will be part
17  of your discussion, too. I don't think you have to
18  narrow it at this point, but I think you ought to be
19  thinking about that as you spend your client's money in
20  discovery.
21    MR. SAFFER: I don't want to cite precedent
22  because of Your Honor's comments just a moment ago.
23  Understanding it's not for present purposes, but it's
24  more summary judgment or tying down the line, how many

Page 13

1  claims and how many products does Your Honor think are
2  appropriate?
3    THE COURT: I didn't bring my quarter for
4  the flip. So I don't know today. I'd have to know a lot
5  more about the case. It's really much too early for me
6  to be able to say anything that would be serious, but I
7  will be able to down the road.
8    MR. SAFFER: Thank you, Your Honor.
9    THE COURT: If you can't agree. If you can
10  agree, I always like you to try the case you want to try.
11  If you can't, then I'm more than happy to weigh in, but I
12  think it will happen more down the road.
13    MR. SAFFER: Thank you, Your Honor.
14    THE COURT: Okay. Here's what I'm going to
15  do, because I don't want to get you off on a bad foot:
16  I'm going to deny the motion to compel because that's a
17  serious thing, a motion to compel. Somebody didn't meet
18  their obligation. So that will be an order I'll enter.
19  And then if you all don't work it out, I'll expect to see
20  you back here either in December or January on
21  cross-motions or a one-sided motion if you can't work it
22  out. Thank you.
23    (The proceeding was concluded at
24  10:38 a.m.)

4 (Pages 10 to 13)

Page 14

CERTIFICATE

STATE OF DELAWARE)
                 )
NEW CASTLE COUNTY)

     I, Kimberly A. Hurley, Registered Merit Reporter and Notary Public, do hereby certify that the foregoing record, pages 1 to 14 inclusive, is a true and accurate transcript of my stenographic notes taken on Friday, November 9, 2007, in the above-captioned matter.

     IN WITNESS WHEREOF, I have hereunto set my hand and seal this 12th day of November, 2007, at Wilmington.


     Kimberly A. Hurley

     Certification No. 126-RPR
     (Expires January 31, 2008)

**A**

able 12:11 13:6
  13:7
above-caption...
  14:8
Absolutely 8:14
accommodating
  4:1
accurate 14:8
accused 3:17
  4:20,21,22
  5:15 7:22 8:1
  12:5
accusing 2:21
  4:16
address 3:11
addressed 10:7
Agere 1:6 2:1,4
  3:15
ago 12:22
agree 8:3,11
  12:15 13:9,10
amazed 11:4
anybody 11:5
Apparently 2:9
applicable 11:9
apply 11:8
appropriate 4:7
  13:2
argument 6:23
asking 5:24 7:1
  10:13
asserted 12:6
attached 4:14
a.m 1:12 13:24

**B**

back 3:21,22
  6:11 10:18
  12:8 13:20
bad 9:18 13:15
bare 3:21
based 10:21
baseline 2:23
basis 4:21 6:6
begins 6:14
believe 2:22 6:3
  6:3,13 11:6

believed 11:7
bit 4:24 10:24
  11:7
block 8:3
board 11:13
brief 12:3
bring 13:3

**C**

C 14:1,1
case 2:17 3:8,14
  4:7,12 7:9 8:8
  8:10,12,17
  9:15,20 10:4
  10:12 11:5,10
  11:10,15 12:13
  13:5,10
cases 9:18
CASTLE 14:5
certainly 11:8
Certification
  14:14
certify 14:7
CIF 1:3 2:1,6
cite 12:21
cites 11:5
claim 5:2,12,19
  5:20 7:20 12:6
claims 7:20 12:6
  12:16 13:1
cleanest 7:6
clear 10:3
client's 12:19
come 7:11 9:8
comments 12:22
compel 9:9
  13:16,17
complaint 5:7
complete 7:15
  8:12,17 12:14
complex 9:18
comply 7:13
compromise
  11:16
concluded 13:23
Connolly 2:7
  3:10,12,13 5:5
  5:10,13 6:1,18

