IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C., <br><br> Defendants. | Civil Action No. 06-720 (JJF) |
| ON SEMICONDUCTOR CORP. and SEMICONDUCTOR COMPONENTS INDUSTRIES, L.L.C., <br><br> Plaintiffs, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA GENERAL, L.L.C., SAMSUNG SEMICONDUCTOR, INC., and SAMSUNG AUSTIN SEMICONDUCTOR L.L.C., <br><br> Defendants. | Civil Action No. 07-449 (JJF) |

**SAMSUNG'S OPENING BRIEF IN SUPPORT OF ITS**
**MOTION TO COMPEL DISCOVERY**

YOUNG CONAWAY STARGATT &
TAYLOR, LLP
Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
*alundgren@ycst.com*

*Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC., SAMSUNG TELECOMMUNICATIONS
AMERICA GENERAL, L.L.C., SAMSUNG
SEMICONDUCTOR, INC., and SAMSUNG
AUSTIN SEMICONDUCTOR, L.L.C.*

OF COUNSEL:

John M. Desmarais
Gregory S. Arovas
Jon T. Hohenthaner
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022-4611
212-446-4800
*jdesmarais@kirkland.com*
*garovas@kirkland.com*
*jhohenthaner@kirkland.com*

Edward C. Donovan
Gregory F. Corbett
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
202-879-5000
*edonovan@kirkland.com*
*gcorbett@kirkland.com*

Dated:  August 15, 2008

## TABLE OF CONTENTS

Page

I.      INTRODUCTION.................................................................................................1

II.     NATURE AND STAGE OF THE PROCEEDINGS .....................................1

III.    SUMMARY OF THE ARGUMENT ............................................................2

IV.     CONCISE STATEMENT OF FACTS ........................................................4

      A.    Deposition Discovery...............................................................................4

      B.    '177 Patent Discovery..............................................................................5

      C.    Motorola Licenses And Other Discovery. ...............................................6

V.      ARGUMENT...................................................................................................7

      A.    ON Semiconductor Should Be Compelled To Immediately Provide
            Witnesses For Outstanding Deposition Notices. ....................................8

      B.    ON Semiconductor Should Be Compelled To Provide Discovery On
            Products And Processes Accused Of Infringement Of The '177 Patent. ...............8

      C.    ON Semiconductor Should Be Compelled To Produce Motorola Licenses
            And Other Documents And The Patents Should Be Deemed
            Unenforceable For Misuse. ....................................................................10

VI.     CONCLUSION ..............................................................................................11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Minn. Mining & Mfg. Co., Inc. v. Nippon Carbide Indus.,*
   *Co.*, 171 F.R.D. 246 (D. Minn. 1997) .............................................................. 9

*PSC Inc. v. Symbol Techs., Inc.,*
   26 F. Supp. 2d 505 (W.D.N.Y. 1998) ............................................................. 4

*Sensormatic Elecs. Corp. v. Tag Co. U.S.,*
   Civil Action No. 4:07-mc-181-TLW-TER, 2008 WL 217113 (D.S.C. Jan. 24,
   2008) ................................................................................................................. 9

**Statutes**

35 U.S.C. § 295 ...................................................................................................... 3, 10

**Rules**

Rule 30(b)(6) ........................................................................................................ passim

## I.    INTRODUCTION

This Court should compel ON Semiconductor to produce relevant documents that should have been produced in April, and provide depositions and inspections that should have been provided in July.  Specifically, ON Semiconductor has failed to provide timely depositions, failed to provide meaningful discovery with respect to Samsung's infringement case, and failed to provide critical documents from its corporate predecessor, including licenses that render moot significant aspects of its alleged infringement case.  After exhaustive efforts to try to resolve these disputes without Court intervention, Samsung seeks an Order requiring production of all such discovery and preclusive relief related to these deficiencies.

## II.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement case.  Samsung brought this declaratory action for a judgment that it does not infringe any claims of four patents asserted against it by declaratory defendant ON Semiconductor:  U.S. Patent Nos. 5,000,827, 5,361,001, 5,563,594, and 6,362,644 ("the '827 patent", "the '001 patent", "the '594 patent", and "the '644 patent", respectively).  ON Semiconductor counterclaims for infringement of the four patents.  Samsung also seeks damages and an injunction for ON Semiconductor's infringement of Samsung's U.S. Patent No. 5,252,177 ("the '177 patent").  ON Semiconductor denies infringement.