7:17 8:2,14,21
  8:24 9:10 10:1
  10:3,7 11:14
  11:22
construction
  7:20
constructions
  12:6
contemporane...
  3:4
contentions 4:6
  4:9 6:15,15
  7:21 8:4,6,19
  9:15 12:5
contextual 11:11
contingent 7:3
cooperative
  12:12
COUNTY 14:5
court 1:1,14 2:1
  2:9 3:2 4:12
  5:8,11,21 6:17
  6:19 7:24 8:11
  8:17,23 9:2,17
  10:2,6,15
  11:17,24 12:7
  13:3,9,14
Courtroom 1:9
Crew 2:5
cross-motions
  13:21
C.A 1:5

**D**

day 14:10
days 12:11
dealing 10:16
December 13:20
decision 10:23
defendant 1:7
  3:2,3 7:4 11:21
defendant's 9:19
  10:8
define 5:17
definition 3:14
  4:3 6:10
Delaware 1:2,10
  1:21 14:3

demand 9:6
deny 13:16
described 12:5
detailed 7:20 8:7
device 4:20,21
  4:22
different 3:8 6:8
discovery 2:10
  3:5,6,16,20
  4:10 5:9 6:4,5
  6:7,14 7:12,15
  8:5,9 9:14,19
  9:23 10:10,12
  10:14,20,21
  11:4,8,9,19,20
  12:9,20
discussion 10:17
  12:17
dispute 2:12
  11:5
disputes 2:14
District 1:1,2,14
  doing 4:17,23
  5:6 11:16
draw 10:19
drawing 11:1,18
dropped 7:12
D.C 2:8

**E**

E 14:1,1
early 13:5
effort 3:6
either 9:5 13:20
Emery 2:7
enter 13:18
entitled 6:4 7:4
  9:7,23
essence 5:11
essentially 6:1
  6:23
established 11:3
exactly 4:16,17
exceedingly 12:3
exchange 12:10
  12:12
exhibit 4:14 10:8
expect 13:19

Expires 14:15

**F**

F 14:1
fact 7:12 11:4
facts 11:10
family 5:22
FARNAN 1:14
feel 4:1
FETZER 1:20
file 4:8
filed 9:20
final 6:15
fine 4:15
First 11:6
flip 13:4
fluid 12:10
foot 13:15
foregoing 14:7
forward 12:13
foundation
  10:17
Friday 1:11 14:8
further 3:24 8:8

**G**

general 4:3
generic 6:10
getting 5:3 7:16
give 3:5,21 4:2
  5:19 6:6,11,12
  6:14 7:5,8,15
  7:19,20,20,21
  7:24 8:5,18,19
given 3:15 5:14
go 4:4 9:16
  10:18 12:8
goes 4:19
going 3:10,20,22
  6:11 7:10,21
  7:24 12:8,10
  12:11,15 13:14
  13:16
good 2:2,3 3:12
  8:23
gotten 5:9
grew 7:18
guess 2:10 5:5

5:13
guys 5:19

**H**
hand 14:10
happen 11:15
  13:12
happens 4:12
happy 4:8 6:14
  8:9,21 13:11
hard 5:17
heard 2:18
hearing 3:19
help 4:10
helps 8:6
hereunto 14:9
Honeywell 10:4
  10:9,13 11:15
Honor 2:3 3:12
  7:17 8:22 9:11
  11:23 13:1,8
  13:13
HONORABLE
  1:14
Honor's 12:22
hope 10:1
hopefully 9:24
Hurley 14:6,13

**I**
Ian 2:4
identified 3:17
  6:4
identity 10:13
  10:14
imagine 11:24
inclusive 14:7
information
  5:17 6:22 8:7
infringe 6:3,13
infringement
  4:8 6:15,15
  7:21 8:3 9:14
infringes 2:20
  2:22 5:19
infringing 2:21
initial 6:14
initially 3:20 5:7

interested 4:13
interesting
  10:16
interestingly
  2:11
interpretation
  7:6
interrogatories
  3:17
interrupt 3:9
involved 2:11
issue 4:5 10:7
issues 6:8