Under the Court's Scheduling Order, all documents were required to have been produced no later than March 21, 2008, with the close of fact discovery on June 16, 2008.  (D.I. 47.)  In response to the parties' joint motion, the Court extended the dates for production of all documents to April 11, 2008, and the close of fact discovery to July 11, 2008.  (D.I. 113-114.)

After the parties were unable to complete noticed depositions by the relevant date—in particular due to ON Semiconductor's refusal to offer a date for a single Rule 30(b)(6) deposition—this Court granted the parties' joint motion to extend the time to complete

outstanding fact discovery by August 29, 2008.  (D.I. 183.)  The Court's Order prohibited any new written discovery or fact depositions.  (*Id.*)

Opening expert reports are due on September 15, 2008, responsive reports are due on October 13, 2008, and the close of expert discovery is November 3, 2008.  (*Id.*)

This Court held a Markman hearing on May 21, 2008, and requested that the parties present additional expert testimony on the issues at a subsequent hearing, not yet scheduled.

Trial is scheduled for February 10, 2009.  (D.I. 47.)

## III.    SUMMARY OF THE ARGUMENT

Samsung seeks an Order compelling the following discovery and providing the following related relief.

1.       Samsung seeks an Order compelling timely noticed depositions.  Samsung timely served Rule 30(b)(6) notices to be completed by the July 11, 2008, deadline.  Samsung timely offered its 30(b)(6) witnesses, and thus ON Semiconductor completed all of its Rule 30(b)(6) depositions of Samsung related to its infringement case by July 11.   However, ON Semiconductor failed to provide *any* dates for *any* Samsung Rule 30(b)(6) notices until three weeks later at a July 31, 2008, meet and confer conference.  Indeed, ON Semiconductor failed to offer any dates for any Rule 30(b)(6) notices on its four patents-in-suit until August 8, 2008, when it offered one witness on selected topics related to its patents-in-suit for August 30, 2008— the day after the close of fact discovery.  ON Semiconductor *still* has not offered dates on numerous other topics, including Samsung's affirmative case and ON Semiconductor's accused processes.  And not until *today* did ON Semiconductor provide a date for its 30(b)(6) witness on its '827 patent and a date in September for one of the inventors of the '827 patent—a date that is both after the close of extended discovery and after expert reports are to be submitted.

2.    Samsung seeks an Order compelling discovery related to ON Semiconductor's accused processes and products and/or a presumption of infringement. ON Semiconductor has failed to identify all of its relevant processes in response to Samsung's discovery requests, failed to provide documents adequately describing those processes and the products made by them, failed to adequately identify sales and unit information related to the products made by the processes, and failed to permit Samsung to inspect the accused processes such that it can determine infringement. Accordingly, Samsung seeks an Order requiring immediate discovery. As an alternative remedy with respect to discovery on the processes, Samsung seeks an Order, as specifically contemplated by statute for process patents like this one, deeming the processes infringing and placing the burden of proving non-infringement on ON Semiconductor. *See* 35 U.S.C. § 295 ("Presumption:  Product Made By Process.").

3.    Samsung seeks an Order compelling production of documents and things from ON Semiconductor's corporate predecessor Motorola. ON Semiconductor is a company spun-off from Motorola in 2002. As part of the spin-off, it acquired the patents-in-suit from Motorola as they related to the spun-off business. Motorola, of course, had numerous patent license agreements that covered the patents-in-suit, including one with Samsung. ON Semiconductor's rights in the patents-in-suit are limited by the preexisting license rights of others. Yet ON Semiconductor has refused to collect or produce documents relevant to this lawsuit from Motorola or produce the relevant documents relating to the spin-off.[1] This is particularly egregious here where ON Semiconductor refuses to acknowledge the Samsung license with Motorola that extends through June 2003 and seeks damages for indirect infringement for sales

---

[1]    Just today, ON Semiconductor produced a handful of Motorola licenses.  However, ON Semiconductor has refused to say whether they have collected, or even asked for, licenses and documents from Motorola.

3

and use by Samsung customers who likely have Motorola licenses covering the patents-in-suit. Where, as here, a patentee seeks to collect royalties on products already licensed, the patents-in-suit may be unenforceable for patent misuse. *See PSC Inc. v. Symbol Techs., Inc.*, 26 F. Supp. 2d 505, 509 (W.D.N.Y. 1998). Here, ON Semiconductor's licensing program for the patents-in-suit for royalties on products for which royalties have already been paid constitutes patent misuse. ON Semiconductor should be ordered to produce *all* licenses and other documents from its corporate predecessor Motorola.