**J**
J 1:14
January 13:20
  14:15
JJF 1:5
John 2:4
Jordan 2:24
  8:11 9:4 10:10
  10:16 11:2
Jordan's 11:18
JOSEPH 1:14
JR 1:14
judge 1:14 2:15
  2:18,24 8:11
  9:4 10:10,16
  11:2,18
judges 3:2
judgment 12:24
juncture 9:7

**K**
Kimberly 14:6
  14:13
kind 2:17,18 3:1
  3:4,9 8:2
King 1:9,21
knew 8:15 9:20
know 2:20 3:18
  4:9 5:15,22 6:2
  6:2,22 7:23 8:4
  13:4,4

**L**
language 2:18
  5:2

lawyers 10:23
lay 9:19
Licensing 1:3
  2:1,7
limit 3:20
limits 4:10
line 5:1 12:24
linked 8:5
linking 3:4
list 3:15 5:14
listed 3:15
litigation 5:22
  9:8,22
little 4:24 10:24
  11:7
LLC 1:3
long 9:15
look 2:19 3:1,21
  5:1 6:10
looks 9:11
lot 13:4
lumped 6:8

**M**
matter 4:18 14:8
McDermott 2:7
means 4:19
meet 13:17
meets 5:2
meet-and-conf...
  9:6 10:22
meet-and-conf...
  3:19
merely 10:13
Merit 14:6
Mike 2:7 3:13
mind 4:16,17
  8:13
missing 2:16 5:4
moment 12:22
money 12:19
month 9:8
morning 2:2,3
  3:12
motion 6:20,23
  9:9,13,24
  10:24 13:16,17
  13:21

movant 2:12
  4:14
move 8:9,24
moving 12:13

**N**
name 6:13 8:18
named 8:15
narrow 12:18
near 7:11
need 3:24 4:6,20
  8:4,9 9:16
never 11:17
NEW 14:5
Notary 14:7
noted 10:11
notes 14:8
notice 7:10
noticed 7:9
notion 7:18
November 1:11
  14:8,10
number 7:19

**O**
obligation 2:19
  3:5 11:2 13:18
obligations
  10:20,21 11:19
Obviously 7:22
  8:6
offered 3:19
Oh 5:10
okay 4:22 13:14
onerous 6:12
ones 3:23 4:5
one-sided 13:21
opposed 10:14
order 4:7 13:18
ought 2:22 12:18
overbroad 4:4

**P**
pages 14:7
papers 6:21 10:5
  10:9
part 5:3 12:16
parties 8:7
party 3:6

pearls 11:18
people 2:19 4:15
period 3:20
Philip 2:6
plaintiff 1:4 10:9
plaintiff's 12:4
point 6:19 7:4
  9:2 12:18
possibly 7:10
precedent 12:21
precisely 5:6
premature 6:23
present 12:23
pressing 11:6
previously 2:11
  2:24
principle 11:1
principles 3:9
prior 10:17
pro 9:3
probably 7:7
proceeding
  13:23
PROCEEDIN...
  1:17
produced 4:20
product 2:20 5:1
  5:7 6:13
production 8:24
products 3:14
  3:15,17,18,22
  4:2,4,9 5:14,16
  5:22,23 6:2,7,9
  6:11,13,21 7:9
  7:13,22 8:1,4
  8:14,15,18,20
  10:10,14 12:5
  13:1
proposal 9:13
proposed 11:15
providing 9:6
Public 14:7
purposes 12:23
put 2:13 9:24