## IV.    CONCISE STATEMENT OF FACTS

### A.    Deposition Discovery.

Samsung served numerous deposition notices for relevant testimony within the July 11, 2008 prescribed period for discovery. ON Semiconductor has ignored those deposition notices, and even its belated offers of deposition dates for a few of the notices fail to provide all of the requested testimony.

On May 30, 2008, Samsung served a Rule 30(b)(6) notice (Exhibit A) with topics directed to the accused products and processes that are the subject of Samsung's infringement case with respect to its '177 patent. At a July 31, 2008, meet and confer, ON Semiconductor first offered a date of August 20, 2008, for that deposition. ON Semiconductor subsequently withdrew the date when Samsung confirmed it. (*See* Exhibit B.) ON Semiconductor has not yet offered another date for this critical deposition.

On May 30, 2008, Samsung served a Rule 30(b)(6) notice (Exhibit C) with topics directed to ON Semiconductor's '827 patent. Not until *today* did ON Semiconductor provide a date for this deposition.

On June 3, 2008, Samsung served three Rule 30(b)(6) notices (collectively at Exhibit D) with topics directed to the '001, '594, and '644 patents, respectively. After numerous inquiries

and a July 31, 2008, meet and confer, it wasn't until August 8 that ON Semiconductor first offered a single date for all three patents—and it offered them for the day after the close of fact discovery. (*See* Exhibit E.)

On May 19, 2008, Samsung requested ON Semiconductor present Mr. Patel, an inventor of its '827 patent, for deposition. (*See* Exhibit F.) But it was not until ***today*** that ON Semiconductor provided a date for Mr. Patel's deposition despite numerous requests—a date in September that is both after the close of extended discovery and after expert reports are to be submitted. (*See* Exhibit G.)

### B.    '177 Patent Discovery.

Samsung served discovery requests related to its claim that ON Semiconductor infringes its '177 patent. The asserted claims of the '177 patent relate to a method of forming a contact hole between two metal wiring layers where a protective oxide layer is formed to protect the underlying wiring layer. The patent requires that the protective oxide layer be formed simultaneously with a plasma etching or ashing step, and that the protective oxide layer be removed in a later step to open up the contact hole. The dependent claims of the '177 patent require certain specific process and material parameters related to the independent claims. Significantly, the protective oxide layer required by the patent claims is, by definition, a ***temporary*** structure such that it cannot be directly identified by review of a final product, though the end product may have circumstantial evidence that strongly suggests the existence of the protective oxide layer during manufacturing. Moreover, Samsung has no independent way of knowing the confidential way ON Semiconductor makes its products nor any independent way of identifying to what extent it uses Samsung's infringing process.

To that end, Samsung served discovery requests to identify all of the potentially infringing processes. (Exhibit H, Request for Production Nos. 110-112 and Interrogatory No.

27.)  Samsung served discovery requests seeking the relevant manufacturing information for these processes.  (*See* Exhibit H, Request for Production Nos. 88-90, 109, 111-115 and Interrogatory No. 28.)  Samsung served discovery requests to identify the products made by the accused processes and the locations of the processes.  (*See* Exhibit H, Request for Production Nos. 103, 105 and Interrogatory Nos. 27, 31.)  Samsung served discovery requests to determine sales, unit, and date information about the products made by the accused processes.  (*See* Exhibit H, Request for Production Nos. 120-126 and Interrogatory No. 29.)  And, because the documents were unlikely to show any temporary protective layer, Samsung served a notice of inspection to pull wafers and inspect the protective oxide layers formed.  (Exhibit I.)

After two meet-and-confers, ON Semiconductor has not complied with these requests other than the belated production of selected process documents, which confirm infringement and the likely existence of other infringing processes for which document discovery has not been provided.  (*See* Exhibit J.)

**C.      Motorola Licenses And Other Discovery.**

ON Semiconductor was a division of Motorola until it was spun off as a separate company in 2002.  All of the patents except one, the '644 patent, were formerly owned by Motorola and the alleged invention claimed by the '644 patent was conceived before the spin-off.  Prior to the spin-off, Motorola licensed the patents to other companies including Samsung.  All of these licenses are binding on ON Semiconductor.  Motorola may have numerous other relevant documents including conception and reduction to practice documents, prior art, and related documents.  (*See, e.g.*, Exhibit K at 178:17-18, 178:24-179:23 (recording the following testimony from an inventor of ON Semiconductor's '827 patent:  "Q:  You left that notebook with Motorola?  A.  With Motorola.  Technically it should still be on file in some warehouse . . . ."))