**Q**
quarter 13:3
quid 9:3

quo 9:3

**R**
R 14:1
reading 4:13
  9:12
really 13:5
reciprocal 10:20
  10:24 11:2,19
record 2:13 14:7
reduce 7:19
referred 10:4
Registered 14:6
remedy 9:8
reply 10:9
Reporter 14:7
representative
  4:8 12:16
request 7:16
  10:23
reread 10:18
responding 5:11
response 3:16
responses 5:9
responsive 9:23
right 5:23 7:8,17
  8:2
road 13:7,12
Rovner 2:6,6,11
  3:10
rules 11:9,20
ruling 10:17

**S**
Saffer 2:4 12:2
  12:21 13:8,13
satisfied 5:8
saying 4:2 5:3,5
  5:13,15,15,18
  5:21,23 6:9,20
  6:24 7:5,7
  11:12
seal 14:10
second 5:3,6
see 2:10 13:19
seeing 9:12
seeking 10:9,12
sense 3:1 6:2

serious 13:6,17
served 11:21
set 12:12 14:9
Shaw 2:2,3,4
  12:2
side 2:17
similar 2:12
six 3:21,22 5:16
  6:11
solution 9:18
Somebody 13:17
Sort 5:4
sources 5:18
spec 4:4
specific 3:15,18
  4:2 5:14 6:12
spend 12:19
start 3:20
STATE 14:3
States 1:1,14
stay 9:14
staying 9:19
stenographic
  14:8
Street 1:9,21
stuff 7:2
sue 4:15,15
  11:20
sued 6:24 7:1
  8:12
suing 3:6
summary 12:24
supplement 7:10
Sure 10:6
SYSTEMS 1:6

**T**
T 14:1,1
tag 4:24
taken 14:8
talk 3:23,24 12:8
talking 2:24
task 6:12
tell 2:19 4:4,22
  5:1,16 6:24
Thank 10:2
  11:22,24 13:8
  13:13,22

thing 5:4,6 11:8
  13:17
think 2:12,12,17
  2:20 3:2 4:3,10
  6:6,10 7:6,14
  7:18 9:5,21
  10:24 12:1,15
  12:17,18 13:1
  13:12
thinking 12:10
  12:19
thought 2:15
  9:17
thoughts 2:13
thwart 3:6
tick 3:22
tie 4:5,6
timely 7:2
times 4:15
today 13:4
told 6:21 7:14
  12:2
Townsend 2:4,5
transcript 1:17
  4:13 9:4 10:8
  11:5 14:8
true 14:7
try 7:7 13:10,10
trying 4:5 9:2,4
  10:19
two 3:18 6:7
tying 12:24

**U**
ultimately 12:16
understand 2:15
  6:20 7:16 9:10
  9:21 10:15
  11:12 12:7
Understanding
  12:23
Understood
  11:22
Unfortunately
  9:11
United 1:1,14

**V**

v 1:5
versus 2:1 12:6
view 3:3,3

**W**
want 3:23 4:15
  7:3,5 10:13
  12:9,21 13:10
  13:15
wanted 3:16
way 3:5 4:11 7:3
  7:7 12:12,14
weigh 13:11
we're 2:21 4:5,8
  5:6,15,15 6:4,9
  6:14 7:1,3,10
  7:15 8:9,21
  10:12 11:16
WHEREOF
  14:9
WILCOX 1:20
willing 7:15
Wilmington
  1:10,21 14:10
win 4:7
wisdom 11:18
withholding 6:5
WITNESS 14:9
won 12:1
wondered 11:14
work 2:14 10:22
  13:19,21
worried 9:12
wouldn't 9:22
  11:8
www.wilfet.com
  1:22

**Y**
years 3:21,22
  5:16 6:11

**0**
07-170 1:5

**1**
1 14:7
10 3:15
10:10 1:12

10:38 13:24
11 3:17
12th 14:10
126-RPR 14:14
1330 1:21
14 14:7
15 7:13
19801 1:21