6

Samsung served document requests seeking licenses and other documents that may be at Motorola, as well as documents relating to the spin-off of Samsung from Motorola. (*See, e.g.,* Exhibit L, Samsung Request for Production Nos. 7, 16, 20, 31-35, 38-43, 69-71, 74-75, 107.) Before today, when ON Semiconductor produced five Motorola Licenses, it had failed to produce **any** Motorola licenses or documents (Samsung produced its Motorola licenses). (*See* Exhibit M.) But ON Semiconductor's eleventh-hour production of a tiny portion of Motorola's patent licenses (Samsung produced over 60) does not excuse its failure to produce these critical documents. Indeed, ON Semiconductor even refused to say whether they have collected, or even attempted to collect, licenses and documents from Motorola. (*See* Exhibit N.) Further, ON Semiconductor has refused to provide documents relating to the spin-off that may relate to the relationship with Motorola and ON Semiconductor's ability to obtain relevant documents from Motorola. (*Id.*)

As a result of ON Semiconductor's disregard of its predecessor's licenses to the patents-in-suit, ON Semiconductor is now seeking damages from Samsung six years prior to filing suit, even though there can be no dispute that Samsung was licensed under a broad cross license through June of 2003. (*See, e.g.,* Exhibit O, Samsung's Interrogatory No. 16 and ON Semiconductor's response (ignoring Samsung's request to identify the ownership of and licenses to ON Semiconductor's patents-in-suit).) And ON Semiconductor is asserting indirect infringement by Samsung where its customers are the alleged direct infringers, yet many of Samsung's major customers may have licenses to the patents from Motorola. (*See Id.*)

## V.    ARGUMENT

This Court should compel complete discovery from ON Semiconductor on the issues addressed herein and provide the additional relief associated with these discovery deficiencies requested below.

7

A.    **ON Semiconductor Should Be Compelled To Immediately Provide Witnesses For Outstanding Deposition Notices.**

There is no excuse for ON Semiconductor's refusal to participate in deposition discovery. Only at a meet-and-confer three weeks after the close of scheduled discovery did ON Semiconductor provide any deposition date in response to any Samsung Rule 30(b)(6) notice—a date which they later withdrew. (*See* Exhibit P.)  And not until August 8 did ON Semiconductor offer any corporate witness on any of its patents-in-suit—all scheduled for the day after the close of discovery. (*See* Exhibit E.)  Numerous outstanding deposition notices remain.

The relevancy is beyond question.  One outstanding 30(b)(6) notice relates to ON Semiconductor's infringing products and processes in this case.  (*See* Exhibit A.)  And only *today* did ON Semiconductor finally offer dates regarding its corporate knowledge of one of the patents-in-suit and for an inventor of its '827 patent—a date that is after the close of extended discovery and after expert reports are to be submitted.  (*See* Exhibit G.)  ON Semiconductor has no good faith basis to delay, let alone refuse, this discovery, and it should be ordered to produce fully prepared witnesses immediately.

B.    **ON Semiconductor Should Be Compelled To Provide Discovery On Products And Processes Accused Of Infringement Of The '177 Patent.**

There is again no legitimate basis for ON Semiconductor to refuse to provide complete discovery on the accused products and processes.  As an initial matter, Samsung is entitled to discovery on all potentially relevant processes to ascertain which infringe.  Samsung's document requests seek precisely this information.  (*See* Exhibit H.)  But ON Semiconductor has yet to produce the relevant documents and information.  (*See* Exhibit J.)

Samsung also needs information as to how those processes work, where they take place, what products are made by the processes, and sales and temporal information about those products for damages.  While ON Semiconductor has in the last few weeks provided some new

8

documents that should have been produced in April concerning the processes and machines, its document production is demonstrably incomplete. ON Semiconductor has yet to provide documents related to several of its infringing process technologies, fabrication facilities, and machines used to perform the infringing steps. (*See id.*) For example, ON Semiconductor's documents identify that it performs processes involving photoresist etching or ashing at many of its facilities, including its facilities in Japan, the Slovak Republic, and Malaysia. (*See* Exhibit Q.) But ON Semiconductor has produced no process flows or documents regarding its processes in these facilities and others. (*Id.*)