**2**
20 12:11
2007 1:11 14:8
  14:10
2008 14:15

**3**
302 1:21
31 14:15

**4**
4B 1:9

**6**
655-0477 1:21

**8**
844 1:9

**9**
9 1:11 14:8

# Motion Day Sign-In Sheet

Date of Hearing _Friday, November 9, 2007_

| Case No./Name | Attorney Name | Firm |
|---|---|---|
| Roth v Qump | Mary Matterer | Morris James |
| Wyeth v Sun Day | Benedict Yur | Keller & Van Nest |
| Crabn K v. Mumlwa | Richard Horimann | Morris James |
| " | Marc Serwell | Kirkland & Ellis |
| " | Jack Blumenfid | Morris Nichols |
| Wyeth v Teurpu | Karen Jacobs Louden | " " |
| " " | Alicia Gyen | Gunney Brattles |
| " | Richard Howitt | Potter Anderson |
| Geville v. Ellvein | Anthony Zeoli | Meredith Gurb |
| " | Philip Rovner | Potter Anderson |
| CIF Licensing vs. Agere | Michael Coulley | McDermott Wella Emery |
| " | John Shaw | Young Conaway |
| CIF Licensing/AGERZ | Ian Saffer | Townsend Townsend & Crew LLP |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, LLC, | |
| Plaintiffs, | Civil Action No. 07-449 (JJF) |
| v. | |
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., | |
| Defendants. | |

## DECLARATION OF JOSEPH C. MCALEXANDER

I, Joseph C. M$^c$Alexander, hereby declare as follows:

1. I have been retained by Samsung Electronics Co., Ltd. ("Samsung") as an expert witness in this litigation.

2. I have over 34 years of experience in microcircuit and semiconductor technologies. I have a Bachelor of Science degree in Electrical Engineering from North Carolina State University. I have architected, designed, implemented, and analyzed microcircuit and semiconductor products based on a wide variety of technologies, including, for example, Calma Company GDS II Stream database file format, known as GDSII (sometimes referred to as "GDS2"), which has become the integrated circuit industry de facto standard for IC layout data exchange, used in the manufacturing of such circuits.

3. I have reviewed the patents asserted by ON Semiconductor Corporation ("ON Semiconductor") in this lawsuit, including U.S. Patent Numbers: 1) 5,000,827; 2) 5,361,001;

3) 5,563,594; and 4) 6,362,644. I understand that ON Semiconductor is asserting claims 1 and 2 of U.S. Patent Number 5,000,827, claim 4 of U.S. Patent Number 5,361,001, claim 8 of U.S. Patent Number 5,563,594, and claims 6-10, 12 and 16 of U.S. Patent Number 6,362,644.

4. The asserted claims of ON Semiconductor's circuit patents in this litigation (U.S. Patent Numbers: 5,361,001; 5,563,594; and 6,362,644), are directed to circuit configurations, electrical connections, and logical operations of electrical circuits.

5. I have reviewed the electrical circuit schematics produced by Samsung to ON Semiconductor in this litigation, which illustrate circuit configurations, electrical connections, and logical operations of Samsung products at issue in this litigation.

6. Electrical circuit schematics provide sufficient information to determine whether or not the accused products meet the limitations of the asserted claims.

7. I understand that ON Semiconductor has additionally demanded production of GDS2 database files. GDS2 database files are directed to the physical layout of electrical circuits. The GDS2 database files represent the geometry of objects by their physical characteristics, such as their size, shape, dimensions, and location. GDS2 files provide geometric information used during the manufacturing and fabrication process to physically layout an electrical circuit onto silicon or a circuit board.

8. The GDS2 database files provide no information necessary to determine whether or not the accused products meet the limitations of the asserted claims that is not otherwise provided in the electrical circuit schematics. The asserted claims of ON Semiconductor's circuit patents are not directed to the geometry or physical characteristics of electrical components and their interconnections that are contained in GDS2 database files.

2

9. Neither GDS2 database files nor electrical circuit schematics are needed to determine whether or not the accused products meet the limitations of the asserted claims for ON Semiconductor's U.S. Patent Number 5,000,827.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:   February 22, 2008

_Joseph C. M⁵Alexander_

Joseph C. M⁵Alexander

3