Samsung also requires an inspection of those facilities that use the accused methods when all such facilities have been identified by ON Semiconductor. (*See* Exhibit H, Samsung Interrogatory No. 31.) An inspection will allow pulling wafers during processing to review the protective oxide layers—layers that exist only temporarily during interim processing steps. ON Semiconductor has refused by claiming that allowing a Samsung representative to be present for an inspection would be too burdensome. But inspections are a well known discovery means, particularly in circumstances such as this one. *See, e.g., Sensormatic Elecs. Corp. v. Tag Co. U.S.*, Civil Action No. 4:07-mc-181-TLW-TER, 2008 WL 217113 (D.S.C. Jan. 24, 2008) (granting motion to inspect defendant's manufacturing facility and process to determine whether accused processes use a patented "annealing" step); *see also Minn. Mining & Mfg. Co., Inc. v. Nippon Carbide Indus., Co.*, 171 F.R.D. 246, 248-49 (D. Minn. 1997) (granting motion to compel inspection where "a plant inspection provides the most efficient and effective means for determining whether a patented process has been infringed"). Samsung is aware of no documents that would identify the presence or absence of the temporary protective oxide layer that is an important focus of the claimed invention. (*See* Exhibit R.)

In the alternative, this Court should order that the products made by the accused processes be presumed to have been made by the patented process, consistent with 35 U.S.C. § 295:

> Where "the plaintiff has made a reasonable effort to determine the process actually used in the production of the product and was unable so to determine, the product shall be presumed to have been so made, and the burden of establishing that the product was not made by the process shall be on the party asserting that it was not so made."

*See* 35 U.S.C. § 295. As reflected in Samsung's interrogatory responses, there exists a substantial likelihood that the product was made by the patented process, and Samsung has made more than reasonable efforts to determine the process actually used. (*See* Exhibits H, I, J, and R). Accordingly, this Court should deem the accused ON Semiconductor processes (and products made by such processes) as infringing, unless proven otherwise by the evidence ON Semiconductor has already produced.

### C.    ON Semiconductor Should Be Compelled To Produce Motorola Licenses And Other Documents And The Patents Should Be Deemed Unenforceable For Misuse.

Simply put, ON Semiconductor seeks patent damages on products and patents for which its corporate predecessor has already received compensation. And to obtain this illegal double recovery, ON Semiconductor is pretending that the licenses that its corporate predecessor signed for—licenses to the patents-in-suit—do not exist. Indeed, ON Semiconductor is engaged in an industry-wide licensing program to license patents related to industry standards, when much of the industry, including Samsung, already had cross-licenses with its corporate predecessor.

ON Semiconductor has offered no basis to refuse to provide licenses to the patents-in-suit. (As discussed above, ON Semiconductor's last-minute production today of five Motorola licenses does not excuse its failure to search for and produce relevant documents from Motorola). Nor has ON Semiconductor identified any legitimate basis for refusing to provide

other relevant discovery from its predecessor company, including documents related to the conception of its patents (which were developed at Motorola), and documents related to possession, custody, and control issues related to its spin-off from Motorola. The relevancy of such discovery is unquestionable. ON Semiconductor cannot seek damages for indirect infringement if Samsung's customers, the purported direct infringers, are licensed. All of this discovery was sought by Samsung, and ON Semiconductor should be ordered to provide it.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff Samsung respectfully requests that this Court grant this motion to compel.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP


_____

Josy W. Ingersoll (No. 1088)
John W. Shaw (No. 3362)
Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19899-0391
302-571-6600
*alundren@ycst.com*

*Attorneys for SAMSUNG ELECTRONICS CO.,
LTD., SAMSUNG ELECTRONICS AMERICA,
INC., SAMSUNG TELECOMMUNICATIONS
AMERICA GENERAL, L.L.C., SAMSUNG
SEMICONDUCTOR, INC., and SAMSUNG
AUSTIN SEMICONDUCTOR, L.L.C.*

OF COUNSEL:

John M. Desmarais
Gregory S. Arovas
Jon T. Hohenthaner
KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022-4611
212-446-4800
*jdesmarais@kirkland.com*
*garovas@kirkland.com*
*jhohenthaner@kirkland.com*

Edward C. Donovan
Gregory F. Corbett
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005-5793
202-879-5000
*edonovan@kirkland.com*
*gcorbett@kirkland.com*

Dated:  August 15, 2008

12

## CERTIFICATE OF SERVICE

I, Andrew A. Lundgren, Esquire, hereby certify that on August 15, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Karen Jacobs Louden, Esquire [*klouden@mnat.com*]
> Morris Nichols Arsht & Tunnell
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on August 15, 2008, I caused a copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following non-registered participants in the manner indicated:

### BY E-MAIL

> Behrooz Shariati, Esquire [*bshariati@jonesday.com*]
> T. Gregory Lanier, Esquire [*tglanier@jonesday.com*]
> Jones Day
> 1755 Embarcadero Road
> Palo Alto, CA 94303

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Andrew A. Lundgren (No. 4429)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
302-571-6600
*alundgren@ycst.com*

065888.1001